# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

JENNIFER VANDERSTOK, *et al.*,

                                        *Plaintiffs*,

    v.

MERRICK GARLAND, in his official
capacity as Attorney General of the United
States; *et al.*,

                                      *Defendants*.

Civil Action No. 4:22-cv-00691-O

## DECLARATION OF DARREN PETERS, SR.

I, Darren Peters, Sr., declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct to the best of my knowledge:

1.    I am over 18 years of age, competent to testify, and have personal knowledge of the matters stated herein.

2.    I am the Owner and Chief Executive Officer ("CEO") of Tactical Machining, LLC ("Tactical Machining") and have held those positions since Tactical Machining was founded in 2008.

3.    Tactical Machining is headquartered in Florida but conducts business by shipping its products to most states within the United States, including in Texas, and in this District.

4.     Tactical Machining is a full-service machine shop that was created to craft high-quality items for individuals to use in order to individually manufacture their own AR-15 platform rifles. Tactical Machining now also provides parts that can be used to manufacture and build other gun platforms.

5.     The vast majority of Tactical Machining's business, over 90%, consists of producing and selling items that individuals can use to self-manufacture frames or receivers and to build functioning firearms. These products require further machining such as drilling the selector, trigger, and hammer holes, as well as milling out the fire control pocket to convert them into a frame or receiver. Tactical Machining does not sell any tooling, jigs, instructions, templates, guides, nor does it provide any form of instruction on how to self-manufacture a firearm frame or receiver from the items Tactical Machining sells.

6.     Tactical Machining closely follows and ensures it is in compliance with all regulations applicable to its business. For example, Tactical Machining has diligently requested classification letters for every non-firearm object it sells. Examples of such classification letters are attached as Exhibit 1.

7.     Based upon classification letters Tactical Machining has received from the ATF, guidance readily available on the ATF's website, and my understanding of federal law, none of the products produced and sold by Tactical Machining direct to

consumers, marketed using the colloquial term 80% lowers, are frames or receivers under federal law or under current regulation.

8.     It is also my understanding that the ATF's Final Rule, "Definition of a 'Frame or Receiver'" (ATF Docket No. 2021R-05), will fundamentally change and expand the ATF's application of the definition of a "firearm," potentially making each of the ATF's relevant classification determinations and Tactical Machining's prior classification letters inapplicable.

9.     On, April 12, 2022, Tactical Machining requested a new classification letter from the ATF, clarifying that a sample Tactical Machining had previously submitted to the ATF, and received a non-firearm determination on, would still not be considered a "frame or receiver" under the Final Rule. Tactical Machining printed the letter and mailed it with a copy of the Proposed Rule, highlighting the portion discussing jigs, Tactical Machining's sample that was not considered a "firearm" by the ATF in 2016, and a copy of the ATF's classification letter to Tactical Machining from 2016. A copy of Tactical Machining's April 12, 2022 letter is attached as Exhibit 2.

10.     The ATF has not responded to Tactical Machining's request.

11.     If the Final Rule goes into effect, especially without any clarification from the ATF, Tactical Machining may have to completely cease the direct sale of objects the ATF previously determined were non-firearms, which sale comprises

3

91.54% of Tactical Machining's business. Complete cessation of those sales will likely put Tactical Machining out of business.

12.    Further, due to the uncertainly created by the Final Rule, at least one of the freight companies Tactical Machining conducted business with for 8 years now refuses to ship most of Tactical Machining's products because the company is fearful the parts may be considered firearms under the Final Rule once it takes effect, subjecting the freight company to liability.

13.    Similarly, the credit card processing company Tactical Machining uses to process credit card orders and to obtain payment for its parts has threatened to stop providing services to Tactical Machining. Tactical Machining does 95% of its sales through credit card, without which Tactical Machining would likely go out of business.

14.    If the Final Rule takes effect, Tactical Machining's business would disintegrate. Tactical Machining would not be able to withstand the inability to market the largest share of its products or the unavailability of shipping, processing, or other business services for the months or perhaps longer that it would likely to for this lawsuit to be resolved and/or for Tactical Machining to obtain new classification letters from the ATF for all of its products.

15.    Without the income from 91.54% of its products, Tactical Machining would not be able to maintain its payroll or pay its other expenses.

16.    If the Final Rule takes effect, the negative impact to Tactical Machining, its employees, and its customers, is expected to be immediate and Tactical Machining would likely be put out of business in a matter of months.

DATED this 16 th day of August, 2022.

Darren Peters, Sr.
Owner/CEO
Tactical Machining, LLC

5

# EXHIBIT 1

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

*Martinsburg, WV 25405*

www.atf.gov

907010: RKD
3311/304140

MAR 0 7 2016

Mr. James Jusick
Tactical Machining, LLC
1270 Biscayne Boulevard
Deland, Florida 32724

Dear Mr. Jusick:

This is in reference to your submitted item, a partially machined AR-15 pattern receiver, along with supporting correspondence and copy of a previous a FTISB letter written to you dated October 13, 2016, received by the Firearms Technology Industry Services Branch (FTISB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). You have submitted this item (photo provided, next page) for classification under the Gun Control Act of 1968 (GCA).

FTISB had previously determined that an AR-15 type receiver blank which has <u>no machining of any kind performed in the area of the trigger/hammer (fire-control) recess</u> might not be classified as a firearm. Such a receiver blank could have **all** other machining operations performed, including pivot-pin and takedown-pin hole(s) and clearance for the takedown-pin lug, but must be completely solid and un-machined in the fire-control recess area.

You have submitted the current item for classification with the above qualifications in mind. Our examination confirmed that the receiver blank has been partially machined, including a clearance for the takedown-pin lug of an upper assembly. Your submission was found to have the forward edge of the clearance cut to be less than .800 inches from the forward edge of buffer retainer hole.

The machining operations performed for this sample include—

- The magazine well.
- Threads cut for receiver extension.
- Holes drilled for front and rear takedown pins.
- Holes drilled for front takedown detent and spring.
- Machined to accept the magazine catch.
- Hole drilled for bolt-catch plunger and spring.
- Hole machined/drilled for magazine-release button and spring.

Mr. James Jusick

- Holes drilled for trigger guard.
- Hole drilled for buffer detent and spring.
- Machined clearance cut for the upper take-down lug less than .800 inches forward of the buffer detent hole.

Our office had noted that your previous submission, while the length of the clearance for the takedown-pin lug itself was approximately .795 inches, the forward edge of that lug cut was located approximately .845 inches into the fire-control recess when measured from immediately forward of the buffer retainer hole.

Because the front of the takedown-pin lug clearance area merges with the back of the fire-control recess in a finished AR-15 pattern receiver, it was necessary to determine the point at which the takedown-pin lug clearance area stops, and the fire-control recess begins. Accordingly, we have determined that in order to be considered "completely solid and un-machined in the fire-control recess area," the takedown-pin lug clearance area must be no longer than .800 inches, measured from immediately forward of the front of the buffer retainer hole.

The forward edge of the takedown-pin lug clearance area of this sample item does not intrude more than .800 inches immediately forward of the front of the buffer retainer hole. Also, the trigger/hammer recess of your submitted sample is solid with the exception of the previously noted takedown-pin clearance lug, and there are no index detents machined for the safety lever or the trigger/hammer pins.

Accordingly, FTISB finds that the submitted item is not a "firearm" as defined in the GCA. Please note that this classification is based on the item received and examined by our Branch. Any changes to its characteristics would require re-evaluation by FTISB.

**Submitted item**



- 3 -

Mr. James Jusick

We thank you for your inquiry and trust that the foregoing has been responsive to your evaluation request. Your AR-15 type receiver will be returned to you via your provided Federal Express Ground shipping label.

Sincerely yours,

Michael R. Curtis
Chief, Firearms Technology Industry Services Branch

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_____

*Martinsburg , West Virginia 25405*          903050:MCP

www.atf.gov                                  3311/2011-182

JAN 0 5 2011

Mr. James Jusick
Tactical Machining, LLC
1584 Old Daytona Ct.
DeLand, Florida 32724

Dear Mr. Jusick:

This refers to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives
(ATF), Firearms Technology Branch (FTB), which accompanied your submitted prototype of a
partially finished, Ruger Model 10/22-type receiver. Specifically, you requested an examination
and classification of the submitted sample.

As background, the Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), defines the term
"firearm" to include *any weapon (including a starter gun) which will or is designed to or may be
readily converted to expel a projectile by the action of an explosive…[and]…the frame or
receiver of any such weapon….*

Additionally, please note that 27 CFR § 478.92 states the following:

*…each licensed manufacturer or licensed importer of any firearm manufactured or imported
shall legibly identify each such firearm by engraving, casting, stamping (impressing), or
otherwise conspicuously placing or causing to be engraved, cast, stamped (impressed) or placed
on the frame or receiver thereof in a manner not susceptible of being readily obliterated, altered,
or removed, an individual serial number not duplicating any serial number placed by the
manufacturer or importer on any other firearm, and by engraving, casting, stamping
(impressing), or otherwise conspicuously placing or causing to be engraved, cast, stamped
(impressed), or placed on the frame or receiver, or barrel thereof in a manner not susceptible of
being readily obliterated, altered or removed, the model, if such designation has been made; the
caliber or gauge; the name (or recognized abbreviation of same) of the manufacturer and also,
when applicable, of the importer; in the case of a domestically made firearm, the city and State
(or recognized abbreviation thereof) wherein the licensed manufacturer maintains its place of
business; and in the case of an imported firearm, the name of the country in which manufactured
and the city and State (or recognized abbreviation thereof) of the importer.*

Mr. James Jusick

Furthermore, for firearms manufactured or imported on and after January 30, 2002, the engraving, casting, or stamping (impressing) of the serial number must be to a minimum depth of .003 inch and a minimum height of 1/16 inch. All other markings must be of a minimum depth of .003 inch.

With respect to the submitted 10/22-type receiver (see photo enclosure), the FTB evaluation indicates that it has had several machining operations performed, creating the following:

- Cavity for the trigger assembly, bolt assembly, guide rod, and recoil-spring assembly.
- Right-side opening for the cocking handle.
- Magazine well.

The following is a list of machining operations that have not been implemented on the submitted 10/22-type receiver:

- Creation of a barrel hole.
- Drilling and tapping holes for the barrel-retainer block screws.
- Drilling and tapping hole for the stock takedown screw.
- Drilling holes for the bolt-stop pin.
- Drilling holes for the trigger-group pins.
- Drilling hole for the bolt-guide rod.
- Drilling detent for the forward portion of the magazine.

As received, the submitted sample has not yet reached a stage in manufacture at which it would be classified as a firearm. Therefore, it is not a firearm and is not subject to any provisions of the GCA. We caution that this determination applies only to the sample as submitted. Any alterations or modifications to the design or production of this 10/22-type receiver would make it subject to further review.

The submitted sample will be returned to you under separate cover.

We trust that the foregoing has been responsive to your evaluation request. If you have any additional questions regarding our findings, you may contact us at any time.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure



Submitted sample

Enclosure
2011-182-MCP



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_____

*Martinsburg, WV 25405*

www.atf.gov

JUN 1 2 2014

903050: WJS
3311/302036

Mr. James Jusick
Manager
Tactical Machining, LLC
1270 Biscayne Blvd, Suite 5
Deland, FL 32724-2139

Dear Mr. Jusick,

This is in response to your request and accompanying submissions to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). In your cover letter, you asked for a classification of the items—two unfinished 1911-type pistol frames (see enclosed photos).  Specifically, you want to know if each frame would be classified as a "firearm" under the Gun Control Act of 1968 (GCA).

In general, to be classified as *firearms*, pistol forgings or castings must incorporate the following critical features:

- Slide rails or similar slide-assembly attachment features.
- Hammer pin hole.
- Sear pin hole.

During the examination of the submitted items, FTB found that the following machining/drilling operations have been performed on each (designated as Samples A and B):

**Sample A**:

1. Plunger-tube holes have been drilled.
2. Slide-stop pin hole drilled.
3. Slide-stop engagement area machined.
4. Ejector pin hole drilled.
5. Safety-lock hole drilled.

Mr. James Jusick                                                                Page 2

    6.  Magazine-catch area machined.
    7.  Grip-screw bushings holes drilled.
    8.  Trigger slot machined.
    9.  Magazine well machined.
    10. Main spring housing area machined.
    11. Main spring pin hole machined.
    12. Sear-spring slot machined.

The critical machining operations <u>not</u> yet implemented are as follows:

    1.  Slide rails cut.
    2.  Sear pin hole drilled.
    3.  Hammer pin hole drilled.
    4.  Barrel seat machined.

Consequently, after examination of **<u>Sample A</u>**, FTB has determined this item <u>does not</u> meet the definition of a "firearm" presented in the GCA, 18 U.S.C. Section 921(a)(3).

**<u>Sample B</u>:**

    1. Plunger-tube holes have been drilled.
    2. Slide-stop pin hole drilled.
    3. Slide-stop engagement area machined.
    4. Ejector pin hole drilled
    5. Safety-lock hole drilled.
    6. Magazine-catch area machined.
    7. Grip-screw bushings holes have been drilled.
    8. Trigger slot machined.
    9. Magazine well machined.
    10. Main spring housing area machined.
    11. Main spring pin hole machined.
    12. Sear-spring slot machined.

The critical machining operations <u>not</u> yet implemented are as follows:

    1.  Slide rails cut.
    2.  Sear pin hole drilled.
    3.  Hammer-pin hole drilled.
    4.  Barrel seat machined.

Consequently, after examination of **<u>Sample B</u>**, FTB has determined this item <u>does not</u> meet the definition of a "firearm" presented in the GCA, 18 U.S.C. Section 921(a)(3).

Mr. James Jusick

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request.  Please do not hesitate to contact us if additional information is needed.

Sincerely yours,

Earl Griffith
Chief, Firearms Technology Branch



Sample A, Photo #1



Sample A, Photo #2





Sample B, Photo #2



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

Martinsburg, West Virginia  25405

www.atf.gov

903050:MSK
3311/2010-782

JUN 2 1 2010

Mr. James Jusick
Manager
Tactical Machining, LLC
1512 Old Daytona Ct.
Deland, Florida  32724

Dear Mr. Jusick:

This is in reference to your follow-up correspondence to FTB, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), concerning our prior letter (#2009-1008-MSK, copy enclosed) in which we presented our findings regarding a partially completed, AR15-type receiver that Tactical Machining planned on offering for sale as a "non-firearm."

In #2009-1008, we stated that it would be acceptable for you to have the selector-lever hole pre-drilled on the partially completed casting.  Upon further review, FTB has concluded that this feature must be eliminated from the partially completed castings you are selling.

Any castings remaining in inventory with this feature may be sold without interruption or interference, and any castings with this feature <u>which are already in commerce</u> will <u>not be</u> subject to recall or regulation of any kind.  However, those partially completed receivers which your company manufactures and sells after you have received this letter must have the selector-lever hole eliminated.

We regret any inconvenience this policy change may cause.  Please do not hesitate to contact us if additional information is needed.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Martinsburg, West Virginia 25405   903050:MSK
www.atf.gov                       3311/2009-1008

AUG 1 3 2009

Mr. James Jusick
Manager, Tactical Machining, LLC
1512 Old Daytona Ct.
Deland, Florida 32724

Dear Mr. Jusick:

This is in reference to your correspondence, with enclosed sample, to the Bureau of Alcohol,
Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB). In your cover
letter, you asked for a classification of the partially completed AR-type receiver your company is
planning to manufacture. Specifically, you wish to know if this item would be classified as a
"firearm" under the Gun Control Act of 1968 (GCA).

During the examination of your sample, FTB found that the following machining/drilling
operations would be performed on the final product you wish to sell:

1. Front and rear assembly/pivot pin holes would be drilled.
2. Selector-lever hole drilled.
3. Selector-retainer hole drilled.
4. Magazine release and catch slots cut.
5. Trigger-guard holes drilled.
6. Rear of receiver drilled and threaded to accept buffer tube.
7. Buffer-retainer hole drilled.
8. Pistol-grip mounting area faced off, drilled, and threaded.
9. Magazine well completed.

The machining operations not yet performed are as follows:

1. Milling out of receiver interior.
2. Cutting of trigger slot.
3. Drilling the trigger-pin hole.
4. Drilling the hammer-pin hole.

In conclusion, the FTB examination of your submitted sample found that your planned receiver
will not be sufficiently complete to be classified as the frame or receiver of a firearm and thus
would not be a "firearm" as defined in the GCA.

-2-

Mr. James Jusick

To facilitate return of your sample, please provide FTB with the appropriate FedEx account information within 60 days of receipt of this letter.

We thank you for your inquiry and trust that the foregoing has been responsive to your evaluation request.  Please do not hesitate to contact us if additional information is needed.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

Martinsburg, West Virginia  25405          903050:MSK
www.atf.gov                                3311/2009-1008

AUG 1 3 2009

Mr. James Jusick
Manager, Tactical Machining, LLC
1512 Old Daytona Ct.
Deland, Florida  32724

Dear Mr. Jusick:

This is in reference to your correspondence, with enclosed sample, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB).  In your cover letter, you asked for a classification of the partially completed AR-type receiver your company is planning to manufacture.  Specifically, you wish to know if this item would be classified as a "firearm" under the Gun Control Act of 1968 (GCA).

During the examination of your sample, FTB found that the following machining/drilling operations would be performed on the final product you wish to sell:

1.  Front and rear assembly/pivot pin holes would be drilled.
2.  Selector-lever hole drilled.
3.  Selector-retainer hole drilled.
4.  Magazine release and catch slots cut.
5.  Trigger-guard holes drilled.
6.  Rear of receiver drilled and threaded to accept buffer tube.
7.  Buffer-retainer hole drilled.
8.  Pistol-grip mounting area faced off, drilled, and threaded.
9.  Magazine well completed.

The machining operations not yet performed are as follows:

1.  Milling out of receiver interior.
2.  Cutting of trigger slot.
3.  Drilling the trigger-pin hole.
4.  Drilling the hammer-pin hole.

In conclusion, the FTB examination of your submitted sample found that your planned receiver will not be sufficiently complete to be classified as the frame or receiver of a firearm and thus would not be a "firearm" as defined in the GCA.

# EXHIBIT 2

To: BATFE

From: James Jusick, Manager/FFL holder Tactical Machining LLC

Re: Determination request for non-firearm partially competed receiver.

Date: 04/12/2022

Pursuant to the publication of your rule change,  27 CFR Parts 447, 478, and 479 Docket No. 2021R-05F; AG Order No. 5374-2022 RIN 1140-AA54 Definition of "Frame or Receiver" and Identification of Firearms, we are resubmitting a previously submitted partially completed receiver along with a copy of the prior determination letter from your agency dated 03/07/2016. The determination made at that time by FTISB that this submitted item is not a firearm as defined in the GCA

This is the same receiver that I previously submitted and represents the same product that we continue to manufacture. The rule changes indicate that your position on this product has not changed, see page 59, attached. The rule change indicates that the product would need to be re submitted along with any tools, jigs, instructions etc that we offer our customers to complete the partially finished receiver, see page 60, attached.

Tactical Machining does not currently offer any tooling, jigs, instructions, templates, guides or any form of instruction on how to complete a firearm receiver.

Thank you,

James Jusick

Tactical Machining LLC

1241 Produce Alley

 DeLand FL 32724

386 734-0905