IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JENNIFER VANDERSTOK, *et al.*,<br><br>                               *Plaintiffs*,<br><br>   v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States; *et al.*,<br><br>                               *Defendants*. | Civil Action No. 4:22-cv-00691-O |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER CASE, OR IN THE ALTERNATIVE, FOR AN EXTENSION OF TIME**

# TABLE OF CONTENTS

|  | Page |
|---|---:|
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION | 1 |
| ARGUMENT | 2 |
| I. This Case Should Not be Transferred to the Southern District of Texas because the First-to-File Rule is Inapplicable to the Case at Hand | 3 |
|     A. The Parties are Distinct, Unrelated, and Plaintiffs have No Ties to the Lawsuit in the Southern District of Texas | 3 |
|     B. The Issues Between the Two Cases Are Sufficiently Distinct | 7 |
| II. Defendants Are Not Entitled to an Extension of Time to Respond to Plaintiffs' Motion for Preliminary Injunction | 10 |
| CONCLUSION | 13 |

## TABLE OF AUTHORITIES

| Case | Page(s) |
| --- | --- |
| *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392 (S.D. Tex. 1992) | 6–7 |
| *Division 80, LLC v. Garland*, No. 3:22-cv-00148 (S.D. Tex.) | passim |
| *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931 (Fed. Cir. 1993) | 3 |
| *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) | 7 |
| *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952) | 3 |
| *LifeNet, Inc. v. U.S. HHS*, 2022 WL 2959715 (E.D. Tex. July 26, 2022) | 3 |
| *Louisiana v. Biden*, 538 F. Supp. 3d 649 (W.D. La. 2021) | 9 |
| *Morehouse v. ATF*, No. 3:22-cv-00116 (D.N.D.) | passim |
| *N.Y. State Rifle & Pistol Ass'n, Inc., v. Bruen*, 142 S. Ct. 2111 (2022) | 11–12 |
| *Nat'l Health Fed'n v. Weinberger*, 518 F.2d 711 (7th Cir. 1975) | 5 |
| *Save Power Ltd v. Syntek Fin. Corp.* 121 F.3d 947 (5th Cir. 1997) | 4 |
| *SIPCO, LLC v. Emerson Elec. Co.*, 2016 WL 7743496 (E.D. Tex. July 1, 2016) | 3 |
| *Tex. Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994 (E.D. Tex. 1993) | 3 |
| *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24* 751 F.2d 721 (5th Cir. 1985) | 4 |

**Statutes**

| | |
|---|---|
| 5 U.S.C. § 705 | 11, 13 |
| 28 U.S.C. §1404(a) | 6, 7 |

Plaintiffs Jennifer VanDerStok; Michael G. Andren; Tactical Machining, LLC; and Firearms Policy Coalition, Inc., through their undersigned counsel, file this Response in Opposition to Defendants' Motion to Transfer Case Pursuant to the First-to-File Rule, or in the Alternative, for an Extension of Time, ECF No. 20,[1] and state the following in support of their Opposition:

## INTRODUCTION

On August 11, 2022, Plaintiffs filed this action against Defendants due to the specific injuries Plaintiffs will suffer because of Defendants' near-complete overhaul of the regulatory landscape surrounding firearms in this country—down to the regulatory redefinition of the term "firearm" itself. Defendants' Final Rule is so broad, and will cause such expansive harm, that three separate lawsuits have been filed, including this one, alleging various flaws with the Final Rule and detailing the harms that will be suffered by differently situated individuals, companies, and states should the Final Rule go into effect. *See Notice of Related Cases*, ECF No. 3.

Upon this Court setting a briefing schedule to resolve Plaintiffs' Motion for Preliminary Injunction, Defendants filed a motion seeking to transfer Plaintiffs' case, which has been properly brought in this District, to a *forum non conveniens*. Plaintiffs' action, while challenging the same Final Rule at issue in the District of North Dakota and the Southern District of Texas, addresses distinct harm suffered by Plaintiffs here, was brought in this District due to Plaintiffs' substantial ties here, and offers unique arguments as to the flawed nature of Defendants' Final Rule. Defendants should not be allowed to force Plaintiffs into an inappropriate forum simply because

---

[1]   Unless otherwise specified, all ECF citations are to the electronically maintained docket for the case before this Court.

1

their Final Rule is so broad that it negatively impacts millions of Americans, companies, and states across the nation—especially when Defendants have selectively invoked the First-to-File rule.

In the alternative, Defendants request this Court extend its established briefing schedule on Plaintiffs' Motion for Preliminary Injunction. Ironically, Defendants argue that "any purported emergency is [] entirely of Plaintiffs' own making," ECF No. 20, at 5, when one of the predominate reasons Plaintiffs filed this litigation is because of Defendants' failure to timely respond to Plaintiff Tactical Machining's request for classification of an item under the Final Rule—which letter Tactical Machining sent to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") on April 12, 2022, the *day after* Defendants announced the Final Rule, ECF No. 16-1, ¶ 9, Ex. 2. Moreover, Defendants' argument is self-defeating. Defendants argue that this case is substantially similar to *Division 80, LLC v. Garland*, where Defendants have already filed a Response to Division 80's Motion for Preliminary Injunction, but Defendants need more time to respond to what they argue to be a substantially similar Motion here. ECF No. 20 ("And the preliminary injunction motions in both cases present very similar arguments.").[2] In reality, Defendants' request will substantially harm Plaintiffs—and every day Plaintiffs are not protected from the overreach and uncertainty resulting from the Final Rule is a day that Plaintiffs are irreparably harmed, which may result in potential criminal liability and possibly even the end of Plaintiff Tactical Machining's business.

## ARGUMENT

Plaintiffs' challenge to Defendants' Final Rule is properly situated in this Court, and Defendants' attempt to invoke the First-to-File rule in this case, and not in others, is based on

---

[2] Defendants have also already filed a response to the *Morehouse* plaintiffs' motion for preliminary injunction. *See Morehouse v. ATF*, No. 3:22-cv-00116 (D.N.D.), ECF No. 43.

2

distinguishable case law and a false equivalency between Plaintiffs' suit and *Division 80, LLC v. Garland*. Defendants' argument is unpersuasive and should be summarily rejected. Moreover, Defendants' request for an extension of time is equally unpersuasive, especially in light of Defendants' own failure to respond to Plaintiff Tactical Machining, and should be equally denied.

**I.     This Case Should Not be Transferred to the Southern District of Texas because the First-to-File Rule is Inapplicable to the Case at Hand**

The First-to-File rule is a doctrine based on principles of comity. "The 'first-to-file' rule is a generally recognized doctrine of federal comity which *permits* a district court to decline jurisdiction over an action when a complaint involving *the same parties and issues* has already been filed in another district." *Tex. Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 997 (E.D. Tex. 1993) (emphasis added) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952)). "Exceptions, however, are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993); *see SIPCO, LLC v. Emerson Elec. Co.*, No. 6:15-cv-907, 2016 WL 7743496, at *12 (E.D. Tex. July 1, 2016) (quoting *Genetech*); *LifeNet, Inc. v. U.S. HHS*, No. 6:22-cv-162-JDK, 2022 WL 2959715, at *13 (E.D. Tex. July 26, 2022) (same).

**A.     The Parties are Distinct, Unrelated, and Plaintiffs have No Ties to the Lawsuit in the Southern District of Texas**

The First-to-File rule is most commonly applied when multiple substantially similar parties have filed lawsuits against one another, or the same party has filed multiple lawsuits against the same defendant, in different district courts in the United States. In fact, it is so commonly applied in cases of that character that every case Defendants cite, except a single (out of Circuit) case from 1975, falls into one of those categories. Moreover, those cases also all involve private parties that

3

are already involved in cases in the competing districts or have substantial ties to those districts or the existing parties.

For example, *West Gulf Maritime Association v. ILA Deep Sea Local 24*, which is cited by Defendants, involves a dispute between a labor union ("ILA") and an employers' association ("West Gulf"). 751 F.2d 721, 722 (5th Cir. 1985). There, ILA filed suit in the Southern District of New York against West Gulf. *Id.* West Gulf tried to transfer the case to Texas, but the court denied the motion because the court "ruled that it had jurisdiction of West Gulf." *Id.* at 723–24. And yet, while the transfer motion was pending, West Gulf filed the cited action in the Southern District of Texas against ILA. *Id.* at 724. Four days after the Southern District of New York denied West Gulf's motion to transfer, West Gulf filed a motion for preliminary injunction in the Southern District of Texas, which the court granted. *Id.* at 724. On appeal, the Fifth Circuit applied the First-to-File rule to vacate the Texas preliminary injunction because the same parties and "the same issues" were properly before the Southern District of New York, thus comity dictated the Texas court not intrude upon the New York court. *Id.* at 730, 732.

*Save Power Limited v. Syntek Finance Corporation* is also heavily cited by Defendants but is equally distinguishable. 121 F.3d 947 (5th Cir. 1997). In *Save Power*, the district court denied Save Power's motion to transfer the case to "a different judge *in the same division* before whom a previously filed, related action is pending." *Id.* at 948. While Syntek was not a party to the previously filed case, Syntek filed a motion for leave to intervene in that case, which it voluntarily withdrew prior to any opposition from Save Power or order from the court. *Id.* at 951. Accordingly, the Fifth Circuit invoked the First-to-File rule in finding that the district court abused its discretion in denying Save Power's motion to transfer to a different judge in the same district. *Id.* at 952.

Nearly every case Defendants cite follows this completely distinguishable pattern. The only case seemingly relevant on its face, *National Health Federation v. Weinberger*, Defendants read from a thousand-foot view, categorizing it as a similar case because "[t]wo sets of plaintiffs filed suit against the same government defendant challenging the issuance of two FDA regulations." ECF No. 20, at 3 (citing *Nat'l Health Fed'n v. Weinberger*, 518 F.2d 711 (7th Cir. 1975)). Upon closer inspection, however, "[a]nother factor convince[d] [the court] that discretionary dismissal [was] equitable." *Nat'l Health Fed'n*, 518 F.2d at 714.

In *National Health Federation*, two suits were brought against the FDA—one in the Southern District of New York (filed first) and the other in the Northern District of Illinois (filed second). *Id.* Importantly, "[c]omparison of the complaint [in Illinois] with the one filed in New York makes it clear that the issues raised in both complaints are *identical*[.]" *Id*. at 713 (emphasis added).

In dismissing the second suit, the court also considered the fact that the Federation plaintiff had "no particular ties to the Northern District of Illinois[.]" *Id.* at 714. Although one individual plaintiff, a member and president of one of the Federation plaintiff's chapters, "resides within the District, it is undisputed that the Federation [plaintiff] maintains a chapter within the confines of the Sothern District of New York." *Id.* The court also considered the fact that counsel for plaintiffs knew of the Southern District of New York lawsuit and "this suit could have been as easily brought in the Southern District of New York[.]" *Id.*

Here, Plaintiffs have no ties to the lawsuit in the Southern District of Texas, nor have Defendants asserted that Plaintiffs have such ties. While both lawsuits are based on the same Final Rule, the similarities end there. Division 80 is merely a distributor of items that are newly regulated under the Final Rule. ECF No. 20-1, ¶ 6. Tactical Machining, on the other hand, is a producer and

5

retailer of the items at issue, has sales in this District, has submitted numerous items to the ATF for specific classification, has received non-firearm classifications for every item it sells directly to consumers, and specifically requested the ATF re-classify one of those previously classified non-firearms on April 12, 2022, the day after Defendants announced their Final Rule—to which the ATF still hasn't responded. Declaration of Darren Peters, Sr. ("Peters Decl."), ECF No. 16-1, ¶ 9–10. Division 80 has never asked the ATF for a classification letter regarding its products, because it does not produce anything.

Moreover, there are no individual plaintiffs in *Division 80*. *See*, ECF No. 20-1, ¶ 1. Here, Plaintiff VanDerStok and Plaintiff Andren both reside in this District, both own items (or firearms manufactured from those items) that would be newly regulated under the Final Rule, and both have concrete plans to continue to purchase those items directly from retailers but for the Final Rule. Declaration of Jennifer VanDerStok ("VanDerStok Decl."), ECF No. 16-2, ¶ 7–9; Declaration of Michael G. Andren ("Andren Decl."), ECF No. 16-3, ¶ 6–9. The fact that the Defendants are the same in both actions does not overcome the distinct nature of the parties in the two lawsuits and the different ways the Final Rule will affect them as a result.

Additionally, while Plaintiffs' counsel were aware of *Division 80*, Plaintiffs could not have brought this case in the Southern District of Texas, therefore *National Health Federation*, as well as any convenience factors that would weigh against Plaintiffs, are inapplicable. 28 U.S.C. §1404(a) allows for transfer of venue "[f]or the convenience of parties and witnesses, in the interest of justice" and notes, "a district court may transfer any civil action to any other district or division where it might have been brought[.]" The Southern District of Texas, however, has found:

> As an initial matter, it must be noted that 'where it might have been brought' language refers to the statutes and governing jurisdiction and venue in the federal courts. . . . Thus, a court may not grant a section 1404(a) motion to transfer unless, at the time the suit was filed, venue could have been properly laid in the proposed

6

> transferee court and that court could have exercised subject matter jurisdiction over the action and personal jurisdiction over all the defendants.

*Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1394 (S.D. Tex. 1992).

Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(e)(1)(B) and (C) because Plaintiffs Andren and VanDerStok reside in this District; Plaintiff Tactical Machining has engaged in business transactions in this District; and Plaintiff FPC has members that reside in this District, which include Plaintiffs Andren, VanDerStok, and Tactical Machining. Venue could not have been properly laid in the transferee court. Plaintiffs VanDerStok and Andren would have been barred from bringing suit in the Southern District of Texas. Moreover, it would be costly, inconvenient, and unnecessary for Plaintiffs VanDerStok and Andren to drive nearly five and a half hours—over 300 miles[3]—to the courthouse in Galveston, Texas, when the Court in the Northern District of Texas is better suited to vindicate Plaintiffs' rights.

### B. The Issues Between the Two Cases Are Sufficiently Distinct

In response, Defendants would likely attempt to argue that the issues presented in both *Division 80* and this case are substantially similar, and thus weigh in favor of their motion to transfer. That argument is equally unappealing.

First and foremost, Defendants conspicuously omit any mention of *Morehouse, LLC v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, which was filed two months after *Division 80* and challenges the same Final Rule. *See* ECF No. 3 (notice of related cases). And yet,

---

[3] Even if convenience factors were considered, a "100-mile rule" exists to show hardship and inconvenience on witnesses. *See In re Volkswagen of America, Inc.*, 545 F.3d 304, 317 (5th Cir. 2008) ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.") (internal quotation and citation omitted). Plaintiffs driving over *300 miles* would certainly tip in favor of continuing the lawsuit in the current venue.

7

Defendants have made no attempt to transfer *Morehouse* to the Southern District of Texas. Plaintiffs cannot ascertain why Defendants believe they would be prejudiced by this case remaining in the Northern District of Texas, but not by *Morehouse* remaining in the District of North Dakota. Or why Defendants do not believe that comity requires the *Morehouse* court to defer to the *Division 80* court, but does require this court to defer to the *Division 80* court. In fact, not only have Defendants omitted any mention of *Morehouse* in their motion and have not attempted to transfer the *Morehouse* case, they have also not even attempted to stay that case. *See* Docket, *Morehouse v. ATF*, No. 3:22-cv-00116 (D.N.D.). Even when deadlines in the two cases almost conflicted, Defendants merely requested an extension in *Morehouse*: "Counsel for Defendants have many substantial work commitments during the next two weeks, including preparing for and traveling to a preliminary injunction hearing on August 9 in a *parallel action* challenging this Rule, *Division 80 v. Garland*, No. 3:22-cv-00148 (S.D. Tex.), and taking a deposition in the Division 80 action on August 2." Defs.' Mot. For Extension of Time, *Morehouse*, ECF No. 15, ¶ 2 (emphasis added). Defendants admit the cases are "parallel" and yet did not request a transfer—or even a stay—under the First-to-File rule in North Dakota.

Moreover, the nature of APA litigation means that when an agency promulgates a final rule with significant regulatory changes, millions of Americans will be potentially impacted by the same agency action. If Defendants' argument is taken to its logical conclusion, *every single* individual, corporation, or state would be prohibited from litigating in the venue most appropriate to them if they were not the first party to file. If a *pro se* individual had challenged this Final Rule in Alaska, Defendants' position would mean that they could force every other individual, corporation, and state to litigate their case in the District of Alaska. This is obviously untenable and is certainly not common in APA litigation.

In fact, *Louisiana v. Biden* specifically addresses the issue of overlap in the context of APA suits. 538 F. Supp. 3d 649 (W.D. La. 2021). In *Louisiana v. Biden*, the court looked to the context of two lawsuits, the first brought in Wyoming and the second brought in Louisiana, challenging an Executive Order that "ordered the Secretary of the Interior to pause new oil and gas leases on public lands or in offshore waters . . . ." *Id.* at 653. There, like here, the government moved to transfer the Louisiana case under the First-to-File rule. But the court determined that while the two cases made some of the same claims, "[o]nly the Wyoming suit makes claims under the FLPMA . . . and under the NEPA," and "[o]nly the Louisiana suit makes direct claims to attack the constitutionality and validity of Section 208 of Executive Order 14008 and makes claims under the OCSLA." *Id.* at 656. "Where there is less than complete overlap (as the Government Defendants concede), the determination is made on a case-by-case basis, based upon such factors as the extent of overlap, the likelihood of conflict, and the interest of each forum in resolving the suit." *Id.* at 656–57. The court considered the distinct claims to determine that "the extent of overlap is not great," that the parties to the Louisiana suit had a substantial interest in having the suit heard in their chosen forum, and that the plaintiffs alleged "a substantial financial interest" in the lawsuit when the court denied the government's motion to transfer the case. *Id.* at 657.

Viewed through those lenses, it is clear that Plaintiffs and Division 80 advance sufficiently distinct claims and arguments. For example, Plaintiffs extensively address the negative impacts of Defendants' new definition of "complete weapon," the Agencies' failure to adequately explain their change in position on striker-fired pistols and split-frame receivers, the uncertainty facing purchasers that have to attempt to interpret the Final Rule or face criminal penalties, and Plaintiff Firearms Policy Coalition's comments on the Proposed Rule, as well as a Take Care Clause claim and more—none of which appear in Division 80's Complaint. *Compare* ECF No. 1, *with* ECF No.

9

20-1. Because Division 80 does not have any individual plaintiffs, it is ill-equipped to advance any claim or argument regarding the impact of the Final Rule on individuals such as Plaintiffs VanDerStok and Andren. By contrast, Division 80 extensively addresses the definition of "readily," the definition of "privately made firearms," and the Agencies' failure to provide a concise general statement of its basis and purpose, as well as advancing Commerce Clause and Takings claims—none of which appear in Plaintiffs' Petition for Judicial Review. *See* ECF No. 20-1, at 32–39. Moreover, as discussed above, Division 80 is merely a distributor of items implicated by the final rule, while Plaintiff Tactical Machining is a producer and retailer of those items, and has repeatedly undergone the classification process, while Division 80 has not. Division 80 is not equipped to address the problems with classification, and the uncertainty that the new discretionary elements of classification pushes onto producers.

Plaintiffs readily admit that their case, *Division 80*, and *Morehouse* are all "related." But they are not so substantially related that comity requires this Court to defer to another court's adjudication. Especially when Defendants do not argue, or believe, that all courts are required to follow to the First-to-File rule—just this one.

## II. Defendants Are Not Entitled to an Extension of Time to Respond to Plaintiffs' Motion for Preliminary Injunction

This Court should deny Defendants' request for an extension of time to respond to Plaintiffs' Motion for Preliminary Injunction. Plaintiffs filed their Motion and Brief in Support on August 17, 2022. ECF Nos. 15, 16. Just hours later, "to expedite resolution of the motion," this Court *sua sponte* ordered expedited briefing. ECF No. 17. That order is well within the Court's discretion. *See* N.D. Tex. Civ. R. 83.1 ("[A] presiding judge may direct the parties to proceed in any manner that the judge deems just and expeditious."). Nevertheless, Defendants seek to extend the deadline to file their response brief. ECF No. 20, at 4–5.

Good cause exists for the Court's expedited briefing schedule. As Defendants are aware, the Final Rule goes into effect on August 24, 2022. Defendants have repeatedly declined Plaintiffs' request for Defendants to voluntarily postpone the effective date of the Final Rule pursuant to 5 U.S.C. § 705. Worse, Plaintiff Tactical Machining submitted a classification request to the ATF the *day after* the Final Rule was announced. Peters Decl., ECF No. 16-1, ¶ 9. Defendant ATF has failed to respond to Plaintiff Tactical Machining for over three months. *Id.* at ¶ 10. Had the ATF responded to Plaintiff Tactical Machining in a timely manner, Plaintiff Tactical Machining may not have been forced to initiate this lawsuit against Defendants. It is ironic that Defendants invoke inordinate delay to support their argument, when it is their inordinate delay in responding to Plaintiff Tactical Machining that is a primary cause of this action.

As it stands, the expedited briefing schedule already concludes after the Final Rule is set to take effect, subjecting Plaintiffs to the threat of irreparable harm. As addressed in Plaintiffs' Brief in Support of Their Motion, Plaintiff Tactical Machining will suffer up to a 95% loss in its business. Plaintiffs VanDerStok and Andren will be tossed into a regulatory nightmare, where they cannot be certain what they can or cannot purchase based on Defendants' confusing and vague Final Rule. Any further extension may operate as a functional denial of Plaintiffs' Motion, depending on whether Plaintiffs can bear the effects of the Final Rule for the time it takes to resolve the Motion.

Moreover, Defendants' claim that Plaintiffs' failure to file their Preliminary Injunction sooner constitutes "unreasonable delay" negating the need for expedited consideration, ECF No. 20, at 5, is unpersuasive. On April 26, 2022, the Agencies published their Final Rule, consisting of 394 pages upending over five decades of precedent. Then, in June, the Supreme Court issued its opinion in *New York State Rifle & Pistol Association, Inc., v. Bruen*, 142 S. Ct. 2111 (2022),

further changing the legal landscape related to firearms. Preparation to bring Plaintiffs' case involved parsing hundreds of pages of agency regulations as well as extensive legal research. Still, Plaintiffs filed their Petition and Motion for Preliminary Injunction before the Final Rule goes into effect.

In fact, on August 19, 2022—115 days after publishing the Final Rule, and just five days before it is set to go into effect—the Agencies published a notice of Corrections to the Final Rule. *Definition of "Frame or Receiver" and Identification of Firearms; Corrections* ("Corrections"), (filed August 19, 2022).[4] It is completely reasonable that Plaintiffs filed this case and their Motion in August when the Agencies themselves are still reviewing and correcting their own errors, corrections that affect definitions at issue in Plaintiffs' Petition.

Defendants' claim is further undermined by their actions in *Division 80* and *Morehouse*. In *Morehouse*, the government sought an extension of time to respond to plaintiff's preliminary injunction motion by August 24, precisely on the date the Final Rule is set to go into effect. *See* Pl.'s Opp'n to Def.'s Mot. for Extension of Time, *Morehouse*, ECF No. 18, at 5. Similarly, in *Division 80*, the government sought discovery on the plaintiff through August 17 or August 24— again, the date the Final Rule is set to go into effect. *See* Pl.'s Opp'n to Defs.' Mot. for Leave to Conduct Disc., *Division 80*, ECF No. 33, at 3. Thus, even if Plaintiffs here had brought their case weeks (or even months) earlier, it appears likely Defendants would have attempted to drag the briefing period up to or beyond the Final Rule's effective date.

In their Motion, Defendants allude to the fact that they have already responded to a similar Motion for Preliminary Injunction in *Division 80*. *See* Resp. in Opp'n to Opposed Mot. for Prelim.

---

[4] The Corrections to the Final Rule are available at https://www.federalregister.gov/public-inspection/2022-17741/definition-of-frame-or-receiver-and-identification-of-firearms-corrections.

Inj., *Division 80*, ECF No. 16. They have similarly responded to the Motion for Permanent Injunction in *Morehouse*. *See* Defs.' Opp'n to Pls.' Mot. for Prelim. and/or Permanent Inj. *Morehouse*, ECF No. 43. Thus, by Defendants' reckoning, a substantial portion of the work to respond to Plaintiffs' Motion in this case should already be done. Additionally, the Department of Justice is a massive organization with thousands of attorneys. The "absences of key personnel during the month of August, as well as the press of business and other litigation," ECF No. 20, at 5, should not outweigh Plaintiffs' need for timely relief to avoid potential criminal penalties imposed by Defendants' vague and convoluted Final Rule.

If Defendants truly believe they need more time than this Court has ordered to adequately respond to Plaintiffs' Motion for Preliminary Injunction, there are avenues available to them. For instance, Defendants could voluntarily agree to Plaintiffs' request to postpone the effective date of the Final Rule pursuant to 5 U.S.C. § 705, which would obviate the need for the expedited briefing schedule—and, potentially, the need for a preliminary injunction. 5 U.S.C. § 705 ("When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review.").

## CONCLUSION

Plaintiffs respectfully request that this Court deny Defendants' Motion to Transfer Case Pursuant to the First-to-File Rule, or in the Alternative, for an Extension of Time, ECF No. 20, in its entirety.

DATED this 19th day of August, 2022.

Respectfully submitted,

R. Brent Cooper (TX Bar No. 04783250)
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, TX  75202
Telephone: (214) 712-9500
Telecopy: (214) 712-9540
brent.cooper@cooperscully.com

<u>/s/ Cody J. Wisniewski</u>
Cody J. Wisniewski* (CO Bar No. 50415)
FIREARMS POLICY COALITION
5550 Painted Mirage Road, Suite 320
Las Vegas, NV  89149
Telephone: (916) 378-5785
Telecopy: (916) 476-2392
cwi@fpchq.org

Kaitlyn D. Schiraldi* (TN Bar No. 039737)
Erin M. Erhardt* (CO Bar No. 49360)
MOUNTAIN STATES LEGAL FOUNDATION
2596 S. Lewis Way
Lakewood, CO  80227
Telephone: (303) 292-2021
Telecopy: (877) 349-7074
kschiraldi@mslegal.org
eerhardt@mslegal.org

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

  I hereby certify that, on August 19, 2022, a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

                /s/ *Cody J. Wisniewski*
                Cody J. Wisniewski
                FIREARMS POLICY COALITION

15