# Appendix

**FBI Criminal Justice Information Services (CJIS)/National Instant Criminal Background Check System (NICS) Section Additional Information**

**General Comments:** The FBI's Criminal Justice Information Services (CJIS) Division National Instant Criminal Background Check System (NICS) Section has reviewed the Bureau of Alcohol, Tobacco, Firearms and Explosives' (ATF's) redline draft edits to the draft Final Rule filed under Regulation Identifier Number 1140-AA52 and entitled "Definition of 'Frame or Receiver' and Identification of Firearms" which seeks, to ". . . provide new regulatory definitions of "firearm frame or receiver" and "frame or receiver . . . ."

In its previous review, the CJIS Division submitted a general comment noting an anticipated increase in NICS checks and the potential for a NICS point-of-contact (POC) state or states to relinquish this status, thereby, causing a potentially unmanageable increase in NICS checks. The CJIS Division noted potential impacts to POC jurisdictions, and asked ATF, while noting some similar historical considerations, if the ATF had surveyed POC states about potential conflicts between state and federal law that may arise due to the expanded definitions. The Department of Justice Civil Litigation Branch's comment regarding the definition of a firearm and ATF's attempt to include items such as parts kits within that definition underscore the CJIS Division's concern. If a POC state or states were to conclude that a "firearm" under this expanded definition is not, for whatever reason, within their purview to conduct NICS checks upon, this would result in those NICS checks falling back to the NICS Section.

**Impact to NICS:** Accordingly, the CJIS Division reiterates its original question of whether ATF has conducted any research as to the conflict between the definition of firearm at the federal and state level in light of this final rule and whether the POC states would be able to continue to conduct NICS checks on all categories of firearms. The CJIS Division continues to believe that this rule creates the potential for confusion and duplication of NICS checks, particularly within partial-POC states in which multiple NICS checks may be required for different types of firearms purchased from the same sale.

The CJIS Division also notes ATF's response to the FBI lab that ". . . gunsmiths do not need to complete an ATF Form 4473 or NICS background check when a marked firearm is returned to the person from whom it was received because it is a "customization" of the firearms for an individual unlicensed customer. See 86 Fed. Reg. 27731; 27 CFR 478.124(a). . .." and the associated footnote added.

Based on this guidance, the CJIS Division agrees that its use of an example involving a gunsmith conducting a NICS check should be more narrowly tailored as gunsmiths and federal firearms licensees ". . . for the sole purpose of repair or customizing when such firearm or a replacement firearm is returned to the person from whom received. . .. " are exempted from this requirement under 27 CFR 478.124(a). The CJIS Division's response, however, only noted this scenario as one of many examples in which the inclusion of "privately manufactured firearms," "frames," and "receivers" within the ATF definition of "firearm" will likely result in a substantial increase in NICS checks.

Despite this retailoring, the CJIS Division remains concerned that an increased number of NICS checks will result from this rule change, which would be exacerbated if one or more POC states were to modify or even abandon POC status based on this rule. Accordingly, the CJIS Division respectfully requests OLP note the FBI's concerns to the Office of Management and Budget to ensure the NICS Section's potential needs are addressed within the impact and budget effects analysis of the final rule.

**ATF Response to FBI CJIS Comments:**

Because ATF anticipates that there will be less demand for, and production of, weapon parts kits or other items that would need to be regulated under the new definition of "frame or receiver," ATF does not believe the final rule will significantly impact NICS.

First, while the NPRM would have expanded the definition of "frame or receiver" to include more firearm parts for which background checks might have been required, the Final Rule only regulates a single housing as a "frame or receiver" like current regulations.

Second, while the rule would regulate firearm parts kits with partially complete frames or receivers as "firearms," there is no reason to believe that regulation of these kits will result in increased *demand* for them from retail FFLs. These kits/PMFs are currently desired because they are perceived as unregulated, and are not marked with serial numbers. Because retail FFLs may not anticipate a profit after incurring the cost of marking and selling serialized kits/PMFs, FFLs may no longer wish to acquire and therefore continue to sell them. In fact, comments received have indicated that many parts kit manufacturers and dealers will go out of business. It is also anticipated that some FFLs may destroy their existing inventories of parts kits/PMFs rather than incurring the cost of serializing them because the market demand for these kits/PMFs largely depends on them being unserialized and untraceable.

Even assuming some FFLs choose to accept serialized parts kits/PMFs into inventory, or serialize their existing inventories, there is nothing to suggest that this rule would cause an increase in *purchaser* demand for parts kits/PMFs resulting in more NICS background checks. To the contrary, PMFs available at FFLs are an alternative to commercially produced firearms. Should FFLs already have them, or choose to accept them into inventory, their customers would now have the choice between purchasing serialized, likely cheaper but perhaps unreliable, privately made firearms, and serialized, likely more expensive but safer, commercially produced firearms. The demand merely shifts one way or the other. Other than a natural increase in NICS checks that occurs from year to year as reported by the FBI, the rule itself likely does nothing to increase the *overall demand* for firearms that would result in more NICS/POC background checks.

Furthermore, under the GCA, 18 U.S.C. 922(t), background checks through NICS/POCs are required for all "firearms" acquired and sold by FFLs. The GCA has defined the term "firearm" to include "frames or receivers" since its enactment in 1968. *See* 18 U.S.C. 921(a)(3)(B). POCs are required to deny a person who is prohibited from receiving or possessing a "firearm," not only under State law, but also under *Federal law*. 28 CFR 25.2 ("A POC will receive NICS background check requests from FFLs, check state or local record systems, perform NICS

inquiries, determine whether matching records provide information demonstrating that an individual is disqualified from possessing a firearm under *Federal* or state law and respond to FFLs with the results of a NICS background check.") (Emphasis added).

Because POC States are required to determine eligibility for receiving or possessing firearms under Federal law, ATF sees no conflict between Federal and State law as a result of any changes to the Federal definition of "firearm." ATF is aware that some POC States (*see e.g.*, Illinois, 430 ILCS 65/1) have never defined the term "firearm" to include "frames or receivers," which may be sold separately or included in firearm parts kits. However, irrespective of this rule, these States are required to determine whether a person is prohibited from possessing "firearms" under Federal law and therefore they must rely on the Federal definition of "firearm" to do so. For example, Illinois law requires background check approval if receipt of the firearm would not violate "federal law." 430 ILCS 65/3.1(c). Likewise, ATF sees no reason why State POCs would abandon their POC status because of this rule. If POCs had concerns about their State laws not including "frames or receivers," they likely would have abandoned their POC status long ago.