IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JENNIFER VANDERSTOK, *et al.*,<br><br>               *Plaintiffs*,<br><br>    v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States; *et al.*,<br><br>               *Defendants*. | Civil Action No. 4:22-cv-00691-O |

### SUPPLEMENTAL DECLARATION OF DARREN PETERS, SR.

I, Darren Peters, Sr., declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct to the best of my knowledge:

1. I am over 18 years of age, competent to testify, and have personal knowledge of the matters stated herein.

2. I am the Owner and Chief Executive Officer ("CEO") of Tactical Machining, LLC ("Tactical Machining") and have held those positions since Tactical Machining was founded in 2008.

3. Tactical Machining is a Federal Firearms Licensee ("FFL") and has been since 2008.

4. Starting on August 24, 2022, Tactical Machining ceased all sales of the items marketed under the colloquial label of "80% Lowers," because, due to the lack of communication and certainty from the ATF, Tactical Machining was unwilling to risk its FFL and associated penalties if the ATF interpreted the new Final Rule to prohibit the direct sale of those items to customers.

5. From August 24, 2022, through August 30, 2022, Tactical Machining lost approximately $47,435.37 in sales. This loss was despite the fact that Tactical Machining continued to sell serialized receivers. To keep customers' business and to preserve brand loyalty, Tactical Machining discounted serialized receivers on August 25, 2022, and has been and is currently selling them at a loss.

6. As of August 30, based on email communications from a local ATF special agent and positions taken by the ATF and Department of Justice in court, Tactical Machining resumed sales of those items colloquially marketed as "80% Lowers." Tactical Machining does not currently sell those items with any jigs, templates, tools, or instructions, per Defendants' statements.

7. Tactical Machining has never sold or offered templates, tools, or instructions intended to aid a customer in manufacturing one of its products into a frame or receiver.

8. Prior to the announcement of the Final Rule, Tactical Machining offered customers the option to purchase a jig with their products. As of April 11, 2022, when the Final Rule was announced, Tactical Machining ceased the sale of jigs altogether.

9. When Tactical Machining did sell jigs, but was out of stock, the sales of Tactical Machining's "80% Lowers" would drop anywhere from 20%–50% depending on the length of time that jigs were not available. Because of the lack of clarity in the Final Rule and from the ATF, Tactical Machining is not sure that it can sell jigs at all, regardless of whether they are sold packaged with its "80% Lowers," or in the same transaction as those products, or even in separate transactions.

10. Tactical Machining has tried, in good faith, to communicate with the ATF on the exact effect of the Final Rule since April 2022. Tactical Machining resubmitted an item that was

previously classified as not a firearm for reclassification in April—to which the ATF has failed to respond. Tactical Machining also called the ATF three separate times after the Final Rule's effective date. Each time, the individual answering the phone stated someone would call back within 24 hours—no one ever did. The only point of contact who has provided Tactical Machining with any direct information is a local ATF special agent. The local Agent indicated via email that, based on his understanding and ATF training, Tactical Machining's products, sold without a jig, instructions, or template, are not "firearms" under the Final Rule. But without any official guidance Tactical Machining does not know what to do to remain in compliance and fears the ATF may take some enforcement action against Tactical Machining for violating something that the ATF has so far refused to authoritatively define.

11. Even with resumed sales, a significant number of Tactical Machining's customers believe that the direct sale and purchase of just Tactical Machining's "80% Lowers," without any accompanying jigs, templates, equipment, or tools, is still prohibited. Tactical Machining has received a litany of calls from customers asking whether these products are illegal. The customers have expressed fear that they may be raided by the ATF simply for buying these products.

12. Since resuming sales, Tactical Machining has noticed a clear decline in sales—from 20–40 orders per day prior to the Final Rule to approximately 10 orders total since resuming sales. And, without a change in circumstances, Tactical Machining does not believe sales will ever reach the same level as before the Final Rule went into effect, and especially not to the same level as before Tactical Machining stopped selling jigs altogether.

13. Tactical Machining is also under threat of being dropped by its current credit card processor because of the lack of certainty in the Final Rule. Tactical Machining attempted to switch credit card processors, for security and to decrease costs, but because of the Final Rule, that

processor will not underwrite Tactical Machining. Instead, Tactical Machining is in talks with yet another credit card processor, which would increase their fees by 10% and would impose more onerous compliance requirements.

14. Without massive changes to its business structure, Tactical Machining cannot conveniently shift to solely selling complete, serialized frames and receivers. Manufacturing serialized frames and receivers (which Tactical Machining can do on a limited basis) is an entirely different business practice with a different customer base. Among other issues, the machining required to manufacture complete frames and receivers is significantly different than that of producing the items at issue in the Final Rule.

15. Moreover, manufacturing complete frames and receivers requires additional compliance work and recording requirements that would change Tactical Machining's business practices and increase overhead. When Tactical Machining attempted a temporary shift to this business practice upon the effective date of the Final Rule (by focusing on and discounting serialized receivers), not only did sales not notably increase, but the compliance work inundated staff, increasing their overall work nearly five-fold. If Tactical Machining were to continue on that course, it would need to hire at least two additional staff to deal with the paperwork requirements and increase its prices.

16. Even then, Tactical Machining may not be able to operate at a profit and there is also no guarantee that Tactical Machining could keep its current customer base or volume. Tactical Machining has always operated as a producer and retailer of the items at issue in this matter and has built its base and reputation in this market.

DATED this **31** th day of August, 2022.

_____
Darren Peters, Sr.
Owner/CEO
Tactical Machining, LLC

5