IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JENNIFER VANDERSTOK, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MERRICK GARLAND, in his official capacity as Attorney General of the United States; *et al.*, <br><br> *Defendants*. | Civil Action No. 4:22-cv-00691-O |

## DECLARATION OF NICHOLAS CHERRY

I, Nicholas Cherry, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct to the best of my knowledge:

1. I am over 18 years of age and am competent to testify to the matters contained herein.

2. I am an employee of Tactical Machining, LLC ("Tactical Machining") and have been since January 31, 2012. In that capacity I am familiar with Tactical Machining's sales and operations.

3. Tactical Machining sells its products into and has customers in several states. Tactical Machining, however, does not sell specific products into a jurisdiction when prohibited from doing so by federal, state, or local law.

4. Since the implementation of the Final Rule in August, 2022, Tactical Machining has been monitoring and collecting communications from its potential customers related to their concerns about the impact of the Final Rule.

5. Attached hereto as Exhibit A is a true and correct copy of samples of the text of emails Tactical Machining has received from potential customers over the last several weeks.

6. The day the Final Rule went into effect, Tactical Machining's daily sales numbers plummeted.

7. Likely as a result of customer concerns and even after the Preliminary Injunction entered in this case on September 2, 2022, sale of Tactical Machining products remains critically below levels that were common before the implementation of the Final Rule.

8. Revenue is down approximately $60,000 from this time last month before the Final Rule went into effect.

9. In order to maintain interest in Tactical Machining's products and to retain customer loyalty in the face of the Final Rule, Tactical Machining has been selling one of its products, a lower that requires an FFL transfer, at a loss. That sale accounts for a small increase in the volume of purchases on August 25th, the day after the Final Rule went into effect, but that is obviously not sustainable.

10. If the sale of Tactical Machining products remains at this depressed level for the next few months, Tactical Machining will be forced to change the business completely and will have to cease making parts. And if the sale of Tactical Machining products remains as low as they are currently, Tactical Machining would likely be forced out of business by the end of the year.

11. Further, the Final Rule has had other consequences for Tactical Machining. For example, Tactical Machining understands that the Final Rule requires one of its vendors, an entity that anodizes certain Tactical Machining products, to have a Class VII FFL license as opposed to the previously acceptable Class I license.

12. Tactical Machining asked its vendor to acquire a Class VII FFL so Tactical Machining can continue working with that vendor.

13. To acquire a Class VII FFL, Tactical Machining's vendor would have to pay $2,200 to register with ITAR, the International Traffic in Arms Regulations. The vendor has declined incurring this cost; therefore, Tactical Machining cannot send its parts to this vendor.

14. As a result, Tactical Machining is not able to sell customers anodized parts, which has led to the decrease in customer satisfaction.

15. Prior to April 2022, Tactical Machining offered customers the option to purchase a jig with their products. When the ATF published its Final Rule changing the definition of "firearm," Tactical Machining stopped selling jigs.

16. At that time Tactical Machining had purchased over $8,000 of raw materials to manufacture into the jigs. Once machined and sold, Tactical Machining would make approximately $34,000 on the jigs, netting approximately $26,000. Tactical Machining still owns that material but due to the Final Rule, has not converted it into jigs.

17. If it were not prohibited by the Final Rule, Tactical Machining would again manufacture and sell jigs, which from Tactical Machining's past experience, would significantly increase sales of Tactical Machining's other products.

DATED this 8th day of September, 2022.

_____
Nicholas Cherry

<u>Exhibit A to Sept. 8, 2022 N. Cherry Declaration</u>

<u>Sample 1</u>:

Can I hold my order until the injunction protects your customers as well please? If not please cancel the order….

> I'm sorry sir we can not hold the order. …... We will issue you a refund. Thanks for your understanding and continued support
>
>> Ok i understand I will watch for any changes to the injunction and place the order then.

<u>Sample 2</u>:

Does the new 'ruling' keep you from selling 80%'s as we now know them?

<u>Sample 3</u>:

I'm looking for some clarification. I've bought lowers from you recently and am looking to get more. My understanding is that on August 24th the new "Ghost Gun" law take effect. Does the require 80 lowers to Be serialized or are they out right banned. Thank you for any help

<u>Sample 4</u>:

i loved doing business with your company, I know you stopped shipping to California, but now all 80s are on hold?

<u>Sample 5</u>:

 Are you guys going to offer any variance work when the new 80 law takes effect? I buy a lot of my lowers from yall to make my rifles, I mill and engrave them accordingly here but since the new law won't allow the sale of unserielized 80s I won't be able to do my own engraving on them. I would prefer to keep buying them from yall
Thanks

<u>Sample 6</u>:

Are you able to sell 80 percent receivers to federally licensed manufacturers? I am federally licensed manufacturer and would still like to buy some of your 80percents.

<u>Sample 7</u>:

I've got a serious question…are you guys interpreting the new rule to mean that if you machine out the magazine well, then you've created a firearm that needs to be serialized?  I ask because I've read through the new rule as published in the national register, and the way I interpret it if you don't machine any critical features (I'm taking that as the FCG pocket) AND don't put any indicator marks on the lower to show where to machine, AND don't include instructions, AND don't include fixturing/jigs, THEN the lower is NOT a firearm…

<u>Sample 8</u>:

Do you still sell you jigs for your 1911 Recon 80% frames. I have several of your frames I have purchased earlier from you but I can no longer find my jig


<u>Sample 9</u>:

 I'm looking for a jig for my 80% A.R. 15 lowers