**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| JENNIFER VANDERSTOK, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States; *et al.*,<br><br>*Defendants*. | Civil Action No. 4:22-cv-00691-O |

**PLAINTIFFS' REQUEST TO EXPAND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................... 1

I.     PLAINTIFFS REQUEST THIS COURT'S PRELIMINARY
INJUNCTION BE EXTENDED TO PROTECT THE
INDIVIDUAL PLAINTIFFS AND TACTICAL MACHINING'S
CUSTOMERS ................................................................................................ 1

     A.    Individuals Are Irreparably Harmed by the Final Rule ................... 2

          1.    Just as this Court found Tactical Machining to be
irreparably harmed by compliance costs, so too are
individuals ............................................................................ 2

          2.    Individuals face felony convictions for purchasing
non-frames or non-receivers and weapons parts kits
not only from Tactical Machining, but from every
out of state supplier, manufacturer, and retailer ................... 4

     B.    Tactical Machining is Irreparably Harmed Absent
Protections for its Customers ............................................................ 5

          1.    Individuals' risk of felony conviction effectively
thwarts sales ........................................................................ 6

          2.    The confusion and chilling effect of the Final Rule
creates a sense of paralysis and is correlated to the
decrease in sales ................................................................... 7

II.    PLAINTIFFS REQUEST THAT THIS COURT EXTEND THE
PRELIMINARY INJUNCTION TO PROTECT PLAINTIFF
FIREARMS POLICY COALITION AND ITS MEMBERS ....................... 9

III.   BECAUSE THIS COURT HAS RECOGNIZED A FACIAL
FLAW IN DEFENDANTS' RULE UNDER THE APA,
PLAINTIFFS REQUEST AN INJUNCTION BROADLY
PROHIBITING DEFENDANTS FROM ENFORCING THEIR
UNLAWFUL RULE ...................................................................................... 14

CONCLUSION ............................................................................................... 18

i

## **TABLE OF AUTHORITIES**

**Case**                                                                  **Page(s)**

*Aransas Project v. Shaw,*
   835 F. Supp. 2d 251 (S.D. Tex. 2011) ................................................................ 9

*Califano v. Yamasaki,*
   442 U.S. 682 (1979) ......................................................................................... 15

*California v. Azar,*
   911 F.3d 558 (9th Cir. 2018) ............................................................................ 9

*Canal Auth. of State of Fla. v. Callaway,*
   489 F.2d 567 (5th Cir. 1974) ............................................................................ 3

*District of Columbia v. USDA,*
   444 F. Supp. 3d 1 (D.D.C. 2020) ..................................................................... 8

*Elrod v. Burns,*
   427 U.S. 347 (1976) ......................................................................................... 5

*Franciscan All., Inc. v. Burwell,*
   227 F. Supp. 3d 660 (N.D. Tex. 2016) ............................................................ 15

*Guedes v. ATF,*
   920 F.3d 1 (D.C. Cir. Apr. 1, 2019) ................................................................. 14

*Harmon v. Thornburgh,*
   878 F.2d 484 (D.C. Cir. 1989) .......................................................................... 15

*Heartwood, Inc. v. U.S. Forest Serv.,*
   73 F. Supp. 2d 962 (S.D. Ill. 1999) .................................................................. 17

*Heartwood, Inc. v. U.S. Forest Serv.,*
   230 F.3d 947 (7th Cir. 2000) ............................................................................ 17

*Hunt v. Wash. State Apple Advert. Comm'n,*
   432 U.S. 333 (1977) ......................................................................................... 10

*In re U.S. Dep't of Defense,*
   713 Fed. Appx. 489 (mem.) (6th Cir. 2018) ..................................................... 8

*In re EPA,*
   803 F.3d 804 (6th Cir. 2015) ............................................................................ 8

*Make the Rd. N.Y. v. McAleenan,*
   405 F. Supp. 3d (D.D.C. 2019) ........................................................................ 17

ii

*Mills v. District of Columbia*,
 571 F.3d 1304 (D.C. Cir. 2009)................................................................ 5

*Nat'l Fed'n of Indep. Bus. v. Perez*,
 No. 16-cv-00066, 2016 WL 3766121 (N.D. Tex. 2016) ........................ 15

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
 145 F.3d 1399 (D.C. Cir. 1998)........................................................ 15, 17

*Nevada v. U.S. Dep't of Labor*,
 218 F. Supp. 3d 520 (E.D. Tex. 2016)................................................ 15, 16

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
 908 F.3d 476 (9th Cir. 2018) ................................................................ 17

*Residents v. Zone*,
 260 F. Supp. 3d 738 (S.D. Tex. 2017)................................................... 10

*Rochester-Genesee Reg'l Transp. Auth. v. Hynes-Cherin*,
 506 F. Supp. 2d 207 (W.D.N.Y. 2007)................................................... 7

*Texas v. EPA*,
 829 F.3d 405 (5th Cir. 2016) ................................................................. 3

*Texas v. United States*,
 515 F. Supp. 3d 627 (S.D. Tex. 2021)................................................... 8

*Texas v. United States*,
 201 F. Supp. 3d 810 (N.D. Tex. 2016) .................................................. 16

*Texas v. United States*,
 809 F.3d 134 (5th Cir. 2015) ................................................................. 17

*Texas v. United States*,
 No. 7:16-cv-00054-O, 2016 WL 7852331 (N.D. Tex. 2016)................... 9

*Thunder Basin Coal Co. v. Reich*,
 510 U.S. 200 (1994) .............................................................................. 4

*Trump v. Int'l Refugee Assistance Project*,
 137 S. Ct. 2080 (2017)........................................................................... 14

*Warth v. Seldin*,
 422 U.S. 490 (1975) ......................................................................... 10, 14

## Constitutional Provisions

U.S. Const. art. III, § 1 .......................................................................... 17

## Statutes

5 U.S.C. § 705 .................................................................................................. 1, 15, 19

5 U.S.C. § 706 .................................................................................................. 14

18 U.S.C. § 922(a)(3) ....................................................................................... 4

18 U.S.C. § 924(a)(1)(D) ................................................................................. 4

## Regulations

27 C.F.R. § 478.11 ........................................................................................... 1, 10

27 C.F.R. § 478.12(c) ...................................................................................... 1, 10

*Definition of "Frame or Receiver" and Identification of Firearms* ("Final Rule"),
   87 Fed. Reg. 24,652 (Apr. 26, 2022) ....................................................... 7

## Other Authorities

*About*, FIREARMS POLICY COALITION,
   https://www.firearmspolicy.org/about ....................................................... 11

Joseph G.S. Greenlee, *The American Tradition of Self-Made Arms*,
   54 ST. MARY'S L.J. (Apr. 11, 2022) .......................................................... 5

Mila Sohoni, *The Power to Vacate a Rule*,
   88 GEO. WASH. L. REV. 1121, 1126 (2020) ............................................... 15

*U.S. Courts of Appeals Summary,* U.S. COURTS (2022),
   https://www.uscourts.gov/sites/default/files/
   fcms_na_appsumary0630.2022_0.pdf ........................................................ 3

YOUR FFL TRANSFER FEE,
   https://www.ffldealernetwork.com/blog/your-ffl-transfer-fee ............................ 3

Plaintiffs Jennifer VanDerStok; Michael G. Andren; Tactical Machining, LLC; and Firearms Policy Coalition, Inc. ("FPC"), through undersigned counsel, respectfully request that this Court expand the scope of its preliminary injunction in this matter, ECF No. 56, to cover Individual Plaintiffs VanDerStok and Andren, Tactical Machining's customers, and FPC and its members. Additionally, because this case challenges the propriety of Defendants' Final Rule, and their failure to stay within the bounds of their congressionally delegated authority, Plaintiffs' request that this Court prohibit Defendants from enforcing their *ultra vires* rule against any individuals and entities, pursuant to 5 U.S.C. § 705.

## ARGUMENT

## I.   PLAINTIFFS REQUEST THIS COURT'S PRELIMINARY INJUNCTION BE EXTENDED TO PROTECT THE INDIVIDUAL PLAINTIFFS AND TACTICAL MACHINING'S CUSTOMERS

Individual consumers, such as the Plaintiffs VanDerStok and Andren ("Individual Plaintiffs"), are still subject to and will suffer interim irreparable harm from Defendants' enforcement of their unlawful Final Rule. As a result, even with the benefit of this Court's prior Order partially granting a Preliminary Injunction, unless the Order is expanded, Plaintiffs and their customers and members will suffer irreparable harm.

Individual Plaintiffs are irreparably injured because the Final Rule prohibits them from directly purchasing, possessing, and otherwise acquiring items that are newly regulated as "firearms" by Defendants, even though this Court has deemed it substantially likely that those items cannot properly be regulated by Defendants under their congressionally limited authority. ECF No. 56 at 15 ("Plaintiffs have demonstrated a strong likelihood of success on their claims that the Final Rule—specifically, 27 C.F.R. §§ 478.11, 478.12(c)—exceeds the scope of ATF's authority under the Gun Control Act."). Additionally, interim compliance with the Final Rule will

1

result in unrecoverable additional costs to the Individual Plaintiffs, such as the transfer fees charged by Federal Firearms Licensees ("FFL"), costs that were not required before the effective date of the unlawful Final Rule. ECF No. 56 at 17–18.

To further demonstrate its harm and the harm to its customers, Tactical Machining has been collecting questions and comments from customers expressing their worry that the Final Rule made it illegal to purchase products from Tactical Machining. Suppl. Decl. of Darren Peters Sr. ("Peters' Supp. Decl"), ECF No. 55-1, ¶¶ 11–12. Tactical Machining's sales demonstrate that the Final Rule severely impacted the company. Moreover, as this Court anticipated and as sales since the Court's September 2, 2022 Order demonstrate, while Tactical Machining itself is protected under the Court's Order, if Tactical Machining's customers are not also protected, Tactical Machining will continue to suffer irreparable injury. ECF No. 56 at 22.

### A.      Individuals Are Irreparably Harmed by the Final Rule.

The Final Rule's regulation of non-frames or non-receivers and weapons parts kits harms individuals in two distinct ways: (1) individuals are subjected to unjustified and non-compensable compliance costs associated with purchasing what Defendants wrongly define as "firearms" through an FFL; and (2) individuals risk violating the law and committing a felony by purchasing "firearms" from Tactical Machining and other retailers, suppliers, and manufacturers.

### 1.      Just as this Court found Tactical Machining to be irreparably harmed by compliance costs, so too are individuals.

This Court found that compliance costs constitute irreparable harm to Tactical Machining. ECF No. 56 at 17–19. Absent an injunction, Individual Plaintiffs and other customers are irreparably harmed by having to pay compliance costs, too. For example, but for the Final Rule, the Individual Plaintiffs intend to purchase previously unregulated non-frames or non-receivers within the next four months. *See* VanDerStok Decl., ECF No. 16-2, ¶ 7; Supp. Decl. of Jennifer

2

VanDerStok ("VanDerStok Supp. Decl."), ¶ 2 (filed herewith as Exhibit 1); Andren Decl., ECF No. 16-3, ¶ 7; Supp. Decl. of Michael Andren ("Andren Supp. Decl."), ¶ 2 (filed herewith as Exhibit 2). In theory, Individual Plaintiffs and other buyers could purchase items Defendants identify as "firearms" from Tactical Machining during the pendency of this case[1] if the sales were facilitated by an in-state FFL. But the FFL Plaintiff Andren would likely use for such transfer charges a $30.00 transfer fee to facilitate these types of transactions. *See* Andren Supp. Decl. ¶ 3; *see also* YOUR FFL TRANSFER FEE, https://www.ffldealernetwork.com/blog/your-ffl-transfer-fee (last visited Sept. 8, 2022). That cost amounts to financial harm that is unrecoverable. Further, that cost and more are likely priced into any item Plaintiffs might purchase from the "brick and mortar" in-state FFL. Importantly, "[a]ssuming that the threatened harm is more than de minimis, it is not so much the magnitude but the irreparability that counts for the purposes of a preliminary injunction." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 575 (5th Cir. 1974); *see also* ECF No. 56 at 18.

As this Court already found, "nonrecoverable means irreparable." ECF No. 56 at 18. Without encompassing Individual Plaintiffs and other buyers under the protection of the Preliminary Injunction, these individuals will suffer irreparable harm by paying compliance costs that are nonrecoverable. *See* ECF No. 56 at 18 (quoting *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) ("Indeed complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs.") (internal quotations and citation omitted)).

---

[1] Even with an expedited schedule, production of the administrative record and resolution of this case by judgment is likely to take several months. Moreover, judgment against the Defendants is likely to be appealed, and the median disposition time for the Fifth Circuit is over nine months. *See U.S. Courts of Appeals Summary*, U.S. COURTS 2 (2022), https://www.uscourts.gov/sites/default/files/fcms_na_appsummary0630.2022_0.pdf (last visited Sept. 7, 2022).

This Court has already preliminarily determined that "[p]arts that *may become* receivers are not receivers[,]" and a "weapon parts kit is not a firearm." ECF No. 56 at 7, 12. Despite that finding, Individual Plaintiffs and other customers currently must still pay a fee to purchase an item that cannot be classified under the Gun Control Act ("GCA") as a firearm. Individuals are harmed because Defendants cannot require them to go through an FFL to purchase items that are not firearms. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., concurring) ("[C]omplying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs.").

> **2.** **Individuals face felony convictions for purchasing non-frames or non-receivers and weapons parts kits not only from Tactical Machining, but from every out of state supplier, manufacturer, and retailer.**

The Court's Order stated that, "[p]resumably, Tactical Machining's *customers* are still subject to felony charges for buying its products." ECF No. 56 at 22. The Court cited 18 U.S.C. § 922(a)(3), which provides that "[i]It shall be unlawful . . . for any person . . . to . . . receive in the state where he resides . . . any firearm purchased . . . outside that State[.]" An accompanying statute explains the ramifications. *See* 18 U.S.C. § 924(a)(1)(D) ("[W]hoever . . . willfully violates any other provision of this chapter, shall be fined under this title, imprisoned not more than five years, or both.").

Individual Plaintiffs reside in Texas and Tactical Machining's principal place of business is in Florida. Thus, despite the injunction, Individual Plaintiffs and other customers risk violating the GCA if they directly purchase items Defendants classify as "firearms," even if Tactical Machining can sell those items, thereby resulting in potential criminal penalties. Both Individual Plaintiffs expressed an interest in purchasing Tactical Machining's "80% Lowers" but do not want

to expose themselves to such liability. VanDerStok Supp. Decl., Ex. 1, ¶¶ 2, 5; Andren Supp. Decl., Ex. 2, ¶¶ 2, 5.

Moreover, while the Court in its Order did not yet address Plaintiffs' constitutional claims, "[i]t has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Louisiana v. Horseracing Integrity & Safety Auth. Inc.*, No. 6:22-cv-01934, 2022 WL 2960031, at *13 (W.D. La. July 26, 2022) ("This Court believes Plaintiffs have shown the necessary requirements for irreparable injury. The alleged conduct by [the agency] in exceeding its authority given by Congress and alleged violations of the APA, which did not allow sufficient time for public comments, constitute irreparable injury.").

Plaintiffs have a natural right to self-defense that is protected by the Second Amendment:

> Importantly, "[t]he Second Amendment's text makes no distinction between the different methods of acquiring the firearms that Americans have a right to keep and bear. The text shows no preference for purchasing a firearm built by another individual over building one's own firearm. After all, it would not be much of a right if one unnecessarily had to pay others to exercise it[.]"

ECF No. 1 at 12 (quoting Joseph G.S. Greenlee, *The American Tradition of Self-Made Arms*, 54 St. Mary's L.J., at 9 (Apr. 11, 2022), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3960566).

### B.    Tactical Machining is Irreparably Harmed Absent Protections for its Customers.

Harms to buyers affect sellers, and the harms and concerns the Final Rule imposes on individuals impact Tactical Machining, eviscerating demand for its products. Without further protection from an expanded injunction, Tactical Machining remains in jeopardy of going out of business during the pendency of this case.

### 1.    Individuals' risk of felony conviction effectively thwarts sales.

Tactical Machining needs the injunction to extend to its customers to fully preserve the status quo ante and to protect it from irreparable harm during the litigation of this case. As this Court acknowledged, the Final Rule forced Tactical Machining to "cease[ ] sale of various parts." ECF No. 56 at 17. While the Court's injunction allows Tactical Machining to once again offer these items for sale, it remains subject to irreparable harm if the injunction does not extend to its customers because Defendants would not be enjoined from seeking to enforce the law against individuals who purchase items from Tactical Machining.

As Plaintiffs previously noted, around the effective date of the Final Rule, Tactical Machining received a significant number of calls and emails from customers regarding the items at issue here, stating they believed that the direct sale and purchase of Tactical Machining's "80% Lowers," even without accompanying jigs, templates, equipment, or tools, remains legally prohibited. Peters' Supp. Decl., ECF No. 55-1, ¶ 11. Several customers expressed fear that they may be raided if they purchased items from Tactical Machining. *Id*.

Moreover, Tactical Machining's customers' concerns have continued since this Court entered a preliminary injunction against Defendants as to Tactical Machining. For example, Tactical Machining has been asked by a potential customer if the retailer would hold their order until the preliminary injunction is extended to customers and relieves the customers of liability and instructed to otherwise cancel the order. Decl. of Nicholas Cherry, ("Cherry Decl."), ¶¶ 4–5 and Ex. A (filed herewith as Exhibit 3). Other potential Tactical Machining customers have expressed similar concerns. *Id*. Undoubtedly, this fear of liability has stifled sales. For example, Tactical Machining's revenue for the first week of September is down approximately $60,000 from the same period last month.  *Id*. ¶¶ 7–8. As recognized by the Court's prior order, law abiding

citizens are justified in their concern of committing a felony by purchasing "firearms" under the Final Rule. This is indirectly and swiftly killing off Tactical Machining's business. Tactical Machining estimates that if conditions do not change, it would likely be forced out of business by the end of this year. *Id.* ¶ 10.

> **2.     The confusion and chilling effect of the Final Rule creates a sense of paralysis and is correlated to the decrease in sales.**

Whether or not confusion[2] surrounding the Final Rule constitutes irreparable harm to individuals, it chills customers' willingness to purchase the items at issue in this case and subject themselves to criminal prosecution. *See Rochester-Genesee Reg'l Transp. Auth. v. Hynes-Cherin*, 506 F. Supp. 2d 207, 214 (W.D.N.Y. 2007) ("The chaos and confusion in families of school-age children that could result without at least a brief stay here are all too easily imagined. . . . [T]hese

---

[2] Even if Defendants argue that the sale of non-frames or non-receivers standing alone is legal, Plaintiffs have alleged that they would also purchase jigs, guides, or instructions but for the Final Rule. VanDerStok Supp. Decl. ¶ 6; Andren Supp. Decl. ¶ 6. Thus, the harm to them from the Final Rule and the issue of consumer confusion harming Tactical Machining remains:

> The Final Rule also provides near complete discretion to the ATF's Director to consider not just the item being classified, but also to consider outside information, whether provided with the item or not, to "determine" if it is a frame or receiver. [Final Rule,] at 24,739 ("When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."). In this way, the Final Rule also seeks to regulate a "frame or receiver parts kit" as a frame or receiver itself. In other words, under the Final Rule, a link to a YouTube video on a retailer or producer's website may have the effect of converting an unregulated item into a regulated frame or receiver.

ECF No. 1, ¶ 61 (quoting *Definition of "Frame or Receiver" and Identification of Firearms* ("Final Rule"), 87 Fed. Reg. 24,652, 24,739 (Apr. 26, 2022)). Further, if Defendants assert that the Final Rule does not apply to just those items colloquially marketed as "80% Lowers," contrary to a natural interpretation of the Final Rule, then Plaintiffs request the ability to provide supplemental briefing.

circumstances present precisely the kind of 'irreparable injury' that § 705 of the APA was intended to give courts the power to prevent.").

Further, if Tactical Machining's customers, other buyers, or other sellers were required to seek additional preliminary injunctions to avoid the illegal impacts of the Final Rule during the pendency of this case, likely in additional jurisdictions, the resulting additional injunctions or other rulings may cause confusion and therefore not provide a complete remedy even to the parties here. The District Court for the District of Columbia addressed confusion surrounding competing injunctions:

> Imagine how the chaos and confusion borne of a partial injunction would multiply were multiple courts to get involved. In cases where plaintiffs file suit in multiple federal district courts, a collage of partial injunctions could quickly pop up. In those cases, a single, nationwide injunction or stay may be particularly helpful in "temporarily silenc[ing] the whirlwind of confusion that springs from uncertainty about the requirements of the new Rule and whether they will survive legal testing" and smoothing over "disparate rulings on" the "question issued by district courts around the country."

*District of Columbia v. USDA*, 444 F. Supp. 3d 1, 52–53 (D.D.C. 2020) (quoting *In re EPA*, 803 F.3d 804, 808 (6th Cir. 2015), *vacated on other grounds by In re U.S. Dep't of Defense*, 713 Fed. Appx. 489 (mem.) (6th Cir. 2018)). That same "chaos and confusion" would impact Individual Plaintiffs and other customers if companies like Tactical Machining sought preliminary injunctions and other courts granted them on the same basis as this Court. A consumer would have to decipher which sellers were covered by a preliminary injunction and which were not, or risk committing a felony. Individual Plaintiffs and customers of Tactical Machining are irreparably harmed by the uncertainty surrounding the rule, where any mistake risks criminal penalties.

Finally, the purpose of a preliminary injunction is to preserve the court's ability to provide complete relief to a plaintiff and the injunction should have the breadth that accomplishes that objective. *See Texas v. United States*, 515 F. Supp. 3d 627, 639 n.6 (S.D. Tex. 2021) (noting that

where a limited injunction "*would provide complete relief*" it may suffice, but that in other cases

complete relief required a nationwide injunction) (quoting *California v. Azar*, 911 F.3d 558, 584

(9th Cir. 2018) (emphasis added in *Texas v. United States*); *see also Texas v. United States*, No.

7:16-cv-00054-O, 2016 WL 7852331, at *2 (N.D. Tex. Oct. 18, 2016) (rejecting partial injunction

as likely to be ineffective). As another court in this Circuit noted, an equitable injunction "includes

the power to provide complete relief in light of the statutory purpose." *See Aransas Project v.

Shaw*, 835 F. Supp. 2d 251, 272–73 (S.D. Tex. 2011). The statutory purpose of the APA is, among

other things, to protect the public from administrative agencies that have exceeded their authority.

Here the ATF has exceeded its authority and if an injunction does not extend to Tactical

Machining's customers, Tactical Machining may not survive to see the ultimate resolution of this

case. Peters' Decl., ECF No. 16-1, ¶¶ 14–16; Peters' Suppl. Decl. ECF No. 55-1, ¶¶ 12–16; Cherry

Decl., Ex. 3, ¶ 10.

Accordingly, Plaintiffs request that this Court extend its preliminary injunction to protect

Individual Plaintiffs VanDerStok and Andren, as well as Tactical Machining's customers, from

enforcement of Defendants' illegal Final Rule.

## II.   PLAINTIFFS REQUEST THAT THIS COURT EXTEND THE PRELIMINARY INJUNCTION TO PROTECT PLAINTIFF FIREARMS POLICY COALITION AND ITS MEMBERS

Even if this Court continues to limit relief to the parties before the Court, such relief should

extend to FPC and its members. Plaintiff FPC filed this lawsuit on behalf of itself and its members.

ECF No. 1, ¶ 15; Decl. of Brandon Combs ("Combs Decl."), ¶ 6 (filed herewith as Exhibit 4). To

that end, FPC is acting in a representative organizational capacity. Importantly:

> [A]n association has standing to bring suit on behalf of its members when: (a) its
> members would otherwise have standing to sue in their own right; (b) the interest
> it seeks to protect are germane to the organization's purpose; and (c) neither the

claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("The association must allege that its members, *or any one of them*, are suffering immediate or threatened injury as a result of the challenged action[.] . . . So long as this can be established . . . the association may be an appropriate representative of its members[.]") (emphasis added) (citation omitted). "If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Hunt*, 432 U.S. at 343; *accord Residents v. Zone*, 260 F. Supp. 3d 738, 792 (S.D. Tex. 2017).

Plaintiffs have already demonstrated a likelihood of success on the merits in this matter, and that the balance of equities and the public interest weigh in their favor. ECF No. 56 at 6–16 ("Plaintiffs have demonstrated a strong likelihood of success on their claims that the Final Rule—specifically, 27 C.F.R. §§ 478.11, 478.12(c)—exceeds the scope of ATF's authority under the Gun Control Act."), *id.* at 21–22 ("any injury to Defendants is further outweighed by Plaintiffs' strong likelihood of success on the merits of their statutory interpretation claims."). Accordingly, the key question raised by this Court is whether Plaintiffs other than Tactical Machining, including FPC and its members, will be irreparably injured.

First and foremost, Plaintiffs note that Tactical Machining and Plaintiffs VanDerStok and Andren are members of FPC, and FPC's membership includes numerous similarly situated individuals and entities. ECF No. 1, ¶¶ 12–14; Combs Decl. ¶ 7. Any harm that Plaintiffs suffer offers an illustrative example of the harm suffered by FPC's many other members. Moreover, the harm specifically addressed above, as to Plaintiffs VanDerStok and Andren, as well as to Tactical Machining's customers, similarly applies to FPC's many other members across the United States.

10

*See*, *supra*, Section I; *About*, FIREARMS POLICY COALITION, https://www.firearmspolicy.org/about (last visited Sept. 8, 2022) ("FPC typically has members and supporters in all 50 U.S. States and the District of Columbia."). Just as they are harmed, FPC's other members are and will continue to be irreparably injured.

Much like Plaintiff Tactical Machining, other producers that are FPC members are similarly injured, including but not limited to BlackHawk Manufacturing Group, Inc., d/b/a 80 Percent Arms, and Defense Distributed, both of which are members of FPC. Combs Decl. ¶ 7; Decl. of Daniel Lifschitz ("Lifschitz Decl."), ¶ 2 (filed herewith as Exhibit 5). By way of further example of the harm suffered by FPC's non-Plaintiff members, 80 Percent Arms has been in business since 2013, with its current principal place of business in Fort Worth, Texas.[3] Lifschitz Decl. ¶ 3. Like Tactical Machining, 80 Percent Arms is a producer and retailer of the items at issue in this case, including tools and jigs that individuals can purchase and use to privately manufacture personal use firearms—products 80 Percent Arms has sold directly to consumers for nearly a decade. *Id.* ¶ 4. In fact, 80 Percent Arms is known for its "Easy Jig Gen 3 Multi-Platform" jig, for which it holds a U.S. patent. *Id.* ¶ 5. Prior to the effective date of the Final Rule, 80 Percent Arms sold its "Easy Jig Gen 3 Multi-Platform" for $349.99 on its website. *Id.* But after the Final Rule went into effect, 80 Percent Arms ceased selling jigs and jig accessories for fear of criminal liability and prosecution. *Id.* ¶ 11. 80 Percent Arms is currently only selling the products that it colloquially markets as AR-style "80 Percent Lowers," which it believes it can sell direct to

---

[3] If this Court would request additional demonstration of harm to FPC's members, Plaintiffs will submit an additional declaration from Defense Distributed detailing the similar irreparable harm it has suffered since the effective date of the Final Rule. Plaintiffs can also submit additional declarations from individual members who are irreparably harmed, just as Plaintiffs VanDerStok and Andren are.

customers based on Defendants' stated position in this and other litigation and their proffered interpretation of the Final Rule. *Id.*

Also, like Tactical Machining, 80 Percent Arms has seen a notable decline in sales, and has fielded numerous inquiries due to customer confusion since the Final Rule's effective date. Lifschitz Decl. ¶¶ 12–14. Prior to the Final Rule going into effect, 80 Percent Arms could count on 3–5% of customers who visit its website to purchase something, a number considered healthy within the e-commerce industry. Lifschitz Decl. ¶ 12. After the Final Rule went into effect, that number has dropped to less than 1%, a value so low that it cannot sustain 80 Percent Arms as a profitable business. Lifschitz Decl. ¶ 12. Several customers have contacted 80 Percent Arms, expressing concern for the legality of even just the sale of its "80 Percent Lowers" and some are cancelling orders. Lifschitz Decl. ¶ 14. Customers have expressed that they believe the Final Rule to require serialization of 80 Percent Arms' "80 Percent Lowers" and have thus canceled their orders: "Several parts if you [*sic*] order were 80% lower receivers, which as far as I am aware are now required to be serialized per the new ATF rule – as a result of this, I dont [*sic*] need any portion of the order, and was wondering when it would be canceled?" Lifschitz Decl. ¶ 14.

Other customers have expressed a belief that the items must be shipped to an FFL: "While I appreciate your stance on this, I cannot accept shipment given the existing rule. I understand you have your own legal team. I'm barred in the state of Texas and went to the University of Virginia School of Law. I have reviewed the regulation and I am not comfortable receiving delivery without the item being shipped to an FFL." Lifschitz Decl. ¶ 14. This confusion is depressing sales and chilling those customers' right to purchase items that cannot be regulated by Defendants. In addition to customer confusion, 80 Percent Arms' inability to sell one of its flagship products, its "Easy Jig Gen 3 Multi-Platform" has further contributed to a decline in sales, since its "80 Percent

Lowers" and its jig are complementary products that are regularly sold in conjunction with one another. Lifschitz Decl. ¶¶ 4–5, 15; *cf.* Peters' Supp. Decl. ECF No. 55-1, ¶¶ 8–9 (when Tactical Machining was able to sell jigs before the publication of the Final Rule, the unavailability of jigs would depress its sales 20–50%).

While 80 Percent Arms maintains some cash reserves for warranties, refunds, and replacements, if 80 Percent Arms is unable to ship products such as jigs and jig accessories that were previously ordered by customers, and continues to be unable to make a profit, 80 Percent Arms will be forced to shut down the business. Lifschitz Decl. ¶ 17. 80 Percent Arms estimates that within 2–3 months, absent a preliminary injunction that also protects it (and its customers), 80 Percent Arms will lose between half a million and three-quarters of a million dollars and will be required to shut down. Lifschitz Decl. ¶ 17.

FPC's membership includes numerous other individuals and businesses who are irreparably impacted by the Final Rule's regulation on the purchase, possession, production, and sale of the items at issue in this litigation. Combs Decl. ¶¶ 6–8.[4] Each of FPC's members could have individually filed suit against the Final Rule, but the purpose of organizational representation is one of judicial efficiency. *See, e.g.*, Lifschitz Decl. ¶ 3 (demonstrating 80 Percent Arms' principal place of business in this District). This Court has authority to extend relief to each of

---

[4] FPC itself is also injured by the Final Rule. FPC owns and uses items at issue in this litigation for lawful purposes including education, especially in testimony during public hearings on legislation and regulations about the definition of a "firearm," to help show the absurdity, irrationality, and burden of laws that would treat these items as firearms. Combs Decl. ¶¶ 9–11. "If these items, along with accompanying jigs, tools, and instructions, are treated as firearms, it will be virtually impossible for FPC to use them to educate and inform legislators, regulators, members of the media, and the public on matters of great importance, including matters which affect their rights and duties under the laws, because of the onerous severity of criminal laws that apply to firearms, as well as the patchwork of different federal, state, and local laws regarding firearms and their possession, transport, and transfer, among other restrictions." Combs Decl. ¶ 11.

FPC's members, particularly in a case like this one seeking declaratory and injunctive relief. *See Warth v. Seldin*, 422 U.S. 490, 511, 515 (1975).

Accordingly, in the interest of judicial efficiency and economy, and to avoid a voluminous and unwieldly number of potential plaintiffs individually seeking the protection of a preliminary injunction in this matter, Plaintiffs respectfully request this Court extend its already issued preliminary injunction to cover Plaintiff FPC and its members, which are properly before this Court. Such an order is not novel in APA litigation. *See* Order Denying Motion to Modify Stay Order and Clarifying Stay Order at *1, *Guedes v. ATF*, 920 F.3d 1 (D.C. Cir. Apr. 1, 2019) (Doc. No. 1779283) (clarifying that the previously entered stay "applies only to the named Appellants . . . including any current *bona fide* members of the named membership associations");[5] *cf. Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2088 (2017) ("The injunctions remain in place only with respect to parties similarly situated to Doe, Dr. Elshikh, and Hawaii.").

## III.   BECAUSE THIS COURT HAS RECOGNIZED A FACIAL FLAW IN DEFENDANTS' RULE UNDER THE APA, PLAINTIFFS REQUEST AN INJUNCTION BROADLY PROHIBITING DEFENDANTS FROM ENFORCING THEIR UNLAWFUL RULE

The APA empowers this Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right . . .; in excess of statutory jurisdiction, authority or limitations, or . . .without observance of procedure required by law." 5 U.S.C. § 706. The APA, which establishes both the legal processes that federal agencies must follow when issuing rules as

---

[5]     The   Order   can   be   found   at https://d3n8a8pro7vhmx.cloudfront.net/firearmspolicycoalition/pages/4959/attachments/original/1553541920/2019-3-25-cadc-order-emergency-motion.pdf?1553541920.

well as the causes of action for individuals to challenge unlawful agency actions, also empowers this Court to "issue all necessary and appropriate process to *postpone the effective date of an agency action* or *to preserve status or rights* pending conclusion of the review proceedings." 5 U.S.C. § 705 (emphasis added).

The plain language of section 705 indicates that a court's relief may be entered in relation to the unlawful rule itself, not simply as to the particular plaintiffs before the court. The purpose of section 705 is not just to preserve the rights of the parties before the court, but to "preserve status or rights," and it empowers a court to "postpone the effective date of an agency action," both of which are broadly applicable. *Id.* And if the Court has the final authority to set aside a rule completely, it follows that the Court has the authority to preliminarily enjoin a rule to the same extent. *See* Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121, 1126 (2020).

In APA cases, "[i]t is established that 'the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class.'" *Nevada v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520, 533–34 (E.D. Tex. 2016) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). "Where a party brings a facial challenge alleging that agency action violated APA procedures, a nationwide injunction is appropriate." *Nat'l Fed'n of Indep. Bus. v. Perez*, No. 16-cv-00066, 2016 WL 3766121, at *46 (N.D. Tex. June 27, 2016) (citing *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1407–08, 1409 (D.C. Cir. 1998) (invalidating rule and enjoining Army Corps from nationwide application)); *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.")); *accord Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d

660, 695 (N.D. Tex. 2016) ("A nationwide injunction is appropriate when a party brings a facial challenge to an agency action under the APA.").

In *Nevada v. United States Department of Labor*, for example, the Eastern District of Texas reviewed a final rule issued by the Department of Labor that sought to "modernize and streamline the existing overtime regulations for executive, administrative, and professional employees." 218 F. Supp. 3d at 524. Nevada and twenty other states sued challenging the rule pursuant to the APA and moved for a preliminary injunction. *Id.* at 525. After determining that the rule likely exceeded the scope of defendants' authority, in chief part because it departed from the plain meaning of the authorizing statute; that the cost to the states of complying with the rule would constitute irreparable injury; and that the balance of equities and public interest weighed in favor of the states, the court turned to the scope of the injunction. *Id.* at 527–33. In assessing the appropriate scope, the court specifically noted that the scope of the injunction should be based on the "extent of the violation established, not by the geographical extent of the plaintiff class" and stated:

> The Final Rule is applicable to all states. Consequently, the scope of the alleged irreparable injury extends nationwide. A nationwide injunction protects both employees and employers from being subject to different [Executive, Administrative, and Professional] exemptions based on location.

*Id.* at 534.

Broadly applicable injunctions have been applied in this District where a final agency rule will have general applicability nationwide and this Court has determined the rule is likely unlawful. *See Texas v. United States*, 201 F. Supp. 3d 810, 836 (N.D. Tex. 2016) (issuing a broadly applicable preliminary injunction, despite objection from defendants, to completely prohibit enforcement of a likely illegal Department of Education final rule relating to transgender bathroom policies); *Nat'l Fed'n of Indep. Bus.*, 2016 WL 3766121 at *46 ("Because the scope of the irreparable injury is national, and because the [Department of Labor's] New Rule is facially

invalid, the injunction should be nationwide in scope."). The Fifth Circuit has also approved this practice, specifically in the context of preliminary injunctions issued pursuant to APA challenges. *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015) ("[T]he Constitution vests the District Court with 'the judicial Power of the United States.' That power is not limited to the district wherein the court sits but extends across the country. It is not beyond the power of a court, in appropriate circumstances, to issue a nationwide injunction.") (quoting U.S. CONST. art. III, § 1).

In fact, limited to the APA context, other circuits also hold that broad injunctions are not only appropriate, but are necessary to preserve the status quo and to follow the statutory purpose of the APA. "That a nationwide remedy is necessary to provide complete relief for promulgation of an unlawful rule follows from the nature of the claim that the rule is facially unlawful." *District of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 49 (D.D.C. 2020) (discussing the appropriate scope of preliminary relief under the APA); *see also Make the Rd. N.Y. v. McAleenan*, 405 F. Supp. 3d 1, 72 (D.D.C. 2019) (holding that preventing application of a procedurally deficient rule to some plaintiffs is not enough to provide a remedy) (*overruled on other grounds by Make the Rd. N.Y. v. Wolf*, 962 F.3d 612 (D.C. Cir. 2020)). Several circuits follow this model under the APA. "When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018) (discussing scope of preliminary relief under the APA) (quoting *Nat'l Mining Ass'n*, 145 F.3d at 1409); *accord Heartwood, Inc. v. U.S. Forest Serv.*, 73 F. Supp. 2d 962, 980 (S.D. Ill. 1999) ("Because the Court finds the timber harvest [Categorical Exclusions] unlawful under NEPA, the Court may not enjoin its application in just a narrow, geographic area."), *aff'd* 230 F.3d 947 (7th Cir. 2000).

17

Plaintiffs do not argue that broad injunctions are appropriate in all contexts. But, based on this Court's and appellate precedent related to facial APA challenges, and because the Final Rule itself is in excess of Defendants' congressionally mandated authority, Plaintiffs request that this Court broadly enjoin enforcement of the Final Rule. As addressed in Plaintiffs' Response to this Court's August 29, 2022 Order, Plaintiffs are willing to agree to an expedited review in this matter, subject to this Court's availability, in order to mitigate any potential harm to Defendants from the broad enjoinment of their Final Rule. *See* ECF No. 54 at 6 ("Plaintiffs therefore propose that this Court enter the preliminary injunction against Defendants, order the administrative record to be provided within one month, and order that summary judgment motions be filed no later than two months after the administrative record is lodged and finalized (or three months if the administrative record exceeds 10,000 pages).").

## **CONCLUSION**

Accordingly, Plaintiffs respectfully request that this Court extend the Preliminary Injunction it has entered against Defendants in three ways. First, Plaintiffs request that the Preliminary Injunction extend to and protect Individual Plaintiffs and Tactical Machining's customers, so that Tactical Machining is not irreparably injured and that its customers and Individual Plaintiffs are not subject to felony charges and prosecution under the Final Rule. Second, Plaintiffs request that this Court extend the Preliminary Injunction to cover Plaintiff Firearms Policy Coalition and, specifically, its *bona fide* members, such as 80 Percent Arms, who, like Tactical Machining and Plaintiffs VanDerStok and Andren, are properly before this Court as members of Plaintiff FPC and suffer from substantially similar irreparable harm. Third, because this matter is before this Court pursuant to a facial challenged to a nationally applicable rule under

the APA, Plaintiffs request that this Court prevent Defendants from enforcing the illegal Final Rule against all individuals and entities, pursuant to 5 U.S.C. § 705.

DATED this 8th day of September, 2022.

Respectfully submitted,

R. Brent Cooper (TX Bar No. 04783250)
Benjamin D. Passey (TX Bar No. 24125681)
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, TX 75202
Telephone: (214) 712-9500
Telecopy: (214) 712-9540
brent.cooper@cooperscully.com
ben.passey@cooperscully.com

Cody J. Wisniewski* (CO Bar No. 50415)
FIREARMS POLICY COALITION
5550 Painted Mirage Road, Suite 320
Las Vegas, NV 89149
Telephone: (916) 378-5785
Telecopy: (916) 476-2392
cwi@fpchq.org

*/s/ Erin M. Erhardt*
Kaitlyn D. Schiraldi* (TN Bar No. 039737)
Erin M. Erhardt* (CO Bar No. 49360)
MOUNTAIN STATES LEGAL FOUNDATION
2596 S. Lewis Way
Lakewood, CO 80227
Telephone: (303) 292-2021
Telecopy: (877) 349-7074
kschiraldi@mslegal.org
eerhardt@mslegal.org

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*