**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| |
|---|
| JENNIFER VANDERSTOK, *et al.*,<br><br>     Plaintiffs,<br><br>     v.<br><br>MERRICK GARLAND, in his official<br>capacity as Attorney General of the United<br>States, *et al.*,<br><br>     Defendants. |

Case No. 4:22-cv-00691-O

**DEFENDANTS' RESPONSE TO PLAINTIFFS' REQUEST TO
<u>EXPAND SCOPE OF PRELIMINARY INJUNCTION (ECF NOS. 62-63)</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

I.      This Court Should Not Issue a Nationwide Injunction. .........................................1

II.     This Court Should Not Extend Its Preliminary Injunction to the Individual Plaintiffs, Non-Party Members of FPC, Or FPC Itself. ........................................7

III.    The Existing Preliminary Injunction Provides Complete Relief to Tactical Machining. ...............................................................................................................13

CONCLUSION ................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.,*
  810 F.3d 335 (5th Cir. 2016) ............................................................................................................12

*Arizona v. Biden,*
  40 F.4th 375 (6th Cir. 2022) ........................................................................................................4-5, 15

*Badii v. Rick's Cabaret Int'l, Inc.,*
  No. 3:12-CV-4541-B, 2014 WL 550593 (N.D. Tex. Feb. 11, 2014)........................................................8

*Bulgin v. DHS,*
  6:21-CV-00002-H, 2021 WL 3704985 (N.D. Tex. Feb. 10, 2021)...........................................................12

*California v. U.S. Bureau of Land Mgmt.,*
  277 F. Supp. 3d 1106 (N.D. Cal. 2017) ..............................................................................................6

*Carr v. City of Florence,*
  729 F. Supp. 783 (N.D. Ala. 1990), *aff'd mem.*, 934 F.2d 1264 (11th Cir. 1991) ......................................9

*Ctr. for Biological Diversity v. Regan,*
  No. CV 21-119 (RDM), 2022 WL 971067 (D.D.C. Mar. 30, 2022)........................................................6

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ........................................................................................................................8

*Dennis Melancon, Inc. v. City of New Orleans,*
  703 F.3d 262 (5th Cir. 2012) .............................................................................................................8

*Dennis v. Dowdle,*
  937 F.2d 612 (9th Cir. 1991) .............................................................................................................9

*DHS v. New York,*
  140 S. Ct. 599 (2020) .................................................................................................................*passim*

*Dist. of Columbia v. Heller,*
  554 U.S. 570 (2008)........................................................................................................................16

*Div. 80, LLC v. Garland,*
  No. 3:22-CV-148, 2022 WL 3648454 (S.D. Tex. Aug. 23, 2022) ............................................................5

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,*
  762 F.2d 464 (5th Cir. 1985) .............................................................................................................8

*Expo Grp., Inc. v. Castillo,*
  No. 3:19-CV-1356-G, 2019 WL 4671511 (N.D. Tex. Sept. 25, 2019) .....................................................12

*Friends of the Earth, Inc. v. Chevron Chem. Co.,*
   129 F.3d 826 (5th Cir. 1997) ................................................................................10

*Georgia v. President of the United States,*
   --- F.4th ---, No. 21-14269, 2022 WL 3703822 (11th Cir. Aug. 26, 2022) ................... 4, 6, 15

*Gill v. Whitford,*
   138 S. Ct. 1916 (2018) ..........................................................................2, 4, 15

*Guedes v. ATF,*
   920 F.3d 1 (D.C. Cir. 2019), *cert. denied*, 140 S. Ct. 789 (2020) ..................................12

*Hunt v. Wash. State Apple Advert. Comm'n,*
   432 U.S. 333 (1977) ...............................................................................10

*In re CorrLine Int'l, LLC,*
   516 B.R. 106 (Bankr. S.D. Tex. 2014) ...............................................................8-9

*Louisiana v. Becerra,*
   20 F.4th 260 (5th Cir. 2021) ..................................................................2-3, 4-6

*Louisiana v. Becerra,*
   571 F. Supp. 3d 516 (W.D. La. 2021) ..................................................................3

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) .................................................................................8

*Madsen v. Women's Health Ctr., Inc.,*
   512 U.S. 753 (1994) ...............................................................................2, 7

*McDonald v. City of Chicago,*
   561 U.S. 742 (2010) ................................................................................16

*Miss. Power & Light Co. v. United Gas Pipe Line Co.,*
   760 F.2d 618 (5th Cir. 1985) ........................................................................8

*Monumental Task Comm., Inc. v. Foxx,*
   157 F. Supp. 3d 573, 586 (E.D. La. 2016), *aff'd sub nom. Monumental Task Comm., Inc. v. Chao,*
   678 F. App'x 250 (5th Cir. 2017) ...................................................................6-7

*Morehouse Enters., LLC v. ATF,*
   3:22-CV-116, 2022 WL 3597299 (D.N.D. Aug. 23, 2022), *appeal filed,* No. 22-2854
   (8th Cir. Aug. 31, 2022) ............................................................................5

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
   142 S. Ct. 2111 (2022) .............................................................................16

*Nagy v. FMC Butner,*
    376 F.3d 252 (4th Cir. 2004) ........................................................................................9

*Nat. Res. Def. Council v. U.S. Dep't of Energy,*
    362 F. Supp. 3d 126 (S.D.N.Y. 2019) ........................................................................6

*NLRB v. Aurora City Lines, Inc.,*
    299 F.2d 229 (7th Cir. 1962) ......................................................................................8

*NLRB v. Richter's Bakery,*
    140 F.2d 870 (5th Cir. 1944) ......................................................................................9

*Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO,*
    473 U.S. 1301, 1305 (1985) .......................................................................................6

*Safety-Kleen Corp. v. EPA,*
    Nos. 92-1629, 92-1639, 1996 U.S. App. LEXIS 2324, at *2-3 (D.C. Cir. Jan. 19, 1996)....................6

*Tenth Street Residential Ass'n v. City of Dallas,*
    968 F.3d 492 (5th Cir. 2020) ....................................................................................11

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015) ......................................................................................3

*Trump v. Hawaii,*
    138 S. Ct. 2392 (2018) ............................................................................................3-4

*Trump v. Int'l Refugee Assistance Project,*
    137 S. Ct. 2080 (2017) .............................................................................................11

*Usery v. Pilgrim Equip. Co.,*
    527 F.2d 1308 (5th Cir. 1976) ....................................................................................9

*VanDerStok v. ATF,*
    4:22-CV-00691-O, 2022 WL 4009048 (N.D. Tex. Sept. 2, 2022) ...............................1-2, 7, 13

*Warth v. Seldin,*
    422 U.S. 490 (1975) .................................................................................................10

*World Outreach Conf. Ctr. v. City of Chicago,*
    234 F. Supp. 3d 904 (N.D. Ill. 2017), *aff'd,* 896 F.3d 779 (7th Cir. 2018) ..................9

**Statutes**

5 U.S.C. § 705....................................................................................................................6-7

18 U.S.C. § 921....................................................................................................................14

18 U.S.C. § 922 ........................................................................................................ 13-14

18 U.S.C. § 923 ...........................................................................................................14

**Rules**

Fed. R. Civ. P. 65 .........................................................................................................11

**Regulations**

27 C.F.R. § 478.11 ........................................................................................................15

27 C.F.R. § 478.12 ..................................................................................................14-15

Definition of "Frame or Receiver" and Identification of Firearms,
    87 Fed. Reg. 24,652 (Apr. 26, 2022) ......................................................... 1, 14-15

**Other Authorities**

ATF, *Are "80%" or "unfinished" receivers illegal?*,
    https://www.atf.gov/firearms/qa/are-%E2%80%9C80%E2%80%9D-or-
    %E2%80%9Cunfinished%E2%80%9D-receivers-illegal (last visited Sept. 15, 2022) ........................14

FFL DEALER NETWORK, *Your FFL Transfer Fee*,
    https://www.ffldealernetwork.com/blog/your-ffl-transfer-fee (last visited Sept. 15, 2022) .............8

TACTICAL MACHINING, *100% Billet Lower Receiver Stripped Model 18X Anodized*,
    https://www.tacticalmachining.com/80-anodized-billet-lower-receiver-stripped-
    model-18x.html (last visited Sept. 15, 2022) ........................................................14

U.S. BUREAU OF LAB. STATS., *CPI Inflation Calculator*,
    https://www.bls.gov/data/inflation_calculator.htm (last visited Sept. 15, 2022) ................................9

## INTRODUCTION

Pursuant to this Court's Opinion and Order of September 2, 2022, *see VanDerStok v. ATF*, No. 4:22-CV-00691-O, 2022 WL 4009048 (N.D. Tex. Sept. 2, 2022), at *11, Defendants submit this Response to Plaintiffs' Request to Expand the Preliminary Injunction, ECF No. 63 ("Pls.' Req."). As set forth in greater detail below, Plaintiffs offer no basis to conclude that a nationwide injunction is necessary to protect Tactical Machining, LLC ("Tactical Machining") from irreparable harm as a result of the Rule.[1] Their contention that a nationwide injunction is warranted merely because this Court has held that they are likely to succeed on the merits of a facial APA challenge is foreclosed by Supreme Court and Fifth Circuit precedent. The Individual Plaintiffs, meanwhile, do not face cognizable irreparable harm from the potential payment of a one-time, $30 federal firearms licensee ("FFL") transfer fee. As to the Firearms Policy Coalition ("FPC"), Plaintiffs do not establish that FPC has associational standing on behalf of its members, because Plaintiffs fail to provide evidence of any indicia of FPC's membership. Moreover, even if Plaintiffs had standing to bring suit on behalf of FPC's members, they do not establish that those members uniformly satisfy the requirements for Article III standing, much less preliminary injunctive relief, as required for a membership-wide injunction. And FPC itself does not offer any concrete, non-conclusory evidence that it requires preliminary injunctive relief to continue engaging in its own organizational activities. Finally, the existing Preliminary Injunction is sufficient to provide complete relief to Tactical Machining.

## I.     This Court Should Not Issue a Nationwide Injunction.

This Court previously declined to issue a nationwide injunction[2] because Plaintiffs had not

---

[1] Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022).

[2] Defendants use the phrase "nationwide injunction" to refer to Plaintiffs' request for an injunction barring enforcement of the Rule "against any individuals [or] entities" nationwide, Pls.' Req. at 1; *see also id.* at 14-18, as distinct from the existing injunction that protects Tactical Machining throughout the United States, not solely in this District.

established that such an injunction was necessary to provide complete relief to Plaintiffs. *See VanDerStok*, 2022 WL 4009048, at *10. In their Request to Expand the Preliminary Injunction, Plaintiffs do not attempt to establish otherwise. *See generally* Pls.' Req. at 14-18. Instead, they argue that nationwide relief is appropriate as a matter of course when a plaintiff demonstrates a likelihood of success on a facial challenge pursuant to the APA. *See id.* at 14 ("Because this Court has recognized a facial flaw in Defendants' Rule under the APA, Plaintiffs request an injunction broadly prohibiting Defendants from enforcing their unlawful Rule." (capitalization altered)); *id.* at 15 ("Where a party brings a facial challenge alleging that agency action violated APA procedures, a nationwide injunction is appropriate." (internal quotation marks and citation omitted)); *id.* at 18 ("[B]ased on this Court's and appellate precedent related to facial APA challenges, and because the Final Rule itself is in excess of Defendants' congressionally mandated authority, Plaintiffs request that this Court broadly enjoin enforcement of the Final Rule.").

As this Court has explained, however, "[i]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *VanDerStok*, 2022 WL 4009048, at *10 (quoting *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994)). The Supreme Court likewise has recently reaffirmed that "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018); *see also, e.g.*, *DHS v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring) ("Equitable remedies, like remedies in general, are meant to redress the injuries sustained by a particular plaintiff in a particular lawsuit."). Those principles are equally controlling in an APA case as in any other, because they are predicated on Article III of the Constitution. *See Gill*, 138 S. Ct. at 1933 ("The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it.").

Consistent with these principles, the Fifth Circuit has reaffirmed that the scope of any injunction must be justified in light of the particular circumstances of the case. *See Louisiana v. Becerra*,

2

20 F.4th 260, 263 (5th Cir. 2021) (per curiam).  Further, it has clarified that nationwide injunctions are not "the norm," including in APA cases.  *Id*; *see also* Compl. ¶¶ 116-29, 134-49, 155-73 (bringing APA claims), *Louisiana v. Becerra*, 571 F. Supp. 3d 516 (W.D. La. 2021) (No. 3:21-CV-03970), ECF No. 1. Accordingly, in *Becerra*, the Fifth Circuit stayed a nationwide injunction insofar as it applied beyond the States that had brought suit, rejecting the plaintiffs' argument that nationwide relief was warranted because the challenged agency action had "nationwide scope."  20 F.4th at 263-64; *see id.* at 264 (distinguishing *Texas v. United States*, 809 F.3d 134, 187-88 (5th Cir. 2015), in which nationwide relief was appropriate because of the "constitutional uniformity principle" that applies to immigration matters).

As noted, Plaintiffs do not attempt to establish that a nationwide injunction is necessary to afford them complete relief.  Nor do they attempt to distinguish *Becerra*, an APA case in which the Fifth Circuit partially stayed a nationwide preliminary injunction of a rule of nationwide applicability and "great significance," which the district court had held likely exceeded the scope of the agency's statutory authority.  *Becerra*, 20 F.4th at 264; *see also Louisiana v. Becerra*, 571 F. Supp. 3d 516, 535-37 (W.D. La. 2021), *vacated and remanded*, No. 21-30734, 2022 WL 2116002 (5th Cir. June 13, 2022).  Their request for nationwide relief fails for those reasons alone.

Moreover, in recent years, courts and Supreme Court Justices increasingly have questioned the constitutional basis for nationwide injunctions, while also noting the pernicious effects of such injunctions on our judicial system.  For example, Justice Thomas has expressed "skeptic[ism] that district courts have the authority to enter universal"—*i.e.*, nationwide—"injunctions," which "did not emerge until a century and a half after the founding" and "appear to be inconsistent with longstanding limits on equitable relief and the power of Article III courts."  *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring).  Justice Gorsuch has raised the same concerns.  *See DHS*, 140 S. Ct. at 600 (Gorsuch, J., concurring).   And regardless of whether nationwide injunctions are

3

constitutionally permissible, they "take a toll on the federal court system" by "preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Hawaii*, 138 S. Ct. at 2425 (Thomas, J., concurring); *see also DHS*, 140 S. Ct. at 600 (Gorsuch, J., concurring) (noting that nationwide injunctions undermine "[t]he traditional system" in which "multiple judges and multiple circuits . . . weigh in only after careful deliberation, a process that permits the airing of competing views that aids th[e Supreme] Court's own decisionmaking process").

Other courts of appeals share these views. Very recently, the Eleventh Circuit vacated in part a nationwide injunction because it was "too broad," notwithstanding the court's determination that the challenged policy likely exceeded the Executive Branch's scope of authority. *Georgia v. President of the United States*, --- F.4th ----, No. 21-14269, 2022 WL 3703822, at *1 (11th Cir. Aug. 26, 2022). The Eleventh Circuit noted that, "by cutting off parallel lawsuits, nationwide injunctions frustrate foundational principles of the federal court system." *Id.* at *15. In particular, such injunctions "encourage gamesmanship, motivating plaintiffs to seek out the friendliest forum and rush to litigate important legal questions in a preliminary posture"; "disturb comity by hindering other courts from evaluating legal issues for themselves"; and "escalate pressure on the Supreme Court docket by limiting percolation and raising the stakes of individual lower-court decisions." *Id.* (collecting authorities). Chief Judge Sutton of the Sixth Circuit similarly has characterized nationwide injunctions as "a springing easement on the customary deliberative process for dealing with issues of national importance" and has opined that "[t]he sooner they are confined to discrete settings or eliminated root and branch the better." *Arizona v. Biden*, 40 F.4th 375, 398 (6th Cir. 2022) (Sutton, C.J., concurring). Tellingly, every decision of a court within the Fifth Circuit that Plaintiffs cite to support their contention that a nationwide injunction is presumptively appropriate in a case bringing a facial challenge under the APA predates *Gill*, *Becerra*, and the recent pronouncements of other courts of

appeals and Supreme Court Justices, as do all but two of the out-of-circuit cases they cite. *See* Pls.' Req. at 15-17.

Of particular relevance here, the Fifth Circuit has explained that courts should be especially loath to issue nationwide injunctions where other courts already have disagreed on the relevant legal question. *See Becerra*, 20 F.4th at 263 (noting the importance of "judicial restraint" where "[o]ther courts [we]re considering the[] same issues, with several courts already and inconsistently ruling"). Here, in contrast to this Court's conclusion with respect to Plaintiffs' likelihood of success on the merits, another court has held that the Rule "falls well-within the ATF's agency rulemaking authority as delegated by Congress." *Morehouse Enters., LLC v. ATF*, No. 3:22-CV-116, 2022 WL 3597299, at *5 (D.N.D. Aug. 23, 2022), *appeal filed*, No. 22-2854 (8th Cir. Aug. 31, 2022). The *Morehouse* plaintiffs— which include seventeen States, *see* Am. Compl., *Morehouse Enters., LLC v. ATF*, No. 3:22-CV-116 (D.N.D. July 27, 2022), ECF No. 22—have appealed that order to the Eighth Circuit. If this Court were to enter a nationwide injunction, it would effectively nullify the decision of the *Morehouse* court that all four of the factors governing preliminary injunctive relief "weigh[ed] against a preliminary injunction" as to the plaintiffs in that action, *Morehouse*, 2022 WL 3597299, at *12, and would eliminate any practical effect of the Eighth Circuit's consideration of the appeal. Similarly, another court within the Fifth Circuit has held that the plaintiff in that action had not established that it faced irreparable harm as a result of the Rule or that the balance of equities favored preliminary injunctive relief. *See Div. 80, LLC v. Garland*, No. 3:22-CV-148, 2022 WL 3648454, at *1 (S.D. Tex. Aug. 23, 2022). Although that court did not address the merits, a nationwide preliminary injunction would grant the plaintiff in *Division 80* a "victor[y]" it sought but "did not earn" in light of its failure to establish irreparable harm or that the balance of equities tipped in its favor. *Arizona*, 40 F.4th at 396 (Sutton, C.J., concurring); *cf. DHS*, 140 S. Ct. at 601 (Gorsuch, J., concurring) (noting the "asymmetric" "stakes" and "gamesmanship and chaos" that result where "a single successful challenge is enough to

stay the challenged rule across the country").[3]

 To the extent that Plaintiffs rely on the text of 5 U.S.C. § 705 to argue for a nationwide injunction, that provision is unavailable because the Rule already has taken effect. Consistent with the plain text of Section 705, courts have held that the phrase "postpone the effective date" of an agency action authorizes the "postpone[ment of] the effective date of a *not yet effective* rule, pending judicial review," but not suspension of a rule that is already in effect. *Safety-Kleen Corp. v. EPA*, Nos. 92-1629, 92-1639, 1996 U.S. App. LEXIS 2324, at *2-3 (D.C. Cir. Jan. 19, 1996) (per curiam) (emphasis added); *accord Ctr. for Biological Diversity v. Regan*, No. 21-119 (RDM), --- F. Supp. 3d ----, 2022 WL 971067, at *21 (D.D.C. Mar. 30, 2022) (collecting cases); *Nat. Res. Def. Council v. U.S. Dep't of Energy*, 362 F. Supp. 3d 126, 151 (S.D.N.Y. 2019); *California v. U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106, 1118 (N.D. Cal. 2017). Although these cases addressed an agency's own decision to "postpone the effective date" of an action, Section 705 uses identical language in the context of "the reviewing court . . . postpon[ing] the effective date of an agency action." 5 U.S.C. § 705.[4] In any event, courts have held that the standard for issuing a court-ordered stay pursuant to Section 705 "is the same as the standard for issuance of a preliminary injunction." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573,

---

[3] To the extent that Plaintiffs suggest that confusion may result if courts reach different conclusions as to whether the Rule is within ATF's statutory authority in cases brought by different plaintiffs, *see* Pls.' Req. at 8, that risk is a function of our judicial system's design, with its "1,000 active and senior district court judges, sitting across 94 judicial districts, and subject to review in 12 regional courts of appeal," *DHS*, 140 S. Ct. at 600-01 (Gorsuch, J., concurring); *see also Georgia*, 2022 WL 3703822, at *14 (noting that, "when Congress desires to deviate from this system of diffuse review, it has the tools to do so"). Indeed, the Fifth Circuit has expressly held that a purported "need for uniformity" in the application of a nationwide rule is not a sufficient justification for a nationwide injunction, at least absent an express Constitutional requirement of uniformity. *Becerra*, 20 F.4th at 264.

[4] That Section 705 also authorizes reviewing courts to "preserve status or rights pending conclusion of the review proceedings" does not change the result. An order staying a rule after it has taken effect would not preserve, but rather alter, the status quo. *See, e.g., Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*, 473 U.S. 1301, 1305 (1985) (explaining that a temporary restraining order that would have prevented implementation of regulations "would . . . have disturbed the status quo," rather than "preserv[ing]" it) (internal quotation marks omitted)).

586 (E.D. La. 2016), *aff'd sub nom. Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250 (5th Cir. 2017). Thus, even if Section 705 relief were available after the effective date of an agency action, Plaintiffs' request for expanded relief pursuant to that provision would fail for the reasons discussed throughout this filing.

In sum, this Court already has explained, consistent with controlling precedent, that "[i]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*." *VanDerStok*, 2022 WL 4009048, at \*10 (emphasis added) (quoting *Madsen*, 512 U.S. at 765). Even after being provided a second opportunity to address that standard, Plaintiffs have not established that a nationwide injunction is necessary to provide them with complete relief. Nor do they offer any basis to distinguish *Becerra*—which Defendants cited in response to Plaintiffs' Preliminary Injunction Motion, *see* ECF No. 41, at 36—in which the Fifth Circuit stayed a preliminary injunction to the extent it extended nationwide in circumstances directly analogous to those presented here. The Court should reject Plaintiffs' request for a nationwide injunction for those reasons, and because nationwide relief would be inconsistent with fundamental jurisdictional, equitable, and prudential principles—especially where a split of authority already has developed, as it has here.

## II. This Court Should Not Extend Its Preliminary Injunction to the Individual Plaintiffs, Non-Party Members of FPC, or FPC Itself.

The Court also should not expand the scope of the Preliminary Injunction to cover the Individual Plaintiffs, non-party members of FPC, or FPC itself. With respect to the Individual Plaintiffs, neither Ms. VanDerStok nor Mr. Andren has carried the burden of establishing that she or he faces concrete, irreparable harm that would support extending preliminary injunctive relief. Both Individual Plaintiffs attest that, but for the Rule, they would purchase an "80% Lower" alongside a jig, guide, or instructions from Tactical Machining or another direct sales manufacturer within the next three to four months. *See* ECF No. 62-1 ("VanDerStok Suppl. Decl."), ¶¶ 2, 6; ECF No. 62-2

("Andren Suppl. Decl."), ¶ 2, 6.  They acknowledge that they already can purchase such products together, provided they request that the products be shipped to an FFL in their home state.  *See* VanDerStok Suppl. Decl. ¶ 3; Andren Suppl. Decl. ¶ 3.  The licensees that Ms. VanDerStok and Mr. Andren likely would use to facilitate such a transfer would charge a transfer fee of $30.  *See* VanDerStok Suppl. Decl. ¶ 3; Andren Suppl. Decl. ¶ 3.

Plaintiffs cite no authority, and Defendants are aware of none, for the proposition that payment of a one-time fee of approximately $30[5] warrants the "extraordinary remedy" of a preliminary injunction.  *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).  To the contrary, it is well established that the harm a plaintiff faces in the absence of injunctive relief must be "more than de minimis."  *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)).  In numerous contexts, courts in this Circuit have held that monetary injuries exceeding $30 in today's value[6] are nominal or de minimis.  *See, e.g.*, *Badii v. Rick's Cabaret Int'l, Inc.*, No. 3:12-CV-4541-B, 2014 WL 550593, at *8 (N.D. Tex. Feb. 11, 2014) (holding that an individual employee's loss of $80 to $90 in a single instance was de minimis for purposes of an employment discrimination claim);

---

[5] ATF does not require FFLs to charge a transfer fee.  Plaintiffs cite a website representing that a typical transfer fee for products not regulated under the National Firearms Act is between $15 and $25.  *See* Pls.' Req. at 3 (citing FFL Dealer Network, *Your FFL Transfer Fee*, https://www.ffldealernetwork.com/blog/your-ffl-transfer-fee) (last visited Sept. 15, 2022)).  However, even if an FFL might conceivably charge such a fee—which is an allegation of "possible future injury" rather than one that is "*certainly* impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and emphasis omitted)—it would be "the result of the independent action of some third party not before the court" and not "fairly traceable" to any challenged action of Defendants, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal punctuation omitted).

[6] Courts recognize that, in applying past precedents involving monetary thresholds, the inflationary value of those thresholds must be taken into account.  *See, e.g.*, *In re CorrLine Int'l, LLC*, 516 B.R. 106, 153 (Bankr. S.D. Tex. 2014) (using the Consumer Price Index to determine the equivalent value of a monetary threshold that the Fifth Circuit set in 1971); *cf. NLRB v. Aurora City Lines, Inc.*, 299 F.2d 229, 231 (7th Cir. 1962) ("The time has not yet arrived when $2,000 is but a trifle.").

*In re CorrLine Int'l, LLC*, 516 B.R. at 153 (holding that claims for less than $275 are de minimis for bankruptcy purposes); *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1314 (5th Cir. 1976) (holding that a cost of $10 per year was "so nominal as to be de minimis")[7]; *NLRB v. Richter's Bakery*, 140 F.2d 870, 871 (5th Cir. 1944) ("De minimis in the law has always been taken to mean trifles—matters of a few dollars or less." (internal quotation marks omitted)).[8]

So, too, have courts in other jurisdictions. *See, e.g.*, *Nagy v. FMC Butner*, 376 F.3d 252, 253-54 (4th Cir. 2004) (holding that a claim for $25 was de minimis for purposes of determining whether a complaint was frivolous within the meaning of the *in forma pauperis* statute)[9]; *Dennis v. Dowdle*, 937 F.2d 612 (9th Cir. 1991) (holding that restitution of $30 was de minimis for purposes of a due process claim)[10]; *Carr v. City of Florence*, 729 F. Supp. 783, 791 (N.D. Ala. 1990) (holding that a judgment of $100 was purely technical or de minimis in the attorney's fee context),[11] *aff'd mem.*, 934 F.2d 1264 (11th Cir. 1991); *World Outreach Conf. Ctr. v. City of Chicago*, 234 F. Supp. 3d 904, 909 (N.D. Ill. 2017) (same, as to awards ranging between $1 and $100), *aff'd*, 896 F.3d 779 (7th Cir. 2018). In sum, even if Ms. VanDerStok and Mr. Andren might pay a $30 FFL transfer fee within the next several months as a result of the Rule, that fee would not constitute cognizable irreparable harm, both because it would be de minimis and because it would not be attributable to Defendants.

---

[7] $10 in 1976 was equivalent to approximately $53 today. *See* U.S. BUREAU OF LAB. STATS., *CPI Inflation Calculator*, https://www.bls.gov/data/inflation_calculator.htm (last visited Sept. 15, 2022) ("CPI Index").

[8] The potential $30 FFL transfer fee that Ms. VanDerStok and Mr. Andren invoke equates to less than a few dollars—approximately $1.76—in 1944 value. *See* CPI Index.

[9] $25 in 2004 was equivalent to approximately $40 today. *See* CPI Index.

[10] $30 in 1991 was equivalent to approximately $66 today. *See* CPI Index.

[11] $100 in 1990 was equivalent to approximately $230 today. *See* CPI Index.

There also is no basis to extend the Preliminary Injunction to non-party members of FPC. [12] On that score, Plaintiffs invoke associational standing doctrine, which provides that an organization may bring suit in a representative capacity on behalf of its members if certain requirements are satisfied. *See* Pls.' Req. at 9-10 (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).  One such requirement is that the members of the organization must bear relevant "indicia of membership," including, for example, that they elect the organization's leadership, that they may serve in the organization's leadership, and that they finance its activities.  *Hunt*, 432 U.S. at 344-45; *see also Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997) (holding that the "*Hunt* 'indicia of membership' test" was satisfied where the organization had "a clearly articulated and understandable membership structure" and its members "elected the governing body of the organization and . . . financed its activities").

Plaintiffs offer no evidence as to FPC's membership structure or mechanism for electing its governing body, to the extent that governing body is elected, or of any other relevant indicia.  Their bare claim that "FPC has hundreds of thousands of members, donors, and supporters across the country," and that individuals can "join" FPC on its website, Combs Suppl. Decl. ¶¶ 6, 8, is inadequate to establish that FPB is a *bona fide* membership organization for purposes of associational standing.  Plaintiffs thus fail to establish Article III standing to bring suit on behalf of FPC's members. [13]

Moreover, even if FPC were a *bona fide* membership organization that could claim associational standing, Plaintiffs have not demonstrated that a preliminary injunction extending to all of its members

---

[12] The only FPC members who are parties to this action are Ms. VanDerStok, Mr. Andren, and Tactical Machining.  *See* ECF No. 1 ("Compl."), ¶¶ 12-14; ECF No. 62-4 ("Combs Suppl. Decl."), ¶ 7.  All three are adequately protected by the existing Preliminary Injunction for the reasons discussed throughout this filing.

[13] Because Plaintiffs do not establish associational standing on behalf of FPC's members, there is no basis to issue an injunction to BlackHawk Manufacturing Group, Inc., for example, or any other entity that is a member of FPC but is not a party to this action in its own right.

would be warranted.  They offer no basis to infer that each one of FPC's members is suffering an Article III injury, much less that each member faces irreparable harm absent injunctive relief, as would be separately required to extend an injunction to FPC's entire membership.  *See, e.g.*, *Tenth Street Residential Ass'n v. City of Dallas*, 968 F.3d 492, 500 (5th Cir. 2020) ("Associational standing requires that the individual members of the group *each* have standing . . . . " (emphasis added)); *see also supra* page 2 (explaining that a preliminary injunction must be tailored to the irreparable harm threatening each particular plaintiff).  Indeed, with respect to FPC's individual members, it strains credulity that each one would purchase an item classified as a firearm under one of the enjoined provisions of the Rule within the next several months, but for the Rule.  Moreover, the requirement to pay a nominal fee to an FFL to facilitate such a purchase is not cognizable harm for purposes of a preliminary injunction.  *See supra* pages 7-9.  To the extent that Plaintiffs offer to submit additional declarations pertaining to harm purportedly faced by FPC's members, *see* Pls.' Req. at 11 n.3, they offer no justification for failing to submit such declarations in support either of their Preliminary Injunction Motion or their pending Request to Expand the Preliminary Injunction.

Further, because Plaintiffs do not offer any evidence of whether and to what extent FPC maintains records of its membership, much less provide those records, an injunction extending to FPC's non-party members would fail the requirements that "[e]very order granting an injunction" must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1)(B), 65(d)(1)(C).

The two cases on which Plaintiffs rely to argue for an injunction extending to FPC's entire membership are inapposite.  *See* Pls.' Req. at 14.  First, *Trump v. International Refugee Assistance Project*, 137 S. Ct. 2080 (2017) (per curiam), allowed relief only as to those who had demonstrated "concrete burdens" absent relief and vacated the challenged injunctions as to individuals with "no connection

to the United States." *Id.* at 2087-88.  That holding only underscores that plaintiffs cannot obtain broad injunctive relief without demonstrating that the equities require it as to each plaintiff.  Second, in the cited Order of the D.C. Circuit in *Guedes v. ATF*, 920 F.3d 1 (D.C. Cir. 2019), *cert. denied*, 140 S. Ct. 789 (2020); *see* Pls' Req. at 14, the court issued a very brief administrative stay of the effective date of a Rule to allow the court time to decide a highly expedited appeal, and it extended that stay to all *bona fide* members of the appellant membership organizations.  Several days later, the court affirmed the district court's denial of a preliminary injunction.  *See Guedes*, 920 F.3d at 6.  That brief administrative stay in no way establishes that a purported membership organization is entitled to a preliminary injunction applying to all of its members where it fails to satisfy associational standing requirements and does not demonstrate that each of its members faces irreparable harm warranting extraordinary relief.

Finally, Plaintiffs do not establish that FPC, in its own right, faces concrete, non-speculative irreparable harm absent preliminary injunctive relief—an issue that they address only in a footnote. *See* Pls.' Req. at 13 n.4; *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016) ("Arguments subordinated in a footnote are insufficiently addressed in the body of the brief, and thus are waived." (internal quotation marks omitted)).  Plaintiffs attest that, as an organization, FPC owns certain products that the Rule covers, which it uses as demonstratives for advocacy purposes. *See* Combs Suppl. Decl. ¶¶ 9-11.  They state that, if those products are treated as firearms, "it will be virtually impossible [for FPC] to use them" for those purposes, "because of the onerous severity of criminal laws that apply to firearms, as well as the patchwork of different federal, state, and local laws regarding firearms and their possession, transport, and transfer, among other restrictions." *Id.* ¶ 11.  Such vague and conclusory statements do not support the issuance of preliminary injunctive relief. *See, e.g., Bulgin v. DHS*, No. 6:21-CV-00002-H, 2021 WL 3704985, at *2 (N.D. Tex. Feb. 10, 2021); *Expo Grp., Inc. v. Castillo*, No. 3:19-CV-1356-G, 2019 WL 4671511, at *7

(N.D. Tex. Sept. 25, 2019).  Absent even a single example of the laws or regulations to which Plaintiffs allude, or any explanation of how those laws and regulations, in conjunction with the Rule, cause irreparable harm to FPC in the context of its advocacy activities, there is no basis in the record to enjoin any provision of the Rule as to FPC.

## III.   The Existing Preliminary Injunction Provides Complete Relief to Tactical Machining.

No extension of the Preliminary Injunction to Tactical Machining's customers is necessary to afford complete relief to Tactical Machining, because Plaintiffs do not plausibly allege that the decrease in sales that Tactical Machining has experienced is attributable to the Rule, as opposed to Tactical Machining's voluntary decision to cease selling jigs alongside their unfinished receivers.  Plaintiffs attest that, "[i]f it were not prohibited by the Final Rule, Tactical Machining would again manufacture and sell jigs, which from Tactical Machining's past experience, would significantly increase sales of Tactical Machining's other products."  ECF No. 62-3 ("Cherry Suppl. Decl."), at ¶ 17.  The Rule does not, however, prohibit Tactical Machining—an FFL—from selling products classified as firearms.  It is true, as this Court has recognized, that out-of-state customers could face liability under 18 U.S.C. § 922(a)(3) unless they purchase items classified as firearms under the Rule—such as certain unfinished receivers sold with jigs, a product combination that Tactical Machining does not currently offer—through an in-state FFL.  *See VanDerStok*, 2022 WL 4009048, at *10.  But Tactical Machining has not offered jigs for sale alongside its unfinished receivers since several months before the Rule took effect, *see* Cherry Suppl. Decl. ¶ 15, and thus has no evidence of whether or to what extent its sales would recover if it resumed offering jigs for purchase to out-of-state customers, provided that an in-state FFLs facilitates the transfer.  Notably, Tactical Machining already offers numerous products on its website that may be transferred only through an FFL, and thus has the infrastructure in place to

support such sales.[14]  Plaintiffs thus rely only on pure speculation for their assertion that Tactical Machining's sales would not recover to prior levels if Tactical Machining resumed offering unfinished receivers and jigs for sale together.  *See* Cherry Suppl. Decl. ¶¶ 7-10, 16-17.

To the extent that Plaintiffs contend that demand for Tactical Machining's products that are *not* classified as firearms under the Rule has been limited by its customers' general confusion or misplaced fear of liability under 18 U.S.C. § 922(a)(3), *see* Pls.' Req. at 6-8, the plain text of the Rule resolves any such concerns.  For example, Plaintiffs cite numerous customer inquiries whether so-called "80% receivers" are banned under the Rule and/or must be serialized under the Rule.  *See* Cherry Supp. Dec., Ex. A.  An "80% receiver" is a colloquial term sometimes used to refer to receiver blanks.  *See* ATF, *Are "80%" or "unfinished" receivers illegal?*, https://www.atf.gov/firearms/qa/are-%E2%80%9C80%E2%80%9D-or-%E2%80%9Cunfinished%E2%80%9D-receivers-illegal (last visited Sept. 15, 2022).  No provision of the Rule purports to or could be interpreted to "ban" any product, including unfinished receivers.  With respect to serialization, meanwhile, the Rule states that "[a] billet or blank of an AR-15 variant receiver without critical interior areas having been indexed, machined, or formed that is not sold, distributed, or possessed with instructions, jigs, templates, equipment, or tools such that it may readily be completed is not a receiver."  87 Fed. Reg. at 24,739 (codified at 27 C.F.R. § 478.12(c), Example 4)).  And the GCA requires only firearms, including the frame or receiver of a firearm, to be marked with a serial number.  18 U.S.C. §§ 921(a)(3), 923(i).

---

[14] *See, e.g.*, TACTICAL MACHINING, *100% Billet Lower Receiver Stripped Model 18X Anodized*, https://www.tacticalmachining.com/80-anodized-billet-lower-receiver-stripped-model-18x.html (last visited Sept. 15, 2022) ("When ordering an FFL item from us it is important that you understand the process.  We cannot ship your order to your house, so we must ship it to a licensed firearms dealer. We do not have a network of dealers but can gladly call a few dealers in your area to find one that will accept a transfer.  Once you have found a dealer that will accept a transfer, have them provide us a copy of their FFL and we can ship the item to them.").

Additionally, voluntary classifications are available to the extent that Tactical Machining or its customers have remaining doubts regarding the application of the Rule to a particular product. *See* 87 Fed. Reg. at 24,666. In the accompanying Motion for Clarification, Defendants respectfully request that the Court clarify that the existing Preliminary Injunction does not prohibit ATF from proceeding with its classification of the product that Tactical Machining recently submitted, and that the Court defer consideration of Plaintiffs' Request to Expand the Preliminary Injunction until after ATF has completed its classification. If ATF deems the submitted product not to be a firearm under the Rule, then any purported harm resulting from confusion or fear in the purchase of that product would be eliminated.

For these reasons, the existing Preliminary Injunction is sufficient to eliminate any irreparable harm to Tactical Machining as a result of the Rule. In the event that the Court were to conclude otherwise, however, Defendants respectfully request that that the Court clarify that any expansion of the Preliminary Injunction is limited to customers who purchase any product from Tactical Machining that is classified as a firearm solely pursuant to one of the provisions of the Rule that the Court has held likely exceeds the scope of ATF's statutory authority: namely, 27 C.F.R. § 478.11, solely as it applies to weapons parts kits, or 27 C.F.R. § 478.12(c).

Plaintiffs also devote several sections of their Request to Expand the Preliminary Injunction to arguing that various non-parties, including would-be customers of Tactical Machining, themselves face irreparable harm absent preliminary injunctive relief. *See* Pls.' Req. at 2-5. These arguments misunderstand the relevant inquiry. Alleged irreparable harm to non-parties is not a basis for a preliminary injunction; the relevant question is the scope of relief necessary to afford complete relief to the parties. *See, e.g.*, *Gill*, 138 S. Ct. at 1933. Plaintiffs have not sought to certify a class, which is the proper "mechanism for applying a judgment to third parties," subject to Rule 23's "careful[] . . . procedures." *Arizona*, 40 F.4th at 396 (Sutton, C.J., concurring); *see also Georgia*, 2022 WL 3703822, at

\*16 ("Several procedural devices allow nonparties with similar interests to seek the protection of injunctive relief—class certification under Rule 23, joinder and intervention in an existing lawsuit, or even filing a new lawsuit of their own."). Additionally, Plaintiffs' request to protect "other sellers" than Tactical Machining and "other buyers" than the customers on whom Tactical Machining relies for its financial viability, Pls.' Req. at 8, is nothing more than a repackaged request for a nationwide injunction, which the Court should reject for the reasons set forth above. *See supra* pages 1-7.

In any event, none of the purported harms to non-parties that Plaintiffs invoke would call for preliminary injunctive relief, even if such non-parties were properly before the Court. For the reasons discussed above, *see supra* pages 7-9, potential payment of a one-time, nominal fee does not constitute irreparable harm sufficient to warrant a preliminary injunction, and any risk of confusion if courts reach different conclusions on the same legal issue is not a valid basis for a single court to bind all non-parties nationwide under its ruling, *see* Pls.' Req. at 2-4, 8. Meanwhile, Plaintiffs' abbreviated argument that injunctive relief is required to prevent harm to non-party individuals' Second Amendment rights lacks merit. *See id.* at 5. Plaintiffs have not asserted a Second Amendment claim in this case, and with good reason: the Supreme Court has held repeatedly that restrictions on the commercial sale of firearms are presumptively valid under the Second Amendment. *See Dist. of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2133 (2022); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring). Under that longstanding precedent, the Rule—which does not ban the possession of any product, by anyone, but merely regulates the commercial sale of certain firearms—is consistent with the Second Amendment.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Request to Expand the Preliminary Injunction.

16

DATED: September 15, 2022                    Respectfully submitted,

                                             BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General

                                             ALEXANDER K. HAAS
                                             Director, Federal Programs Branch

                                             LESLEY FARBY
                                             Assistant Director, Federal Programs Branch

                                             /s/ Daniel Riess
                                             DANIEL RIESS
                                             MARTIN M. TOMLINSON
                                             TAISA M. GOODNATURE
                                             JEREMY S.B. NEWMAN
                                             Trial Attorneys
                                             Civil Division, Federal Programs Branch
                                             U.S. Department of Justice
                                             1100 L Street, NW
                                             Washington, DC 20005
                                             Phone: (202) 353-4556
                                             Email: martin.m.tomlinson@usdoj.gov

                                             *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On September 15, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Daniel Riess*