**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| JENNIFER VANDERSTOK, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States; *et al.*,<br><br>*Defendants*. | Civil Action No. 4:22-cv-00691-O |

## <u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR CLARIFICATION</u>

Plaintiffs oppose Defendants' motion seeking permission to apply an agency rule the Court has found likely to be unlawful to Tactical Machining's products, with the potential outcome that Defendants would thereby destroy Tactical Machining's entire business. Further, major premises underlying Defendants' motion are false, and the motion should therefore be denied.

First, this Court has already found that the Final Rule at issue likely exceeds agency authority and violates the APA. *See* Order, ECF No. 56 at 6 ("Plaintiffs have shown a strong likelihood that they will succeed on the merits of their claims that ATF's new definitions are inconsistent with the Gun Control Act."). Applying an unlawful regulatory definition, hypothetically or allegedly in mitigation of Plaintiffs' harm, could, at this point, only be used either on the assumption that Court's prior holding is erroneous or to attempt to generate a basis for reconsideration of the Preliminary Injunction Order. Defendants should not be permitted to collaterally attack the Preliminary Injunction Order by doling out applications or interpretations of the Final Rule in response to unfavorable rulings, a process which, as explained below, would

1

not necessarily end with a single classification. Plaintiffs oppose Defendants' request to apply

unlawful regulations, regulations that exceed their authority, to Tactical Machining's products.

Second, while Defendants do not dwell on this possibility in their motion, if Defendants

determine that Tactical Machining's product *is* a "firearm" under the unlawful Final Rule's

redefinition of the Gun Control Act, Tactical Machining faces even more drastic, immediate, and

irreparable harm than it has already suffered. As explained in previous declarations, several

vendors and customers have already stopped doing business with Tactical Machining based on

the mere risk that Tactical Machining's products may be classified as firearms under the Final

Rule or for other reasons related to the lack of certainty in the Final Rule. *See* Decl. of Darren

Peters, Sr. ("Peters Decl."), ECF No. 16-1, ¶¶ 12–13 (shippers and processors have stopped or

threatened to stop doing business with Tactical Machining); Decl. of Nicholas Cherry ("Cherry

Decl.") ECF No. 62-3, ¶¶ 11–14 (anodizing vendor cannot lawfully provide service under Final

Rule). Further, even after the entry of the Preliminary Injunction protecting Tactical Machining

from Defendants' *ultra vires* rule, demand for Tactical Machining's products remains fatally

low. *See* Cherry Decl. ECF No. 62-3, ¶¶ 7–10 (sales remain unsustainably depressed following

entry of Preliminary Injunction); Supp. Decl. of Nicholas Cherry, ¶¶ 3–6 (filed herewith as

Exhibit 1) (Tactical Machining is suffering its first monthly operating loss in years and will go

out of business if such losses continue). Plaintiffs cannot submit a declaration based on a crystal

ball, but it is only logical that if Defendants determine that Tactical Machining's product is a

"firearm," all direct-to-customer sales of the product, which constitute over 90% of Tactical

Machining's business, would—really *must*—stop. *See* Peters Decl. ECF 16-1, ¶¶ 5, 11 (over

90% of Tactical Machining's business consists of products for the self-manufacture of frames or

receivers). Under this scenario, even with the Preliminary Injunction in place to prevent

enforcement against Tactical Machining itself, Tactical Machining would be driven out of business before this case could be resolved.

The evidence indicates that classification of Tactical Machining's primary product offering as a "firearm" would be the death knell of its business, but Defendants fail to address this potential outcome. Defendants do not, for example, offer to stipulate to the extension of the Preliminary Injunction to protect Tactical Machining's customers and vendors as would be needed to allow Tactical Machining to remain in business. Defendants are apparently unwilling to stand behind their own presumption that they will (in the throes of litigation) find Tactical Machining's product is not a "firearm." Rather, Defendants meagerly offer what this Court has already ordered—that the unlawful Final Rule not be applied to Tactical Machining. Plaintiffs therefore oppose Defendants' request for permission to take an action that may destroy Tactical Machining.

Third, even if Defendants classify Tactical Machining's product as not a "firearm" under the (unlawful) Final Rule, such classification would not have most of the benefits Defendants posit. For example, Defendants assert that "Tactical Machining . . . acknowledges that a classification of the product it submitted . . . would eliminate at least some of the harm that it allegedly faces as a result of the Rule." Defs.' Mot. for Clarification, ECF No. 71 at 2 (citing Supp. Decl. of Darren Peters Sr. ("Peters Supp. Decl."), ECF No. 55-1, ¶ 10). The specific harm referenced in the cited declaration refers to harm that would result from Tactical Machining no longer being able to offer its product for sale. That harm, however, has already been addressed by the Court's Preliminary Injunction Order, which prevents the application of the unlawful Final Rule to Tactical Machining.

Defendants also err when they assert that if they find Tactical Machining's product to not be a "firearm" under the (unlawful) Final Rule, "the Parties' dispute will be narrowed or eliminated." Defs.' Mot. for Clarification, ECF No. 71 at 2. Not one of Plaintiffs' claims for relief would be mooted or appreciably "narrowed" should one current iteration of Tactical Machining's products, standing alone, be found to be not a "frame" or "receiver." The Final Rule will still exceed the ATF's statutory jurisdiction and authority (Count I), the Final Rule would still have violated procedural requirements (Count II), the Final Rule would still be arbitrary and capricious (Count III), and the Final Rule would still violate provisions of the U.S. Constitution (Counts IV–VI). *See* Pet. for Judicial Review, ECF No. 1 at 38–52.

Further, in direct response to their perceived impact of the Final Rule, Tactical Machining stopped selling jigs earlier this year. It was only after they stopped selling jigs that they submitted their request for classification under the Final Rule. As a result, Defendants' proffered classification letter presumably will not address the jig that Tactical Machining previously sold. Peters Suppl. Decl., ECF No. 55-1, ¶ 8 (Tactical Machining stopped selling jigs on April 11, 2022, when the Rule was announced); Peters Decl., ECF No. 16-1, Ex.2 (evidencing Tactical Machining's request for classification was submitted April 12, 2022, and noting that Tactical Machining did not at that time offer or sell jigs or other templates, etc.). Yet sales of jigs in combination with the products Tactical Machining colloquially sells as "80% Lowers" bolstered sales, which practice Tactical Machining wishes, and has concrete plans, to resume. Peters Suppl. Decl., ECF No. 55-1, ¶ 9 (prior to the rule, unavailability of jigs reduced sales of 80% Lowers); Cherry Decl., ECF No. 62-3, ¶¶ 15–17 (Tactical Machining has raw materials for jigs and would produce and sell jigs but for the Final Rule). Thus, a new classification letter limited to Tactical Machining's product sold as an "80% Lower" will not appreciably narrow

Tactical Machining's concerns with the Final Rule—nor will it eliminate the harm suffered by all Plaintiffs because of the Final Rule.[1]

Moreover, while classification of Tactical Machining's product may, as Defendants assert, provide an assurance to Tactical Machining's out-of-state customers, that assurance is too narrow and leaves too many questions unanswered to meaningfully mitigate Plaintiffs' harm. On the same day that Defendants filed their Motion for Clarification with this Court, they argued to another court that "[t]here is no question that the Final Rule's amended definition of 'frame or receiver' was in part designed to address the widespread unregulated sales of so-called '80 percent receivers' by sellers not federally licensed to sell firearms" who "'are not running background checks or maintaining transaction records.'" Joint Status Report, *California v. ATF*, No. 3:20-cv-06761, 2020 WL 9849685, ECF No. 116, at 6–7 (N.D. Cal. Sept. 15, 2022) (quoting Final Rule, 87 Fed. Reg. 24,652, at 24,663). How is a customer to reconcile Defendants' statement that they unquestionably intend to regulate "80 percent receivers" with a potentially litigation-driven finding that the Final Rule does not apply to one of Tactical Machining's products?

Likewise, Defendants have conspicuously avoided questions about whether or when a seller needs to track separate orders to a single customer to see whether the separate parts become a firearm.[2] Neither Tactical Machining nor its customers would know if their prior

---

[1] "A billet or blank of an AR-15 variant receiver . . . that is not sold, distributed, or *possessed* with instructions, jigs, templates, equipment, or tools such that it may readily be completed is not a receiver." *Definition of "Frame or Receiver" and Identification of Firearms* ("Final Rule"), 87 Fed. Reg. 24,652, 24,739 (Apr. 26, 2022) (emphasis added).

[2] Defendants have stated: "So long as the collection of parts is clearly identifiable as a collection that may be completed or assembled as an instrument to expel live ammunition, that is sufficient to constitute a 'weapon,' and therefore a 'firearm,' within the meaning of the GCA." Defs.' Opp. to Pls.' Emergency Mot. for Prelim. Inj., *Division 80 LLC v. Garland*, No. 3:22-cv-148, ECF No.

sale/purchase or their possession of a jig means that the object can be "readily converted" to a firearm. Thus, even if the single stand-alone Tactical Machining product itself is classified as not a "firearm," potential customers, including the Individual Plaintiffs, are justifiably concerned that the purchase or possession of one of Tactical Machining's products, in conjunction with other tools or equipment the customer already owns, may expose them to criminal liability, including fines, jail time, and the potential forfeiture of their right to possess firearms. *See* Suppl. Decl. of Jennifer VanDerStok, ECF No. 62-1, ¶ 5; Suppl. Decl. of Michael G. Andren, ECF No. 62-2, ¶ 5. Indeed, Defendants have admitted non-frames and non-receivers may transform into a "frame or receiver" under the Final Rule when sold or possessed with a jig. Defs.' Resp. to Pls.' Request to Expand Scope of Prelim. Inj., ECF No. 72 at 19 ("[A]s this Court has recognized, [] out-of-state customers could face liability under 18 U.S.C. § 922(a)(3) unless they purchase items classified as firearms under the Rule—such as certain unfinished receivers sold with jigs, a product combination that Tactical Machining does not currently offer—through an in-state FFL.").

Finally, as explained in Plaintiffs' Motion to Expand the Preliminary Injunction, Plaintiff Firearms Policy Coalition represents thousands of members, including other producers and sellers of products similar to Tactical Machining. Pls.' Mot. to Expand Prelim. Inj., ECF No. 63, at 9–13. Their claims would not be resolved by Defendants' proposal. Nor should the Court encourage a "whack a mole" approach whereby new plaintiffs continually seek to join or

---

16 at 11–12 (S.D. Tex. Aug. 23, 2022); *see also id.* at 18 ("Just as the non-licensee owner of a retail establishment may not evade the GCA requirements that attach to the sale of a 'firearm' by disassembling a weapon designed to expel a projectile and placing the component parts into two separate paper bags, or by charging the customer for the component parts in two separate back-to-back transactions, an online or mail order establishment may not employ such measures to circumvent the requirements of the law.").

intervene under the belief that Defendants may classify new parties' products to avoid further injunctions.

A simple decision tree reveals two outcomes to Defendants' belated offer to classify Tactical Machining's product under Defendants' (unlawful) Final Rule, and neither is worth facilitating. Either Defendants will destroy Tactical Machining by eliminating demand for its product and interfering with its vendors, or Defendants will attempt to nullify the effect of this Court's Preliminary Injunction Order while providing no ascertainable relief to Plaintiffs and potentially opening the door for questions of mootness for the preliminary injunctive relief or joinder of new plaintiffs. Meanwhile, Tactical Machining suffers decreased sales every day and faces the complete loss of its business. *See* Supp. Decl. of Nicholas Cherry, ¶¶ 3–6 (filed herewith as Exhibit 1) (Tactical Machining is suffering its first monthly operating loss in years and will go out of business if such losses continue). Plaintiffs therefore object to Defendants' belated attempt to apply the terms of their likely unlawful Final Rule and any delay of the resolution of the Motion to Expand the Preliminary Injunction.

Defendants' proposal is too little, too late.


DATED this 22nd day of September, 2022.

                                       Respectfully submitted,

                                       R. Brent Cooper (TX Bar No. 04783250)
                                       Benjamin D. Passey (TX Bar No. 24125681)
                                       COOPER & SCULLY, P.C.
                                       900 Jackson Street, Suite 100
                                       Dallas, Texas 75202
                                       Telephone: (214) 712-9500
                                       Telecopy: (214) 712-9540
                                       brent.cooper@cooperscully.com
                                       ben.passey@cooperscully.com

Cody J. Wisniewski* (CO Bar No. 50415)
FIREARMS POLICY COALITION
5550 Painted Mirage Road, Suite 320
Las Vegas, NV  89149
Telephone: (916) 378-5785
Telecopy: (916) 476-2392
cwi@fpchq.org

*/s/ Erin M. Erhardt*
Kaitlyn D. Schiraldi* (TN Bar No. 039737)
Erin M. Erhardt* (CO Bar No. 49360)
MOUNTAIN STATES LEGAL FOUNDATION
2596 S. Lewis Way
Lakewood, CO 80227
Telephone: (303) 292-2021
Telecopy: (877) 349-7074
kschiraldi@mslegal.org
eerhardt@mslegal.org

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 22, 2022, a true and correct copy of the foregoing

document was served via the Court's CM/ECF system to all counsel of record.

*/s/ Erin M. Erhardt*

8