UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JENNIFER VANDERSTOK, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*,<br><br>    Defendants. | Case No. 4:22-cv-00691-O |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR CLARIFICATION OF THE SCOPE OF THE COURT'S PRELIMINARY INJUNCTION WITH RESPECT TO TACTICAL MACHINING'S PENDING CLASSIFICATION REQUEST**

In support of their motion for a preliminary injunction, Plaintiffs specifically argued that "[h]ad the ATF responded in a timely manner [to Tactical Machining's classification request], Tactical Machining may not have been forced to initiate this lawsuit." *See* ECF No. 55 ("Pls.' Prelim. Inj. Reply"), at 8.[1]  Yet Plaintiffs inexplicably seek to prevent ATF from doing precisely what Tactical Machining asked it to do and repeatedly faulted the agency for not doing in what Plaintiffs consider to be a "timely manner": classify its "primary product," ECF No. 75 ("Pls.' Resp.") at 3, as a "firearm" or not a "firearm."  According to the Declaration accompanying Plaintiffs' Opposition to Defendants' Motion for Clarification, Tactical Machining's "[c]ustomers have continued to express concern that the Final Rule does not permit them to purchase Tactical Machining's products colloquially marketed as '80% Lowers,'" and the Declaration asserts that this confusion and concern have depressed Tactical

---

[1] In this Reply, Defendants adopt the same naming conventions introduced in Defendants' Motion for Clarification.  *See* ECF No. 71 ("Defs.' Mot. for Clarification").

Machining's sales. ECF No. 75-1 ("Cherry Suppl. Decl.") ¶ 3; *see also id.* ¶¶ 4-6. The classification sought by Tactical Machining may well confirm that ATF agrees with Tactical Machining's representations on its website that its 80% products are not "firearms" within the meaning of the GCA,[2] and thus eliminate any alleged confusion and concern on the part of customers regarding Tactical Machining's primary product. Tactical Machining's opposition is as illogical as it sounds.

The relevant inquiry, with which Plaintiffs do not engage directly, is whether the classification could possibly constitute "implement[ion] [or] enforce[ement] *against* Tactical Machining, LLC [of] the provisions in 27 C.F.R. §§ 478.11 and 478.12" that the Court has determined are likely unlawful. *VanDerStok v. Garland*, No. 4:22-CV-00691-O, 2022 WL 4009048, at *11 (N.D. Tex. Sept. 2, 2022) (emphasis added). As noted, Defendants acknowledge that the existing Preliminary Injunction bars the government from taking any adverse action against Tactical Machining in the event ATF were to classify the Product as a "firearm" within the meaning of the GCA, pursuant to one of the relevant provisions of the challenged Rule. *See* Defs.' Mot. for Clarification at 2. In light of that constraint, a classification of the Product either as a "firearm" or not a "firearm" cannot constitute action by the government "against" Tactical Machining in violation of the Preliminary Injunction, and Plaintiffs fail to establish otherwise in their Response.

First, Plaintiffs state that they "oppose Defendants' request to apply [likely] unlawful regulations, regulations that exceed their authority, to Tactical Machining's products." ECF No. 75 ("Pls.' Resp."), at 1-2. Again, Defendants do not contest that this Court already has enjoined the government from taking action *against* Tactical Machining based on the regulatory provisions that this Court has held are likely unlawful. But Plaintiffs fail to explain how a letter determining whether the Product falls within the scope of those provisions, standing alone, that cannot form the basis for any

---

[2] TACTICAL MACHINING, *Update on 80% Lower Receivers*, https://www.tacticalmachining.com/ (last visited Sept. 24, 2022).

adverse action by the government would violate the Preliminary Injunction.[3]

Second, Plaintiffs suggest that, in the event that ATF were to classify the Product as a "firearm," Tactical Machining would suffer harm because its vendors and customers likely would "stop[] doing business with Tactical Machining" on the basis of such a classification. Pls.' Resp. at 2-3. At best, this argument supports Plaintiffs' request to expand the scope of the Preliminary Injunction to customers who purchase the Product directly from Tactical Machining from out of state, without using an in-state FFL to facilitate the transfer, in the event of such a classification. *See* Pls.' Req. to Expand Prelim. Inj. at. 6-9.[4] It does not constitute a basis to enjoin ATF from completing the classification in the first instance. Indeed, that the scope of injunctive relief necessary to afford complete relief to Tactical Machining even arguably turns on the result of the requested classification further underscores that this Court should grant Defendants' Motion for Clarification and defer consideration of Plaintiffs' Motion to Expand the Preliminary Injunction until after ATF completes its classification, which ATF will be able to do within two business days of receiving such clarification from the Court. *See* Defs.' Mot. for Clarification at 2-3; ECF No. 72 ("Defs.' Resp. to Pls.' Req. to Expand Prelim. Inj."), at 15; ECF No. 73 ("Defs.' Suppl.").[5]

---

[3] This Court has held that the degree of finality or functionality required to constitute the "frame or receiver" of a weapon "likely rests with ATF," *VanDerStok*, 2022 WL 4009048, at *5 n.21, and the Court did not enjoin ATF from providing classification decisions.

[4] Although nothing prevents Tactical Machining from sharing the results of ATF's classification with the public, nothing requires it to do so, either.

[5] In the context of this argument, Plaintiffs contend that sales of the Product "constitute over 90% of Tactical Machining's business." Pls.' Resp. at 2. Defendants understand the cited paragraphs of Mr. Peters's declaration to state that over 90% of Tactical Machining's business consists of sales of the product *category* of "items that individuals can use to self-manufacture frames or receivers and to build functioning firearms" and/or "objects [plural] that ATF previously determined were non-firearms," Peters Decl. ¶¶ 5, 11—not solely of the individual Product that Tactical Machining submitted to ATF for classification. As stated in the Rule, "[e]xcept for the classification of a specific component as the frame or receiver of a particular weapon, a determination made by the Director under this paragraph shall not be deemed by any person to be applicable to or authoritative with respect to any other sample, design, model, or configuration." 87 Fed. Reg. at 24,743, 24,749 (codified as amended at 27 C.F.R.

3

Third, Plaintiffs dispute the extent of potential "benefits" that may result in the event that ATF determines that the Product is *not* a "firearm" within the meaning of the GCA. Pls.' Resp. at 3-7. These arguments are irrelevant at best. Even if such a classification would convey no benefits at all, that would not establish that it constituted action by the government "against" Tactical Machining in violation of the Preliminary Injunction. In any event, each of Plaintiffs' arguments on this score is unpersuasive even on its own terms.

Initially, Plaintiffs state that the existing Preliminary Injunction already protects Tactical Machining from any "harm that would result from Tactical Machining no longer being able to offer its product for sale." Pls.' Resp. at 3. That may be true, but Plaintiffs also contend that, "[w]hile the Court's injunction allows Tactical Machining to once again offer [certain products] for sale, it remains subject to irreparable harm if the injunction does not extend to its customers." Pls.' Req. to Expand Prelim. Inj. at. 6. In the event that ATF determines that the Product is not a "firearm," Tactical Machining would be free to share that classification with its customers, offering them additional assurance that they would not violate 18 U.S.C. § 922(a)(3) by purchasing the Product directly from Tactical Machining without using an in-state FFL to facilitate the transfer. The classification thus could remedy at least some of the purported harm that Tactical Machining has argued it faces, without greater judicial intervention than necessary. *Cf. VanDerStok*, 2022 WL 4009048 ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." (quoting *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994)).

Next, Plaintiffs argue that a classification that the Product is not a "firearm" would not "moot[] or appreciably 'narrow[]'" the scope of the Parties' dispute, citing Plaintiffs' position on the merits of their claims for relief (as to only one of which—that certain provisions of the Rule exceed ATF's

---

§§ 478.92(c), 479.102(c)). Thus, any classification of the Product would not control the application of the Rule to different products that Tactical Machining sells within the same product category.

4

authority—this Court has held that Plaintiffs are likely to succeed). Pls.' Resp. at 4. But this argument is irrelevant to the question currently before the Court, which is whether the classification decision that Tactical Machining requested could constitute action "against" Tactical Machining that is prohibited under the Preliminary Injunction. Moreover, Plaintiffs' arguments regarding potential mootness and the scope of the Parties' dispute will be relevant only if ATF determines that the Product is not a "firearm." Accordingly, they should be addressed, if at all, after ATF makes its classification, rather than hypothetically.

Plaintiffs also cite Tactical Machining's "concerns" related to its voluntary decision to stop selling jigs before the Rule took effect, noting that Tactical Machining submitted the Product for classification without any accompanying jigs and that it would like to resume selling jigs in the future. *Id.* at 4-5. But this has no relevance to the issue raised in Defendants' Motion for Clarification, because none of these concerns support a finding that the classification of the Product that Tactical Machining *did* submit would violate this Court's Preliminary Injunction. And Tactical Machining is free to submit additional samples for classification, including the combination of any unfinished receiver—such as the Product—and "the jig that Tactical Machining previously sold." *Id.* at 4; *see also* 87 Fed. Reg. at 24,743, 24,749 (codified as amended at 27 C.F.R. §§ 478.92(c), 479.102(c)) (requiring that requests for classification of incomplete frames or receivers must include associated jigs that the seller or distributor makes available to the purchaser or recipient).[6]

Plaintiffs' suggestion that Tactical Machining may be confused as to whether it is required to track customers' separate purchases even if the Product is classified as not a "firearm" similarly fails to establish that such a classification would violate the Preliminary Injunction. *See* Pls.' Resp. at 6.

---

[6] As explained in Defendants' Response to Plaintiffs' Motion to Expand the Preliminary Injunction, the Rule imposes certain requirements on the sale of certain unfinished frames or receivers that are sold with accompanying jigs, but it does not prohibit Tactical Machining from selling them. *See* Defs.' Resp. to Pls.' Req. to Expand Prelim. Inj. at 13-14.

Moreover, any such confusion is unwarranted. Just as with other regulated transactions—such as bank deposits—individuals may not structure their transactions with the intent of evading the requirements of federal law. *See United States v. Thompson*, 603 F.2d 1200, 1202-04 (5th Cir. 1979) (holding, prior to Congress's express prohibition on structuring financial transactions to avoid federal reporting requirements, that a bank manager could not "flout" those requirements "with impunity" by structuring transactions "with the intent to annul the reporting requirements"). Application of the Rule does not break any new ground, but simply reflects this established notion that individuals and entities may not structure transactions with the intent to violate federal law.

Finally, Plaintiffs argue that, if ATF were to classify the Product as not a "firearm," non-parties other than Tactical Machining would not benefit. *See* Pls.' Resp. at 6. Once again, this contention is irrelevant to Defendants' motion because it has no bearing on whether such a classification would constitute action "against" Tactical Machining in violation of the Preliminary Injunction. And to the extent that Plaintiffs suggest that ATF might be more likely to classify the products sold by entities that are parties to this action as not "firearms," thereby creating an incentive for entities to seek to join or intervene in this action in order to obtain a favorable classification, *see id.* at 6-7, they offer no basis for suggesting that ATF will not evaluate classification requests in good faith. Additionally, if ATF were inclined to reflexively classify litigants' submissions as not "firearms," rather than processing them through the agency's typical procedures, Plaintiffs offer no explanation why ATF would not have classified the Product as not a "firearm" immediately upon the filing of this action.

In sum, Plaintiffs fail to establish that ATF's issuance of the classification that Tactical Machining requested—which expressly cannot form the basis for any adverse governmental action— could possibly constitute action by Defendants (or their officers, agents, servants, or employees) "against" Tactical Machining, in violation of this Court's Preliminary Injunction. *VanDerStok*, 2022 WL 4009048, at *11. Accordingly, Defendants respectfully request that this Court grant Defendants'

request for clarification that the Preliminary Injunction does not prohibit ATF from proceeding with and issuing the requested classification of the Product. Defendants further respectfully request that the Court defer consideration of Plaintiffs' Motion to Expand the Scope of the Preliminary Injunction until after ATF completes its classification.

DATED: September 24, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

LESLEY FARBY
Assistant Director, Federal Programs Branch

*/s/ Daniel Riess*
DANIEL RIESS
MARTIN M. TOMLINSON
TAISA M. GOODNATURE
JEREMY S.B. NEWMAN
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 353-3098
Email: Daniel.Riess@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On September 24, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Daniel Riess*
