IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

**NAVY SEALs 1-3,** et al.**,**

              Plaintiffs,

   v.

**LLOYD J. AUSTIN, III** in official capacity as United States Secretary of Defense, et al.,

              Defendants.

Case No. 4:21-cv-01236-O

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR A PARTIAL STAY PENDING APPEAL

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................2

I. An Order Requiring The Navy To Disregard Plaintiffs' Unvaccinated Status In Making Assignment And Reassignment Decisions Would Inflict Irreparable Damage On The Navy And The Public. ..........................................................................................2

II. Defendants Are Likely To Prevail On The Merits Of Their Appeal. ................................7

CONCLUSION ............................................................................................................................11

## TABLE OF AUTHORITIES

**CASES**

*Antonellis v. United States*,
　723 F.3d 1328 (Fed. Cir. 2013) .................................................................................................9

*Arnold v. Garlock, Inc.*,
　278 F.3d 426 (5th Cir. 2001) .....................................................................................................7

*Cargill v. Marsh*,
　902 F.2d 1006 (D.C. Cir. 1990) ................................................................................................8

*Chappell v. Wallace*,
　462 U.S. 296 (1983) ..................................................................................................................7

*Cortright v. Resor*,
　447 F.2d 245 (2d Cir. 1971) ..................................................................................................8, 9

*Goldman v. Weinberger*,
　475 U.S. 503 (1986) ................................................................................................................10

*Harkness v. Secretary of Navy*,
　858 F.3d 437 (6th Cir. 2017) .....................................................................................................8

*Hilton v. Braunskill*,
　481 U.S. 770 (1987) ..................................................................................................................2

*Miller v. United States*,
　42 F.3d 297 (5th Cir. 1995) .......................................................................................................6

*Nken v. Holder*,
　556 U.S. 418 (2009) ..................................................................................................................2

*Orloff v. Willoughby*,
　345 U.S. 83 (1953) ....................................................................................................................8

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
　734 F.3d 406 (5th Cir. 2013) .....................................................................................................2

*Population Inst. v. McPherson*,
　797 F.2d 1062 (D.C. Cir. 1986) ................................................................................................7

*Rostker v. Goldberg*,
　453 U.S. 57 (1981) ..................................................................................................................10

*Ruiz v. Estelle*,
　666 F.2d 854 (5th Cir. 1982) .....................................................................................................7

*Scales v. United States*,
   685 F.2d 970 (5th Cir.1982) ..................................................................................................6

*Schlanger v. United States*,
   586 F.2d 667 (9th Cir. 1978) .................................................................................................8

*Sebra v. Neville*,
   801 F.2d 1135 (9th Cir. 1986) ...............................................................................................8

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018) ........................................................................................................10

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
   559 F.2d 841 (D.C. Cir. 1977) ..............................................................................................7

*Wilson v. Walker*,
   777 F.2d 427 (8th Cir. 1985) .................................................................................................8

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................................................10

INTRODUCTION

Defendants respectfully request that this Court partially stay, pending appeal, the preliminary injunction granted by the Court on January 3, 2022 (ECF No. 66). In particular, Defendants respectfully request that the Court grant a partial stay of its order, or otherwise clarify and narrow the order, to the extent the order precludes Defendants from making the assignment and reassignment decisions that the military deems appropriate, taking into account Plaintiffs' vaccination status, including with respect to deployment and training. Defendants do not seek a stay of the order insofar as the order merely forbids the Navy from initiating involuntary separation or disciplinary proceedings[1] against Plaintiffs for refusing to be vaccinated against COVID-19. Defendants respectfully request a ruling by the end of the day January 28, 2022. After that date, if relief has not been granted, Defendants will seek relief from the U.S. Court of Appeals for the Fifth Circuit.

As explained in the attached declaration from the Vice Chief of Naval Operations, the second highest uniformed Officer in the United States Navy, an order interfering with the military's ability to make judgments about troop deployments and other assignments would pose immediate and severe threats to both the success of the Navy's missions and the health of its service members. *See* Ex. 1 (Decl. of Admiral William Lescher) (App01-31). It would also be an extraordinary and unprecedented intrusion into the inner workings of the military, directly superintending senior military officials' operational judgments about service members' fitness to serve on some of the Nation's most sensitive and challenging military missions. If the Court grants this relief, the Government will commit to seeking expedition of its appeal to ensure swift resolution of the important questions presented.

---

[1] The Navy defines "disciplinary proceedings" as proceedings initiated pursuant to the Uniformed Code of Military Justice (UCMJ). These proceedings include courts-martial and Article 15 (non-judicial punishment (NJP)) as implemented under Part V of the Manual for Courts-Martial. For members refusing the COVID-19 vaccine, the VCNO is the sole disposition authority for courts-martial and NJP. NAVADMIN 225/21 ¶5.b.

ARGUMENT

Courts consider four factors in assessing the propriety of granting a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable damage absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013). When the Government is a party, its interests and the public interest overlap in the balancing of harms. *See Nken v. Holder*, 556 U.S. 418, 420 (2009).

## I. An Order Requiring The Navy To Disregard Plaintiffs' Unvaccinated Status In Making Assignment And Reassignment Decisions Would Inflict Irreparable Damage On The Navy And The Public.

Subject to clarification from the Court, the Government understands the Court's order to preclude military commanders from considering Plaintiffs' unvaccinated status in making decisions about deployment and other assignments. The order therefore appears to require that the Navy keep Plaintiffs—who serve within some of the most elite units in the Navy and perform some of the military's most sensitive missions—in operational units or transfer them to such units, and deploy them and train them, despite military determinations that these individuals pose unacceptable risks to mission success and the health of others.

As the attached declaration from Admiral William K. Lescher, the Vice Chief of Naval Operations, explains, the "Court's injunction directly impacts the Navy's ability to carry out its responsibilities to protect and maintain the health and safety of our Force[.]" Ex. 1 ¶ 2 (App003). Because "[special operations] duty is among the most physically and mentally demanding assignments in the U.S. military," individuals "who are or may reasonably be expected to become unfit or unreliable must be excluded." ECF No. 44, Ex. 11 (Navy's Manual of the Medical Department (MANMED)) § 15-105(1) (App221). Any "[c]onditions and treatments causing a significant potential for disruption

2

of operations are disqualifying." *Id.* § 15-105(4)(a) (App223); *see id.* § 15-105(4) (App223-39) (long list of disqualifying conditions). Military leaders have made the judgment that being unvaccinated for COVID-19 is such a condition.

As Admiral Lescher explains, "[u]nvaccinated or partially vaccinated service members are at higher risk to contract COVID-19, and to develop severe symptoms requiring hospitalizations that remove them from their units and impact mission execution." Lescher Decl. ¶ 2 (App003). The Navy's highest leaders have therefore made the judgment that "[f]ully vaccinated naval forces are required to ensure readiness to carry out Navy missions throughout the world and, if required, to engage in combat operations." *Id.*; *see id.* ¶ 11 (App009) ("The judgment of each of the Military Services is that vaccines are the most effective tool the Armed Forces have to keep our personnel safe, fully mission capable and prepared to execute the Commander-in-Chief's orders to protect vital United States[] national interests."). And in particular, "[r]estriction of the Navy's ability to reassign unvaccinated personnel in order to mitigate COVID-19 related risks to units preparing to deploy, or that are deployed, will cause direct and immediate impact to mission execution," as well as to "[t]he health, readiness, and mission execution of broader conventional Navy units and personnel who support these personnel." *Id.* ¶ 2 (App003); *see id.* ¶ 16 (App014) ("Such an injunction will degrade [Navy Special Warfare] (NSW), EOD, and diver mission readiness, breakdown good order and discipline within the NSW force, unnecessarily limit the Navy's ability to conduct daily operations and operational missions, and could clearly result in mission failure in contingencies and crises that cause harm to national security.").

Requiring the Navy to allow Plaintiffs to deploy while unvaccinated would pose serious and specific threats to mission success. "It is vital that all members of the NSW force be medically fit to perform daily operations and to train or deploy on short notice" given the demands of the missions with which they are entrusted and the need "to respond to contingencies and crises around the world."

3

Lescher Decl. ¶ 17 (App014-15). If the Court's order precludes military leadership from considering Plaintiffs' unvaccinated status in making deployment decisions, the Navy could be forced to deploy a SEAL team that includes one or more unvaccinated members on a critical mission, elevating the risk that a deployed service member would "contract COVID-19," "experience significant disease symptoms, impact the mission and spread the disease to others." *Id.* ¶ 19 (App016). "Navy ships have limited health care facilities," and if a sailor developed severe COVID-19 symptoms, his ship would be required to abandon its mission and "pull into port." *Id.* ¶ 20 (App016); *see id.* ¶ 11 (App009-10) (explaining that the vast majority of active duty personnel whose COVID-19 symptoms required hospitalization were unvaccinated; only 12% had received a primary COVID-19 vaccine without a booster, and only 0.8% had received a booster).

In addition, "NSW forces often deploy in countries with little or no healthcare support structure and in remote areas where healthcare is scarce," and only a small number of military personnel are available to provide medical support. Lescher Decl. ¶ 20 (App016). A medical evacuation might therefore be necessary if a service member developed severe COVID-19 symptoms, "creat[ing] additional risk . . . to the mission" and "plac[ing] those service members executing medical evacuation at risk of harm," including by providing "transport from a hostile, remote or diplomatically sensitive area[]"—the type of location in which Plaintiffs frequently operate. *Id.* Redirecting other personnel "to perform preventable evacuations results in a degradation of the Navy's ability to accomplish its primary missions and incurs collateral impacts." *Id.* ¶ 21 (App017). And "[m]edical evacuations often require one or more member from the service member's unit to accompany the evacuated service member," further depleting the team on which the unvaccinated service member is supposed to be operating. *Id.* These crews "routinely" include as few as four personnel, so the loss of one or more members plainly "degrade[s] the effectiveness of [the] unit[] and may compromise the mission." *Id.* "Every member of a SEAL team is vital." *Id.*

4

Military leaders have reached the professional judgment that the risks of these potentially catastrophic outcomes are significantly higher when unvaccinated service members are deployed. *See, e.g.*, Lescher Decl. ¶ 25 (App019-20) (expressing "the Navy's judgment" "that COVID-19 vaccines are a critical defense against COVID-19 and mitigate risk both to our force and to our mission," "tak[ing] into account the environments our service members operate in, the operations the Navy conducts, and the absence of other effective COVID-19 mitigation measures in the environments in which we operate").

An order precluding the military from considering Plaintiffs' unvaccinated status in assigning duties would also jeopardize the health of other service members—including service members in the Navy's conventional forces, outside the NSW community. *See* Lescher Decl. ¶¶ 19, 22 (App016-17), *see also, e.g.,* ECF No. 44, Ex. 15 ¶¶ 3, 14, 15 (App282-283, 289-290). Although the Court noted in its order that the vast majority of Navy service members are vaccinated, and although the injunction is "limited to 35 unvaccinated Plaintiffs," an order precluding the military from considering Plaintiffs' vaccination status in making assignments would threaten "[t]he health, readiness, and mission execution" both of Plaintiffs' units and "of broader conventional Navy units and personnel who support these personnel." Lescher Decl. ¶ 2 (App003). Members of the NSW force must often "work in close quarters where social distancing is not possible"—for example, they may "travel for an extended duration on boats, submersibles, helicopters, aircraft, or other vehicles that are less than six feet across, and/or which have limited ventilation"; when operating in subsea environments, they may even "have to share diving rebreather devices and inhale one another's exhalation." *Id.* ¶ 8 (App007-08); *see also id.* ¶ 12 (App010). The heightened risk that an unvaccinated service member will contract COVID-19 therefore necessarily heightens the risk that others in his unit will contract COVID-19. *See id.* ¶ 17 (App015) ("[U]nvaccinated personnel in a unit degrade the force health protection conditions in the unit, placing personnel in the unit at risk and degrading the unit's ability to safely

5

conduct operations, regardless of the scope of the operation."). "NSW personnel also routinely interact with the greater Navy population, on ships and aircraft, and in dining facilities and office environments across the globe." *Id.* ¶ 14 (App012); *see id.* ¶ 19 (App016) (explaining that deploying unvaccinated service members would "risk[] a COVID-19 outbreak within [a NSW] unit or on the host Navy destroyer"); *id.* ¶ 22 (App017) ("Because NSW personnel rely on conventional Navy forces to support their missions, any unvaccinated NSW personnel will put the crew of those conventional forces at unnecessary risk as well.").

An order requiring the Navy to include unvaccinated Plaintiffs in training commands likewise inflicts serious harms: 14 Plaintiffs are assigned to NSW Advanced Training Command (ATC), some as instructors who necessarily have close contact with students who are preparing for NSW operations and some as students. Lescher Decl. ¶ 24 (App018-19). "[U]nvaccinated instructors can spread COVID-19 to dozens of candidates in training, and qualified SEALs, SWCCs, and other personnel, including fellow instructors, at NSW ATC training courses who will promptly return to their primary units or interact with additional training classes," *id.*, thus spreading the virus further.

The Court's order will also undercut the maintenance of military good order and discipline. Lescher Decl. ¶ 16 (App014); *see also Miller v. United States*, 42 F.3d 297, 303 (5th Cir. 1995) (quoting *Scales v. United States*, 685 F.2d 970, 973 (5th Cir.1982) (stating that the concern for preserving military discipline is "the most important consideration in any single case"). Indeed, since the Court's order, one unvaccinated Plaintiff has already refused to submit to weekly COVID-19 testing and claims that he will soon submit a separate religious accommodation request to be excused from this testing requirement. Ex. 3 ¶ 5 (Decl. of LCDR Andrew Petraila) (App040-44). Because this service member is unvaccinated, his orders to an operational unit were previously placed on hold pending the outcome of his religious exemption request pursuant to NAVADMIN 256/21. *Id.* ¶¶ 4-5 (App042-44). However, because the Court has enjoined the Navy from applying this instruction to Plaintiffs, the

6

Court's order could be read to require that the Navy send this unvaccinated service member, who is refusing to submit to weekly COVID-19 testing, to a command that operates in "confined spaces within exceptionally close proximity to other personnel and teammates." *Id.* ¶ 6 (App044). No military can successfully function where service members feel free to define the terms of their own military service, including which orders they will choose to follow. *See Chappell v. Wallace*, 462 U.S. 296, 300 (1983) ("The inescapable demands of military discipline and obedience to orders cannot be taught on battlefields; the habit of immediate compliance with military procedures and orders must be virtually reflex with no time for debate or reflection.").

## II. Defendants Are Likely To Prevail On The Merits Of Their Appeal.

Defendants respectfully submit that they are also likely to prevail on the merits of their appeal. A district court that has found a likelihood of success on the merits for plaintiffs in granting a preliminary injunction is not required to rule otherwise in order to grant a motion for a stay of that injunction. While "[l]ikelihood of success [is] a prerequisite in the usual case[, . . . ] it is not an invariable requirement." *Ruiz v. Estelle*, 666 F.2d 854, 857 (5th Cir. 1982). Rather, "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Arnold v. Garlock, Inc.*, 278 F.3d 426, 438–39 (5th Cir. 2001) (internal quotations and citations omitted); *see also, e.g.*, *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986) ("It will ordinarily be enough that the [movant] has raised serious legal questions going to the merits, so serious, substantial, difficult as to make them a fair ground of litigation . . ." (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)). Here, the substantiality of Defendants' arguments on appeal, together with the balance of hardships, favors granting a stay pending appellate review.

The Court has specifically enjoined NAVADMIN 256/21 as applied to the 35 Plaintiffs in this litigation. Op. 26. In addition to providing general guidance to the Navy for administering the

Navy's COVID-19 vaccination program, that directive provides Navy commands with the flexibility to temporarily reassign unvaccinated service members, regardless of exemption status, based on operational readiness and mission requirements.  *See* ECF No. 44, Ex. 9 (NAVADMIN 256/21) ¶ 2.b (App090).  The Court also enjoined the Navy "from taking any adverse action against Plaintiffs on the basis of Plaintiffs' requests for religious accommodation"—a prohibition that, as explained above, might be read to imply that the Navy may not take routine administrative actions it judges are necessary for dealing with the risk of unvaccinated persons in military settings, and may not even decline to deploy Plaintiffs on combat missions on account of their unvaccinated status.  Op. 15, 23, 26.  Even setting aside Plaintiffs' failure to exhaust administrative remedies, this case is not justiciable.  Decisions about how to assign and deploy service members are for the military to make, under the supervision of the President as Commander in Chief, not civilian courts.  For that reason, challenges to such assignment decisions are non-justiciable even when they involve a constitutional challenge. .  *See, e.g., Orloff v. Willoughby*, 345 U.S. 83 (1953) (declining to review service member challenge to a military assignment decision that was allegedly discriminatory punishment for his invocation of the constitutional right against self-incrimination); *Harkness v. Secretary of Navy*, 858 F.3d 437, 443 (6th Cir. 2017) (noting in a case involving a First Amendment challenge to military assignment decisions that "courts are generally reluctant to review claims involving military duty assignments"); *Cargill v. Marsh*, 902 F.2d 1006, 1007 (D.C. Cir. 1990) (holding mandamus claim for reassignment is nonjusticiable); *Schlanger v. United States*, 586 F.2d 667, 671 (9th Cir. 1978) ("[C]ourts should not review internal military decisions such as duty order or duty assignments."); *Sebra v. Neville*, 801 F.2d 1135, 1141 (9th Cir. 1986) (same); *Wilson v. Walker*, 777 F.2d 427, 429 (8th Cir. 1985) (same); *Cortright v. Resor*, 447 F.2d 245, 254 (2d Cir. 1971) (same); *Antonellis v. United States*, 723 F.3d 1328, 1332 (Fed. Cir. 2013) ("Courts are in no position to determine the 'best qualified Officer' or the 'best match' for a particular billet.").

8

Further, the Court based its injunction, at least in part, on a mistaken finding that "those receiving medical accommodations are not medically disqualified—they receive equal status as those who are vaccinated." Op. 11-12; *see also id.* 14 ("Those receiving medical accommodations are not medically disqualified—they receive equal status as those who are vaccinated."). In support of that finding the Court cited the "MANMED § 15-105.2 and Trident Order #12. *Id.* But the Navy requires *any service member* who is not vaccinated, either by reason of a medical exemption or based on a religious request, to obtain a separate waiver in order to become deployable and continue in that career field. *See* Ex. 2 (Suppl. Decl. of Capt. Lanny Littlejohn) ¶ 6 (App036). "[A] service member who receives an exemption or accommodation from the COVID-19 vaccination requirement, whether for religious or secular reasons, is not [physically qualified for special operations] unless he or she obtains separate medical clearance." *Id.* A medical exemption for the COVID-19 vaccination, like a religious exemption, only determines whether the service member will be required to receive the COVID-19 vaccination. In either circumstance, a service member will not be considered physically qualified for special operations duty and deployable until he or she receives separate medical clearance. *See* ECF No. 44, Ex. 10 ¶ 12 (Trident Order #12) (App099) ("Special Operations qualification requires a separate waiver that is in addition to the waiver of the COVID-19 vaccine requirement for all service members."). "These deployability determinations do not take into account whether a member is unvaccinated for secular or religious reasons; all unvaccinated service members are treated the same for purposes of determining whether they should receive a medical waiver that would render them fit for special operations duty." Suppl. Littlejohn Decl. ¶ 6 (App036).

Likewise, although the Court stated that service members participating in clinical trials would remain medically qualified, the Force Medical Officer of U.S. Naval Special Warfare Command is "not aware of any NSW personnel participating in clinical research trials concerning COVID-19 vaccines or other COVID-19 medications or treatments." Suppl. Littlejohn Decl. ¶ 8 (App038). Any personnel

9

who did so would be required to receive prior counseling from a military health care provider, and they would "very likely be found [not physically qualified]," like any other service member who receives an exemption from the vaccination requirement. *Id.* (App039).

Senior military leaders, exercising their professional military judgment, have determined that "[f]ully vaccinated naval forces are required to ensure readiness to carry out Navy missions throughout the world and, if required, to engage in combat operations." Lescher Decl. ¶ 2 (App003). As explained above, the reasons for requiring vaccination are compelling—unvaccinated service members are at heightened risk of contracting and spreading COVID-19, and the consequences of infection in even one deployed NSW service member are severe. *See supra* 2-7. Accordingly, Plaintiffs' claims are unlikely to succeed on the merits. Defendants respectfully submit that the Court erred in substituting its "own evaluation of evidence for a reasonable evaluation" by the military regarding the necessity of full COVID-19 vaccination among service members. *Rostker v. Goldberg*, 453 U.S. 57, 68 (1981); *see also, e.g.*, *Trump v. Hawaii*, 138 S. Ct. 2392, 2421-22 (2018) (declining in matters of national security to "substitute" the Court's own "predictive judgments," or its own "evaluation of the underlying facts," for those of the President); *Goldman v. Weinberger,* 475 U.S. 503, 507 (1986); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008). Again, the Court need not change its view and agree with Defendants on the merits to grant a stay pending appeal. *See* Defs.' Mem. in Opp'n to Pls.' Mot. for Prelim. Inj., ECF No. 43. Defendants respectfully submit, however, that these issues are serious enough to warrant a partial stay insofar as the Court's order precludes Defendants from making the assignment and reassignment decisions that the military deems appropriate.

CONCLUSION

Accordingly, for the foregoing reasons, Defendants respectfully request that this Court grant a partial stay of its order to the extent it precludes Defendants from making the assignment and reassignment decisions that the military deems appropriate, taking into account Plaintiffs' vaccination status.

Dated: January 24, 2022                     Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Andrew E. Carmichael*
ANDREW E. CARMICHAEL (VA Bar. No. 76578)
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
LIAM C. HOLLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-3346
Fax: (202) 616-8470
Email: Andrew.e.carmichael@usdoj.gov

*Counsel for Defendants*