UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JENNIFER VANDERSTOK; MICHAEL G. ANDREN; TACTICAL MACHINING LLC, a limited liability company; FIREARMS POLICY COALITION, INC., a nonprofit corporation, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:22-cv-00691-O |
| MERRICK GARLAND, in his Official capacity as Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, | § § § § § § § § § § | |
| Defendants. | § § | |

## OPINION & ORDER ON SCOPE OF PRELIMINARY INJUNCTION

On September 2, 2022, this Court issued an Opinion and Order on Preliminary Injunction (Opinion, ECF No. 56) granting in part Plaintiffs' earlier request for interlocutory relief (*see* Pls.' Mot. for Injunction, ECF Nos. 15–16). In that Opinion, the Court invited the parties' additional briefing on the proper scope of the injunction.[1] Before the Court are Plaintiffs' Request to Expand Preliminary Injunction (Pls.' Mot. to Expand Prelim. Inj., ECF No. 63), filed September 8, 2022, and Defendants' Response to Plaintiffs' Request to Expand Scope of Preliminary Injunction (Defs.' Response, ECF No. 72), filed September 15, 2022.

Having considered the parties' briefing, the Court **ORDERS** that Plaintiffs' motion for

---

[1] Opinion 23, ECF No. 56.

expanded relief be **GRANTED in part** and **DENIED in part**.

## I.     BACKGROUND

The United States Congress has delegated the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") authority to regulate firearms in interstate commerce under the Gun Control Act of 1986. In April 2022, ATF promulgated a Final Rule that purports to regulate partially manufactured firearm parts and weapon parts kits.[2] Plaintiffs brought this suit to challenge the legality of the Final Rule.[3] Plaintiffs include Texas residents and firearm owners Jennifer VanDerStok and Michael G. Andren ("Individual Plaintiffs"), who have plans to buy the regulated products but fear civil and criminal prosecution;[4] Firearms Policy Coalition, Inc. ("FPC"), a nonprofit organization, comprised of individuals and entities nationwide, that exists to promote Second Amendment rights through legislative and legal advocacy;[5] and Tactical Machining, LLC, which manufactures and sells the products subject to the regulations at issue in this dispute.[6]

In its prior opinion, this Court found that provisions of ATF's Final Rule—specifically, 27 C.F.R. §§ 478.11, 478.12(c)—likely exceed the scope of ATF's authority under the Gun Control Act.[7] Having made this preliminary finding, the Court enjoined Defendants, including the Attorney General, Department of Justice, ATF, and the ATF Director, along with their officers, agents, servants, and employees, from implementing or enforcing the rule against *only* Tactical Machining.[8] Though the Court found that the Plaintiffs, collectively, had each established three of

---

[2] *See* 27 C.F.R. pts. 447, 478, 479 (2022).
[3] Compl. 1, ECF No. 1.
[4] Decl. of Jennifer VanDerStok 1–2, ECF No. 16-2, ¶¶ 1–6; Decl. of Michael G. Andren 1–2, ECF No. 16-3, ¶¶ 1–6.
[5] Compl. 8, ECF No. 1.
[6] Decl. of Darren Peters, Sr. 1–5, ECF No. 16-1, ¶¶ 4–11 (identifying partially manufactured frames or receivers as Tactical Machining's primary product offering, along with other parts potentially subject to the Rule).
[7] Opinion 15, 22–23, ECF No. 56.
[8] Opinion 15, 22–23, ECF No. 56.

the four elements necessary to justify a preliminary injunction, only Tactical Machining carried its burden to show that it faced a substantial threat of irreparable harm absent injunctive relief.[9] None of the remaining plaintiffs had adequately established their risk of irreparable harm.[10] Therefore, the Court issued the preliminary injunction for Tactical Machining's exclusive protection and invited the parties to provide additional briefing and evidence on the proper scope of relief.[11]

Plaintiffs now seek to expand the scope of the injunction to cover Individual Plaintiffs, FPC as an organization, and  FPC's members.[12] Plaintiffs also request injunctive protection for Tactical Machining's customers, which they say is necessary to afford Tactical Machining complete relief.[13] Beyond seeking particular relief, however, Plaintiffs urge the Court to rely on provisional language in the Administrative Procedure Act ("APA") to broadly enjoin ATF's enforcement of the Final Rule against any individuals or entities nationwide.[14] In their opposition, Defendants argue that the current injunction provides and exceeds the relief necessary to protect Tactical Machining from irreparable injury.[15] Moreover, Defendants claim Individual Plaintiffs and FPC have failed to establish irreparable harm and should be denied expanded relief.[16] If the Court concludes otherwise, Defendants caution the Court against issuing a nationwide injunction on the grounds that the APA provides no basis for doing so, and in light of recent skepticism about the constitutional validity of such a remedy.[17] The parties have briefed the issues and the motion is ripe for review.

---

[9] Opinion 22, ECF No. 56.
[10] Opinion 20, 22, ECF No. 56.
[11] Opinion 23, ECF No. 56.
[12] Pls.' Mot. to Expand Prelim. Inj. 14–19, ECF No. 63.
[13] *Id.* at 10–14.
[14] *Id.* at 19–23.
[15] Defs.' Resp. 13–19, ECF No. 72.
[16] *Id.* at 13–19.
[17] *Id.* at 7–13.

## II.     LEGAL STANDARDS

The decision to extend interlocutory relief is committed to the district court's sound discretion. *See Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F2.d 618, 621 (5th Cir. 1985). To establish entitlement to a preliminary injunction—or as here, *expanded relief* under the current injunction—Plaintiffs must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in their favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013).

Once it has determined that a party is entitled to injunctive relief, a court must make a separate determination regarding the appropriate scope of that prospective injunction. "[T]he scope of injunctive relief is dictated by the extent of the violation established[.]" *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S. Ct. 2545, 61 L.Ed.2d 176 (1979). Because it is an extraordinary remedy, an injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 756 (1994) (cleaned up). Thus, an injunction must "redress the plaintiff's particular injury," and no more. *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) (citation omitted).

If injunctions are an inherently extraordinary remedy, national injunctions are even more so. Without disclaiming them entirely, the Supreme Court and the Fifth Circuit have expressed increasing skepticism about the propriety of lower courts' use of nationwide injunctions. The Fifth Circuit recently noted that nationwide injunctions, while appropriate in some cases, are far from "the norm" and require exacting justification based on the particular circumstances of the case. *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (per curiam). Similarly, Justice Thomas has observed that "injunctions are beginning to take a toll on the federal court system—preventing

4

legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring). Other courts share these concerns. *See, e.g.*, *Arizona v. Biden*, 40 F.4th 375, 395–98 (6th Cir. 2022) (Sutton, C.J., concurring) (criticizing nationwide injunctions as having "become a springing easement on the customary deliberative process for dealing with issues of national importance. The sooner they are confined to discrete settings or eliminated root and branch the better").

Still, nationwide injunctions may be appropriate—or even necessary—in exceptional cases where complete relief can only be provided through universal application. *See* Ronald A. Cass, *Nationwide Injunctions' Governance Problems: Forum-Shopping, Politicizing Courts, and Eroding Constitutional Structure*, 27 GEO. MASON L. REV. 29, 78–79 (2019) (suggesting special justification for national injunctions may exist in some regulatory contexts given the "effects from [an unlawful regulatory action's] application to other competitors subject to the same regime" (alteration added)). Regardless of its precise character—of either universal or limited scope— courts weighing the propriety of an injunction must remember they are still "meaningfully constrained" by "longstanding principles of equity" that do not relieve them of their obligation to redress particular injuries in particular cases or controversies. *Trump*, 138 S. Ct. at 2426 (Thomas, J., concurring); *Gill*, 138 S. Ct. at 1934.

## III.    ANALYSIS

Applying the rules above, the Court finds that, like Tactical Machining, LLC, Individual Plaintiffs have demonstrated their substantial threat of irreparable harm and are therefore entitled to injunctive relief. But because Plaintiffs have not demonstrated that this case is one in which a national injunction is justified, the Court expands the current preliminary injunction only as far as

necessary to redress the injured Plaintiffs' specific harm. As the Court discusses below, with respect to Tactical Machining, this necessarily requires extending protective relief to the company's customers.

Plaintiffs have already made a strong showing on the first, third, and fourth factors necessary to establish entitlement to a preliminary injunction.[18] Namely, (1) that Plaintiffs are likely to succeed on the merits of their claims that ATF's Final Rule is inconsistent with the Gun Control Act, (3) that the balance of equities weighs in their favor, and (4) that the public interest will not be disserved by appropriate injunctive relief.[19] Furthermore, Tactical Machining, LLC already established the second factor, irreparable harm, which served as the basis for the current preliminary injunction.[20]

Thus, the questions the Court must resolve here are twofold. First, whether Individual Plaintiffs and FPC and its members have established irreparable harm that entitles them to protection under the current preliminary injunction. And second, with respect to all Plaintiffs who have established such harm, what is the proper scope of relief. Because Plaintiffs fall into distinct categories—(i) Individual Plaintiffs VanDerStok and Andren; (ii) FPC and its members; and (iii) Tactical Machining, LLC—and offer distinct bases to support their claims for expanded relief, the Court addresses each category of Plaintiffs separately.

### A.  Irreparable Harm

In the Fifth Circuit, it is "well-established that an injury is irreparable only 'if it cannot be undone through monetary remedies.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Interox Am. v. PPG Indus., Inc.,* 736 F.2d 194, 202 (5th

---

[18] *See generally* Opinion, ECF No. 56; Opinion 21–22.
[19] Opinion 21–22, ECF No. 56.
[20] Opinion 6, 21–22, ECF No. 56.

Cir.1984)). Where costs are nonrecoverable because the government-defendant enjoys sovereign immunity from monetary damages, as is the case here, irreparable harm is generally satisfied. *See Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021). But even costs that are recoverable from another source (e.g., by cost-shifting to customers or offering alternate products) "may constitute irreparable harm 'where the loss threatens the very existence of the movant's business.'" *Texas v. EPA*, 829 F.3d 405, 434 n.41 (5th Cir. 2016) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Alleged irreparable harm must also be concrete. "[S]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Daniels Health Servs., L.L.C.*, 710 F.3d at 585 (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)).

  1. <u>Individual Plaintiffs VanDerStok and Andren</u>

  Individual Plaintiffs advance two arguments to show they are irreparably harmed by Defendant's Final Rule. First, they argue that they will suffer nonrecoverable compliance costs if they are subject to the Rule.[21] Second, they argue that they face a credible threat of criminal prosecution if they proceed with their intended purchases from Tactical Machining.[22] Because the Court agrees with their latter argument, Individual Plaintiffs are entitled to expanded injunctive relief.

  *a. Nonrecoverable Compliance Costs*

  To comply with ATF's Final Rule, Individual Plaintiffs must buy certain regulated products (including the partially machined AR-15 pattern receiver, colloquially called an "80% Lower") through a local Federal Firearms Licensee ("FFL") and incur a $30 transfer charge plus additional time and expense associated with having to make an in-person purchase rather than a

---

[21] Pls.' Mot. to Expand Prelim. Inj. 6–10, 14, ECF No. 63.
[22] *Id.*

"direct" (online) purchase.[23] Defendants claim that an insignificant one-time fee does not present irreparable harm because, even if is non-compensable, the harm is de minimis; moreover, any alleged harm is attributable only to a third-party (the FFL), and not Defendants.[24]

The Court agrees that the alleged financial injury is not sufficient for a showing of irreparable harm. Undoubtedly, Individual Plaintiffs' harm is nonrecoverable (they cannot sue the Government for reimbursement later) and nonspeculative (they declare specific plans to purchase the product within the upcoming months). Still, a plaintiff's injury must be more than merely de minimis. *Dennis Melancon, Inc.*, 703 F.3d at 279 (cleaned up). And as Defendants correctly point out, courts in this Circuit and others have found that fees exceeding $30 (while accounting for inflation) constitutes only de minimis financial injury.[25] On this basis, the expense in time and nominal fees that Individual Plaintiffs will incur for an FFL-facilitated product transfer does not amount to cognizable irreparable harm necessitating injunctive relief.

### b. *Threat of Criminal Prosecution*

Beyond nonrecoverable compliance costs, however, Individual Plaintiffs say they are irreparably harmed because they "would directly purchase items including one [receiver, which is classified as a firearm under the Final Rule,] from Tactical Machining, LLC, or another direct sales

---

[23] Pls.' Mot. to Expand Prelim. Inj. 7–9, ECF No. 63; Decl. of Jennifer VanDerStok 1–2, ECF No. 16-2, ¶¶ 1–6; Decl. of Michael G. Andren 1–2, ECF No. 16-3, ¶¶ 1–6.

[24] Defs.' Resp. 14–15, 14 n.5, ECF No. 72.

[25] *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1314 (5th Cir. 1976) (finding an annual charge of $50, adjusted for inflation, "so nominal as to be de minimis"); *Badii v. Rick's Cabaret Int'l, Inc.*, No. 3:12-CV-4541-B, 2014 WL 550593, at *8 (N.D. Tex. Feb. 11, 2014) (finding a loss of $80–$90 to be de minimis); *In re CorrLine Int'l, LLC*, 516 B.R. 106, 153 (Bankr. S.D. Tex. 2014) (finding $275 or less to be de minimis for bankruptcy purposes); *Nagy v. FMC Butner*, 376 F.3d 252, 253–54 (4th Cir. 2004) (finding $40, adjusted for inflation, to be de minimis); *World Outreach Conf. Ctr. v. City of Chicago*, 234 F. Supp. 3d 904, 909 (N.D. Ill. 2017) (finding amounts from $1–$100 to be de minimis), *aff'd*, 896 F.3d 779 (7th Cir. 2018).

manufacturer, within the next three to four months."[26] But they have refrained for fear of exposing themselves to "potential criminal penalties"—including civil fines and up to five years of prison time.[27] Their "fear [of] prosecution" is exacerbated because the Rule's vague language indicates they might violate the law by purchasing a receiver while "in possession of other tools and equipment."[28] This uncertainty, they suggest, increases the threatened harm.

A showing of irreparable harm need not be financial in nature. Even "alleged" deprivations of constitutional or procedural rights may justify injunctive relief. *See, e.g.*, *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 294–97 (5th Cir. 2012) (finding irreparable harm where plaintiffs "alleged" violations of constitutional rights on grounds that "[t]he loss of [constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Louisiana v. Horseracing Integrity & Safety Auth. Inc.*, No. 6:22-cv-01934, 2022 WL 2960031, at *13 (W.D. La. July 26, 2022) (finding irreparable harm where plaintiffs alleged action in excess of statutory authority and APA violations).[29]

Relevant here, other courts have held that the "chilling effect" on a plaintiff's conduct that "arises from the threat of imprisonment and civil penalties" was sufficient to establish irreparable

---

[26] Supp. Decl. of Jennifer VanDerStok 1, ECF No. 62-1, ¶¶ 2–6; Supp. Decl. of Michael G. Andren 1, ECF No. 62-2, ¶¶ 2–6; Pls.' Mot. to Expand Prelim. Inj. 9–10, ECF No. 63.

[27] *Ibid.* Plaintiffs cite 18 U.S.C. § 922(a)(3) ("It shall be unlawful . . . for any person . . . to . . . receive in the state where he resides . . . any firearm purchased . . . outside the State") and 18 U.S.C. § 924(a)(1)(D) ("[W]hoever . . . willfully violates any other provision of this chapter, shall be fined under this title, imprisoned not more than five years, or both."). *Id.* at 9.

[28] Supp. Decl. of Jennifer VanDerStok 2, ECF No. 62-1, ¶ 5; Supp. Decl. of Michael G. Andren 2, ECF No. 62-2, ¶ 5. *See* 27 C.F.R. § 478.12(c) ("When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit . . . .").

[29] Defendants correctly point out, that Plaintiffs have "not asserted a Second Amendment claim in this case[.]" Defs.' Resp. 22, ECF No. 72. But Plaintiffs *have* asserted several other constitutional claims (Counts IV – VI). Compl. 46–52, ECF No. 1. This is not to suggest that the Court's determination rests on these grounds. The discussion above is merely to show that economic injury is not required to establish irreparable harm.

harm. *Longoria v. Paxton*, No. SA:21-CV-1223-XR, 2022 WL 447573, at \*17–19 (W.D. Tex. Feb. 11, 2022), *vacated and remanded on other grounds*, No. 22-50110, 2022 WL 2208519 (5th Cir. June 21, 2022) (finding irreparable harm where plaintiffs produced evidence that, but for the credible threat of civil or criminal prosecution, they would have engaged in the statutorily prohibited conduct); *Calif. Trucking Ass'n v. Becerra*, 433 F.Supp.3d 1154, 1169–70 (S.D. Cal. 2020), *rev'd on other grounds sub nom. Calif. Trucking Ass'n v. Bonta*, 966 F.3d 644 (9th Cir. 2021) (finding irreparable harm where plaintiff businesses faced the "Hobson's choice" between costly compliance measures or threat of "government enforcement actions, as well as criminal and civil penalties").

Though not in the context of preliminary injunctive relief, the Supreme Court and the Fifth Circuit have found that the threat of criminal prosecution does indeed constitute irreparable injury. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (noting, in the context of Art. III standing analysis, that injury-in-fact is established when an individual alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder") (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)); *Richey v. Smith*, 515 F.2d 1239, 1243 n.10 (5th Cir. 1975) (noting, in the context of Fed. R. Crim. Pro. 41 suits for return of improperly seized property, that "a wrongful indictment . . . often works a grievous, *irreparable injury*") (emphasis added) (citation omitted)). In sum, a plaintiff's purported choice to comply—or else—with a challenged government dictate, as evidenced by the plaintiff's decision to desist from engaging in the regulated activity, is adequate to establish irreparable harm.

Here, Individual Plaintiffs have chosen to refrain from purchasing products classified as a "firearm" under the Final Rule in response to the perceived threat of looming civil and criminal

liability under 18 U.S.C. §§ 922, 924 for making those purchases.[30] Instead of discounting these fears as unfounded or insubstantial, Defendants offer no response at all to Individual Plaintiffs' alleged harm.[31] Separately, however—in response to Tactical Machining's request to expand relief to its customers—Defendants claim that customers' fear of criminal liability for purchasing products "*not* classified as firearms" under the Final Rule is "misplaced."[32] Here, Defendants' silence about whether Individual Plaintiffs are justifiably afraid to purchase items that *are* classified as firearms suggests those concerns are well-founded. Because Individual Plaintiffs' behavior has been effectively chilled by the credible threat of a potential felony indictment, the Court finds that they have sufficiently demonstrated irreparable harm.

The Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), does not foreclose this Court's finding that Individual Plaintiffs have demonstrated irreparable injury. In *Younger*, the federal district court had enjoined a California state criminal proceeding to consider the appellee's alleged constitutional injuries. *Id.* at 38–39. The Supreme Court reversed, holding that the heightened standard applicable to a federal court's injunctive interference with an *ongoing state criminal prosecution* had not been satisfied. *Id.* at 41–42, 54. In that context, the Court said that "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable [harm]'" sufficient to justify the federal court's interference with the state prosecution. *Id.* at 46 (alteration added). But the facts supporting *Younger* do not exist in the present suit. This case does not involve "federal interference with state criminal prosecutions." *Id.* Nor does it implicate that decision's animating concerns over federalism and comity that caution federal courts against hijacking state prosecutions brought in

---

[30] Pls.' Mot. to Expand Prelim. Inj. 9–10, ECF No. 63.
[31] *See generally* Defs.' Resp. 13–15, ECF No. 72.
[32] *Id.* at 20 (emphasis added).

good faith, even to resolve alleged constitutional rights violations. *Id*. at 43–45 (identifying principles of "Our Federalism" and "notions of 'comity'" as the "underlying reason[s] for restraining courts of equity from interfering with [state criminal prosecutions]"). Moreover, the *Younger* Court explicitly stated that it "express[ed] *no view* about the circumstances under which federal courts may [issue injunctive relief] when there is no prosecution pending in state courts at the time the federal proceeding is begun." *Id.* at 41 (emphasis added). This is one such case.

As a final matter, Individual Plaintiffs allege that the harm they suffer is not only due to non-compensable costs or the threat of a government enforcement action. Rather, they suggest that compliance with the Rule—which this Court has already deemed likely unlawful—compounds the injury.[33] Specifically, they claim they "are harmed because Defendants cannot require them to go through an FFL to purchase items that [the Court has already preliminarily determined] are not firearms."[34] In essence, Plaintiffs claim part of their injury arises from having to comply—under threat of possible felony indictment—with a regulation that this Court has said likely exceeds ATF's statutory authority.[35] Again, Defendants do not address this argument.[36] Though the Court does not find obligatory compliance with a "likely unlawful" regulation during the course of litigation sufficient to comprise irreparable harm on its own, this fact does aggravate the Individual Plaintiffs' demonstrable injury: legitimate fear of impending prosecution. For these reasons, the Court finds that Individual Plaintiffs have adequately demonstrated that, absent an injunction, they face a substantial threat of irreparable harm.

2.  Firearms Policy Coalition, Inc. & Its Members

In the single footnote FPC dedicates to discussing its alleged harm, FPC says it is injured

---

[33] *See* Pls.' Mot. to Expand Prelim. Inj. 9, ECF No. 63.
[34] *Id.* (alteration added).
[35] *Id.*
[36] *See* Defs.' Resp. 13–15, ECF No. 72.

because it "owns and uses items" subject to ATF's Final Rule.[37] If these items are found to be subject to the Rule, FPC claims it will be "virtually impossible" to achieve its organizational mission of public education and legislative advocacy given the "onerous severity of criminal laws that apply to firearms" and "the patchwork of [conflicting] federal, state, and local laws" regarding firearm possession and transport.[38] Not only is this argument vague and purely speculative, it does not even address ATF's Rule. The Court cannot find irreparable harm by implication. Moreover, Defendants point to Fifth Circuit precedent that forecloses FPC from injunctive relief on the basis of inadequate briefing.[39] As the Fifth Circuit has said, "[a]rguments subordinated in a footnote are insufficiently addressed in the body of the brief, and thus are waived." *White Glove Staffing, Inc. v. Methodist Hosps. of Dallas*, 947 F.3d 301, 308 (5th Cir. 2020) (quoting *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016)). Because FPC has failed to substantiate its alleged irreparable injury with concreteness and specificity, it is not entitled to expanded relief under the current injunction.

Next, FPC seeks protection for its members under the current preliminary injunction on the basis of FPC's associational standing.[40] FPC's nationwide membership is comprised of numerous individuals, including Individual Plaintiffs, and manufacturers and retailers, such as Tactical Machining, LLC, BlackHawk Manufacturing Group, Inc., d/b/a 80 Percent Arms, and Defense Distributed.[41] FPC claims that its members suffer the same irreparable injuries as similarly situated Individual Plaintiffs and Tactical Machining, including: compliance costs (individuals and businesses); substantial loss of sales (businesses); and risk of prosecution (individuals and

---

[37] Pls.' Mot. to Expand Prelim. Inj. 18 n.4, ECF No. 63; Decl. of Brandon Combs 2–3, ECF No. 62-4, ¶¶ 8–11.
[38] *See* Pls.' Mot. to Expand Prelim. Inj. 18 n.4, ECF No. 63.
[39] Defs.' Resp. 18, ECF No. 72.
[40] Pls.' Mot. to Expand Prelim. Inj. 14–15, ECF No. 63.
[41] *Id.* at 15–16; Decl. of Brandon Combs 2, ECF No. 62-4, ¶ 7.

businesses).[42] Defendants counter, arguing that FPC has failed to establish the requisite elements of associational standing.[43] The Court agrees with Defendants.

The associational standing doctrine permits an organization "to invoke the court's [injunctive or declaratory] remedial powers on behalf of its members" provided it can satisfy a three-prong test: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 333 (1977) (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)).

The parties disagree about whether the first prong requires FPC to allege injury for *each* member of the association (Defendants) or *only one of them* (Plaintiffs).[44] And Circuit precedents conflict on this point.[45] However, the Supreme Court's discussion of associational standing doctrine in *Warth v. Seldin* indicates that an association "may be an appropriate representative of its members" so long as "any one of them" suffers injury, which seems to settle this dispute in Plaintiffs' favor.[46] This matters because Plaintiffs have indeed shown that at least one of FPC's members, BlackHawk Manufacturing Group, Inc., d/b/a 80 Percent Arms, faces a substantial threat of irreparable harm and has standing to sue in its own right. Plaintiffs discuss BlackHawk's alleged

---

[42] Pls.' Mot. to Expand Prelim. Inj. 15–16, ECF No. 63.

[43] Defs.' Resp. 16–17, ECF No. 72.

[44] Pls.' Mot. to Expand Prelim. Inj. 15, ECF No. 63 (arguing that FPC must only show articulate injury for "*any one of*" its members); Defs.' Resp. 17, ECF No. 72 (arguing FPC must allege injury for *each* of its members).

[45] *Compare Hancock Cty. Bd. of Sup'rs v. Ruhr*, 487 F.Appx.189, 195 (5th Cir. 2012) ("The first prong of the associational standing test requires that at least one member of the association satisfy the Article III elements and have standing to sue in his or her own right.") *with Tenth Street Residential Ass'n v. City of Dallas, Tex.*, 968 F.3d 492, 500 (5th Cir. 2020) ("Associational standing requires that the individual members of the group each have standing[.]").

[46] 422 U.S. 490, 511 (1975).

injuries at length, describing the manufacturer-retailer's substantial decrease in sales following enactment of the Final Rule due to widespread customer concern about purchasing its products—much like Tactical Machining's harm.[47] Absent a protective injunction, BlackHawk will be forced to close its business within two to three months.[48]

But demonstrating an association member's right to bring suit is not enough. While it has satisfied prong one, FPC offers no discussion of the remaining two prongs of the three-prong test. Admittedly, the "undemanding" germaneness prong is easily satisfied, requiring only some level of "pertinence" between the organization's purpose and the interests it seeks to protect. *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 n.2 (5th Cir. 2010). Yet Plaintiffs entirely bypass this second prong. Even if the Court relied on the information relegated to Plaintiffs' sole footnote regarding FPC's organizational mission to satisfy prong two's low threshold, that discussion does not convey how FPC's educational and political advocacy purposes are germane to the protection of BlackHawk's financial interests.[49] Nor do Plaintiffs clearly address prong three of the test. For these reasons, the Court finds that FPC has not carried its burden to demonstrate its associational right to seek injunctive relief on behalf of its members.

### 3.   Tactical Machining, LLC

As previously discussed, the Court found in its prior Opinion that Tactical Machining, LLC had established irreparable harm.[50] The Court will not recite the basis for its finding here. Because the Court maintains its finding that Tactical Machining has established irreparable harm, the remaining inquiry with respect to Tactical is the proper scope of relief, which the Court addresses

---

[47] Pls.' Mot. to Expand Prelim. Inj. 16–18, ECF No. 63; Decl. of Daniel Lifschitz 6–8, ECF No. 62-5 ¶¶ 13, 16, 17.
[48] Pls.' Mot. to Expand Prelim. Inj. 18, ECF No. 63.
[49] *Id.* at 18 n.4.
[50] *See generally* Opinion, ECF No. 56.

below.

\*       \*       \*

Individual Plaintiffs have demonstrated a substantial threat of irreparable harm and, like Tactical Machining, LLC, are entitled to expanded relief under the current preliminary injunction. However, neither FPC itself, nor FPC on behalf of its members, have adequately demonstrated injury that entitles them to such a remedy. Now that the Court has determined which Plaintiffs have suffered irreparable harm—namely Individual Plaintiffs and Tactical Machining, LLC—it must decide how to provide those parties complete relief.

**B.  Scope of Injunctive Relief**

As set out above, "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (cleaned up). This means an injunction must "redress the plaintiff's particular injury," and no more. *Gill*, 138 S. Ct. at 1934. Again, because Individual Plaintiffs and Tactical Machining offer distinct bases to support their claims for the proper scope of relief, and because they suffer distinct injuries, the Court addresses the arguments of Individual Plaintiffs and Tactical Machining in turn. The Court does not address FPC and its members below because, as discussed above, they have not established their entitlement to injunctive relief.

1.  <u>Specific Injunctive Relief</u>

a.  *Individual Plaintiffs VanDerStok and Andren*

Individual Plaintiffs adequately show that they are entitled to preliminary injunctive relief based on their substantial threat of irreparable harm that arises from their fear of felony indictment for violating the Final Rule. Covered by the injunction, Individual Plaintiffs will be free to purchase, from Tactical Machining, LLC or other direct sales retailers, products subject to the

Final Rule's unlawful redefinitions without threat of enforcement. This will relieve each Individual Plaintiff's irreparable injuries without imposing any more burden on Defendants than necessary to redress those harms.

### b. *Tactical Machining, LLC*

While Defendants are presently enjoined from implementing or enforcing 27 C.F.R. §§ 478.11 and 478.12 against Tactical Machining,[51] Tactical says the current injunction is not adequate to redress its ongoing injuries. As evidence, Tactical points to the fact that, compared to the same time last year, its revenues are down approximately $60,000 and that "if conditions do not change, it [will] likely be forced out of business by the end of this year."[52] Tactical says its losses are attributable to two things: its customers' fear of felony indictment is "eviscerating demand" for its primary product offerings, partially manufactured receivers, which are classified as firearms under the Rule; and, general consumer confusion about the Rule's broad scope is stifling its customers' willingness to purchase even products *not* clearly subject to ATF regulation.[53] In short, Tactical Machining's customers' concerns about being prosecuted for violating ATF's Rule mirror those of the Individual Plaintiffs' discussed above. And this customer concern is the primary source of Tactical Machining's particular irreparable harm.

Defendants oppose expanding the injunction by claiming that Tactical Machining's losses may be attributable to its preemptive decision to stop selling a particular product pairing (a receiver and accompanying jig) in the months before the Rule took effect.[54] Tactical could ameliorate its losses, Defendants say, if it would simply resume selling that product pairing, albeit through in-

---

[51] Opinion 23, ECF No. 56.
[52] Pls.' Mot. to Expand Prelim. Inj. 11–12, ECF No. 63.
[53] *See* Id. at 11–13.
[54] Defs.' Resp. 19–20, ECF No. 72.

state FFLs as required by the Final Rule.[55] But as this Court previously noted, where a plaintiff "faces substantial threat of irreparable harm, . . . it is no answer to say that it may avoid the harm by complying with an unlawful agency rule."[56] That is precisely what Defendants suggest Tactical Machining do here. Defendants' argument also misunderstands Tactical's alleged harm. Even if Tactical did resume selling those products together, Tactical's customers are clearly afraid to buy receivers—with or without accompanying equipment—absent an assurance that they will not be prosecuted for their purchase.[57] And, as previously discussed, Defendants offer no such assurance. As a last resort, Defendants suggest the harms allegedly caused to Tactical Machining by customer confusion or fear of criminal liability can be alleviated by reading the Rule's plain text, or by seeking voluntary classification directly from ATF.[58] But these proffered remedies were previously, and are still, available to customers, yet the confusion and unwillingness to purchase Tactical Machining's products remain.[59]

Finally, the Court acknowledges Defendants' objection that, by devoting several pages of discussion to the alleged irreparable injuries of various non-parties (namely, Tactical's customers) Plaintiffs "misunderstand the relevant inquiry" because "[a]lleged irreparable harm to non-parties is not a basis for a preliminary injunction[.]"[60] Defendants are correct. Here, however, the Court does not base its decision to expand relief on any purported irreparable harm to Tactical Machining's *customers*. Rather, by including customers in the scope of relief, the Court addresses *Tactical Machining's* particular injuries. Tactical Machining's injuries cannot be remedied if its only source of revenue—customer willingness to transact business—has been severely curtailed.

---

[55] *Id.*
[56] Opinion 19, ECF No. 56.
[57] Pls.' Mot. to Expand Prelim. Inj. 11–12, ECF No. 63; Peters' Supp. Decl. 3, ECF No. 55-1, ¶¶ 11–12.
[58] Defs.' Resp. 20–21, ECF No. 72.
[59] Pls.' Mot. to Expand Prelim. Inj. 11, ECF No. 63.
[60] Defs.' Resp. 21, ECF No. 72.

Defendants' arguments are wholly unpersuasive. Thus, the Court is satisfied that customer concern over civil and criminal penalties must be alleviated to provide Tactical Machining the relief it is due. To accomplish this, the Court finds that Tactical Machining's customers must be covered by the preliminary injunction.

2.  Nationwide Injunctive Relief

Despite their demonstrable need for expanded relief, the Court declines Plaintiffs' invitation to issue a nationwide injunction. While Plaintiffs have demonstrated irreparable harm that entitles Individual Plaintiffs and Tactical Machining to a remedy, a broad injunction would far exceed the "particular" tailoring necessary to redress their injuries and afford them complete relief.[61] Nor will the Court issue a broad injunction based on its prior determination that the Final Rule likely exceeds ATF's congressionally delegated statutory authority.

Relying on select provisions in the APA, 5 U.S.C. §§ 705, 706, Plaintiffs ask for an injunction "broadly prohibiting" ATF's enforcement of the Final Rule.[62] Section 706 instructs Courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "in excess of statutory jurisdiction."[63] Section 705 authorizes Courts to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."[64] Plaintiffs interpret these provisions as empowering the Court to issue a nationwide injunction and cite several cases in which such remedies have been entered.[65]

But the APA does not provide the Court with a proper basis for issuing a nationwide

---

[61] *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018).
[62] *Id.* at 19.
[63] 5 U.S.C. § 706(2).
[64] 5 U.S.C. § 705.
[65] Pls.' Mot. to Expand Prelim. Inj. 19–20, ECF No. 63.

injunction in this case. Given this litigation's current procedural posture, 5 U.S.C. § 705 is inapposite. While that section might authorize a Court to "postpone the effective date" of an unlawful agency action in a particular context, the Final Rule at issue here took effect in August 2022.[66] Similarly, 5 U.S.C. § 706(2) permits courts to "set aside" agency actions "found to be" in excess of an agency's statutory jurisdiction. This case is still in an interlocutory stage, and the Court has made no *findings* of the Final Rule's illegality. It has merely held that the Rule *likely* exceeds the scope of ATF's authority under the Gun Control Act.[67]

For the foregoing reasons, the Court declines to broadly enjoin Defendants' enforcement of the Final Rule and finds that the appropriate course is to extend the preliminary injunction, instead, to only those Plaintiffs who have adequately demonstrated their need to be included in the scope of expanded relief: Individual Plaintiffs; Tactical Machining, LLC; and, by necessity, Tactical Machining's customers.

\*        \*        \*

Having carefully considered the arguments, the evidence, and the law, the Court finds that Individual Plaintiffs Jennifer VanDerStok and Michael G. Andren, and Tactical Machining, LLC have demonstrated that each is subject to a substantial threat of irreparable harm. Individual Plaintiffs and Tactical Machining are therefore entitled to expanded preliminary injunctive relief. Enjoining Defendants from implementing or enforcing the Final Rule against these Plaintiffs should alleviate their demonstrable injuries without burdening Defendants unnecessarily.

Given the source of its particular harm, Tactical Machining's customers must necessarily be covered by the injunction if Tactical is to have adequate relief. Leaving its customers at risk of civil or criminal liability will only exacerbate Tactical Machining's ongoing injuries and might

---

[66] Opinion 2 n.1, ECF No. 56; *see* 27 C.F.R. pts. 447, 478, and 479 (2022).
[67] Opinion 15, ECF No. 56.

force the dissolution of its business operations altogether if Tactical's loss in sales continue unabated. This raises the question of how properly to define Tactical Machining's "customers" for purposes of the injunction.

When ordering injunctive relief, the Court is obligated to state "specifically" and "in reasonable detail . . . the act or acts restrained or required" under the injunction. Fed. R. Civ. P. 65(d)(1)(b). In keeping with that obligation, the Court defines "customers" as:

**Individuals or entities who purchase directly from Tactical Machining, LLC any product classified as a "firearm" under 27 C.F.R. § 478.11 or § 478.12(c).**

Defining "customers" this way would seem to completely relieve Tactical Machining's alleged injuries without overburdening Defendants' ability to enforce its otherwise lawful regulations against the parties in this case. To the extent that this definition does not afford Tactical Machining complete relief, the parties may submit briefing as specified below.

Crucially, this Court's injunction does not offer blanket immunity from prosecution for all firearm-related offenses to Tactical Machining and its customers, including Individual Plaintiffs. The implications of this preliminary injunction's narrow scope bear further explanation. Importantly, a Tactical Machining customer may still be prosecuted for violating otherwise lawful provisions of the Final Rule.

## IV.   CONCLUSION

Individual Plaintiffs Jennifer VanDerStok and Michael G. Andren have shown that they are entitled to expanded relief under the current preliminary injunction. Tactical Machining, LLC has made the same showing. Accordingly, the Court **GRANTS** Plaintiffs' motion in part, **DENIES** the motion in part, and **ORDERS** that Defendants and their officers, agents, servants, and employees are enjoined from implementing or enforcing against (1) Individual Plaintiffs, Jennifer VanDerStok, and Michael G. Andren, and (2) Tactical Machining, LLC and its "customers,"

21

defined above, the provisions in 27 C.F.R. § 478.11 and 478.12 that this Court has determined are likely unlawful. This Court waives the security requirement of Fed. R. Civ. P. 65(c). *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).

Should the Plaintiffs wish to submit further briefing and evidence regarding the appropriate definition of Tactical Machining's "customers," they must do so no later than **October 10, 2022**. Any response is due within seven days of Plaintiffs' filing.

**SO ORDERED** this **1st day** of **October, 2022**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**