UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JENNIFER VANDERSTOK *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States *et al.*,<br><br>    Defendants. | Case No. 4:22-cv-00691-O |

**DEFENDANTS' BRIEF IN OPPOSITION TO BLACKHAWK
MANUFACTURING GROUP INC. d/b/a 80 PERCENT
<u>ARMS' MOTION FOR PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

LEGAL STANDARDS ................................................................................................................... 3

ARGUMENT ................................................................................................................................... 3

I.   Defendants Respectfully Preserve Their Argument That BlackHawk Has Failed to Demonstrate a Likelihood of Success on the Merits. ........................................................... 3

II.  BlackHawk Has Not Shown That It Will Incur Irreparable Harm Absent a Preliminary Injunction. ........................................................................................................ 4

    A.   BlackHawk's Unexcused Delay in Seeking Emergency Relief Demonstrates That It Will Not Suffer Irreparable Harm Absent Such Relief .......................................... 4

    B.   BlackHawk Fails to Substantiate Any Imminent Threat of Irreparable Injury ..................... 7

III. The Balance of Equities and Public Interest Make Injunctive Relief Inappropriate. ................. 9

IV.  Any Relief Ordered Should Be Appropriately Limited. .................................................. 11

CONCLUSION .............................................................................................................................. 12

## TABLES OF AUTHORITIES

**CASES**

*Anyadike v. Vernon Coll.*,
  No. 7:15-cv-00157-O, 2015 WL 12964684 (N.D. Tex. Nov. 20, 2015) .............................. 4

*Barrett v. United States*,
  423 U.S. 212 (1976) ........................................................................................................... 9

*Blue-Grace Logistics LLC v. Fahey*,
  340 F.R.D. 460 (M.D. Fla. 2022) ....................................................................................... 5

*Comic Strip, Inc. v. Fox Television Stations, Inc.*,
  710 F. Supp. 976 (S.D.N.Y. 1989) ..................................................................................... 4

*Digital Generation, Inc. v. Boring*,
  869 F. Supp. 2d 761 (N.D. Tex. 2012) ............................................................................... 8

*Dist. of Columbia v. Heller*,
  554 U.S. 570 (2008) ......................................................................................................... 11

*Div. 80, LLC v. Garland*,
  No. 3:22-CV-148, 2022 WL 3648454 (S.D. Tex. Aug. 23, 2022) .................................. 6, 8

*Embarcadero Techs., Inc. v. Redgate Software, Inc.*,
  No. 1:17-cv-444-RP, 2017 WL 5588190 (W.D. Tex. Nov. 20, 2017) ................................ 6

*Golden Cheek Ventures, L.P. v. Brazos Elec. Power Coop., Inc.*,
  No. 4:15-cv-0821-O, 2015 WL 13469994 (N.D. Tex. Nov. 10, 2015) ............................... 6

*H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs., LLC*,
  No. 3:09-CV-00390-L, 2009 WL 1766095 (N.D. Tex. June 23, 2009) .............................. 4

*La Union Del Pueblo Entero v. FEMA*,
  608 F.3d 217 (5th Cir. 2010) .............................................................................................. 3

*Leaf Trading Cards, LLC v. Upper Deck Co.*,
  No. 3:17-cv-3200-N, 2019 WL 7882552 (N.D. Tex. Sept. 18, 2019) ................................. 4

*Luckenbach Texas, Inc. v. Skloss*,
  No. 1:21-CV-871-RP, 2022 WL 5568437 (W.D. Tex. July 8, 2022) ................................. 5

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ......................................................................................................... 11

*Millennium Funding, Inc. v. 1701 Mgmt. LLC*,
  No. 21-cv-20862, 2021 WL 3618227 (S.D. Fla. Aug. 16, 2021) ........................................ 4

*Morehouse Enterprises, LLC v. ATF*,
  2022 WL 3597299 (D.N.D. Aug. 23, 2022), *appeal docketed* ..................................................................7

*Munaf v. Geren*,
  553 U.S. 674 (2008) ...............................................................................................................................3

*NFIB v. Perez*,
  No. 5:16-CV-00066-C, 2016 WL 3766121 (N.D. Tex. June 27, 2016)................................................10

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
  142 S. Ct. 2111 (2022) .........................................................................................................................11

*Nken v. Holder*,
  556 U.S. 418 (2009) ...............................................................................................................................3

*Pals Grp., Inc. v. Quiskeya Trading Corp.*,
  No. 16-23905-CIV-GOODMAN, 2017 WL 532299 (S.D. Fla. Feb. 9, 2017)......................................4

*Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*,
  188 F. Supp. 2d 1350 (S.D. Fla. 2002) ...................................................................................................4

*Taylor v. Biglari*,
  971 F. Supp. 2d 847 (S.D. Ind. 2013) .....................................................................................................5

*Texas v. Biden*,
  10 F.4th 538 (5th Cir. 2021) ...................................................................................................................8

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) ..................................................................................................................9

*VanDerStok v. Garland*,
  No. 4:22-CV-00691-O, 2022 WL 4009048 (N.D. Tex. Sept. 2, 2022) ......................................... 4, 6, 7

## STATUTES

18 U.S.C. § 922(a)(2)................................................................................................................................8

18 U.S.C. § 922(g) ........................................................................................................................... 2, 9, 12

## REGULATIONS

Final Rule, 87 Fed. Reg 24,652 (April 26, 2022)..............................................................................*passim*

**OTHER AUTHORITIES**

ATF, Complete Federal Firearms Listings,
  https://www.atf.gov/firearms/listing-federal-firearms-licensees/complete?field_ffl_date_value%5Bvalue%5D%5Byear%5D=2022&ffl_date_month%5Bvalue%5D%5Bmonth%5D=8 ..................................................................................................................8

Charles Alan Wright & Arthur R. Miller, et al.,
  11a Federal Practice & Procedure § 2948.1 (3d ed., Apr. 2017 update) ...............................5

**INTRODUCTION**

After sitting on the sidelines for months waiting to see the outcome of litigation in multiple district courts challenging the Final Rule issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") amending certain regulatory definitions of terms used in federal firearms laws, Intervenor BlackHawk Manufacturing Group d/b/a 80 Percent Arms (BlackHawk), now seeks to opt into an existing preliminary injunction granted by this Court to another party. BlackHawk offers no explanation for why it deliberately delayed seeking any injunctive relief for almost five months after the Final Rule was issued and for an additional month after the Final Rule took effect. An entity that faces a genuine threat to its existence does not take such an extended unexplained delay before seeking emergency injunctive relief, and this Court should deny BlackHawk's motion on this basis alone.

BlackHawk has also failed to demonstrate that it will be irreparably harmed absent injunctive relief, or that the public interest favors the granting of such an injunction. BlackHawk is a federal firearms licensee, and therefore can lawfully sell any and all of the products at issue under the Final Rule. BlackHawk does not specify what financial harm it faces given that the Final Rule does not prohibit it from selling any firearm or frame or receiver, but even if it asserts that there may be some *de minimis* costs associated with complying with federal firearms laws in selling its products, those do not rise to the level of irreparable harm necessary to obtain injunctive relief. BlackHawk's actual complaint seems to be that it would be harmed by being unable to sell certain of its products to persons who are legally prohibited from purchasing or possessing firearms, and by having to comply with serialization and record-keeping requirements designed to help law enforcement prevent and solve violent crime. BlackHawk has not identified any liberty interest in selling products without complying with such requirements, and certainly has not made any showing that any interest it has in not complying with such requirements outweighs the very strong public interest in public safety and crime prevention those requirements are designed to further.

Accordingly, because BlackHawk has inexplicably delayed in bringing this supposedly urgent request for injunctive relief, and because it has failed to demonstrate how it would be irreparably harmed given that it can legally sell any of the products at issue, this Court should deny BlackHawk's request for injunctive relief.

## BACKGROUND

ATF promulgated the Final Rule on April 26, 2022, 87 Fed. Reg. 24,652, and Plaintiffs initiated this challenge to the Final Rule on August 11, 2022. ECF No. 1.[1] On August 17, 2022, Plaintiffs moved for a preliminary injunction. ECF No. 15. After briefing from both sides on Plaintiffs' motion, on September 2, 2022, this Court granted Plaintiffs' motion for preliminary injunction in part, holding that Plaintiffs had shown they were likely to succeed on the merits of at least their claim that portions of the Final Rule exceeded the authority granted to ATF under the Gun Control Act (GCA), that one of the Plaintiffs, Tactical Machining, LLC (Tactical) had shown that it would be irreparably harmed absent the injunctive relief requested, and that the public interest and balance of the equities favored granting injunctive relief to Plaintiff Tactical. Order, ECF No. 56. Accordingly, this Court enjoined Defendants "from implementing and enforcing" the challenged provisions of the Final Rule against Tactical.[2] *Id.*

Almost three weeks later, on September 22, 2022, BlackHawk moved to intervene. ECF No. 76. This Court granted the motion to intervene on October 18, 2022. ECF No. 98. On October 20, 2022, BlackHawk filed its Complaint in Intervention. ECF No. 99. Also on October 20, 2022,

---

[1] Defendants have previously provided a thorough discussion of the relevant statutory and regulatory backgrounds as well as the amendments to regulatory definitions contained in the Final Rule in a previous pleading, *see* Defs.' Resp. at 2-6, ECF No. 41, and therefore do not provide a full discussion of that background here.

[2] The Court later modified the scope of the injunction so that the injunction also protected the two individual Plaintiffs Jennifer VanDerStok and Michael Andren, as well as Tactical's customers, ECF No. 89, provided that those individuals are not prohibited from possessing firearms pursuant to 18 U.S.C. § 922(g), ECF No. 91.

2

BlackHawk filed its Motion for a Preliminary Injunction. ECF No. 102. In the Motion, BlackHawk seeks "a determination that BlackHawk is entitled to the injunctive relief granted by the Court in said September 2 Order and subsequently expanded in its Order dated October 1, 2022." *Id.* (citing ECF No. 56 and ECF No. 89).

## LEGAL STANDARDS

"A preliminary injunction is an 'extraordinary and drastic remedy,'" *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted), that "should only issue if the movant shows: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest," *La Union Del Pueblo Entero v. FEMA*, 608 F.3d 217, 219 (5th Cir. 2010). The last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

**I.   Defendants Respectfully Preserve Their Argument That BlackHawk Has Failed to Demonstrate a Likelihood of Success on the Merits.**

Defendants believe that BlackHawk has failed to demonstrate a likelihood of success on any the claims presented in its Complaint. In its Memorandum in support of its Motion for Preliminary Injunction, BlackHawk only asserts that it is likely to succeed on a single claim – that certain portions of the Final Rule exceeded the authority granted to ATF under the Gun Control Act. BlackHawk's Br. in Supp. of Mot. for Prelim. Injunction at 10-12, ECF No. 103 (Br.). For the reasons set forth in Defendants' response in opposition to the original Plaintiffs' initial motion for preliminary injunction, ATF did act well within the scope of its statutory grant of authority in amending the definitions of the terms "firearm" and "frame or receiver." Defs.' Resp. at 7-14, ECF No. 41. However, Defendants recognize that in enjoining these portions of the Final Rule, the Court held that Plaintiffs were likely to succeed on their claim that ATF had acted in excess of its statutory authority. Order at 6-16, ECF

3

No. 56. The argument made by BlackHawk in its Motion is not materially different from the argument that was the subject of this Court's previous likelihood-of-success holding. Accordingly, Defendants do not detail the same arguments previously made to, and rejected by, this Court, but instead respectfully incorporate those arguments as to why ATF acted within the scope of its statutory authority for preservation purposes.

## II. BlackHawk Has Not Shown That It Will Incur Irreparable Harm Absent a Preliminary Injunction.

### A. BlackHawk's Unexcused Delay in Seeking Emergency Relief Demonstrates That It Will Not Suffer Irreparable Harm Absent Such Relief.

BlackHawk's months-long delay in seeking preliminary relief weighs heavily against its assertion that it would suffer irreparable harm without such relief. "[D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction." *Anyadike v. Vernon Coll.*, No. 7:15-cv-00157-O, 2015 WL 12964684, at *4 (N.D. Tex. Nov. 20, 2015). This Court has recognized that "[a]bsent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *VanDerStok v. Garland*, No. 4:22-CV-00691-O, 2022 WL 4009048, at *9 (N.D. Tex. Sept. 2, 2022) (quoting *Anyadike*, 2015 WL 12964684, at *4). "[C]ourts generally consider anywhere from a three-month delay to a six-month delay enough to militate against issuing injunctive relief." *Leaf Trading Cards, LLC v. Upper Deck Co.*, No. 3:17-cv-3200-N, 2019 WL 7882552, at *2 (N.D. Tex. Sept. 18, 2019) (collecting cases).[3]

---

[3] *See also, e.g., Anyadike*, 2016 WL 12964684, at *3 ("several-month delay in filing . . . militates against a finding of irreparable harm"); *H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs., LLC*, No. 3:09-CV-00390-L, 2009 WL 1766095, at *4 (N.D. Tex. June 23, 2009) (delay of almost five months undercut assertion of irreparable harm); *Pals Grp., Inc. v. Quiskeya Trading Corp.*, No. 16-23905-CIV-GOODMAN, 2017 WL 532299, at *6 (S.D. Fla. Feb. 9, 2017) (three-month delay "is by itself sufficient grounds to deny its request for an injunction"); *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1356 (S.D. Fla. 2002) (finding that a "three-month delay . . . undercuts any sense of urgency"); *Comic Strip, Inc. v. Fox Television Stations, Inc.*, 710 F. Supp. 976, 981 (S.D.N.Y. 1989) ("three month delay"); *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, No. 21-cv-20862, 2021 WL 3618227, at *10 (S.D. Fla. Aug.

BlackHawk alleges irreparable harm as a result of "the publishing of the Final Rule." Br. at 16. However, ATF announced the Final Rule on April 11, 2022 and published it in the Federal Register on April 26, 2022, with an effective date of August 24, 2022. Inexplicably, however, BlackHawk did not seek intervention in this case in order to move for a preliminary injunction until September 22, 2022, more than five months after ATF announced the Final Rule. Nor can BlackHawk claim that it was unaware of the Final Rule because it provides products to Division 80 LLC, a distributor of firearms parts that filed suit challenging the Final Rule in the Southern District of Texas in May 2022. *See Div. 80 v. Garland*, No. 3:22-cv-00148 (S.D. Tex.), Compl., ECF No. 1 (filed May 9, 2022); Supp. Decl. of Brandon Padilla ¶ 7, ECF No. 33-1 (stating that 80 Percent Arms, the name under which BlackHawk operates, is one of two manufacturers supplying firearm parts to Division 80 for distribution). Indeed, the same counsel for Division 80 is also counsel for BlackHawk in this action.

"Undue delay in seeking a preliminary injunction tends to negate the contention that the feared harm will truly be irreparable." *Luckenbach Texas, Inc. v. Skloss*, No. 1:21-CV-871-RP, 2022 WL 5568437, at *4 (W.D. Tex. July 8, 2022) (citation omitted); *see also* Charles Alan Wright & Arthur R. Miller, et al., 11a Federal Practice & Procedure § 2948.1 (3d ed., Apr. 2017 update) ("A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction."). After all, "[i]f a plaintiff has already been subjected to the putative harm caused by the defendants' conduct for a significant period of time, he or she cannot credibly argue that pressing hardship requires injunctive relief in the interim before the underlying matter is resolved." *Taylor v. Biglari*, 971 F. Supp. 2d 847, 853 (S.D. Ind. 2013). Consequently, BlackHawk's "[u]ndue delay in seeking a preliminary injunction tends to negate the

---

16, 2021) ("[I]t is not uncommon for courts to deny a preliminary injunction in the face of unexplained delays of more than two months") (collecting cases); *Blue-Grace Logistics LLC v. Fahey*, 340 F.R.D. 460, 467 (M.D. Fla. 2022) (same).

contention that the feared harm will truly be irreparable." *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-cv-444-RP, 2017 WL 5588190, at *3 (W.D. Tex. Nov. 20, 2017).

In its order granting in part the original plaintiffs' motion for a preliminary injunction, the Court determined that Tactical had provided a satisfactory explanation for its delay in seeking emergency relief because it had requested a classification letter from ATF the day after the Rule had been announced. *See VanDerStok*, 2022 WL 4009048, at *9. By contrast, BlackHawk has failed to provide a "good explanation[] for [its] delay" in moving for a preliminary injunction. *Id.* BlackHawk fails to explain why it decided not to seek emergency injunctive relief until five months after ATF had announced the Rule and a full month after the Rule had already gone into effect. *See Golden Cheek Ventures, L.P. v. Brazos Elec. Power Coop., Inc.*, No. 4:15-cv-0821-O, 2015 WL 13469994, at *2 (N.D. Tex. Nov. 10, 2015) ("Golden Cheek's delay in filing until just six days before construction is set to begin not only limits the Court's ability to analyze Plaintiff's claims, it militates against a finding of irreparable harm.").

BlackHawk has not only delayed seeking preliminary injunctive relief, but has also deliberately foregone multiple opportunities to do so. In May 2022, Division 80 LLC—a firearms distributor to which BlackHawk supplies products—filed suit challenging the Rule and shortly thereafter sought preliminary injunctive relief. *See Div. 80 v. Garland*, No. 3:22-cv-00148 (S.D. Tex.), Emergency Mot. for Preliminary Inj., ECF No. 11 (June 6, 2022). But BlackHawk declined to join the case. The Court in *Division 80* denied the plaintiff's preliminary injunction motion on August 23, 2022. *Div. 80, LLC v. Garland*, No. 3:22-CV-148, 2022 WL 3648454 (S.D. Tex. Aug. 23, 2022). In its memorandum decision, the court specifically called attention to the fact that "Division 80 relies on two manufacturers for its sales stock," including BlackHawk, but that "[n]either has joined the lawsuit, sought to appear as an amicus curiae, or submitted any evidence that it would close its doors in the absence of an injunction in this case." *Id.* at *2 n.4.

6

A second lawsuit was filed in July 2022 challenging the Rule and seeking preliminary injunctive relief. *See Morehouse Enterprises, LLC v. ATF*, No. 3:22-cv-116, Compl. (filed July 5, 2022); Mot. for Preliminary Inj., ECF No. 15 (filed Aug. 17, 2022). Once again, BlackHawk declined to join that suit as a plaintiff, or to join in the motion for preliminary injunctive relief. That court likewise denied the motion for a preliminary injunction. *See Morehouse Enterprises, LLC v. ATF*, 2022 WL 3597299 (D.N.D. Aug. 23, 2022), *appeal docketed*. The court found that the plaintiffs' delay of "essentially three months" in waiting until July 25, 2022, to move for a preliminary injunction to challenge the Rule "gives the Court serious pause" and "tends to weigh against a finding of irreparable harm." *Id.* at *12.

Finally, when the original plaintiffs in this action filed suit, BlackHawk once again chose to sit on the sidelines. It delayed joining this action or joining in the original plaintiffs' motion for a preliminary injunction until a month after the Court had already granted preliminary injunctive relief. And BlackHawk has failed to provide any "good explanation[] for [its] delay." *VanDerStok*, 2022 WL 4009048, at *9. After inexplicably sitting on its rights for an extended period of time, BlackHawk cannot satisfy its burden of demonstrating imminent irreparable harm.

**B.     BlackHawk Fails to Substantiate Any Imminent Threat of Irreparable Injury.**

BlackHawk's unexplained delay alone severely undermines its claims of irreparable harm. But in any event, BlackHawk has failed to meet its burden to demonstrate that the Rule has caused or will imminently cause irreparable harm. Blackhawk argues that the Final Rule is causing irreparable harm by forcing BlackHawk to "stop[] selling" products that form a significant part of its revenue. Br. at 14; *see also* Lifschitz Decl. ¶ 11, ECF No. 103-1 (stating that BlackHawk has discontinued selling products that form a majority of BlackHawk's sales).

7

However, BlackHawk has not shown that the Final Rule actually prevents it from selling any of its products. BlackHawk is a federal firearms licensee (FFL) with a firearms manufacturing license.[4] BlackHawk could therefore sell its products, even if they are classified as firearms under the Final Rule, by following the Final Rule's requirements such as serializing them and running background checks on purchasers. Defendants acknowledge that in granting a preliminary injunction to Tactical, the Court noted that 18 U.S.C. § 922(a)(2) prohibits interstate transfers of firearms to non-FFLs. *See* ECF No. 56, at 17. But the Court has since found that FFLs can make sales to out-of-state purchasers through a local FFL with costs that are, at most, *de minimis*. ECF No. 89, at 7-8. BlackHawk has not even attempted to show that it could not sell its products in compliance with the Final Rule. Therefore, any harm to its business from its decision to discontinue products is self-inflicted, and not cognizable. *See Texas v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021) ("self-inflicted" harm "do[es] not count" as irreparable harm); *see also Div. 80*, 2022 WL 3648454, at *5 ("[A] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted.").

BlackHawk also argues in passing that if it complied with the Final Rule, it would suffer the irreparable harm of nonrecoverable compliance costs. Br. at 15. But BlackHawk has failed to submit any evidence of the nature or extent of any such compliance costs. It has therefore failed to establish irreparable harm based on compliance costs.[5]

---

[4] *See* ATF, Complete Federal Firearms Listings, https://www.atf.gov/firearms/listing-federal-firearms-licensees/complete?field_ffl_date_value%5Bvalue%5D%5Byear%5D=2022&ffl_date_month%5Bvalue%5D%5Bmonth%5D=8 (row 76713 of spreadsheet titled "0822-ffl-list.xlsx").

[5] Defendants acknowledge that the Court concluded that Tactical had established irreparable harm on the basis of compliance costs. ECF No. 56, at 18-19. Defendants respectfully disagree with that ruling, but it is also distinguishable because BlackHawk, unlike Tactical, has not even attempted to provide evidence of compliance costs. "The party seeking [a preliminary injunction] must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted," and a court should deny a preliminary injunction where a plaintiff "fail[s] to adduce any evidence" of "irreparable harm." *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 771, 777-78 (N.D. Tex. 2012).

**III.    The Balance of Equities and Public Interest Make Injunctive Relief Inappropriate.**

The balance of equities and public interest call for denial of BlackHawk's motion for a preliminary injunction because Defendants' interests in public safety and law enforcement outweigh harms that result from BlackHawk's unwillingness to comply with requirements for the commercial sale of firearm frames and receivers.  This Court implicitly recognized the public interest in preventing prohibited persons from obtaining products classified as frames or receivers under the Final Rule by clarifying that the preliminary injunction that applies to customers of Tactical does not extend to "individuals prohibited from possessing firearms under 18 U.S.C. § 922(g)."  ECF No. 91, at 3.  Congress has determined, however, that the threat of criminal prosecution under Section 922(g) alone does not suffice to facilitate law enforcement interests in preventing and solving violent crime.  Congress therefore included in the GCA a range of "prophylactic provisions" to further the statutory purpose of "keeping firearms out of the hands of categories of potentially irresponsible persons, including convicted felons."  *Barrett v. United States*, 423 U.S. 212, 220 (1976).  Indeed, the self-evident purpose of the GCA's background check requirement, in particular, is to prevent the sale of firearms to prohibited persons.  Likewise, without enforcement of the GCA's serialization and record-keeping requirements as to the products classified as frames and receivers under the Final Rule, "the proliferation of untraceable firearms" will continue to "severely undermine[]" federal, state, local, and international law enforcement.  87 Fed. Reg. at 24,659.

BlackHawk is wrong to argue that "[t]he government's interest 'can be effectively vindicated after a trial on the merits.'"  Br. at 18 (quoting *Texas v. United States*, 809 F.3d 134, 186 (5th Cir. 2015), *as revised* (Nov. 25, 2015)).  Unlike the separation of powers and federalism principles that the United States argued in *Texas* would be undermined by a preliminary injunction, *see Texas*, 809 F.3d at 186-87, Defendants' interests in law enforcement and public safety cannot be effectively vindicated after a trial on the merits if the Court grants BlackHawk's requested injunction.  Without background

checks, no safeguard at the point of purchase would prevent the sale to prohibited persons of products that can readily be converted into functional firearms. And BlackHawk's sale of such unserialized products without retention of sales records would render it far less likely that law enforcement would be able to trace the firearms in the event they were used to commit a crime. *See* 87 Fed. Reg. at 25,643. Neither of these harms to the public interest could be remediated at the conclusion of these proceedings.

Equally unpersuasive is BlackHawk's contention that the public interest in enforcement of the Final Rule is lessened because the regulations that it updates were longstanding. *See* Br. at 17-18 (citing *NFIB v. Perez*, No. 5:16-CV-00066-C, 2016 WL 3766121, at *33 (N.D. Tex. June 27, 2016)). As the Final Rule explains, "technological advances" that "pos[e] significant challenges to the regulation of frames and receivers and enabl[e] prohibited individuals to easily make firearms at home, especially if aided by personally owned equipment or 3D printers," necessitate this update to ATF's formerly longstanding regulations. 87 Fed. Reg. at 24,655. Those new technologies increase, rather than lessen, the public interest in enforcement of the Final Rule. This case is readily distinguishable on that ground from *Perez*, in which the district court found that the relevant agency "ha[d] not identified any changed circumstances that mandate[d] government action in service of [its] alleged interest . . . over fifty years after the [relevant statute] was enacted." *Perez*, 2016 WL 3766121, at *33.

On the other side of the balance, BlackHawk argues that the balance of equities and public interest tip in its favor in light of "the loss of civil liberties or . . . destruction of [its] business[]" that purportedly could result from continued enforcement of the Final Rule. Br. at 18. But BlackHawk has not credibly established that such enforcement threatens either those interests. With respect to the purported threat to the viability of BlackHawk's business, as noted above, *see supra* Part II.B, BlackHawk fails to establish that its business would not survive if it merely continued selling its full range of products consistent with the GCA's restrictions on the commercial sale of firearm frames

10

and receivers, thereby eliminating any risk of criminal prosecution of BlackHawk or its customers (provided that BlackHawk limited its sales to customers who are not prohibited under federal law from possessing firearms).

Similarly, with respect to the purported threat to BlackHawk's civil liberties, BlackHawk invokes "the possibility of criminal penalties for the production, sale, and purchase of items that have not historically been considered firearms prior to the Final Rule's taking effect." Br. at 18. But BlackHawk cites no authority for any legitimate liberty interest in selling unserialized firearm frames and receivers without conducting background checks or maintaining records. Again, BlackHawk fails to acknowledge that any risk of criminal penalties would be eliminated entirely through compliance with the requirements that already apply to the commercial sale of firearms, including serialization, background checks, record-keeping, and the use of FFLs in each state to facilitate interstate sales. It bears emphasis that the Final Rule does not prohibit the sale of any product to any non-prohibited person. Rather, it merely imposes "conditions and qualifications on the commercial sale of arms" that the Supreme Court repeatedly has affirmed as consistent with the Second Amendment. *Dist. of Columbia v. Heller*, 554 U.S. 570, 627 (2008); *see also McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2133 (2022); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring).

In sum, the public interest in law enforcement and public safety outweighs BlackHawk's interest in continuing to sell products classified as frames and receivers under the Final Rule without the serialization, background checks, recordkeeping, and licensed facilitation of interstate transfer that Congress has deemed necessary.

## IV. Any Relief Ordered Should Be Appropriately Limited.

For the reasons stated above, BlackHawk is not entitled to any preliminary injunction. In the alternative, if the Court were to issue a preliminary injunction, the Court should exclude customers

11

prohibited from possessing firearms by 18 U.S.C. § 922(g) from the scope of any injunction. BlackHawk states that it asks the Court to grant it "the relief currently afforded to Tactical," Br. at 17, but in actuality, BlackHawk seeks broader relief. BlackHawk "requests that this Court enjoin the enforcement of the Final Rule as to BlackHawk *and its customers*," *id.* at 19 (emphasis added), with no exceptions to the customers protected by the injunction. But this Court narrowed the scope of its injunction for Tactical such that "[t]he category of protected Tactical Machining 'customers,' as defined in this Court's Opinion & Order (ECF No. 89 at 21), does not include individuals prohibited from possessing firearms under 18 U.S.C. § 922(g), even if those individuals purchase firearms and firearms-related products directly from Tactical Machining." ECF No. 91, at 1-2.

The Court should reject BlackHawk's request for an injunction that would protect its purchasers who are prohibited from possessing firearms by 18 U.S.C. § 922(g). As the Court explained in its Order narrowing the injunction, the equities do not support extending the injunction to such prohibited persons, given "policy concerns regarding the proliferation of unserialized firearms, otherwise known as ghost guns. As argued by amici, 'Ghost guns are increasingly used in connection with criminal activity by high-risk individuals.'" ECF No. 91, at 4. More generally, the fact that BlackHawk affirmatively seeks to protect the ability of potentially dangerous individuals such as felons, unlawful drug users, and domestic abusers to obtain items and kits that can readily be converted into functional firearms casts doubt on BlackHawk's arguments for equitable relief.

## CONCLUSION

The Court should deny BlackHawk's motion for preliminary injunction.

DATED: October 28, 2022            Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

12

        LESLEY FARBY
Assistant Director, Federal Programs Branch

*/s/ Daniel Riess*
DANIEL RIESS
MARTIN M. TOMLINSON
TAISA GOODNATURE
JEREMY S.B. NEWMAN
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202)
Email:  Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On October 28, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Daniel Riess*