IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

JENNIFER VANDERSTOK;
MICHAEL G. ANDREN;
TACTICAL MACHINING, LLC, a limited liability company; and
FIREARMS POLICY COALITION, INC., a nonprofit corporation,

           *Plaintiffs*,

and

BLACKHAWK MANUFACTURING GROUP INC. d/b/a 80 PERCENT ARMS,

           *Intervenor-Plaintiff*,

      v.

MERRICK GARLAND, in his official capacity as Attorney General of the United States;
UNITED STATES DEPARTMENT OF JUSTICE;
STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,

           *Defendants*.

Civil Action No. 4:22-cv-691-O

**BLACKHAWK MANUFACTURING GROUP INC. d/b/a 80 PERCENT ARMS'
REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

I.     BLACKHAWK HAS DEMONSTRATED IRREPARABLE HARM .............................. 1

        A.  The Record Shows and This Court Has Recognized That BlackHawk Will Be Forced Out of Business by the Rule ................................................................ 1

        B.  Defendants' Argument Regarding BlackHawk's FFL Status Is Misplaced ................. 2

II.    THERE WAS NO UNDUE DELAY ...................................................................... 4

        A.  The Record Shows BlackHawk Moved Quickly to Protect Its Interests ...................... 4

        B.  Defendants' Claim of Undue Delay Is Not Supported by the Record and Is Based on a False Premise ................................................................................. 5

III.   THE EQUITIES FAVOR BLACKHAWK AND THE GRANTING OF A PRELIMINARY INJUNCTION ........................................................................ 8

IV.   BLACKHAWK SEEKS ONLY WHAT THIS COURT GRANTED TO TACTICAL ................................................................................................................ 9

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*ADT, LLC v. Cap. Connect, Inc.*,
  145 F. Supp. 3d 671 (N.D. Tex. 2015) ....................................................................................... 5

*Anyadike v. Vernon Coll.*,
  No. 7:15-CV-00157-O, 2015 WL 12964684 (N.D. Tex. Nov. 20, 2015) ................................. 5

*Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*,
  875 F.2d 1174 (5th Cir. 1989) ................................................................................................... 1

*BST Holdings, LLC v. OSHA*,
  17 F.4th 604 (5th Cir. 2021) ..................................................................................................... 9

*Embarcadero Techs., Inc. v. Redgate Software, Inc.*,
  No. 1:17-cv-444-RP, 2017 WL 5588190 (W.D. Tex. Nov. 20, 2017) ....................................... 7

*Grace v. District of Columbia*,
  187 F. Supp. 3d 124 (D.D.C. 2016) .......................................................................................... 9

*Golden Cheek Ventures, L.P. v. Brazos Elec. Power Coop., Inc.*,
  No. 4:15-cv-0821-O, 2015 WL 13469994 (N.D. Tex. Nov. 10, 2015) ..................................... 7

*Gordon v. Holder*,
  721 F.3d 638 (D.C. Cir. 2013) .................................................................................................. 9

*H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs., LLC*,
  No. 3:09-CV-00390-L, 2009 WL 1766095 (N.D. Tex. June 23, 2009) ................................ 6, 7

*Joseph Paul Corp. v. Trademark Custom Homes, Inc.*,
  No. 3:16-CV-1651-L, 2016 WL 4944370 (N.D. Tex. Sept. 16, 2016) ..................................... 6

*Leaf Trading Cards, LLC v. Upper Deck Co.*,
  No. 3:17-CV-3200-N, 2019 WL 7882552 (N.D. Tex. Sept. 18, 2019) ..................................... 6

*Luckenbach Texas, Inc. v. Skloss*,
  No. 1:21-CV-871-RP, 2022 WL 5568437 (W.D. Tex. July 8, 2022) ........................................ 6

*Marks Organization, Inc. v. Joles*,
  784 F.Supp.2d 322 (S.D.N.Y. 2011) ......................................................................................... 5

*Nat'l Fed'n of Indep. Bus. v. Perez*,
  No. 5:16-CV-00066-C, 2016 WL 3766121 (N.D. Tex. June 27, 2016) ................................... 9

*N. Mariana Islands v. United States*,
  686 F. Supp. 2d 7 (D.D.C. 2009) .......................................................................................... 9

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022) ........................................................................................................... 8

*Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*,
  No. 4:15-CV-571-ALM-CAN, 2015 WL 9876952 (E.D. Tex. Dec. 23, 2015), *report and recommendation adopted* No. 4:15-CV-571-ALM-CAN, 2016 WL 231160
  (E.D. Tex. Jan. 19, 2016) ....................................................................................................... 6

*TitleMax of Texas, Inc. v. City of Dallas*,
  No. 3:21-CV-1040-S-BN, 2021 WL 4994448 (N.D. Tex. Aug. 11, 2021), *report and recommendation adopted* No. 3:21-CV-1040-S-BN, 2021 WL 4991989
  (N.D. Tex. Oct. 27, 2021) ...................................................................................................... 4

**Statutes**

18 U.S.C. § 922(a)(2) ..................................................................................................................... 3

18 U.S.C. § 922(g) ......................................................................................................................... 9

**Other Authorities**

*Definition of "Frame or Receiver" and Identification of Firearms*,
  86 Fed. Reg. 51,249 (Aug. 19, 2022) .................................................................................... 8

Gun Control Act of 1968 ............................................................................................................... 8

## INTRODUCTION

The record shows that BlackHawk Manufacturing Group Inc. d/b/a 80 Percent Arms' ("BlackHawk") will be irreparably harmed by the Final Rule and took steps to protect its interests in a timely manner. Defendants' Opposition ("Opposition") to BlackHawk's Motion for Preliminary Injunction ("Motion") largely ignores this Court's prior findings and mischaracterizes the established facts in this case.

## ARGUMENT

### I. BLACKHAWK HAS DEMONSTRATED IRREPERABLE HARM

#### A. The Record Shows and This Court Has Recognized That BlackHawk Will Be Forced Out of Business by the Rule

The Court has already recognized the existential threat that the Final Rule poses to BlackHawk. In evaluating the potential prejudice to BlackHawk if intervention was denied, the Court concluded: "BlackHawk alleges—and the Court accepts at this stage—that it will likely be forced out of business within a few months." ECF No. 98 (Order dated October 18, 2022) at 6. The Court also concluded: "Indeed, *absent expanded injunctive relief*, BlackHawk's cognizable property interest may not only be impeded, it will likely dissolve entirely." ECF No. 98 at 7–8 (emphasis added).

This conclusion is amply supported by the record. BlackHawk has been forced to discontinue selling key products out of fear of criminal liability and has experienced a sharp decline in sales as its now fearful-and-confused customers are hesitant to continue purchasing BlackHawk's products. *See* ECF No. 103-1 (Lifschitz Decl.) ¶¶ 11–14. These facts fall squarely within the Fifth Circuit's definition of irreparable injury, which exists where "the potential economic loss is so great as to threaten the existence of the movant's business." *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989).

1

### B.  Defendants' Argument Regarding BlackHawk's FFL Status Is Misplaced

The record also shows that BlackHawk's status as a federal firearm licensee ("FFL") does not mean that it will not be irreparably harmed by the Final Rule. The Declaration submitted by BlackHawk's President demonstrates why this is so:

> BlackHawk is set up to make retailing of these products painless to customers using a direct-to-consumer model where orders are fulfilled directly. This is possible because the products that it sells do not meet the statutory definition of a "frame or receiver." Reclassifying those products as "frames or receivers" by agency rulemaking ignores the plain text of the GCA and the federal government's historical application of the GCA. Given the uncertainty over the meaning and enforcement of the Final Rule BlackHawk must now weigh the prospect of being forced to abandon the entire business model it has built up over the past decade due to concerns that its continued operations under its existing business model could subject it and its customers to criminal charges.
>
> Earlier in this case, the government asserted that there is no irreparable harm because businesses such as BlackHawk can simply get a license and continue with business as usual. As stated above, BlackHawk does business as 80 Percent Arms which is a fully licensed FFL, but being an FFL does not permit 80 Percent Arms to operate or survive under the regulatory scheme of the Final Rule, as nearly 100% of 80 Percent Arms' business is for the products described above that the Final Rule newly seeks to regulate as firearms.

Lifschitz Decl. ¶¶ 7–8.

The Final Rule requires BlackHawk to stop selling products that form a majority of its sales, and the ensuing precipitous revenue losses, unless reversed, will prove fatal to the business. *Id.* ¶¶ 11, 15, 20–21. Defendants do not contest BlackHawk's evidence, but instead suggest that any harm is not truly irreparable because BlackHawk, as an FFL, could continue to sell its products "even if they are classified as firearms under the Final Rule," and "[t]herefore, any harm to its business from its decision to discontinue products is self-inflicted, and not cognizable." Opp'n at 7–8.

In other words, Defendants argue that BlackHawk can avoid the extinction of its business by simply complying with the Final Rule. That argument is defective in two ways. First, it

2

disregards the BlackHawk's online, direct-to-consumer business model. Lifschitz Decl. ¶ 7. BlackHawk's status as a federally licensed manufacturer does nothing to preserve the viability of its direct-to-consumer sales of most of its products because those products are now unlawfully defined as "firearms." *See* 18 U.S.C. § 922(a)(2) (prohibiting interstate transfers of firearms to any person who does not have a license).[1] Second, even if it were factually sound, "Defendants' argument relies on the incorrect legal premise that compliance costs are not an irreparable harm . . . . Defendants admit that such costs are nonrecoverable. And nonrecoverable means irreparable." ECF No. 56 (Order dated September 2, 2022 ("September 2 Order")) at 17.

The record demonstrates that for BlackHawk the costs of "compliance" with the Final Rule would be the loss its existing direct-to-consumer business model. Defendants' arguments have already been rejected in the Court's prior Order granting injunctive relief to Tactical Machining:

> Tactical Machining will likely suffer irreparable harm, either by shutting down its operations forever or paying the unrecoverable costs of compliance. Defendants do not contest Plaintiffs' evidence. Rather, they suggest that Tactical Machining should trade one form of irreparable harm for another. That argument overlooks clear Fifth Circuit precedent. Tactical Machining faces substantial threat of irreparable harm, and it is no answer to say that it may avoid the harm by complying with an unlawful agency rule.

September 2 Order at 19 (footnotes omitted). Defendants, as with Tactical, do not refute BlackHawk's evidence, and the reappearance of these erroneous arguments in Defendants' Opposition to BlackHawk's Motion is an implicit admission that Defendants can articulate no meaningful distinction between the harm shown by BlackHawk and that shown by Tactical, which the Court has already found irreparable.

---

[1] The notion of *de minimus* compliance costs for FFLs is belied by ATF's own FFL Reference and Best Practices Guide which comprises hundreds of pages of content describing the extensive requirements for an FFL to operate in compliance with ATF regulations. *See* https://www.atf.gov/firearms/federal-firearms-licensee-quick-reference-and-best-practices-guide

3

## II.     THERE WAS NO UNDUE DELAY

### A.     The Record Shows BlackHawk Moved Quickly to Protect Its Interests

The relevant history is already known to the Court. BlackHawk's first involvement in this case occurred September 8—only 15 days after the Final Rule's effective date—when BlackHawk submitted a declaration in support of Plaintiffs' request to expand the preliminary injunction. ECF No. 62-5. While at the time BlackHawk submitted the declaration there was a possibility that injunctive relief could be extended to protect BlackHawk's ability to continue operating, BlackHawk nevertheless moved to intervene in this case on September 22, 2022, ECF No. 76, concurrently submitting a proposed complaint and motion for preliminary injunction. ECF Nos. 77-1 and 77-3.

Over Defendants' objections, the Court found that BlackHawk's Motion to Intervene was timely, and in doing so recounted that "BlackHawk filed its motion to intervene just over a month after Plaintiffs' original complaint, within a month of the Final Rule's effective date, and within twenty days of learning that it would not be covered by the Court's preliminary injunction as a member of Plaintiff FPC's organization." ECF No. 98 at 5; *see TitleMax of Texas, Inc. v. City of Dallas*, No. 3:21-CV-1040-S-BN, 2021 WL 4994448, at *7 (N.D. Tex. Aug. 11, 2021) (finding that six-week delay between removal to federal court and filing of motion for preliminary injunction "is explainable and should not be held against Plaintiffs"), *report and recommendation adopted*, No. 3:21-CV-1040-S-BN, 2021 WL 4991989 (N.D. Tex. Oct. 27, 2021).

The factual and procedural history relevant to and comprising *this case* readily affirms that BlackHawk has established that enforcement of the Final Rule will inflict irreparable harm in the absence of injunctive relief. *See* ECF No. 98 at 6 ("BlackHawk's decision to forego intervention

4

in another case, or to bring an independent case, is irrelevant to the issue of timeliness in this case.").

> B. **Defendants' Claim of Undue Delay Is Not Supported by the Record and Is Based on a False Premise**

Defendants' claim of delay fails as a factual and legal matter. As a factual matter (as discussed above), Defendants' opening statement that BlackHawk was "sitting on the sidelines for months", Opp'n at 1, misstates the record. As a legal matter, Defendants' argument fails because courts routinely have granted preliminary injunctions in time periods much longer than any claim of delay here. *See, e.g.*, *ADT, LLC v. Cap. Connect, Inc.*, 145 F. Supp. 3d 671, 699 (N.D. Tex. 2015) (finding that movant's eight-month delay was not unreasonable and noting that imminence of alleged irreparable harm is not undermined where delays were "caused by [plaintiff's] good faith efforts to investigate facts and law") (quoting *Marks Organization, Inc. v. Joles*, 784 F.Supp.2d 322, 333–34 (S.D.N.Y. 2011)).

Defendants' arguments regarding the timeliness of BlackHawk's Motion include little engagement with the relevant decisions and procedural history of *this proceeding*. Instead, their Opposition makes these assertions in reliance on in-circuit case law that is distinguishable or out-of-circuit precedent with no controlling weight.

For example, Defendants cite *Anyadike v. Vernon Coll.*, No. 7:15-CV-00157-O, 2015 WL 12964684, at *4 (N.D. Tex. Nov. 20, 2015), for the rather prosaic observation that "delay in seeking a remedy is an important factor bearing on the need for preliminary injunction." Opp'n at 4. However, Defendants fail to explain how *Anyadike*—which involved a plaintiff who had filed two motions for TRO and, after the first was dismissed, waited two weeks before filing a second, and at which time first provided defendants with notice of suit—provides any relevant, instructive application here. *See Anyadike* at 3. Defendants' quote similarly anodyne remarks from the equally

5

distinguishable *Luckenbach Texas, Inc. v. Skloss*, No. 1:21-CV-871-RP, 2022 WL 5568437, at *4–5 (W.D. Tex. July 8, 2022) (involving a nearly two-year delay: "Although Plaintiff began sending cease and desist letters as early as March 2020 that accused Skloss of infringement, Plaintiff waited until the end of 2021 to file its motion seeking a preliminary injunction.").

Defendants also rely on *Leaf Trading Cards, LLC v. Upper Deck Co.*, No. 3:17-CV-3200-N, 2019 WL 7882552, at *2 (N.D. Tex. Sept. 18, 2019), for the proposition that a three-month to six-month delay militates against issuing injunctive relief. Opp'n at 4. However, unlike BlackHawk, the movant in *Leaf Trading* was denied injunctive relief because it didn't move for a preliminary injunction until one year after filing suit. *Leaf Trading*, 2019 WL 7882552 at *1. Furthermore, where the *Leaf Trading* court stated that a "three-month delay to a six month delay" was enough to rebut any presumption of irreparable harm, it string-cited a variety of trademark and patent cases where the shortest delay was only *four* months (an out-of-circuit case) and the other examples were five-to-six month delays. *Id.* at 2.[2] Here, BlackHawk filed its proposed motion for injunctive relief simultaneously with its motion to intervene. ECF Nos. 76 and 77-3.

Defendants also rely on *H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs., LLC*, No. 3:09-CV-00390-L, 2009 WL 1766095, at *4 (N.D. Tex. June 23, 2009). Opp'n at 4 n.3. The *H.D. Vest* court denied injunctive relief to the movant in a trademark infringement case, and in its decision discussed how movant's failure to provide evidence of injury, failure to explain why money

---

[2] Distinguishable cases cited in *Leaf Trading* included *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-CV-1651-L, 2016 WL 4944370, at *13–17 (N.D. Tex. Sept. 16, 2016) (denying motion for TRO and preliminary injunction that was filed without support and concluding its analysis with observation that "Plaintiff's [six month] delay in seeking a TRO and preliminary injunction militates against" granting motion); *Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, No. 4:15-CV-571-ALM-CAN, 2015 WL 9876952, at *8 (E.D. Tex. Dec. 23, 2015) (denying injunction in patent infringement case where motion failed to show nonspeculative harm or that money damages were inadequate and finding five-month delay by patentee "strongly suggests that the patentee does not face irreparable harm"), *report and recommendation adopted*, No. 4:15-CV-571, 2016 WL 231160 (E.D. Tex. Jan. 19, 2016).

damages were inadequate, and five-month delay in filing its motion would have rebutted a presumption—applicable in other circuits but not the Fifth—of irreparable harm from alleged infringement. *H.D. Vest*, 2009 WL 1766095 at *4. As previously noted, BlackHawk here filed its properly supported Motion less than two months after commencement of the harm caused by the Final Rule taking effect.

Defendants rely on two additional cases that are also readily distinguishable. In *Golden Cheek Ventures, L.P. v. Brazos Elec. Power Coop., Inc.*, No. 4:15-cv-0821-O, 2015 WL 13469994 (N.D. Tex. Nov. 10, 2015), Opp'n at 6, the movant waited nearly 17 months before filing its motion for temporary restraining order, and, when it finally did so, submitted counterproductive affidavits that undermined a finding of irreparable harm. *Golden Cheek*, 2015 WL 13469994 at *2–3. And in *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-cv-444-RP, 2017 WL 5588190 (W.D. Tex. Nov. 20, 2017), the court denied a motion for preliminary injunction because plaintiff filed its complaint six months after the injurious event and then took another month after filing its complaint to file brief in support of its motion for injunction. *Embarcadero*, 2017 WL 5588190 at *3. Here, in contrast, BlackHawk filed a declaration in support of the initial motion for injunctive relief in this proceeding, ECF No. 62-5, and moved to intervene less than one month after the commencement of the harm, and in the process simultaneously filed a proposed complaint and a proposed motion for injunctive relief and brief in support, ECF No. 77-3, and once intervention was granted, ECF No. 98, BlackHawk filed its Motion and brief in support of its Motion just two days after being allowed to intervene. ECF Nos. 102 and 103.

The remaining cases that Defendants cite in support of their contention that BlackHawk's Motion is not timely are out-of-circuit. These cases require little comment, as even the in-circuit

7

cases hold no weight against BlackHawk. In short, this Court should treat these authorities for what they are: inapplicable and unpersuasive.

Defendants also base their "delay" argument on hypothetical scenarios that pre-date the effective date of the Final Rule. The Final Rule was published on April 26, 2022, consisted of nearly 400 pages, differed significantly from the Proposed Rule, upended decades of precedent, and was followed in June by the Supreme Court's opinion in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), further changing the legal landscape related to firearms. The formal status of the Final Rule itself remained fluid even after the commencement of this lawsuit when—just five days before the Final Rule went into effect—ATF published a notice of Corrections to the Final Rule.[3] In this light there is no basis to judge what a plaintiff should or should not have done under these circumstances.

### III. THE EQUITIES FAVOR BLACKHAWK AND THE GRANTING OF A PRELIMINARY INJUNCTION

This Court has already found that provisions of the Final Rule are "facially unlawful," that the Final Rule is outside the scope of ATF's authority under the Gun Control Act, and that the Final Rule unlawfully treats weapons parts kits as firearms. September 2 Order at 6, 12, 15 and 22. There is no reason, as the Government requests, to undertake a fresh balancing of equities, reframed as those of "Defendants' interests in public safety and law enforcement [weighed against] harms that result from BlackHawk's unwillingness to comply with requirements for the commercial sale of firearm frames and receivers." Opp'n at 9.

In addition to ignoring the Court's prior findings, Defendants' Opposition is dismissive of the reliance interest that developed among industry participants like BlackHawk as a result of 50+

---

[3] Definition of "Frame or Receiver" and Identification of Firearms; Corrections, 87 Fed. Reg. 51,249 (Aug. 19, 2022).

8

years of ATF precedent, and cites "technological advances" as necessitating the Final Rule's "update to ATF's formerly longstanding regulations." Opp'n at 10. Over the course of 50+ years and multiple administrations of both political parties, it has never been government's position to regulate receiver blanks. ATF previously (and rightfully) determined that receiver blanks were not firearms, and as such ATF has denied any legal authority in regulating parts, jigs, and instructions sold by companies like BlackHawk. Now, because of the current administration's stance—not the government's stance—an entire industry has been (unlawfully) disrupted by actions that Defendants defend as a newly unveiled government interest. *See Nat'l Fed'n of Indep. Bus. v. Perez*, No. 5:16-CV-00066-C, 2016 WL 3766121, at *33 (N.D. Tex. June 27, 2016) ("the fact that DOL has waited over fifty years to promulgate its New Rule strongly suggests there is no compelling government interest at stake").

Furthermore, "enforcement of an unconstitutional law is always contrary to the public interest." *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150 (D.D.C. 2016) (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)). Moreover, the "public interest" is properly "served by maintaining our constitutional structure and maintaining the liberty of individuals[.]" *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021); *see N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009) ("[T]he public interest is served when administrative agencies comply with their obligations under the APA.").

### IV.  BLACKHAWK SEEKS ONLY WHAT THIS COURT GRANTED TO TACTICAL

Defendants' final claim that BlackHawk seeks to extend the scope of any injunction to "customers prohibited from possessing firearms by 18 U.S.C. § 922(g)", Opp'n at 11–12, is wrong and requires little comment.  BlackHawk has never been interested in selling to prohibited persons and it is unfair for the Government to suggest it.

9

As discussed in its initial Brief, Blackhawk seeks only to carry on its business as it did prior to the unlawful Final Rule and under the same as protections as Tactical. ECF No. 103 at 1362.

## CONCLUSION

For the foregoing reasons, BlackHawk respectfully requests that this Court enjoin the enforcement of the Final Rule as to BlackHawk and issue a determination that BlackHawk is entitled to the injunctive relief granted in the Court's September 2 and October 1 Orders and remains protected to continue transacting business with its customers to the full extent and capacity as existed prior to the effective date of the Final Rule.

Respectfully submitted,

s/ *Brian D. Poe*
Brian D. Poe
TX Bar No. 24056908
BRIAN D. POE, ATTORNEY AT LAW PLLC
The Bryce Building
909 Throckmorton Street
Fort Worth, TX 76102
Phone: (817) 870-2022
Fax: (817) 977-6501
bpoe@bpoelaw.com

Michael J. Sullivan
*Pro Hac Vice*, MA Bar No. 487210
J. Christopher Amrhein, Jr.
*Pro Hac Vice*, MA Bar No. 703170
Nathan P. Brennan
*Pro Hac Vice*, MN Bar No. 389954
ASHCROFT LAW FIRM LLC
200 State Street, 7th Floor
Boston, MA 02109
Phone: (617) 573-9400
Fax: (617) 933-7607
msullivan@ashcroftlawfirm.com
camrhein@ashcroftlawfirm.com

nbrennan@ashcroftlawfirm.com

*Counsel for Intervenor-Plaintiff BlackHawk Manufacturing Group Inc. d/b/a 80 Percent Arms*

11

## **CERTIFICATE OF SERVICE**

I certify that on October 31, 2022, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the registered CM/ECF users in this action.

/s/ *Brian D. Poe*
Brian D. Poe