UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JENNIFER VANDERSTOK, et al., § <br> § <br> Plaintiffs, § <br> § <br> BLACKHAWK MANUFACTURING § <br> GROUP INC. d/b/a 80 Percent Arms, § <br> § <br> Intervenor-Plaintiff, § <br> § <br> DEFENSE DISTRIBUTED, and § <br> THE SECOND AMENDMENT § <br> FOUNDATION, INC. § <br> § <br> Intervenors-Plaintiffs, § <br> § <br> v. § <br> § <br> MERRICK GARLAND, in his Official § <br> Capacity as Attorney General of the United § <br> States, et al., § <br> § <br> Defendants. | Civil Action No. 4:22-cv-00691-O |

**BRIEF IN SUPPORT OF
DEFENSE DISTRIBUTED AND THE
SECOND AMENDMENT FOUNDATION, INC.'S
MOTION TO INTERVENE**

**Argument**

Defense Distributed and the Second Amendment Foundation, Inc. (SAF) move to intervene in this action for the purpose of challenging the regulation already at issue in this case, *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (hereinafter the new Final Rule), and obtaining relief from the Defendants' enforcement thereof.

The Court recently granted the motion to intervene of Blackhawk Manufacturing Group, Doc. 98, whose circumstances closely parallel Defense Distributed and SAF's. Defense Distributed's case for intervention is just as compelling as Blackhawk's in every relevant respect. The case for intervention is likewise well-established for SAF, a prominent national organization that promotes its members' Second Amendment interests. SAF's membership includes both Defense Distributed and individuals that, but for the challenged regulation, would be exercising their Second Amendment rights by doing business with firms like Defense Distributed.

The test for intervention of right is met as to both Defense Distributed and SAF, since each has interests relating to this action that are not currently represented adequately and will be impaired without intervention. The test for permissive intervention is met as well, since Defense Distributed and SAF's claims and the existing share a common legal core. The requested intervention is timely and will not delay the case or prejudice its existing parties. Defense Distributed and SAF have filed this motion with due diligence and are prepared to comply with all of the Court's existing scheduling orders. In particular, Defense Distributed and SAF's intervention would not hinder the Court's intended exercise of authority under Rule 65(a)(2) to consolidate the hearing on preliminary injunction to a trial on the merits for Count I of Plaintiffs' and Intervenor-Plaintiff's complaints. *See* Doc. 107. That keystone claim is common to all plaintiffs and is presented by these intervenors' proposed complaint as Count I as well.

## I. The Court should grant intervention of right under Rule 24(a)(2).

Primarily, Defense Distributed and SAF move to intervene of right under Federal Rule of Civil Procedure 24(a)(2). That requires showings of "(1) timeliness, (2) an interest relating to the action, (3) that the interest would be impaired or impeded by the case, and (4) that the interest is not adequately represented by existing parties." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009); *see generally* 7C Charles A. Wright & Arthur R. Miller et al., Federal Practice & Procedure § 1908 (3d ed. West 2022). Defense Distributed and SAF meet all four elements here.

Exhibit A to this motion is Defense Distributed and SAF's proposed complaint. It begins with a summary showing that all of Rule 24's requisite interests are clearly present:

> 1. Defense Distributed and the Second Amendment Foundation, Inc. challenge the federal government's new regulatory definition of "firearm," *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (Exhibit A) (hereinafter the new Final Rule), which illegally expands that keystone term of criminal law far beyond both its statutory and constitutional borders. The new regulatory definition of "firearm" is unprecedented. It uses supposedly delegated power to deem illegal for the first time ever vast swaths of traditional Second Amendment conduct that Congress itself did not and could not choose to make illegal.
>
> 2. The new Final Rule contradicts the statute it is supposed to be administering. Congress in the Gun Control Act defined "firearm" to include a weapon's actually finished "frame or receiver." Yet the new Final Rule expands the definition to criminalize (1) *unfinished frames and receivers—i.e.*, non-frame and non-receiver articles that *may become* a frame or receiver *if* additional processes sufficiently alter its material constitution, and (2) frame and receiver "part kits"—*i.e.*, kits of non-frame and non-receiver articles that *may become* a frame or receiver *if* additional processes sufficiently alter its material constitution. Both expansions contradict the Gun Control Act's "firearm" definition, which plainly understands that an unfinished frame or receiver is not an actual frame or receiver and that a part kit to make a frame or receiver is also not an actual frame or receiver. Such obvious statutory overreaches violate the Administrative Procedure Act.
>
> 3. The new Final Rule also violates the Administrative Procedure Act by failing to perform the inquiries mandated by *New York State Rifle & Pistol Ass'n, v. Bruen*, 142 S.Ct. 2111 (2022). To comply with the Second Amendment, the promulgating agencies needed to jettison balancing tests and consider only whether

their regulation is "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126-32. Yet because that did not happen—itself a key APA violation—it is no surprise that the new Final Rule tramples true historical traditions.

4. More fundamentally, the new Final Rule is an exercise of Legislative power that Congress did not in fact and could not have constitutionally delegated to the agencies at issue. Because the task of defining the Gun Control Act's "firearm" term has vast economic and political significance, a valid delegation of that power would have to have been (1) articulated *clearly*, and (2) accompanied by *intelligible principles* for its exercise. But because Congress did not *clearly* articulate a delegation of the power to define the Gun Control Act's "firearm" term, no such delegation occurred in fact. The major questions doctrine establishes this. *See, e.g.*, *West Virginia v. EPA*, 142 S. Ct. 2587 (2022). And because Congress did not accompany any such delegation with *intelligible principles* for its exercise, the separation of powers would not permit it. The nondelegation doctrine establishes this. *See, e.g.*, *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022).

5. For these and other reasons, the federal government's new regulatory definition of "firearm" should be held unlawful and set aside. Relief is especially critical for the instant plaintiffs, Defense Distributed and the Second Amendment Foundation, Inc., who but for the new Final Rule would be exercising their Second Amendment rights by engaging in the conduct that these Agencies have illegally criminalized. The resulting harms are concrete, particularized, and in many respects irreparable.

6. For years, Defense Distributed's entire business model has depended on its ability to deal in items that are *not* "firearms" under Gun Control Act itself and *not* "firearms" under prior regulations, but that *are* defined for the first time ever as "firearms" by the new Final Rule. The new Final Rule cuts a foundation of Defense Distributed's business model out from under it, sweeping away critical revenues, saddling it with massive new compliance costs, causing service provider disruptions, and damaging Defense Distributed's reputation and goodwill in the business community. These harms are largely irreparable and very probably existential.

7. The Second Amendment Foundation's members are suffering massive irreparable harms as well. Despite having a well-established constitutional right to manufacture their own firearm for self-defense at home, the new Final Rule stops SAF members from acquiring from firms like Defense Distributed the "unfinished" frames and receivers and/or frame and receiver "parts kits" that SAF members reasonably need to exercise their Second Amendment rights.

Ex. A at 2-4.

### A. The motion is timely.

The timeliness inquiry looks at "(1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene, (2) the extent of prejudice to existing parties from allowing late intervention, (3) the extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances." *In re Lease Oil Antitrust Litig.*, 570 F.3d at 247. Here the inquiry shows a diligent, non-prejudicial effort that favors intervention.

The length of time between Defense Distributed and SAF learning of their interest and the intervention request was reasonable, especially given the case's unique procedural posture. Defense Distributed is a member of FPC, Ex. A at ¶ 10, and FPC has in the case always sought to litigate on behalf of its members. *See* Doc. 89 at 13. The Court only recently resolved the issue of whether to have the preliminary injunction cover FPC's members. On October 1, 2022, the Court—in an order that expressly mentioned Defense Distributed—found that "FPC ha[d] not carried its burden to demonstrate its associational right to seek injunctive relief on behalf of its members." Doc. 89 at 15. In the wake of that circumstance comes the current intervention effort, which has proceeded with due diligence as swiftly as practicable. *See*, *e.g., Ass'n of Professional Flight Attendants v. Gibbs*, 804 F.2d 318, 320–21 (5th Cir. 1986) (five-month delay is reasonable).

Prejudice to existing parties is minimal or nonexistent. In this respect, the "only proper concern is how much *more* prejudice would result from [Defense Distributed and SAF's] intervention at this stage, versus an intervention earlier in the first 30 days of this litigation." Doc. 98 at 6. Just as with Blackhawk, Defense Distributed and SAF's intervention at this point (rather than slightly earlier) causes only "mere inconvenience." *Id.* And indeed, as compared to the burdens to defendants of Defense Distributed and SAF suing separately, intervening in this case now is by far the best use of resources for all parties and the courts. Unified litigation benefits all.

Defense Distributed and SAF are willing to comply with the case's current schedule. *See* Doc. 98 at 6. They, like all of the current parties, desire the fastest case resolution possible. In particular, Defense Distributed and SAF are perfectly willing to comply with the Court's intended advancement of a trial on the merits for Count I of Plaintiffs' and Intervenor-Plaintiff's complaints, *see* Docs. 107, 110, which overlap and subsume Count I of Defense Distributed and SAF's proposed complaint, *see* Ex. A at Part V.A. This "mitigates any purported prejudice on this ground." Doc. 98 at 6. It is also still true that this litigation has not yet reached a "critical stage." *Id.* And just as with Blackhawk's effort, *id.* the allegations (to be taken as true at this stage) show that both Defense Distributed and SAF will be prejudiced if intervention is denied because both are suffering ongoing irreparable harm. Ex. A at Part II.B-C. "As for unusual circumstances weighing for or against the timeliness of the intervention," Doc. 98 at 6, this factor either pushes in neither direction or weighs slightly in favor of intervention.[1]

### B. The requisite interests are claimed and not already represented.

Defense Distributed and SAF meet the requirement of having an interest relating to the action that may be impaired or impeded by the case's outcome. *See* Fed. R. Civ. P. 24(a)(2); *In re Lease Oil Antitrust Litig.*, 570 F.3d at 247. The Court rightly found that Blackhawk met these parts of the test, Doc. 98 at 7-8, and for essentially those same reasons the test is met here as well.

---

[1] Defense Distributed and SAF are private parties with finite resources and litigation capacities, and both are already stretched thin by the need to prosecute important preexisting litigation against federal officials violating other rights about firearms and the Constitution. The federal government should not be heard to complain when citizens take any longer to initiate one lawsuit because they are busy litigating against that same government's extraordinary wrongdoing in another. *See Def. Distributed & SAF v. Bruck*, 30 F.4th 414, 421 (5th Cir. 2022) ("Since 2013, [Defense Distributed and the Second Amendment Foundation, Inc.] have been challenging publication restraints imposed by the U.S. State Department, federal courts, and the State of New Jersey after Defense Distributed published to the Internet computer assisted design ('CAD') files for a single-round plastic pistol. . . . [Defense Distributed and SAF] ha[ve] yet to secure a court decision condemning what appear to be flagrant prior restraints."); *id.* at 430 ("Just when the Plaintiffs, after several years of litigation, thought they had obtained relief from a signed settlement agreement with the State Department, the NJAG loudly led a bevy of states in opposition. . . . [T]he State Department opted not to complete the settlement. Accordingly, the State Department did not modify relevant federal regulations, disavowed the license and exemption from regulations it had promised Defense Distributed, and refused to appeal adverse decisions by the Washington federal court.").

Defense Distributed's "protectible interest—in continued operation of its business—might be impaired or impeded by the outcome of this litigation." *Id.* at 7. "Indeed, absent expanded injunctive relief, [Defense Distributed's] cognizable property interest may not only be impeded, it will likely dissolve entirely." *Id.* at 7-8. The same is true for SAF, who advances the interests of members suffering irreparable harm akin to the individual plaintiffs. *See* Ex. A at Part. IV.B-C.

Finally, Defense Distributed and SAF's interests are not "adequately represent[ed]" at present. *See* Fed. R. Civ. P. 24(a)(2); *In re Lease Oil Antitrust Litig.*, 570 F.3d at 247. The Court rightly found that Blackhawk met this part of the test, Doc. 98 at 8-9, and for essentially those same reasons the test is met by Defense Distributed and SAF as well. Defense Distributed's status as a competitor seller vis-à-vis Tactical Machining "is a practical nuance sufficient to overcome" the relevant threshold. *Id.* The "current scope of the preliminary injunction, which affords protective relief to only Individual Plaintiffs and Tactical Machining, and Defendants' continued opposition to expansion of relief to FPC members—and specifically BlackHawk—satisfies this minimal threshold" too. *Id.* That Defense Distributed and SAF make unique arguments against the regulation (e.g., their Count II), is another point in favor of allowing intervention. *See Aransas Project v. Shaw*, 404 F. App'x 937, 941 (5th Cir. 2010) (per curiam) (an existing party's failure to "articulate legal arguments that [the intervenor] would put forth" can support intervention).

## II.     Alternatively, the Court should grant permissive intervention under Rule 24(b).

Alternatively, if the Court does not grant intervention of right, Defense Distributed and SAF move to intervene permissively under Federal Rule of Civil Procedure 24(b). This is warranted because Defense Distributed and SAF's request for permissive intervention is timely and because Defense Distributed and SAF's claims share common questions of law and fact with those of the main action. *See* Fed. R. Civ. P. 24(b); *see generally* Wright & Miller § 1911.

The Court rightly found that Blackhawk met this part of the test, Doc. 98 at 8-9, and for essentially those same reasons the test is met by Defense Distributed and SAF as well. The same showing of timeliness and lack of delay or prejudice for Rule 24(a)(2) meets the analogous threshold for Rule 24(b). *See id.* "Thus, the only remaining question is whether [Defense Distributed and SAF] ha[ve] a claim that shares with the main action a common question of law or fact." *Id.* Just like Blackhawk, Defense Distributed and SAF assert "claims and requests for relief that largely overlap with those of the existing Plaintiffs." *Id.* at 9-10. So this element is "clearly satisfied." *Id.* Thus, the Court should again conclude that "intervention is both permissible and accomplishes Rule 24's competing goals of judicial efficiency by consolidating multiple parties' challenges to the Final Rule while avoiding fruitless complexity." *Id.*

## Conclusion

The Court should grant the motion and direct the Clerk of the Court to add Defense Distributed and the Second Amendment Foundation, Inc. as parties to this case.

Respectfully submitted,

BECK REDDEN LLP

By /s/ *Chad Flores*
Chad Flores
cflores@beckredden.com
Texas Bar No. 24059759
Nicholas M. Bruno
nbruno@beckredden.com
Texas Bar No. 24097432
Zachary T. Nelson
znelson@beckredden.com
Texas Bar No. 24127240
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

Counsel for Defense Distributed and
The Second Amendment Foundation, Inc.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this submission was served on all counsel of record by the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure on November 2, 2022.

*/s/ Chad Flores*
Chad Flores