UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JENNIFER VANDERSTOK; MICHAEL G. ANDREN; TACTICAL MACHINING LLC, a limited liability company; FIREARMS POLICY COALITION, INC., a nonprofit corporation, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:22-cv-00691-O |
| BLACKHAWK MANUFACTURING GROUP INC., doing business as 80 PERCENT ARMS, | § § § § § | |
| Intervenor Plaintiff, | § § § | |
| v. | § § | |
| MERRICK GARLAND, in his Official capacity as Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, | § § § § § § § § § § § § | |
| Defendants. | § | |

## OPINION & ORDER ON BLACKHAWK MANUFACTURING GROUP INC. d/b/a 80 PERCENT ARMS' PRELIMINARY INJUNCTION

Before the Court are Intervenor-Plaintiff BlackHawk Manufacturing Group Inc. d/b/a 80 Percent Arms' Motion for Preliminary Injunction (Pl.'s Mot., ECF No. 102) and Brief in Support (Pl.'s Br. in Supp., ECF No. 103), both filed October 20, 2022; Defendants' Brief in Opposition to BlackHawk Manufacturing Group Inc. d/b/a 80 Percent Arms' Motion for Preliminary Injunction (Defs.' Resp., ECF No. 109), filed October 28, 2022; and BlackHawk Manufacturing

Group Inc. d/b/a 80 Percent Arms' Reply in Support of Motion for Preliminary Injunction (Pl.'s Reply, ECF No. 112), filed October 31, 2022. Having considered the parties' briefing, the Court **GRANTS** Intervenor-Plaintiff's motion.

## I.     BACKGROUND

The United States Congress has delegated the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") authority to regulate firearms in interstate commerce under the Gun Control Act of 1986. On April 26, 2022, ATF promulgated a Final Rule that purports to regulate partially manufactured firearm parts and weapon parts kits.[1] The Rule took effect on August 24, 2022.[2] Prior to its taking effect, on August 11, 2022, Plaintiffs brought this suit to challenge the legality of the Final Rule and claim, among other things, that the regulation exceeds the statutory authority that Congress vested in ATF.[3] Original Plaintiffs include Texas residents and firearm owners Jennifer VanDerStok and Michael G. Andren ("Individual Plaintiffs"); Firearms Policy Coalition, Inc. ("FPC"), a nonprofit organization, comprised of individuals and entities nationwide, that exists to promote Second Amendment rights through legislative and legal advocacy;[4] and Tactical Machining, LLC ("Tactical" or "Tactical Machining"), which manufactures and sells the products subject to the regulations at issue in this dispute.[5] Within a week of filing their complaint, on October 17, 2022, Plaintiffs moved for a preliminary injunction seeking to broadly enjoin the Government from enforcing its Final Rule.[6]

---

[1] *See* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (codified at 27 C.F.R. pts. 447, 478, 479).
[2] *Id.*
[3] Compl. 1, ECF No. 1.
[4] Compl. 8, ECF No. 1.
[5] Decl. of Darren Peters, Sr. 1–5, ECF No. 16-1, ¶¶ 4–11 (identifying partially manufactured frames or receivers as Tactical Machining's primary product offering, along with other parts potentially subject to the Rule).
[6] Pls.' Mot. for Prelim. Inj., ECF No. 15.

On September 2, 2022, the Court issued its First Opinion in which it found that provisions of ATF's Final Rule—specifically, 27 C.F.R. §§ 478.11, 478.12(c)—likely exceed the scope of ATF's authority under the Gun Control Act ("GCA").[7] Having made this preliminary finding, the Court enjoined Defendants, including the Attorney General, Department of Justice, ATF, and the ATF Director, along with their officers, agents, servants, and employees, from implementing or enforcing the rule against only Tactical Machining but otherwise denying injunctive relief to the remaining Plaintiffs.[8] In its Second Opinion on the proper scope of the preliminary injunction, issued October 1, 2022, the Court extended the injunction to the Individual Plaintiffs and—for the purpose of providing Tactical Machining complete relief—to Tactical's customers.[9]

Intervenor-Plaintiff BlackHawk Manufacturing Group Inc. d/b/a 80 Percent Arms ("BlackHawk")—a manufacturer and retailer who sells products subject to ATF's Final Rule—was permitted to intervene in the suit under the Court's Order, issued October 18, 2022,[10] and now seeks its own protective preliminary injunction.[11] BlackHawk initially participated in the lawsuit peripherally by filing a declaration in support of Plaintiffs' original motion for preliminary injunction and moved to intervene a week before this Court, in its Second Opinion, again denied injunctive relief to Plaintiff-FPC's association members—of which BlackHawk is one.[12]

BlackHawk seeks a preliminary injunction that mirrors the relief currently afforded to Tactical Machining.[13] BlackHawk's request for injunctive relief rests on its claims that the Final Rule was issued in excess of ATF's statutory authority, is facially unlawful, and unlawfully

---

[7] First Opinion 15, 22–23, ECF No. 56.
[8] *Id.*
[9] Second Opinion 20–22, ECF No. 89.
[10] Oct. 18 Order, ECF No. 98.
[11] Pl.'s Mot. 1, 3, ECF No. 102.
[12] Pl.'s Reply 4, ECF No. 112.
[13] Pl.'s Br. in Supp. 3, 16–17, ECF No. 103.

purports to regulate weapon parts kits as firearms contrary to the strictures of the GCA.[14] In response, the Government primarily contends that BlackHawk has not substantiated the irreparable harm it will suffer absent injunctive relief, particularly in light of its "months-long delay" in seeking preliminary relief.[15] The parties have briefed the issue and the motion is ripe for review.

## II.    LEGAL STANDARD

The decision to extend interlocutory relief is committed to the district court's sound discretion. *See Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985). To establish entitlement to a preliminary injunction, BlackHawk must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in its favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). The last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Once it has determined that a party is entitled to injunctive relief, a court must make a separate determination regarding the appropriate scope of that prospective injunction. "[T]he scope of injunctive relief is dictated by the extent of the violation established[.]" *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). In other words, because it is an extraordinary remedy, an injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 756 (1994) (cleaned up). Thus, an injunction must "redress the plaintiff's particular injury," and no more. *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) (citation omitted). As movant, the party seeking relief bears the burden of

---

[14] Pl.'s Br. in Supp. 14, ECF No. 103; Intervenor Compl. ¶¶ 61, 90–91, 106–10, ECF No. 99.
[15] Defs.' Response 4–8, ECF No. 109.

proving all four elements of the preliminary injunction. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008); *Miss. Power & Light Co.*, 760 F.2d at 621.

### III. ANALYSIS

#### A. Plaintiff is Likely to Succeed on the Merits

BlackHawk must first show a substantial likelihood that it will succeed on the merits of its claims. *Daniels Health Servs.*, 710 F.3d at 582. "To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Id.* As BlackHawk correctly points out, this Court has already preliminarily determined that the original Plaintiffs' statutory interpretation claims are likely to prevail on the merits.[16] BlackHawk raises nearly identical interpretive claims (that the Final Rule was issued in excess of ATF's statutory authority under the APA; is facially unlawful; and contravenes the GCA's clear statutory prescriptions) in its complaint.[17]

Rather than recite its previous analysis with respect to the interpretive claims verbatim, the Court incorporates by reference the reasoning in its First Opinion.[18] To summarize: the Final Rule purports to regulate firearm parts—including incomplete, non-functional receivers and weapon parts kits—contrary to the plain language of the GCA, which confined ATF's authority to regulation of "firearms," a term clearly defined by the statute.[19] Moreover, the Final Rule's expanded definition of "frame or receiver" to include partially manufactured, non-functional receivers within the meaning of "firearms"—contrary to the GCA's clear statutory definition—is facially unlawful.[20] Because BlackHawk challenges the Final Rule on these grounds, the Court

---

[16] Pl.'s Br. in Supp. 14, ECF No. 103 (citing the Court's First Opinion, ECF No. 56).
[17] Intervenor Compl. ¶¶ 61, 90–91, 106–10, ECF No. 99.
[18] First Opinion 6–16, ECF No. 56.
[19] *Id.*
[20] *Id.*

5

similarly finds that BlackHawk has shown a substantial likelihood of success on the merits of its claims.

### B. Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief

In the Fifth Circuit, a harm is considered "irreparable only 'if it cannot be undone through monetary remedies.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir.1984)). A showing of economic loss is usually insufficient to establish irreparable harm because damages may be recoverable at the conclusion of litigation. *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). However, "an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business." *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989). And where costs are nonrecoverable because the government-defendant enjoys sovereign immunity from monetary damages, as is the case here, irreparable harm is generally satisfied. *See Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021). Irreparable harm must also be concrete and not merely de minimis. *Daniels Health Servs., L.L.C.*, 710 F.3d at 585; *Dennis Melancon, Inc.*, 703 F.3d at 279 (cleaned up).

The Court has already decided this issue with respect to BlackHawk. When analyzing associational standing in its Second Opinion on the proper scope of the preliminary injunction, the Court found that:

> Plaintiffs have indeed shown that at least one of FPC's members, BlackHawk Manufacturing Group, Inc., d/b/a 80 Percent Arms, faces a substantial threat of irreparable harm . . . . Plaintiffs discuss BlackHawk's alleged injuries at length, describing the manufacturer-retailer's substantial decrease in sales following enactment of the Final Rule due to widespread customer concern about purchasing its products [].[21]

---

[21] Second Opinion 14–15, ECF No. 89 (citing Pls.' Mot. to Expand Prelim. Inj. 16–18, ECF No. 63; Decl. of Daniel Lifschitz 6–8, ECF No. 62-5 ¶¶ 13, 16, 17); *see also* BlackHawk's Br. in Supp. of Mot. to Intervene 5, ECF No. 77; Ex. A, Decl. of Daniel Lifschitz ¶¶ 15, 20, ECF No. 77-3 (noting BlackHawk's "average daily revenue since the rule took effect has dropped by more than 90%" and that it has "enough

In response, the Government claims BlackHawk could avert this injury by simply complying with the Rule.[22] But "it is no answer to say that [Plaintiff] may avoid the harm by complying with an [] agency rule" that is likely unlawful. [23] And as this Court has previously held, "Defendants' argument relies on the incorrect legal premise that compliance costs are not an irreparable harm."[24] To this, the Government counters that any nonrecoverable compliance costs are de minimis, and therefore not cognizable.[25] The Government suggests this Court agrees by claiming it "has since found that FFLs can make sales to out-of-state purchasers through a local FFL with costs that are, at most, *de minimis*."[26] But that misreads the Court's prior Opinion, wherein the Court found that *Individual Plaintiffs'* compliance costs—incurred in the form of a one-time $30 FFL transfer fee—were de minimis.[27] The Court said nothing regarding the manufacturer's (there, Tactical Machining's) compliance costs being de minimis. Indeed, BlackHawk's burden of complying with the Final Rule's requirements would entail an overhaul of its entire online, direct-to-customer business model, in addition to the costs incurred through administrative compliance and other FFL-related fees.[28]

The Government also focuses on BlackHawk's "unexcused delay" in seeking preliminary injunctive relief—a fact it claims "weighs heavily against [BlackHawk's] assertion that it would suffer irreparable harm without such relief."[29] The Government calculates this purported delay from the date the Final Rule was announced to the date that BlackHawk moved for its preliminary

---

cash on hand to continue paying [its] expenses for 2 to 3 months while [it] operate[s] at a loss . . . [before being] forced to shut down . . . and cease operations").
[22] Defs.' Resp. 8, ECF No. 109.
[23] First Opinion 19, ECF No. 56.
[24] *Id.* at 17–18.
[25] Defs.' Resp. 8, ECF No. 109.
[26] *Id.* (citing the Court's Second Opinion at 7–8, ECF No. 89).
[27] Second Opinion 8, ECF No. 89.
[28] Pl.'s Reply 2–3, ECF No. 112.
[29] Defs.' Resp. 4, ECF No. 109.

injunction: a period of five months and eleven days.[30] But the Government's timeline by which it measures the supposed delay is exaggerated. Though not as a named-Plaintiff, BlackHawk initially participated in this lawsuit when it filed a declaration in support of the Plaintiffs' motion for preliminary injunction on September 8, 2022, only fifteen days after the Final Rule took effect and within a month of Plaintiffs' initial complaint. Moreover, BlackHawk's interests were quasi-represented in the case via its membership status in FPC, who was seeking injunctive relief on behalf of all its association members. Within two weeks of its initial involvement in the ongoing proceedings, BlackHawk moved to intervene and simultaneously filed a proposed motion for preliminary injunction. In the Court's view, these efforts to vindicate its interests are far from an undue delay sufficient to overcome BlackHawk's clear demonstration of irreparable harm and bar injunctive relief.

Even if BlackHawk had effectively "[sat] on its rights"[31] for five months, that length of time alone is not dispositive given that any determination of a movant's timeliness seems to turn on the facts of the particular case. *See, e.g.*, *ADT, LLC v. Cap. Connect, Inc.,* 145 F. Supp. 3d 671, 699 (N.D. Tex. 2015) (finding an eight-month delay reasonable); *Wireless Agents, L.L.C. v. T-Movile USA, Inc.* 2006 WL 1540587, 3 (N.D. Tex. June 6, 2006) (finding a year's delay unreasonable). For these reasons, the Court finds that BlackHawk has adequately demonstrated it will suffer irreparable harm absent injunctive relief.

### C. The Balance of Equities and Public Interest Weigh in Plaintiff's Favor

The final two elements necessary to support a grant of injunctive relief—the balance of equities (the difference in harm to the respective parties) and the public interest—"merge" when the government is a party. *Nken*, 556 U.S. at 435. In this assessment, the Court weighs "the

---

[30] *See id.* at 5.
[31] *Id.* at 7.

competing claims of injury and [] consider[s] the effect on each party of the granting or withholding of the requested relief," while also considering the public consequences of granting injunctive relief. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (internal citations omitted).

BlackHawk argues that its threatened injury (complete elimination of its business) and the public's interest in lawful government action far outweighs any potential harm the government would incur in being temporarily prevented from enforcing its unlawful Rule.[32] On the other hand, Defendants assert injuries to their interests in law enforcement and public safety, which they argue cannot be vindicated if BlackHawk is given interim injunctive relief.[33] This will result, they say, because without compliance with the Final Rule, "no safeguard at the point of purchase would prevent the sale to prohibited persons of products that can readily be converted into functional firearms," and BlackHawk's sale of noncompliant products "would render it far less likely that law enforcement would be able to trace the firearms in the event they were used to commit a crime."[34] In other words, once those injuries occur, they cannot be remediated.

As with its analysis of likely success on the merits, the Court's prior reasoning with respect to the balance of equities and competing public interests applies to BlackHawk's motion for injunctive relief. In its First Opinion, this Court found that any injury to the Government's general interest in law enforcement and public safety is appreciably undermined by this Court's preliminary determination that the Final Rule is likely unlawful.[35] Moreover, it found that Plaintiffs' liberty interest—as law-abiding citizens who wish to engage in historically lawful conduct (the purchase and sale of now-regulated parts)—outweighs the

---

[32] Pl.'s Br. in Supp. 17–18, ECF No. 103; Pl.'s Reply 8–9, ECF No. 112.
[33] Defs.' Resp. 9–11, ECF No. 109.
[34] *Id.* at 10 (citing 87 Fed. Reg. at 25,643).
[35] First Opinion 21–22, ECF No. 56.

Government's remaining interest in preventing prohibited persons from unlawfully possessing firearms.[36] That reasoning applies with equal force here and is strengthened by the fact that the Government's likely *ultra vires* enforcement efforts upset more than fifty years of ATF regulatory precedent against a public that has relied on that historic posture.[37]

And even if it is true that, during the interim litigation, the non-enforcement of point-of-sale safeguards and record-keeping requirements against BlackHawk may undermine the public interest in law enforcement and public safety—a status quo that has persisted for decades—that purported injury does not outweigh the existential harm threatening BlackHawk's continued operation. Nor does it outweigh the harm to the public's interest in a government that abides by its own statutory and constitutional obligations. Indeed, "[t]here is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (cleaned up). Just as the Government has an interest in the law's enforcement, so too does the public have an equally compelling interest in enforcement of the laws that govern its governing authorities.

Finally, while the Government argues that "BlackHawk *affirmatively seeks to protect* the ability of potentially dangerous individuals such as felons, unlawful drug users, and domestic abusers to obtain items and kits that can readily be converted into functional firearms," BlackHawk makes no such request.[38] Indeed, no less than three times, BlackHawk reiterates that it seeks

---

[36] *Id.* at 22.
[37] *See* Pl.'s Br. in Supp. 18, ECF No. 103 (noting creation and maintenance of the industry under ATF's 54-year status quo regarding what constitutes a lawful "firearm" under the Gun Control Act).
[38] Defs.' Resp. 12, ECF No. 109 (emphasis added).

"injunctive relief that matches the relief currently provided to Tactical."[39] When BlackHawk moved for an injunction, the Court's protective relief included Tactical and its customers but explicitly *excepted* any customers prohibited from possessing firearms under 18 U.S.C. § 922(g).[40] Thus, the Government's alleged harm to the public interest in preventing prohibited persons from obtaining firearms (by purchasing parts) is mitigated by the injunction's narrow tailoring. The Court therefore finds that the balance of hardships and the public interest weigh in favor of granting BlackHawk's request for injunctive relief.

\* \* \* \*

Having considered the arguments, evidence, and law, the Court determines that the relevant factors weigh in favor of granting a preliminary injunction. As BlackHawk requests and the Government concedes,[41] the proper scope of relief is that which mirrors the relief currently afforded to Tactical Machining, LLC.[42] Thus, any protective relief provided to BlackHawk must be sufficient to redress its injuries, without being overly inclusive. As this Court has previously found, BlackHawk's injuries cannot be remedied if its only source of revenue—customer willingness to transact business—has been severely curtailed. Thus, the Court finds that the proper remedy is an injunction that applies to the company itself and to its customers.

## IV. CONCLUSION

BlackHawk has shown it is entitled to a preliminary injunction against Defendants' enforcement of the Final Rule. Accordingly, the Court **GRANTS** the motion and **ORDERS** that Defendants and their officers, agents, servants, and employees are enjoined from implementing

---

[39] Pl.'s Br. in Supp. 16, 17, 19, ECF No. 103.
[40] *See generally* First Opinion and Clarification of Opinion (ECF Nos. 89, 91).
[41] The Government agrees that if injunctive relief is granted, it should cover only BlackHawk and its customers not prohibited from possessing firearms under 18 U.S.C. § 922(g). Defs.' Resp. 12, ECF no. 109.
[42] Pl.'s Br. in Supp. 16, 17, 19, ECF No. 103; Defs.' Resp. 14, ECF No. 109.

and enforcing against BlackHawk Manufacturing Group Inc. d/b/a 80 Percent Arms the provisions in 27 C.F.R. §§ 478.11 and 478.12 that the Court has preliminarily determined are unlawful. Reflecting the scope of relief currently afforded to Tactical Machining, LLC, the injunction also covers BlackHawk's customers (except for those individuals prohibited from possessing firearms under 18 U.S.C. § 922(g)). The Court waives the security requirement of Federal Rule of Civil Procedure 65(c). *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).

    **SO ORDERED** this **3rd day** of **November, 2022**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**