UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JENNIFER VANDERSTOK, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*,<br><br>    Defendants. | Case No. 4:22-cv-00691-O |

**DEFENDANTS' OPPOSITION TO DEFENSE DISTRIBUTED & SECOND AMENDMENT FOUNDATION, INC.'S MOTION TO INTERVENE (ECF NO. 116)**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................... 1

I. Neither Defense Distributed Nor SAF Has Established Article III Standing, As Is Required to Pursue Distinct Relief from the Existing Parties. ........................................ 1

    A. Defense Distributed Has Not Established Article III Standing ........................... 2

    B. SAF Has Not Established Article III Standing. .................................................. 4

II. Putative Intervenors Have Not Demonstrated an Entitlement to Intervene in This Action Pursuant to Rule 24(a). ....................................................................................... 5-6

    A. Putative Intervenors' Motion to Intervene Is Untimely. ...................................... 6

    B. Putative Intervenors Have Not Established a Protectable Interest That May Be Impaired or Impeded as a Result of This Litigation. ...................................... 9

    C. Putative Intervenors Have Not Established That Any Interest They May Have in This Litigation Is Inadequately Represented by the Existing Parties. ..... 11

III. Defense Distributed and SAF Are Not Entitled to Permissive Intervention. ................. 13

CONCLUSION .......................................................................................................................... 14

**TABLE OF AUTHORITIES**

**Cases**

*Abraugh v. Altimus*,
  26 F.4th 298 (5th Cir. 2022) ............................................................................................................2

*Brackeen v. Haaland*,
  994 F.3d 249 (5th Cir. 2021), *cert. granted sub nom. Nation v. Brackeen*, 142 S. Ct. 1204 (2022), *and cert. granted*, 142 S. Ct. 1205 (2022), *and cert. granted sub nom. Texas v. Haaland*, 142 S. Ct. 1205 (2022), *and cert. granted*, 142 S. Ct. 1205 (2022) ........................................................................................13

*Brumfield v. Dodd*,
  749 F.3d 339 (5th Cir. 2014) ..........................................................................................................11

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ..........................................................................................................................4

*DeOtte v. Azar*,
  332 F.R.D. 173 (N.D. Tex. 2019) ............................................................................................2, 11

*Edwards v. City of Houston*,
  78 F.3d 983 (5th Cir. 1996) ..............................................................................................................6

*Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*,
  346 F.3d 552 (5th Cir. 2003) ............................................................................................................6

*Friends of the Earth, Inc. v. Chevron Chem. Co.*,
  129 F.3d 826 (5th Cir. 1997) ............................................................................................................5

*Garnett v. Zeilinger*,
  485 F. Supp. 3d 206 (D.D.C. 2020) ................................................................................................2

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ..........................................................................................................................5

*In re Lease Oil Antitrust Litig.*,
  570 F.3d 244 (5th Cir. 2009), *remanded sub nom. In re Lease Oil Antitrust Litig. (No. II)*, No. MDL 1206, 2009 WL 5195977 (S.D. Tex. June 27, 2011), *reversed and vacated sub nom. All Plaintiffs v. All Defendants*, 645 F.3d 329 (5th Cir. 2011) ..............................................................................6

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
  140 S. Ct. 2367 (2020) ..................................................................................................................1-2

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..........................................................................................................................8

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
  732 F.2d 452 (5th Cir. 1984) ............................................................................................................6

*Norris v. Causey*,
  869 F.3d 360 (5th Cir. 2017) ................................................................................................ 2

*Rotstain v. Mendez*,
  986 F.3d 931 (5th Cir. 2021) ..................................................................................... 6, 11, 13

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998), *remanded*, 151 F.3d 1032 (7th Cir. 1998), *remanded*, 1999 WL 412439 (N.D. Ill.
  June 9, 1999), *aff'd*, 230 F.3d 923 (7th Cir. 2000), *cert. denied*, 523 U.S. 994 (2001) ............... 8

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ................................................................................................................ 5

*Texas v. United States*,
  805 F.3d 653 (5th Cir. 2015) ............................................................................................ 6, 11

*Town of Chester v. Laroe Ests., Inc.*,
  137 S. Ct. 1645 (2017) ..................................................................................................... 2, 13

*United States v. Texas*,
  No. CV 5281, 1998 WL 36027548 (E.D. Tex. Apr. 17, 1998) ............................................. 11

*VanDerStok v. Garland*,
  No. 4:22-CV-00691-O, 2022 WL 4009048 (N.D. Tex. Sept. 2, 2022), *opinion clarified*, No. 4:22-CV-
  00691-), 2022 WL 6081194 (N.D. Tex. Sept. 26, 2022) ........................................................ 2

*VanDerStok v. Garland*,
  No. 4:22-CV-00691-O, 2022 WL 4809376 (N.D. Tex. Oct. 1, 2022) ................................. 2, 5

*VanDerStok v. Garland*,
  No. 4:22-CV-00691-O, 2022 WL 16680915 (N.D. Tex. Nov. 3, 2022) ................................. 2

**Rules**

Fed. R. Civ. P. 24(a) ...................................................................................................................... 6

Fed. R. Civ. P. 56(e) ...................................................................................................................... 8

**Administrative and Executive Materials**

27 C.F.R. § 478.11 ........................................................................................................................ 3

27 C.F.R. § 478.12(c) ................................................................................................................ 3-4

*Definition of "Frame or Receiver" and Identification of Firearms*,
  87 Fed. Reg. 24,652 (Apr. 26, 2022) ................................................................................... 2-4

**Other Authorities**

*AR-00: 0% Receiver*, GHOST GUNNER,
   https://ghostgunner.net/zero-percent/ (last visited Nov. 23, 2022) ........................................................10

Michael Del Castillo, *Open Source Terror: How the World's Most Dangerous Crypto Anarchist Intends To Neutralize Biden's Proposed Gun Control Regulations*, FORBES (Jan 12, 2022)
   https://www.forbes.com/sites/michaeldelcastillo/2022/01/12/open-source-terror-how-the-worlds-most-dangerous-crypto-anarchist-intends-to-neutralize-bidens-proposed-gun-control-regulations/?sh=4e8969f13dd6 (last visited Nov. 23, 2022) ..................................................................9-10

Zach Weissmueller, *Cody Wilson Thwarts Another Attempt to Stop Ghost Guns*, REASON (Jan. 12, 2022)
   https://reason.com/video/2022/01/12/cody-wilson-thwarts-another-attempt-to-stop-ghost-guns/ (last visited Nov. 23, 2022) ........................................................................................................10

**INTRODUCTION**

In their brief in support of their Motion to Intervene, ECF No. 117 ("Motion to Intervene" or "Mot."), Defense Distributed and the Second Amendment Foundation, Inc. ("SAF") (collectively, "Putative Intervenors") argue that this Court should permit them to intervene in this action—either by mandatory or permissive intervention—for all of the same reasons that this Court held that BlackHawk Manufacturing Group Inc. d/b/a 80 Percent Arms ("BlackHawk") was entitled to intervene in this action. *See* ECF No. 98 ("BlackHawk Intervention Op."). As a threshold matter, both Defense Distributed and SAF fail to establish Article III standing, as is required to seek relief not sought by the existing parties. Putative Intervenors' Motion to Intervene also is untimely, in light of the developments in this action since the Court granted BlackHawk's motion to intervene. Moreover, Putative Intervenors fail to show that they are similarly situated to BlackHawk in the relevant respects with anything other than self-supporting conclusory allegations. For example, Putative Intervenors do not establish that they have a protectable interest that might be impaired or impeded as a result of this litigation. Nor do they support the factual premise that Defense Distributed is likely to dissolve absent expanded preliminary injunctive relief, which was the basis for this Court's holding that BlackHawk had such an interest. Putative Intervenors likewise do not provide support for the factual premise that Defense Distributed is a competitor to the existing parties, which was the basis for this Court's holding that BlackHawk's interests were not adequately represented absent intervention. For all of these reasons, this Court should deny Putative Intervenors' Motion to Intervene.

I. **Neither Defense Distributed Nor SAF Has Established Article III Standing, As Is Required to Pursue Distinct Relief from the Existing Parties.**

As the Supreme Court and this Court have held, "[a]n intervenor of right must independently demonstrate Article III standing if it pursues relief that is broader than or different from the party invoking a court's jurisdiction." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S.

1

Ct. 2367, 2379 n.6 (2020) (citing *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017)); *accord DeOtte v. Azar*, 332 F.R.D. 173, 179 (N.D. Tex. 2019). Here, Putative Intervenors seek, among other relief, a preliminary injunction barring enforcement of the Rule[1] against Defense Distributed or against SAF's members and an award of costs, including attorney fees—neither of which is sought by an existing party in this litigation. *See* ECF No. 117-1 ("Proposed Compl.") ¶¶ 91-93. With respect to Putative Intervenors' request for preliminary injunctive relief, none of the existing parties currently seeks preliminary injunctive relief extending to Defense Distributed or to SAF's members.[2] Further, no party seeks an award of fees to Putative Intervenors. *Cf. Garnett v. Zeilinger*, 485 F. Supp. 3d 206, 215-19 (D.D.C. 2020) (assessing whether a party had demonstrated Article III standing to seek attorney's fees and costs where fees and costs were the only form of relief distinct from that sought by parties that already had demonstrated Article III standing).

In sum, because putative Intervenors seek relief that is different from that sought by the existing parties, they must demonstrate Article III standing, *i.e.*, "the well-known injury, causation, and redressability trifecta." *Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022) (quoting *Norris v. Causey*, 869 F.3d 360, 366 (5th Cir. 2017)). Neither Defense Distributed nor SAF has satisfied this burden.

### A. Defense Distributed Has Not Established Article III Standing.

Defense Distributed has not established Article III standing because it fails to concretely allege any injury-in-fact traceable to the Rule. Indeed, Defense Distributed fails to identify in its Motion to

---

[1] *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022).

[2] The original Plaintiffs twice sought a nationwide preliminary injunction, which would have barred enforcement of the Rule against Defense Distributed or against SAF's members. *See* ECF No. 55, at 14-15; ECF No. 63, at 14-18. The Court denied that request both times. *See VanDerStok v. Garland*, No. 4:22-CV-00691-O, 2022 WL 4009048, at *10 (N.D. Tex. Sept. 2, 2022), *opinion clarified*, No. 4:22-CV-00691-O, 2022 WL 6081194 (N.D. Tex. Sept. 26, 2022); *VanDerStok v. Garland*, No. 4:22-CV-00691-O, 2022 WL 4809376, at *9-10 (N.D. Tex. Oct. 1, 2022). Intervenor BlackHawk Manufacturing sought (and obtained) a preliminary injunction that protects only BlackHawk and its customers, not Putative Intervenors. *See* ECF No. 103, at 19; *VanDerStok v. Garland*, No. 4:22-CV-00691-O, 2022 WL 16680915, at *5 (N.D. Tex. Nov. 3, 2022).

2

Intervene *any* specific product or product category that it sells or sold that falls under the Rule's scope. And Defense Distributed's allegations that it "is the first private defense contractor in service of the general public" and "has defined the state of the art in small scale, digital, personal gunsmithing technology," shed no light on whether its products are "firearms" under the Rule. Proposed Compl. ¶ 9.

To be sure, Defense Distributed alleges that, as a result of the Rule, it has ceased dealing in, manufacturing, selling, delivering, shipping, transporting, and receiving "unfinished receivers" and "frame and receiver parts kits" and that the cessation of "certain [unspecified] lines of business" has "deprived Defense Distributed of over one hundred thousand dollars in revenues to date," among other alleged harms. *Id.* ¶¶ 47-50, 54-55. Without greater specificity, however, it is impossible to discern whether the "unfinished receivers" or "frame and receiver parts kits" to which Defense Distributed refers or the other unspecified "lines of business" are newly classified as firearms under the Rule. Significantly, the Rule does not classify all unfinished receivers or frame or receiver parts kits as firearms. Rather, the determination whether a particular unfinished receiver is a "firearm" under the Rule is governed by an eight-factor standard, *see* 86 Fed. Reg. at 24,739 (codified as amended at 27 C.F.R. § 478.12(c)) (defining "[p]artially complete, disassembled, or nonfunctional frame or receiver"); *id.* at 24,735 (codified as amended at 27 C.F.R. § 478.11) (defining "[r]eadily"), and the Rule provides examples of various unfinished receivers that are *not* "firearms" under the Rule, *see id.* at 24,739 (codified as amended at 27 C.F.R. § 478.12(c), examples 4-5). Similarly, frame or receiver parts kit "must be re-evaluated" to "determine whether they would now be classified as 'firearms,' 'frames,' or 'receivers.'" 87 Fed. Reg. at 24,668. Indeed, Putative Intervenors acknowledge as much in alleging that "'a frame or receiver parts kit' *can* constitute 'a partially complete, disassembled, or nonfunctional frame or receiver.'" Proposed Compl. ¶ 53 (emphasis added) (quoting 27 C.F.R. § 478.12(c)). In short, Defense Distributed's allegations that it has ceased engaging in commercial activity relating to

3

unspecified "unfinished receivers" and "frame and receiver parts kits" do not suffice to establish a causal link between any resulting harm and the Rule. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (holding that "self-inflicted injuries" that are not "fairly traceable to the Government's purported activities" do not give rise to standing).

Contrary to Putative Intervenors' contention that "Defense Distributed's case for intervention is just as compelling as Blackhawk's in every relevant respect," Mot. at 3,[3] BlackHawk submitted evidence that it had previously sold partially complete AR-style receivers that ATF had classified not to be "firearms" under the previous regulatory definitions, alongside jigs that consumers could use to render functional the partially complete AR-style receivers, *see* ECF No. 77-3 ("Lifschitz Decl."), ¶¶ 4-5. In conjunction with the text of the Rule, this evidence plausibly established that BlackHawk had previously sold products that were newly classified as "firearms" as a result of the Rule. Indeed, the Rule explains that, "[p]rior to this rule, ATF did not examine templates, jigs, or other items and materials in determining whether partially complete frames or receivers were 'firearms' under the GCA." 87 Fed. Reg. at 24,668. And it further provides that "[a] frame or receiver parts kit containing a partially complete or disassembled billet or blank of a frame or receiver that is sold, distributed, or possessed with a compatible jig or template is a frame or receiver" under the Rule. *Id.* at 24,739 (codified as amended at 27 C.F.R. § 478.12(c), example 1). Thus, BlackHawk colorably pleaded, for purposes of its motion to intervene, that it sold products that were newly classified as "firearms" under the Rule. By contrast, Defense Distributed fails to make a comparable showing, and thus has not established Article III standing to seek relief or pursue claims distinct from the existing parties.

## B. SAF Has Not Established Article III Standing.

SAF also fails to establish Article III standing. SAF appears to invoke associational standing

---

[3] Because Putative Intervenors' Motion to Intervene lacks page numbers, citations thereto are to the Bates-stamped pagination created by the ECF system.

4

on behalf of its members, as opposed to asserting any injury in its own right. *See* Mot. at 7 ("SAF . . . advances the interests of members suffering irreparable harm akin to the individual plaintiffs."). As this Court set forth earlier in this action:

> The associational standing doctrine permits an organization to invoke the court's injunctive or declaratory remedial powers on behalf of its members provided it can satisfy a three-prong test: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*VanDerStok*, 2022 WL 4809376, at *7 (internal quotation marks and brackets omitted) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 333 (1977)).

SAF alleges that the Rule harms certain unidentified SAF members who wish to "commercially purchase, possess, or otherwise acquire from firms like Defense Distributed the articles defined for the first time ever as 'firearms' by the new Final Rule" and would do so "imminently" but for the Rule. Proposed Compl. ¶¶ 61-63. But Putative Intervenors fail to identify any individual member who allegedly is similarly situated to the Individual Plaintiffs in this action, as is required to establish associational standing. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("[T]he Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm . . . ."). Additionally, even if these allegations plausibly established that any one of SAF's members would have standing in his or her own right to challenge the Rule—which they do not—Putative Intervenors offer no arguments, allegations, or evidence to support a finding that the other two prongs of the associational standing standard are satisfied. Moreover, their filings also fail to address the "indicia of membership" that constitute a threshold requirement to invoking associational standing as a membership organization. *See Hunt*, 432 U.S. at 334; *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997). For these reasons, SAF has not established standing to seek relief on behalf of its members.

    **II.**    **Putative Intervenors Have Not Demonstrated an Entitlement to Intervene in This**

**Action Pursuant to Rule 24(a).**

Even if Defense Distributed or SAF had established Article III standing, the Court should deny their request to intervene pursuant to Rule 24(a) because they fail to establish, *first*, that their "application for intervention [is] timely," *second*, that they "have an interest relating to the property or transaction which is the subject of the action," *third*, that "the disposition of the action may, as a practical matter, impair or impede [their] ability to protect that interest," or, *fourth*, that their "interest [is] inadequately represented by the existing parties to the suit." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc)). "A would-be intervenor bears the burden to prove an entitlement to intervene," and "failure to prove a required element is fatal." *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021) (citing *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996)). Here, Putative Intervenors fail to prove any of the four required elements.

### A. Putative Intervenors' Motion to Intervene Is Untimely.

Intervention as of right may only be granted "[o]n timely motion." Fed. R. Civ. P. 24(a). Timeliness "should be determined based on *all* the circumstances." *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 561 (5th Cir. 2003) (citation omitted). The Fifth Circuit's test for timeliness of intervention requires the Court to consider "(1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene, (2) the extent of prejudice to existing parties from allowing late intervention, (3) the extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247-48 (5th Cir. 2009), *remanded sub nom. In re Lease Oil Antitrust Litig. (No. II)*, No. MDL 1206, 2009 WL 5195977 (S.D. Tex. June 27, 2011), *reversed and vacated sub nom. All Plaintiffs v. All Defendants*, 645 F.3d 329 (5th Cir. 2011). These factors weigh against a finding of timeliness here.

First, that Putative Intervenors waited nearly three months after the filing of the Complaint, to seek intervention, without any compelling explanation for such a delay, weighs against timeliness. During that time, the parties have briefed and the Court has ruled on Plaintiffs' motion for preliminary injunction, in addition to multiple motions to expand or clarify the scope of the preliminary injunction, *see* ECF Nos. 56, 84, 89; BlackHawk has moved to intervene, and the Court has granted BlackHawk's motion for intervention and motion for preliminary injunction, *see* ECF Nos. 98, 118; Defendants have produced the administrative record; and the Court has set a Scheduling Order, which included a deadline of October 31, 2022 for amended pleadings by intervenors, *see* ECF No. 105. Putative Intervenors claim to be similarly situated to BlackHawk, but the fact that BlackHawk moved to intervene on September 22, 2022, far earlier than Putative Intervenors, underscores that Putative Intervenors had no justification to delay until November to seek intervention.

Second, the parties will be prejudiced if Putative Intervenors are allowed to intervene, because the case has reached an advanced stage, and the schedule set by the Court would not allow sufficient time for Defendants to put Putative Intervenors to their standing burden at the summary judgment stage, in the event that the Court does not deny this motion on the ground that Putative Intervenors lack standing. *See supra* Section I. In deciding that the parties would not be prejudiced by BlackHawk's intervention, the Court stated that "this litigation [had not] yet reached a critical stage" and "the Court [had] not even issued a scheduling order in the case." BlackHawk Intervention Op. at 6. That is no longer true. The Court has now entered a Scheduling Order, which calls for summary judgment briefing to begin 60 days after completion of the administrative record, ECF No. 105, and has separately issued orders directing the filing of supplemental briefs on December 5, 2022, in order to resolve the merits Plaintiffs' statutory interpretation claims. ECF Nos. 107, 110, 115.

Putative Intervenors assert that they are "willing to comply with the case's current schedule," Mot. at 6, but intervention at this late stage would disrupt that schedule. The schedule called for any

7

amended pleadings by intervenors to be filed by October 31, 2022, ECF No. 105, at 2, but Putative Intervenors filed their motion and proposed complaint after that date. Further, as explained above, Putative Intervenors have not established standing. *See supra* Section I. While Defendants maintain that Putative Intervenors' failure to plead standing is apparent from the face of their proposed complaint, at the very least, standing is in dispute. Even if the Court were to determine that Putative Intervenors' allegations are sufficient to plead standing, Putative Intervenors would need to provide evidence (not just allegations) to support standing at the summary judgment stage. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (explaining that while well-pleaded allegations of injury suffice at the pleading stage, at the summary judgment stage, "plaintiff can no longer rest on such 'mere allegations,' but must set forth by affidavit or other evidence specific facts" to establish standing (quoting Fed. R. Civ. P. 56(e))). Disputes over Putative Intervenors' claims to standing would likely extend beyond the schedule for briefing the statutory interpretation issue and may well extend beyond the Court's schedule for briefing summary judgment. But the Court cannot rule on the merits of Putative Intervenors' claims—either for or against Putative Intervenors—unless and until the Court determines that Putative Intervenors have standing. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998), *remanded*, 151 F.3d 1032 (7th Cir. 1998), *remanded*, 1999 WL 412439 (N.D. Ill. June 9, 1999), *aff'd*, 230 F.3d 923 (7th Cir. 2000), *cert. denied*, 523 U.S. 994 (2001).

Third, Putative Intervenors would not be prejudiced by denying intervention. As shown above, Putative Intervenors lack standing because Defense Distributed has not pleaded that the Rule has caused it any injury that would be redressed by a favorable ruling, and SAF has not met the requirements to invoke associational standing on behalf of its members. *See supra* Section I. It therefore follows that denying intervention could not prejudice their interests.

Fourth, no unusual circumstances weigh in favor of timeliness. Putative Intervenors state that this factor "either pushes in neither direction or weighs slightly in favor of intervention," Mot. at 6,

8

but they identify no unusual circumstances weighing in their favor. If anything, the fact that Putative Intervenors have sought to intervene after the deadline set by the Court for amended intervenor pleadings weighs against intervention here.

### B. Putative Intervenors Have Not Established a Protectable Interest That May Be Impaired or Impeded as a Result of This Litigation.

Putative Intervenors also fail to establish that they have a protectable interest in the Rule that may be impaired or impeded absent intervention. In their Motion to Intervene, Putative Intervenors argue that "[t]he Court rightly found that Blackhawk met these parts of the test, and for essentially those same reasons the test is met here as well." Mot. at 6 (citation omitted) (citing BlackHawk Intervention Op. at 7-8). Critically, however, Putative Intervenors cite no allegations or evidence to support their bare assertion they have a protectable interest in this litigation analogous to that of BlackHawk—that is, a risk of dissolution absent preliminary injunctive relief. *See* BlackHawk Intervention Op. at 7-8. Rather, while Putative Intervenors repeatedly cite this Court's opinion granting BlackHawk's motion to intervene, they fail to demonstrate, beyond mere *ipse dixit*, how it applies to them. Putative Intervenors are free to argue that their circumstances are analogous to that of BlackHawk, but they must marshal factual support for that argument, which they fail to do.

For example, Putative Intervenors contend that "absent expanded injunctive relief, [Defense Distributed's] cognizable property interest may not only be impeded, it will likely dissolve entirely." Mot. at 7 (alteration in original) (quoting BlackHawk Intervention Op. at 7-8). But they cite no allegations or evidence to support the assertion that the Rule poses an imminent, existential threat to the viability of Defense Distributed's business.[4]

---

[4] Moreover, a review of the Proposed Complaint reveals no non-conclusory allegations to support that proposition. For example, a loss of $100,000 in revenue as a result of ceasing the sale of certain unspecified product lines does not by itself translate to a need for preliminary injunctive relief to prevent dissolution of Defense Distributed's business. *See* Proposed Compl. ¶¶ 50(a), 55(a); *see also* Michael del Castillo, *Open Source Terror: How the World's Most Dangerous Crypto Anarchist Intends To Neutralize Biden's Proposed Gun Control Regulations*, FORBES (Jan. 12, 2022), *available at*

9

By contrast, BlackHawk submitted evidence in support of its motion to intervene that its average daily revenue had decreased by more than 90% after the Rule took effect and that its sales relative to website traffic had "dropped precipitously" in the same time period, including graphs demonstrating this decrease over time and broken down by state. Lifschitz Decl. ¶¶ 12-15. BlackHawk also offered a benchmark for interpreting these figures relative to BlackHawk's historical performance and norms in the e-commerce industry. *Id.* ¶ 12. Further, it projected the effect on its business if it did not resume selling jigs on its website within two to three months, forecasting cumulative losses that would lead BlackHawk to shut down its business between November 1, 2022, and December 1, 2022, absent preliminary injunctive relief. *Id.* ¶ 20.[5]

---

https://www.forbes.com/sites/michaeldelcastillo/2022/01/12/open-source-terror-how-the-worlds-most-dangerous-crypto-anarchist-intends-to-neutralize-bidens-proposed-gun-control-regulations/?sh=4e8969f13dd6 (last visited Nov. 23, 2022) (reporting that, according to founder and director Cody Wilson, *see* Proposed Compl. ¶ 8, Defense Distributed was on track to earn $5 million in 2021). Further, Wilson has made public statements suggesting that the Rule *benefits* Defense Distributed overall. For example, Wilson stated in a media interview earlier this year that he expected the Rule to effectively give Defense Distributed "a monopoly of the market," because Defense Distributed had "modified its[] home milling machine," known as the "Ghost Gunner," "so that users no longer need to load it with the partially fabricated metal parts subject to the new rule. Instead, they'll be able to start from scratch with a solid block of aluminum." Zach Weissmueller, *Cody Wilson Thwarts Another Attempt to Stop Ghost Guns*, REASON (Jan. 12, 2022), available at https://reason.com/video/2022/01/12/cody-wilson-thwarts-another-attempt-to-stop-ghost-guns/ (last visited Nov. 23, 2022). On its website, Ghost Gunner touts that it "is a unique platform which is not limited by" the Rule, and that what it calls the "Zero Percent Receiver" is the "[o]nly legal and affordable method for unregistered metal lowers in 2022 and beyond." *AR-00: 0% Receiver*, GHOST GUNNER, available at https://ghostgunner.net/zero-percent/ (last visited Nov. 23, 2022).

Any remaining allegations in the Proposed Complaint regarding financial harm are wholly conclusory. *See, e.g.*, Proposed Compl. ¶ 56 ("The new Final Rule irreparably harms Defense Distributed by causing the financial injuries listed about [sic] in amounts that are very, very substantial." (emphasis omitted)).

To be sure, an existential threat to the viability of one's business is not the only interest that could support a motion to intervene. But it is the only one that Defense Distributed identifies and attempts to rely on here, by citing the Court's opinion on BlackHawk's motion to intervene as the exclusive basis for its argument that it has a protectable interest in the outcome of this litigation that may be impaired or impeded absent intervention.

[5] Although Defendants argued that BlackHawk's injury was self-imposed in light of BlackHawk's voluntary decision to stop selling jigs rather than to offer jigs for sale with its receiver blanks subject to the requirements of the Gun Control Act of 1968 ("GCA"), Defendants did not dispute that

As noted, a would-be intervenor bears the burden of proving all four factors that are required to establish an entitlement to intervene. *See Rotstain*, 986 F.3d at 937. Although "Rule 24 is to be liberally construed," *Texas*, 805 F.3d at 656 (quoting *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014)), a putative intervenor must, at a minimum, support its assertions regarding its protectable interest in the litigation with specific, non-conclusory allegations, *see, e.g., DeOtte*, 332 F.R.D. at 184 ("While the well-pleaded facts presented by [the putative intervenor] are taken as true, the Court is not required to accept conclusory assertions."); *United States v. Texas*, No. CV 5281, 1998 WL 36027548, at *4 (E.D. Tex. Apr. 17, 1998) (holding that "an unsupported allegation is insufficient to support a motion for intervention of right"). Because Defense Distributed fails to satisfy that burden, the Court should deny its Motion to Intervene.

SAF also fails to identify a cognizable interest in the outcome of this litigation, offering only a one-sentence contention that it "advances the interests of members suffering irreparable harm akin to the individual plaintiffs." Mot. at 7. Not only is such a bare contention inadequate to establish the requisite interest, but—as explained above—SAF has not satisfied the threshold requirement of establishing associational standing to seek relief on its members' behalf. *See supra* Section I.B.

### C. Putative Intervenors Have Not Established That Any Interest They May Have in This Litigation Is Inadequately Represented by the Existing Parties.

For similar reasons, Putative Intervenors also fail to establish that the existing parties do not adequately represent any interest that they may have in the outcome of this litigation. Once again, Putative Intervenors argue principally that they are entitled to intervene for the same reasons that this Court granted BlackHawk's motion for intervention, but they fail to support that analogical reasoning with any factual allegations or evidence. For example, Putative Intervenors argue that "Defense Distributed's status as a competitor seller vis-à-vis Tactical Machining 'is a practical nuance sufficient

---

BlackHawk plausibly alleged that it faced existential financial harm if it did not resume selling jigs. *See generally* ECF No. 96.

11

to overcome' the relevant threshold," Mot. at 7 (quoting BlackHawk Intervention Op. at 9), but they fail to support the underlying factual contention that Defense Distributed *is* a competitor seller vis-à-vis Tactical Machining.

By contrast, the pleadings and evidence before the Court when it decided BlackHawk's motion to intervene demonstrated that BlackHawk was a direct competitor to Tactical Machining. *Compare* ECF No. 77-1, ¶ 97 ("BlackHawk fulfills orders by shipping receiver blanks, jigs, tools, and instructions to customers and businesses across the country that place orders for products. The bulk of its customers are out of state."), *and* Lifschitz Decl. ¶ 17 ("80 Percent Arms' jig and the '80% Lowers' that [BlackHawk] sell[s] are complementary goods that are used together, each creating a demand for the other. The inability to sell the jig drastically reduces sales for the '80% Lowers,' as well as other ancillary products and accessories."), *with* ECF No. 16-1, ¶ 7 (characterizing Tactical Machining's central product offering as items "marketed using the colloquial term 80% lowers"); ECF No. 62-3, ¶¶ 15-17 (stating that, but for the Rule, Tactical Machining would resume selling the jigs that it offered before the Rule took effect, which it expected "would significantly increase sales of Tactical Machining's other products.").

Putative Intervenors offer no comparable allegations or evidence. To the contrary, they allege that Defense Distributed previously sold "unfinished receivers" and "frame or receiver parts kits" but has ceased doing so since the Rule took effect. *See* Proposed Compl. ¶¶ 47, 49, 53-55. Neither an "unfinished receiver" nor a "frame or receiver parts kit" is synonymous with the specific combination of an incomplete AR-style receiver blank and a jig to readily facilitate its completion, which both Tactical Machining and BlackHawk sold directly to out-of-state customers over the Internet before the Rule took effect. *See supra* Section I.A (discussing the Rule's differing application to these various product configurations).

Aside from the unsupported contention that Defense Distributed is similarly situated to

BlackHawk for purposes of the inadequate representation inquiry, Putative Intervenors' only other contention with respect to this factor is that they "make unique arguments against the regulation (e.g., their Count II)." Mot. at 7. But, as noted above, Putative Intervenors have not established standing to bring a claim that the existing parties do not already advance. *See supra* Section I; *see also Brackeen v. Haaland*, 994 F.3d 249, 369 (5th Cir. 2021) ("At least one plaintiff must have standing 'for *each claim* he seeks to press . . . .'" (emphasis added) (quoting *Town of Chester*, 137 S. Ct. at 1650)), *cert. granted sub nom. Nation v. Brackeen*, 142 S. Ct. 1204 (2022), *and cert. granted*, 142 S. Ct. 1205 (2022), *and cert. granted sub nom. Texas v. Haaland*, 142 S. Ct. 1205 (2022), *and cert. granted*, 142 S. Ct. 1205 (2022). This factor thus cannot weigh in favor of intervention as of right.

### III. Defense Distributed and SAF Are Not Entitled to Permissive Intervention.

Finally, the Court should deny Defense Distributed and SAF's request for permissive intervention. Putative Intervenors argue that permissive intervention "is warranted because Defense Distributed and SAF's request for permissive intervention is timely and because Defense Distributed and SAF's claims share common questions of law and fact with those of the main action." Mot. at 7. They are wrong on both scores.

With respect to timeliness, "[t]imeliness under mandatory intervention is evaluated more leniently than under permissive intervention." *Rotstain*, 986 F.3d at 942 (citation omitted). As explained above, Putative Intervenors' Motion to Intervene is not timely for purposes of mandatory intervention. *See supra* Section II.A. It follows that Potential Intervenors' motion for permissive intervention is also untimely. *See Rotstain*, 986 F.3d at 942 ("Because we conclude that the district court did not abuse its discretion by determining that the request for mandatory intervention was untimely, we also conclude that the district court did not abuse its discretion by determining that the request for permissive intervention was untimely.").

With respect to common questions of law or fact between Putative Intervenors' proposed claims and those of the existing parties, this Court has held that "[n]ot all challenges to ATF's final rule warrant . . . consolidation." *See* ECF No. 65, at 2. It follows that high-level similarities between Putative Intervenors' bases for challenging the Rule and the challenges brought by the existing parties are insufficient to justify permissive intervention in this Court's equitable discretion.

## CONCLUSION

For the foregoing reasons, this Court should deny Defense Distributed and SAF's Motion to Intervene.

DATED: November 23, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

LESLEY FARBY
Assistant Director, Federal Programs Branch

*/s/ Taisa M. Goodnature*
DANIEL RIESS
MARTIN M. TOMLINSON
TAISA M. GOODNATURE
JEREMY S.B. NEWMAN
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 353-4556
Email: martin.m.tomlinson@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

On November 23, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Taisa M. Goodnature*