**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

JENNIFER VANDERSTOK, *et al.*,

     Plaintiffs,

  v.

MERRICK GARLAND, in his official
capacity as Attorney General of the United
States, *et al.*,

     Defendants.

Case No. 4:22-cv-00691-O

**DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING**
**RULE 65(A)(2) CONSOLIDATION AND PLAINTIFFS' COUNT I**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................... 1

BACKGROUND ................................................................................................................................... 1

ARGUMENT ........................................................................................................................................ 1

I.      This Court Should Not "Consolidate" the Ultimate Determination on the Merits of Plaintiffs'
        Count I with the Court's Previously Issued Preliminary Injunction Decision. ........................... 4

II.     Plaintiffs Are Not Entitled to Judgment on Count I Because ATF Acted Within the
        Authority Delegated to It by Statute. .......................................................................................... 5

        A.      The Amended Definition of "Frame or Receiver" ................................................... 6

        B.      The Amended Definition of "Firearm" ................................................................... 12

III.    In Any Event, This Court Should Not Grant Plaintiffs Relief Beyond What is Necessary to
        Remedy Plaintiffs' Alleged Injuries. ......................................................................................... 15

CONCLUSION ................................................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Am. Trucking Ass'n v. Atchison, Topeka, and Santa Fe Ry. Co.,*
 387 U.S. 397 (1967)................................................................................................6

*California v. Texas,*
 141 S. Ct. 2104 (2021)..........................................................................................16

*Communications Maint., Inc. v. Motorola, Inc.,*
 761 F.2d 1202 (7th Cir. 1985)................................................................................5

*Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.,*
 710 F.3d 579 (5th Cir. 2013)..................................................................................2

*DHS v. New York,*
 140 S. Ct. 599 (2020)............................................................................................17

*Duncan v. Walker,*
 533 U.S. 174 (2001)................................................................................................4

*H & W Indus., Inc. v. Formosa Plastics Corp., USA,*
 860 F.2d 172 (5th Cir. 1988)..................................................................................4

*Lewis v. Casey,*
 518 U.S. 343 (1996)..............................................................................................16

*Morehouse Enters. v. Bureau of Alcohol, Tobacco, Firearms and Explosives,*
 No. 3:22-CV-116, 2022 WL 3597299 (D.N.D. Aug. 23, 2022) ............................12

*Murphy v. Nat'l Collegiate Athletic Assn.,*
 138 S. Ct. 1461 (2018)..........................................................................................16

*Nat'l Rifle Ass'n v. Brady,*
 914 F.2d 475 (4th Cir. 1990)..................................................................................6

*New York v. Burger,*
 482 U.S. 691 (1987)..............................................................................................11

*Scott v. Schedler,*
 826 F.3d 207 (5th Cir. 2016)................................................................................16

*Schlesinger v. Reservists Comm. to Stop the War,*
 418 U.S. 208 (1974)..............................................................................................16

*Texas v. Biden,*
    20 F.4th 928 (5th Cir. 2021) ................................................................................17

*Trump v. Hawaii,*
    138 S. Ct. 2392 (2019) ......................................................................................17

*United States v. Annis,*
    446 F.3d 852 (8th Cir. 2006) ..............................................................................13

*United States v. Ryles,*
    988 F.2d 13 (5th Cir. 1993) ...............................................................................13

*United States v. Stewart,*
    451 F.3d 1071 (9th Cir. 2006) ............................................................................13

*United States v. Theodoropoulous,*
    866 F.2d 587 .....................................................................................................13

*United States v. Wick,*
    697 F. App'x 507 (9th Cir. 2017) .......................................................................13

*Univ. of Texas v. Camenisch,*
    451 U.S. 390 (1981) ...........................................................................................4

## STATUTES

5 U.S.C. § 706(2) ...................................................................................................17

18 U.S.C. § 921(a)(3) .......................................................................................*passim*

18 U.S.C. § 922(g) .............................................................................................3, 17

18 U.S.C. § 926(a) ..................................................................................................6

26 U.S.C. § 5845(b) ..............................................................................................11

26 U.S.C. § 7801(a)(2) ............................................................................................6

28 U.S.C. § 599A(c)(1) ...........................................................................................6

## REGULATIONS

28 C.F.R. § 0.130(a)(1)-(2) ......................................................................................6

Final Rule, Commerce in Firearms and Ammunition,
    33 Fed. Reg. 18,555 (Dec. 14, 1968), *codified at* 27 C.F.R. § 478.11 ..................7

Final Rule, Definition of "Frame or Receiver" and Identification of Firearms,

87 Fed. Reg. 24,652 (Apr. 26, 2022) ...........................................................................................*passim*

**OTHER AUTHORITIES**

S. Rep. No. 88-1340 (1964)...................................................................................................................12

# INTRODUCTION

This Court has notified the parties that it intends to consolidate its ultimate decision on the merits of Plaintiffs' Count I claim with the Court's September 2, 2022 decision granting Plaintiffs' motion for a preliminary injunction. Defendants respectfully submit that consolidation would be inappropriate procedurally for several reasons. First, Rule 65(a)(2) only contemplates consolidation, and simultaneous resolution, of a pending preliminary injunction motion and final trial on the merits; it does not contemplate a retroactive consolidation after a preliminary injunction has been issued. Consolidation would be particularly inappropriate here because Defendants have now produced an administrative record containing information relevant to Plaintiffs' Count I claim that was not before the Court when it considered Plaintiffs' motion for preliminary injunction. This Court should consider that claim anew in light of the information now available to it and the parties' briefing on summary judgment. Consolidation would also ignore the very different legal standards and burdens that apply to preliminary injunctions and final merits determinations. Accordingly, Rule 56, not Rule 65(a)(2), is the appropriate standard and procedural mechanism for resolving Plaintiffs' Count I claim.

Most fundamentally, consolidating the ultimate merits decision to enter judgment for Plaintiffs on Count I would be inappropriate because Plaintiffs have failed to show that they are entitled to such judgment on the merits. The Final Rule's amended definitions of "frame or receiver" and "firearm" are both reasonable interpretations of statutory terms because they are consistent with the plain language and intent of the Gun Control Act and existing practice and caselaw. However, in the event this Court were to convert its September 2 preliminary injunction decision into a final judgment on the merits through a Rule 65(a)(2) consolidation, any remedy ordered by the Court should be narrowly tailored to address the harms the Court has held Plaintiffs have demonstrated.

# BACKGROUND

Plaintiffs filed their Complaint on August 11, 2022. Count I of Plaintiffs' Complaint alleges

that ATF violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, because, in amending the definitions of certain terms, ATF acted in excess of the authority granted to it by federal firearms statutes. Compl. ¶¶ 96-102. On August 17, 2022, Plaintiffs filed a motion for a preliminary injunction. ECF No. 15. On August 29, 2022, the date Defendants' response to Plaintiffs' motion for preliminary injunction was due, this Court issued an order directing the parties to brief the issue of whether "the Court should advance the preliminary injunction motion to a determination on the merits" pursuant to Federal Rule 65. ECF No. 33.

Both parties submitted briefing on the issue on August 31, 2022, and both parties took the position that this Court should not consolidate the hearing on the Plaintiffs' motion for preliminary injunction with a trial on the merits of Plaintiffs' claims pursuant to Federal Rule 65(a)(2). ECF Nos. 53 & 54. In opposing consolidation, Plaintiffs noted that "[i]n the APA context, because the district court acts as an appellate tribunal and the evidence is almost exclusively limited to the administrative record, claims are normally resolved on summary judgment." ECF No. 54 at 1 n.1 (citations omitted). Plaintiffs argued that the Court should not consolidate the preliminary injunction and ultimate merits determination, and should instead grant Plaintiffs' motion for a preliminary injunction and resolve the merits after the filing of the administrative record and summary judgment briefing. *Id.* at 7.

On September 2, 2022, this Court entered an order granting Plaintiffs' motion for a preliminary injunction. ECF No. 56. In doing so, this Court first examined whether Plaintiffs had shown a likelihood of success on the merits which, according to the Court, did *not* require the plaintiff to show "that [it] is entitled to summary judgment." *Id.* at 6 (quoting *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013)). The Court held that, under the relevant standard, Plaintiffs had shown that they were likely to succeed on the merits of their Count I claim, and noted that the Court was not reaching the issue of whether Plaintiffs had shown a likelihood of success on the merits of any of their other claims. *Id.* at 15. The Court held that one plaintiff, Tactical

2

Machining, had also satisfied the other required factors of irreparable harm, *id.* at 16-20, and that the public interest favored the entry of an injunction, *id.* at 21-22, and therefore entered a preliminary injunction against ATF implementing or enforcing, against Tactical Machining, the Final Rule's amended definitions at issue, *id.* at 23. On October 1, 2022, the Court expanded the scope of its injunction to include Tactical Machining's customers. ECF No. 89. On October 3, 2022, this Court entered a *sua sponte* order clarifying that the injunction does *not* provide relief to anyone prohibited from receiving or possessing a firearm pursuant to 18 U.S.C. § 922(g), even if they are a Tactical Machining customer, so that ATF may continue to apply the Final Rule's amended definitions with respect to anyone falling within the prohibitions of § 922(g). ECF No. 91.

On September 23, 2022, the Court ordered Defendants to produce the administrative record no later than October 24, 2022. ECF No. 82. On October 7, 2022, the Parties submitted a Joint Report on scheduling, agreeing that "this case will likely be resolved through dispositive motions without a trial," and proposing a staggered summary judgment briefing schedule beginning with Plaintiffs' motion for summary judgment due 60 days from the later of the date the administrative record is filed or the date any objections or motions regarding the sufficiency of the administrative record are resolved. ECF No. 95 at 3. The Court adopted this briefing schedule in an order issued October 24, 2022. ECF No. 105 at 2. Also on October 24, 2022, Defendants filed a notice of filing of the administrative record and provided the administrative record to all relevant parties. ECF No. 106. On October 25, 2022, this Court issued an order notifying the parties that the Court intends "to consolidate the hearing on preliminary injunction to a trial on the merits" only as to Count I of the Plaintiffs' (including the Intervenor-Plaintiffs) Complaints. ECF No. 107.

## ARGUMENT

I.   **This Court Should Not "Consolidate" the Ultimate Determination on the Merits of Plaintiffs' Count I with the Court's Previously Issued Preliminary Injunction Decision.**

Rule 65(a)(2) provides that "[b]efore or after *beginning the hearing* on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it *with the hearing*." (emphasis added). This provision authorizes a consolidation decision only before or during the "*hearing* on a motion for a preliminary injunction." If the drafters of the Rule had intended this provision to provide a procedural vehicle to consolidate the *decisions*, it surely could have said so, and the word "beginning" would serve no purpose and would have been omitted. However, they did not do so, and there is no mention in the rule of a decision to consolidate after a preliminary injunction *decision* has been made (and when there is thus no pending preliminary injunction "hearing" to "consolidate" with a "trial on the merits"). *Cf. Duncan v. Walker*, 533 U.S. 167, 174 (2001) (refusing to adopt interpretation of the statute that would render a word "insignificant, if not wholly superfluous") (citation omitted). Here, because there is no "hearing on a motion for a preliminary injunction" scheduled or contemplated, there is nothing for this Court to consolidate its decision on the merits of Plaintiffs' Count I with under the plain language of Rule 65(a)(2).

Further, as the Supreme Court has noted, "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits [via Rule 65(a)(2)]," *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), and a court should only do so in instances where an "expedited decision on the merits [is] appropriate," *id.* The Fifth Circuit has cautioned courts against using Rule 65(a)(2) to issue final judgment on the merits in some circumstances, noting:

> The primary objection is that the court is rendering *sua sponte* summary judgment without providing notice or conducting a summary judgment hearing as required by Fed. R. Civ. P. 56. In addition, the issues which are considered in the preliminary injunction hearing are entirely different from the focus of a summary judgment adjudication. Thus, it is a "risky approach" to assume that the often incomplete evidence adduced at a preliminary injunction hearing is sufficient to determine whether

4

a claimant is entitled to judgment as a matter of law.

*H & W Indus., Inc. v. Formosa Plastics Corp., USA*, 860 F.2d 172, 177 (5th Cir. 1988) (vacating district court's decision on the merits because "[a]lthough the court employed the language of a summary judgment determination, its decision does not comport with the court's reasoning in [*Standard Oil Co. of Tx. v.*] *Lopeno Gas* [*Co.*, 240 F.2d 504 (5th Cir. 1957)] or with standard summary judgment procedures") (citation omitted); *cf. Communications Maint., Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1205 (7th Cir. 1985) (noting that Rule 65(a)(2) consolidation is "a risky approach" because "the questions focused on differ in deciding a motion for preliminary injunction and in deciding a motion for summary judgment" given the different legal standards and burdens).

Defendants are not aware of any instance in which a court has retroactively decided to consolidate "the hearing on a motion for a preliminary injunction" with "the trial on the merits" months after issuing a decision on the preliminary injunction. This Court's decision on Plaintiffs' motion for a preliminary injunction was issued on September 2, 2022, and all parties agreed at that time that consolidation was inappropriate because summary judgment would call for a different legal standard and would likely rely on evidence in the Administrative Record that was not available to the Court at the time it decided the motion for preliminary injunction. Defendants have now filed the Administrative Record, and the Parties have negotiated and proposed a schedule for Rule 56 summary judgment briefing which the Court has adopted. No exigent circumstances here demand an urgent resolution of Count I or any of Plaintiffs' other causes of action; all plaintiffs (including Intervenor Plaintiffs) who this Court has held will be subject to irreparable harm from the Final Rule are protected by this Court's preliminary injunction. Rule 56, not Rule 65(a)(2), is therefore the appropriate avenue for resolution of Plaintiffs' claims, including Count I.

## II.   Plaintiffs Are Not Entitled to Judgment on Count I Because ATF Acted Within the Authority Delegated to It by Statute.

Furthermore, any "consolidation" that would convert this Court's preliminary injunction

5

decision – which awarded certain Plaintiffs limited relief because, the Court found, among other things, they made a strong showing of likelihood of success on the merits of their Count I claim – into a final judgment would be wrong on the merits. ATF acted well within its statutory authority in promulgating the Final Rule.

The Attorney General (AG) is responsible for enforcing the Gun Control Act ("GCA") and the National Firearms Act ("NFA"), and Congress and the AG have expressly delegated the responsibility for administering and enforcing the GCA and NFA to the Director of ATF.[1] 18 U.S.C. § 926(a) delegates to the AG the authority to prescribe "such rules and regulations as are necessary to carry out the provisions" of the statute. "Because § 926 authorizes the [AG] to promulgate those regulations which are 'necessary,' it almost inevitably confers some measure of discretion to determine what regulations are in fact 'necessary.'" *Nat'l Rifle Ass'n v. Brady*, 914 F.2d 475, 479 (4th Cir. 1990). Pursuant to this authority, ATF has for years issued regulations that define statutory terms, including "firearm" and "frame or receiver." However, existing regulations are not inflexible rules designed to last indefinitely; instead, agencies "are neither required nor supposed to regulate the present and future within the inflexible limits of yesterday." *Am. Trucking Ass'n v. Atchison, Topeka, and Santa Fe Ry. Co.*, 387 U.S. 397, 416 (1967). Although Plaintiffs argue that portions of the Final Rule's amended definitions of two terms – "frame or receiver" and "firearm" – do not comport with the language of the statute, Plaintiffs have not demonstrated that they are entitled to judgment on this claim.

### A.   The Amended Definition of "Frame or Receiver"

The GCA defines "firearm" as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) *the frame or receiver of any such weapon*; (C) any firearm muffler or firearm silencer; or (D) any destructive device." 18 U.S.C. § 921(a)(3) (emphasis added). "Frame or receiver" is not defined in the statute. *Id.* § 921.

---

[1] *See* 18 U.S.C. § 926(a); 26 U.S.C. § 7801(a)(2); 28 U.S.C. § 599A(c)(1); 28 C.F.R. § 0.130(a)(1)-(2).

ATF has therefore long provided regulations defining the statutory term "frame or receiver."  The agency first defined the term "frame or receiver" in 1968 as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward position."  Final Rule, Commerce in Firearms and Ammunition, 33 Fed. Reg. at 18,555, 18,558 (Dec. 14, 1968), *codified at* 27 C.F.R. § 478.11.

Under the previous definition, ATF regularly examined products that manufacturers and sellers submitted for classification decisions that were *not* complete, functional frames or receivers to determine if they were sufficiently advanced in the manufacturing process to be considered a "frame or receiver" under the regulatory definition.  The Administrative Record, which was not available to the Court at the time of its preliminary injunction decision, contains a number of instances pre-dating the amended definition of "frame or receiver" in the Final Rule in which ATF made a determination as to when an incomplete or nonfunctional frame or receiver becomes a "frame or receiver."  *See, e.g.*, ATF000010 (Classification Letter from Apr. 20, 1978 finding that product "has reached a stage of manufacture such that *it may be readily converted to functional condition.  Therefore, it is a firearm and is subject to all applicable controls under the provisions of the [GCA]*.") (emphasis added); ATF000017 (Letter from Aug. 2, 1978, stating that "[i]t is [ATF's] position that an unfinished firearm receiver *which may be readily converted to functional condition* is a firearm as defined.") (emphasis added); ATF000020 (Letter from Mar. 22, 1979 stating "[t]he frame or receiver of a firearm is considered to be subject to the provisions of the [GCA] at such time that it has reached a stage in its manufacture where the frame can be readily converted to fire."); ATF000023 (Classification Letter from Jan. 31, 1980 stating that "a 'piece of metal' is considered to be a firearm receiver and subject to the provisions of the [GCA] at such time as it reaches a stage in manufacture *where it can be readily converted to a functional condition*.") (emphasis added); ATF000052-53 (Classification Letter from Dec. 27, 2002 determining that unfinished AR-15 receivers were considered a "frame or receiver," and thus a "firearm," under the

GCA because of the degree to which the components had been manufactured and machined); ATF000062-63 (Classification Letter from Jan. 29, 2004 determining that unfinished AR-15 type receivers were a "frame or receiver" under the regulatory definition because of "the stage of manufacture" of the unfinished receivers); ATF000110 (Classification Letter from Nov. 19, 2007 determining that "your planned receiver will be sufficiently complete to be classified as the frame or receiver of a firearm" based on the "machining/drilling operations [that] will have been performed on the final product you wish to sell"); ATF000206-07 (Classification Letter from May 17, 2013 examining the machining that would and would not be performed on the unfinished receiver and finding that "your submitted item will not be sufficiently complete to be classified as the frame or receiver of a firearm and thus would *not* be a 'firearm' as defined in the GCA) (emphasis in original); ATF000496-97 (Classification Letter from Feb. 23, 2015 finding that unfinished receiver submitted "has reached a point in the manufacturing process to be classified as a 'firearm' as defined in 18 U.S.C. § 921(a)(3)" but instructing manufacturer that if the same product were sold but with the trigger cavity unmachined/solid, ATF would not classify the product as a "frame or receiver").  Under the previous definition, then, ATF regularly applied the definition of "frame or receiver" to some unfinished or incomplete frames or receivers if they had reached a sufficiently advanced stage of the manufacturing process that they could readily be converted to a functional state.

In light of this historical practice, and to address court decisions interpreting ATF's prior definition of "frame or receiver" such that up to 90 percent of all firearms in the United States would have no component qualifying as a "frame or receiver" under the GCA, 87 Fed. Reg. at 24,652, 24,655, the Final Rule amended the definition of "frame or receiver."  Specifically, the Final Rule provided that:

> (c) *Partially complete, disassembled, or nonfunctional frame or receiver.* The terms "frame" and "receiver" shall include a partially complete, disassembled, or nonfunctional frame or

receiver, including a frame or receiver parts kit, that is designed to or may readily[2] be completed, assembled, restored, or otherwise be converted to function as a frame or receiver, *i.e.*, to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (*e.g.*, unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit.

87 Fed. Reg. at 24,739. The Final Rule then sets forth five non-exhaustive illustrative examples of components that either would or would not be considered a "frame or receiver" under the Final Rule's amended definition. *Id.*

Plaintiffs have not stated what they believe to be the "ordinary meaning" or plain meaning for the terms frame or receiver. Rather, "frame or receiver" is a statutory term that Congress did not define or provide any guidance as to its meaning, leaving the precise definition of that term to the discretion and expertise of ATF. And ATF has enacted regulations defining the term "frame or receiver" since shortly after the enactment of the GCA in 1968 that are consistent with common and technical dictionary definitions. *See* 87 Fed. Reg. at 24,654 & n.7, 24,693, & n.118. Importantly for this Court's inquiry, even under the previous definition, an issue that ATF has regularly resolved in issuing classification decisions was determining *when* in the manufacturing process an item becomes a frame or receiver. In this Court's decision granting Plaintiffs' motion for preliminary injunction, the Court noted that "[t]hat which *may become* a receiver is not itself a receiver." ECF No. 56 at 8 (emphasis in original). However, this Court also noted that "[a]n incomplete receiver may still be a receiver

---

[2] The Rule separately defines "readily" to mean a process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical statement. 87 Fed. Reg. 24,735. With respect to ATF's classification of firearms, relevant factors to making this determination include: (1) time, (2) ease, (3) expertise, (4) equipment, (5) parts availability, (6) expense, (7) scope, and (8) feasibility. *Id.*

within the meaning of the statute, depending on the degree of completeness." *Id.* at 10.

Resolving the tension between these two ideas – that "an incomplete receiver may still be a receiver" but "that which may become a receiver" is not – is the crux of the challenged portion of the Final Rule's amended definition of "frame or receiver." ATF is charged with determining *when* a component changes from a "gun part" unregulated by the GCA into a "frame or receiver" that is considered a "firearm" under 18 U.S.C. § 921, and the agency has done so for decades with little controversy or determination that it acted in excess of its statutory delegation of authority. As this Court specifically noted, the question of "how much machining is necessary to transform a component into a frame or receiver . . . lies with ATF." ECF No. 56 at 10; *see also id.* at 11 n.21 (stating that "some degree of finality or functionality" is required for a nonfunctional receiver to be considered a "frame or receiver" but that "[t]he determination of degree likely rests with ATF."). The challenged portion of the amended definition of the Final Rule only provides more specific guidance about the criteria ATF uses in making that determination. The Final Rule does *not* provide that all unfinished frames or receivers are considered "frame[s] or receiver[s]" for purposes of the GCA – the amended definition specifically notes that the amended definition "shall not include a forging, casting, printing, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon." 87 Fed. Reg. at 24,739. Rather, the Final Rule only considers an unfinished receiver to be a "frame or receiver" if it is both clearly identifiable as a component part of a weapon (*i.e.*, at least "partially complete") *and* "is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver." *Id.*

In its preliminary injunction opinion, this Court concluded that the Final Rule's amended definition of "frame or receiver" likely exceeded ATF's statutory authority because it would "regulate a component as a 'frame or receiver' even after ATF determines that the component in question is *not*

*a* frame or receiver." ECF No. 56 at 10 (emphasis in original). But the Final Rule's amended definition treats a component as a frame or receiver only when ATF has determined that the component *is* a frame or receiver. Indeed, as the above-cited portions of the Administrative Record demonstrate, ATF has for decades classified some incomplete or nonoperational frames or receivers as frames or receivers under the GCA based upon whether they have reached a stage of manufacture such that they can be readily converted to a functional condition.

ATF's use of the term "readily" in the Final Rule's amended definition incorporates a term and concept that Congress has used repeatedly in federal firearms laws, both in the GCA and elsewhere. *See, e.g.,* 26 U.S.C. § 5845(b) (defining "machinegun" as "any weapon which shoots, is designed to shoot, or can *readily* be restored to shoot, automatically . . ."). This definition of "frame or receiver" ensures that the GCA and NFA accomplish what Congress intended those statutes to do. Under any other approach, persons could easily circumvent the requirements of the GCA and NFA by producing or purchasing almost-complete frames or receivers that could easily be altered to produce a functional frame or receiver. This would thwart Congress's purpose in enacting the GCA and NFA to "ensure[] that weapons [are] distributed through regular channels and in a traceable manner," thus making "possible the prevention of sales to undesirable customers and the detection of the origin of particular firearms." *New York v. Burger*, 482 U.S. 691, 713 (1987). As this Court acknowledged in its preliminary injunction order, the statute does *not* limit "frame or receiver" to only complete, functional receivers; "[a]n incomplete receiver may still be a receiver within the meaning of the statute, depending on the degree of completeness." ECF No. 56 at 10. By updating the definition of "frame or receiver" to only consider as a "frame or receiver" those partially complete receivers which have reached the stage of the manufacturing process at which they "may readily be completed, assembled, restored, or otherwise converted" to a functional frame or receiver, ATF has taken a sensible approach that is consistent with the language and purpose of the GCA. As another court

held in rejecting an argument virtually identical to that raised by the Plaintiffs here, "adopting Plaintiffs' position would appear to contradict the plain language of the GCA, which clearly defined 'firearms' more broadly than a fully operational weapon." *Morehouse Enters. v. ATF*, No. 3:22-CV-116, 2022 WL 3597299 at *6 (D.N.D. Aug. 23, 2022), *appeal docketed* No. 22-2812 (8th Cir.).

Accordingly, the challenged portion of the amended definition of "frame or receiver" reasonably determines when in a component's manufacturing process it becomes a frame or receiver, and that determination is consistent with the language and intent of the GCA as well as decades of ATF practice. Plaintiffs therefore should not prevail on the merits of their Count I claim as to the amended definition of "frame or receiver."

### B.    The Amended Definition of "Firearm"

The GCA defines "firearm" as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." 18 U.S.C. § 921(a)(3). The plain language of subsection (A) makes clear that "firearm" does not encompass only weapons that are complete or functional. Specifically, the language "or is designed to or may readily be converted to [function as a weapon]" makes clear that Congress intended the definition to include weapons in a variety of states of disassembly, disrepair, or functionality. The definition's express inclusion of a "starter gun" – a gun designed for use with "blank ammunition," but which may be converted to expel live ammunition – is further evidence of Congressional intent to encompass more than only fully functional weapons within the definition.[3]

---

[3] The legislative history confirms as much, demonstrating that Congress was particularly concerned with the example of a "do-it-yourself gunsmith" who made bulk purchases of starter pistols. "[H]e would then, at his residence, disassemble them, and using an electric hand drill mounted in a drill press stand, bore out the plugged barrel and enlarge the cylinder chambers to accommodate .22-caliber cartridges." S. Rep. 88-1340, at 14 (Aug. 7, 1967). This concern would apply with equal if not greater force to a disassembled, partially complete weapon that must have some minor additional machining to expel a lethal projectile by the action of an explosive.

*See* S. Rep. No. 88-1340, at 14 (1964).

Consistent with the plain language of the statute, federal courts have long recognized that a disassembled or nonfunctional weapon can constitute a "firearm" for purposes of the GCA.[4] Furthermore, as the materials in the Administrative Record show, ATF interpreted the statutory definition of "firearm" to encompass certain weapon parts kits even prior to the Final Rule's amended definition. *See* ATF000723-29 (Dec. 4, 2020 Chief Counsel Memorandum concluding that "buy build shoot" kits sold are firearms under the GCA because they "are weapons which are designed to, or may readily be converted to expel a projectile by the action of an explosive"); ATF000817 (Dec. 9, 2020 application for search warrant approved by federal judge describing "buy build shoot" kits as firearms under § 921).

When ATF issued the Final Rule, the amended definition of "firearm" included "a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." 87 Fed. Reg. 24,735. This additional language in the Final Rule's amended definition does not alter the statutory language of § 921(a)(3)(A); rather, it clarifies that a specific subset of products on the market falls within the statutory language of "any weapon . . . which . . . is designed to or may readily be converted to expel a projectile by the action of an explosive." *Id.* at 24,662 n.44.

This amended definition is consistent with the plain language of the statute. There can be little doubt that at least some weapon parts kits are "designed to" fire a projectile, as these products are marketed and sold to, and purchased by, customers for the sole purpose of assembling the kits into functional weapons capable of firing a projectile. Moreover, many such parts kits "may readily

---

[4] *See, e.g., United States v. Wick,* 697 F. App'x 507, 508 (9th Cir. 2017); *United States v. Stewart,* 451 F.3d 1071, 1073 n.2 (9th Cir. 2006); *United States v. Annis,* 446 F.3d 852, 857 (8th Cir. 2006); *United States v. Ryles,* 988 F.2d 13, 16 (5th Cir. 1993); *United States v. Theodoropoulous,* 866 F.2d 587, 595 n.3 (3d Cir. 1989).

be completed [or] assembled . . . to expel a projectile" – they are marketed and sold on the basis of the relative ease of assembling or completing the individual parts contained in the kit into a functional weapon. But the Final Rule does *not* categorically provide that any collection of components sold together, or any product billed as a parts kit, constitutes a "firearm" under the GCA. Rather, the Final Rule is clear that in order to be "readily" convertible to expel a projectile, the conversion of a weapon parts kit "must be fairly or reasonably efficient, quick, and easy" after examining the enumerated factors in the regulatory definition of "readily." 87 Fed. Reg. at 24,735.

As this Court noted in its preliminary injunction order, § 921(a)(3)(A) "covers *disassembled, nonfunctional,* and antique firearms because they are 'designed' to fire projectiles *even if they are practically unable to do so.*" ECF No. 56 at 9 (emphasis added). Indeed, it is difficult to discern any principled distinction between a "disassembled" or "nonfunctional" firearm that is designed to fire a projectile even if it is "practically unable to do so" in its current form, and a weapon parts kit. A weapon parts kit is nothing more than a disassembled, currently nonfunctional weapon incapable of firing a projectile in its present form, but that is designed and intended to be assembled or completed to do so. Under Plaintiffs' reading, a disassembled or partially disassembled handgun that is missing one minor component that may be readily procured elsewhere cannot be considered a "firearm" subject to the licensure, background check, marking or record-keeping requirements that federal firearms laws require. There is no indication that Congress intended such an absurd result. Plaintiffs' interpretation would create a substantial loophole that would allow anyone, including individuals who may be lawfully prohibited from receiving or possessing a firearm, to purchase a disassembled weapon that may be assembled or completed in short order, frustrating the core purposes of the GCA, including assisting law enforcement in its goals of preventing and solving crimes involving firearms.

Accordingly, the challenged portion of the amended definition of "firearm" reasonably specifies that certain products that already qualify as a "firearm" under the statutory definition of that

term are in fact "firearms."  Because this is consistent with the intent and purpose of the GCA as well as federal case law and prior ATF practice, Plaintiffs are not entitled to prevail on the merits of their Count I claim as to the amended definition of "firearm."

### III.   In Any Event, This Court Should Not Grant Plaintiffs Relief Beyond What is Necessary to Remedy Plaintiffs' Alleged Injuries.

For the reasons set forth above, this Court should not consolidate an ultimate decision on the merits of Plaintiffs' Count I with the Court's previous preliminary injunction decision, and should not rule for Plaintiffs on Count I in any event.  However, in the event that this Court were to do so, and were to enter final judgment on behalf of Plaintiffs, it should carefully tailor its remedies to only those necessary to remedy any demonstrated harms of the Plaintiffs.

Plaintiffs request much broader relief than that which this Court has thus far granted them under the preliminary injunction.  In their Complaint, Plaintiffs seek an order "[h]olding unlawful and setting aside the Final Rule," and "[i]ssuing . . . permanent injunctive relief enjoining Defendants from enforcing or implementing the Final Rule."  Compl. at Prayer for Relief ¶¶ 1, 2.  This Court should not grant such broad, sweeping relief under the present circumstances.

As an initial matter, this Court should not "hold unlawful" or "set aside" the entire Final Rule, or enter a permanent injunction enjoining Defendants from enforcing or implementing the entire Final Rule, as Plaintiffs request in their Complaint.  Plaintiffs' motion for a preliminary injunction, which this Court has stated it intends to consolidate with a final determination on the merits, only argues that ATF exceeded the scope of its statutory authority with regard to two specific portions of amended definitions in the Final Rule – the addition of subsection (c) to the definition of "frame or receiver," ECF No. 16 at 14-19, and the addition of language concerning "weapon parts kits" to the definition of "firearm," *id.* at 19-21.  In its order granting Plaintiffs' motion for preliminary injunction, the Court only considered these two provisions in assessing whether Plaintiffs were likely to succeed on the merits of their Count I claim.  ECF No. 56 at 6-16.  Therefore, because any issue of whether

ATF exceeded its statutory authority in any of the other portions of the Final Rule has not been presented to or considered by the Court, any relief this Court might grant with regard to the Final Rule should be limited to these two challenged provisions. *Cf.* 87 Fed. Reg. at 24,730 ("[I]n the event any provision of this rule, an amendment or revision made by this rule, or the application of such provision or amendment or revisions to any person or circumstance is held to be invalid or unenforceable by its terms, the remainder of this rule . . . shall not be affected and shall be construed so as to give them the maximum effect permitted by law.").

Furthermore, any remedy or relief this Court provides Plaintiffs should be narrowly tailored to the actual harms allegedly suffered by Plaintiffs as a result of the challenged portions of the Final Rule's amended definitions. "Remedies . . . ordinarily 'operate with respect to specific parties.'" *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quoting *Murphy v. Nat'l Collegiate Athletic Assn.*, 138 S. Ct. 1461, 1486 (2018)) (Thomas, J., concurring). "In the absence of any specific party, they do not simply operate 'on legal rules in the abstract.'" *Id.* (quoting *Murphy*, 138 S. Ct. at 1486) (Thomas, J., concurring); *cf. Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974) (when "the relief sought produces a confrontation with one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required by" the "discrete factual context within which the concrete injury occurred or is threatened."); *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (relief must be "narrowly tailor[ed] . . . to remedy the specific action which gives rise to the order as determined by the substantive law at issue."). In granting Plaintiffs' motion for preliminary injunction, this Court narrowly tailored its relief to only the Plaintiff, Tactical Machining, that the Court held had shown that it would be irreparably

16

harmed by the Final Rule absent an injunction.  ECF No. 56 at 22. [5]  In doing so, the Court noted that "Plaintiffs have also not shown that nationwide injunctive relief is appropriate at this stage."  *Id.* Plaintiffs have made no additional showing why broader relief than they have received under the terms of the Court's preliminary injunction would be appropriate or necessary to remedy their alleged harms. Under the Court's preliminary injunction, Tactical Machining and BlackHawk Manufacturing are able to operate their businesses and sell their respective products to anyone not prohibited from receiving or possessing a firearm pursuant to 18 U.S.C. § 922(g), without being subject to the challenged provisions of the Final Rule's amended definitions, and those provisions likewise cannot be implemented or enforced against Tactical Machining and BlackHawk Manufacturing's customers who are not so prohibited.  In the absence of any showing that a broader remedy is needed to cure any harm or prejudice suffered by any Plaintiff, this Court should not order permanent injunctive relief any broader than the scope of the Court's preliminary injunction.[6]  *Cf. DHS v. New York*, 140 S. Ct. 599, 599-601 (2020) ("The real problem here is the increasingly common practice of trial courts ordering relief that transcends the cases before them.  Whether framed as injunctions of 'nationwide,' 'universal,' or 'cosmic' scope, these orders share the same basic flaw – they direct how the defendant must act toward persons who are not parties to the case.") (Gorsuch, J., concurring in the grant of stay); *Trump v. Hawaii*, 138 S. Ct. 2392, 2425-33 (2019) (nationwide injunctions "appear to be inconsistent with longstanding limits on equitable relief and the power of Article III courts" and "are

---

[5]  The scope of the preliminary injunction was later enlarged to cover Tactical Machining's customers, and BlackHawk Manufacturing, an Intervenor, and its customers, based on the Court's conclusion that such relief was necessary to protect those parties from irreparable harm.  ECF No. 188.

[6]  Defendants additionally note that 5 U.S.C. § 706(2) does not authorize the vacatur of agency rules. Section 706 does not pertain to remedies at all, which are instead governed by 703.  Section 706 is a rule of decision directing the reviewing court to disregard unlawful "agency action, findings, and conclusions" in resolving the case or controversy before it.  However, Defendants acknowledge that the Fifth Circuit has concluded that a district court may render an agency action "void" in an action brought under § 706.  *See Texas v. Biden*, 20 F.4th 928, 957 (5th Cir. 2021).

beginning to take a toll on the federal court system – preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch.") (Thomas, J., concurring).

## CONCLUSION

For the foregoing reasons, this Court should not consolidate the resolution of the merits of Plaintiffs' Count I with the Court's previous decision granting Plaintiffs' request for a preliminary injunction. In any event, Plaintiffs are not entitled to judgment on Count I. To the extent the Court were to disagree, it should narrowly tailor any relief to remedy the harms demonstrated by Plaintiffs.

DATED: December 5, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

LESLEY FARBY
Assistant Director, Federal Programs Branch

*/s/ Martin M. Tomlinson*
DANIEL RIESS
MARTIN M. TOMLINSON
TAISA M. GOODNATURE
JEREMY S.B. NEWMAN
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 353-4556
Email: martin.m.tomlinson@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

On December 5, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Martin M. Tomlinson*