**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

|  |  |
|---|---|
| JENNIFER VANDERSTOK;<br>MICHAEL G. ANDREN;<br>TACTICAL MACHINING, LLC, a limited liability<br>company; and<br>FIREARMS POLICY COALITION, INC., a nonprofit<br>corporation,<br><br>       *Plaintiffs*,<br><br>and<br><br>BLACKHAWK MANUFACTURING GROUP INC.<br>d/b/a 80 PERCENT ARMS,<br><br>       *Intervenor-Plaintiff*,<br><br>    v.<br><br>MERRICK GARLAND, in his official capacity as<br>Attorney General of the United States;<br>UNITED STATES DEPARTMENT OF JUSTICE;<br>STEVEN DETTELBACH, in his official capacity as<br>Director of the Bureau of Alcohol, Tobacco, Firearms<br>and Explosives; and<br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS<br>AND EXPLOSIVES,<br><br>       *Defendants*. | Civil Action No. 4:22-cv-691-O |

**BLACKHAWK MANUFACTURING GROUP INC. d/b/a 80 PERCENT ARMS'
SUPPLEMENTAL BRIEF REGARDING ADJUDICATION OF COUNT I OF
PLAINTIFFS' RESPECTIVE COMPLAINTS**

**TABLE OF CONTENTS**

INTRODUCTION & PROCEDURAL BACKGROUND ............................................................ 1

ARGUMENT ..................................................................................................................... 5

    I.  The Final Rule Conflicts with the Plain Text of the Gun Control Act ......................... 7

    II.  The Final Rule Is Arbitrary, Capricious, and an Abuse of Discretion ...................... 10

    III.  The Final Rule Was Justified Based on a Now-Repudiated Legal Test ................... 12

    IV. Vacatur is the Appropriate Remedy ....................................................................... 14

CONCLUSION ................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allentown Mack Sales & Service, Inc. v. NLRB*,
 522 U.S. 359 (1998)....................................................................................................... 11

*Brown v. U.S. Dep't of Educ.*,
 No. 4:22-CV-0908-P, —— F.Supp.3d ——,
 2022 WL 16858525 (N.D. Tex. Nov. 10, 2022)............................................................. 14, 15

*City of Syracuse v. ATF*,
 20-cv-06885 (S.D. N.Y. Jan. 29, 2021) ............................................................................ 7

*Data Mktg. P'ship, LP v. United States Dep't of Lab.*,
 45 F.4th 846 (5th Cir. 2022) .......................................................................................... 14

*District of Columbia v. Heller*,
 554 U.S. 570 (2008)....................................................................................................... 12

*Driftless Area Land Conservancy v. Valcq*,
 16 F.4th 508 (7th Cir. 2021) .......................................................................................... 14

*FDA v. Brown & Williamson Tobacco Corp.*,
 529 U.S. 120 (2000)......................................................................................................... 5

*Franciscan All., Inc. v. Burwell*,
 227 F. Supp. 3d 660 (N.D. Tex. 2016) ............................................................................. 5

*Guedes v. BATFE*,
 140 S. Ct. 789 (2020)....................................................................................................... 6

*Lion Health Servs., Inc. v. Sebelius*,
 635 F.3d 693 (5th Cir. 2011) ......................................................................................... 15

*Michigan v. EPA*,
 576 U.S. 743 (2015)....................................................................................................... 10

*Not an LLC d/b/a JSD Supply v. ATF*,
 No. 22-cv-747 (W.D. Pa.).............................................................................................. 8

*NYSRPA v. Bruen*,
 142 S. Ct. 2111 (2022).............................................................................................. 13, 14

*Policy & Research, LLC v. United States HHS*,
 313 F. Supp. 3d 62 (D.D.C. 2018).................................................................................. 10

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947)...................................................................................... 10, 11

*Texas v. United States*,
    50 F.4th 498 (5th Cir. 2022) ........................................................................ 4, 15

*United States v. Davis*,
    139 S. Ct. 2319 (2019)...................................................................................... 5

*West Virginia v. Environmental Protection Agency*,
    142 S. Ct. 2587 (2022)..................................................................................... 14

*Wisconsin Central Ltd. v. United States*,
    138 S. Ct. 2067 (2018)...................................................................................... 5

**Statutes**

18 U.S.C. § 921(a)(3) ............................................................................ *passim*

18 U.S.C. 922(k) .............................................................................................. 9

27 C.F.R. § 478.129(b) ................................................................................... 9

27 C.F.R. §§ 478.11 ........................................................................................ 4

27 C.F.R. §§ 478.12(c)..................................................................................... 4

5 U.S.C. § 553 .................................................................................................. 4

5 U.S.C. § 706(2) ................................................................................. *passim*

**Other Authorities**

Administrative Procedure Act................................................................ *passim*

Gun Control Act of 1968 ....................................................................... *passim*

**Rules**

Definition of "Frame or Receiver" and Identification of Firearms,
    87 Fed. Reg. 24 (Apr. 26, 2022)........................................................ *passim*

Federal Rule of Civil Procedure 65(a)(2) ....................................................... 1

## INTRODUCTION & PROCEDURAL BACKGROUND

This action commenced on August 11, 2022 with the filing of Plaintiffs' original Petition challenging, *inter alia*, the authority of the Department of Justice ("DOJ") and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF," collectively "Agencies" or "Defendants") to regulate a broad array of items and materials under a newly-expanded definition of "firearm" introduced in a Final Rule that defied the United States Constitution and violated the rulemaking requirements of the Administrative Procedure Act ("APA"). ECF No. 1. Plaintiffs' original Petition sought judicial review of the Agencies' action and requested declaratory and injunctive relief. *Id*. A week later, on August 17, 2022, Plaintiffs filed a Motion for Preliminary Injunction. ECF No. 15.

The Court Declares Its Intent to Decide Plaintiffs' Counts I in Consolidated Proceeding under Rule 65(a)(2). Early in the pendency of Plaintiffs' Motion for Preliminary Injunction, on August 29, 2022, the Court notified the parties of its intent to exercise its authority under Federal Rule of Civil Procedure 65(a)(2) to advance and consolidate the hearing on a preliminary injunction with the trial on the merits and invited the parties to brief the issue of consolidation. ECF No. 33. All parties opposed consolidation on the grounds that production of the Administrative Record was required prior to trial on the merits. *See* ECF Nos. 53–54. Following the lodging of the Administrative Record, ECF No. 106, the Court on October 25, 2022, reiterated its intention to exercise its Rule 65(a)(2) authority to consolidate the hearing on preliminary injunction to a trial on the merits solely with respect to Counts I (Excess of Statutory Authority Under 5 U.S.C. § 706) of Plaintiffs' and Intervenor-Plaintiff's complaints. ECF No. 107 at 2 (citing Pls.' Am. Compl. at 41, ECF No. 93, Intervenor-Pl.'s Compl. at 26, ECF No. 99). The Court directed that the parties supplement their briefing regarding Plaintiffs' statutory interpretation

claims within 14 days of the completed production of the Administrative Record, which briefing deadline the Court subsequently adjusted to December 5, 2022 at the request of the parties. ECF No. 115.

Preliminary Injunctive Relief Granted. Plaintiffs' Motion for Preliminary Injunction argued that the Final Rule exceeds ATF's statutory authority under the Gun Control Act of 1968 ("GCA") in two ways: first, it "expands ATF's authority over parts that may be 'readily converted' into frames or receivers, when Congress limited ATF's authority to 'frames or receivers' as such"; and second, it "unlawfully treats weapon parts kits as firearms." ECF No. 56 at 6.  On September 2, 2022, this Court found that "Plaintiffs are likely to succeed on both claims" and granted preliminary injunction with respect to Tactical Machining, LLC ("Tactical"). *Id*.  Several weeks later, on September 22, 2022, BlackHawk Manufacturing Group, Inc. d/b/a 80 Percent Arms ("BlackHawk") filed a Motion to Intervene, ECF Nos. 76–77, which the Court granted on October 18, 2022. ECF No. 98.  On October 20, 2022, BlackHawk simultaneously filed its Intervenor Complaint and Motion for Injunction, ECF Nos. 99, 102–103, the latter of which the Court granted on November 3, 2022, thereby extending to BlackHawk the same protections provided in the Court's September 2 Order granting injunctive relief to Tactical.  ECF No. 118.

The Court's Preliminary Findings that Final Rule Is Unlawful. This Court's September 2 Order concluded, correctly, that "the Final Rule exceeds ATF's statutory authority under the plain language of the Gun Control Act." ECF No. 56 at 6.  The Court's decision rested on two sound findings: one, that "[p]arts that *may become* receivers are not receivers" and two, that "[a] weapons parts kit is not a firearm."  ECF No. 56 at 7–15. The Court analyzed the Final Rule's challenged provisions against the textual backdrop of the GCA, and found that the Final Rule's redefinition of "frame or receiver" conflicts with the statute's plain meaning:

The definition of "firearm" in the [GCA] does not cover all firearm parts. It covers specifically "the frame or receiver of any such weapon" that Congress defined as a firearm. 18 U.S.C. § 921(a)(3)(B).   That which *may become* a receiver is not itself a receiver. . . .

Congress excluded other adjectives that ATF adds to its definition. The Final Rule covers "disassembled" and "nonfunctional" frames and receivers. 27 C.F.R. § 478.12(c). Congress's definition does not. . . .

[T]he Final Rule's expansion of authority in § 478.12(c) to firearm parts that are not yet frames or receivers goes beyond Congress's definition. In other words, § 478.12(a) describes the full scope of frames and receivers that are consistent with the statutory scheme. ATF's expansion in § 478.12(c), on the other hand, covers additional parts that are "designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver." 27 C.F.R. § 478.12(c). But Congress intentionally omitted that language from the definition. Section 478.12(c) is thus facially unlawful because it describes only parts that Congress intentionally excluded from its definition of "firearm." It is purely an expansion of authority beyond the statutory language.

*Id*. at 8–10 (emphasis in original).

This Court's September 2 Order went on to reject Defendants' counterarguments that ATF was entitled to deference in regulating components that ATF itself determined to *not* be a frame or receiver. *Id*. at 10.  The Court likewise found Defendants' attempt to invoke "boundless congressional intent" regarding the GCA to be unpersuasive as justification for the Final Rule's overreach. *Id*. at 11 ("Contrary to Defendants' broad framing, the regulatory goals of the Gun Control Act were narrower . . . When Congress sought to regulate parts of weapons, it did so meticulously.") (quotations and citations omitted).  This Court further found that the Final Rule's inclusion of "weapons parts kits" in ATF's newly-minted definition of "firearm" impermissibly expanded ATF's authority beyond the parameters established by the GCA and conflicts with the statute's definition of "firearm." *Id*. at 12.

Finally, the Court's September 2 Order affirmed what is readily apparent from the language of the GCA: "ATF has no general authority to regulate weapon parts."  *Id*.  This Court correctly observed that:

the Final Rule grants ATF that general authority by copying language used throughout the statutory definition. It takes phrases like "designed to" and "may readily be converted" and "assembled" from various places in the statute, cobbling them together to form ATF's own definition of "firearm." Those terms may add a patina of credibility to the drafting, but they tarnish Congress's carefully crafted definition. More importantly, they unlawfully expand ATF's authority beyond the boundaries set by the Gun Control Act.

*Id*. at 12 (emphasis added).

The availability of the Administrative Record does nothing to diminish the validity of this Court's preliminary assessment that the provisions redefining "firearm"—27 C.F.R. §§ 478.11, 478.12(c)—are "facially unlawful", that the Final Rule exceeds the scope of ATF's authority under the GCA, and that ATF's interpretation of the statute is unpersuasive, unreasonable, and undeserving of *Chevron* deference. ECF No. 56 at 15–16.

Instead, the Administrative Record substantiates that the Final Rule is the result of a rulemaking process that was constitutionally incoherent and legally defective from its origin through every stage since. The Agencies' mandate from the Biden Administration demanded a statutory outcome that was plainly outside ATF's delegated authority to enact and not achievable through any rulemaking process that would satisfy the procedural and substantive requirements of the APA. *See* 5 U.S.C. § 553. Despite Defendants' diligent efforts to deliver the statutory change demanded by the Biden Administration, the Final Rule was always on a collision course with the Constitution and the inevitable judicial reckoning with the APA, which "requires courts to 'hold unlawful and set aside agency action' that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.'" *Texas v. United States*, 50 F.4th 498, 525 (5th Cir. 2022) (quoting 5 U.S.C. § 706(2)(C)).

## ARGUMENT

Among the core tenets of our Constitutional system is the principal that "[o]nly the people's elected representatives in Congress have the power to write new federal criminal laws." *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019). Agencies are not Congress, and as such have no authority to amend criminal statutes on the basis of a previously undetected "purpose" or "intent" in decades-old statutory regimes. No matter how "important, conspicuous, and controversial the issue . . . an administrative agency's power to regulate in the public interest must always be grounded in a valid grant of authority from Congress." *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 687 (N.D. Tex. 2016) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161 (2000)). "Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law." *Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018).

In 1968, Congress adopted the statutory text in 18 U.S.C. § 921(a)(3), which provides that a "firearm" is, first and foremost, "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." Alternatively, "(B) the frame or receiver of any such weapon" is a "firearm" by itself. However, the statute does not further define what constitutes a "frame or receiver" of a "firearm." This definition remained unchanged for 54 years, until the Biden Administration directed the Agencies to implement regulations against so-called "ghost guns,"—a derogatory, provocative term for homemade firearms that have been crafted by generations of Americans since the founding of this nation.

Realizing that the only way to bring homemade firearms into the scope of national firearms regulations, ATF decided to update the definition of "firearm" to include partial, incomplete and

unfinished frames and receivers—colloquially known as "80% receivers." ATF also announced that "weapons parts kits", described as an 80% receiver together with some combination of other unregulated parts, tools, and/or instructions for manufacture, are now captured by the new definition of a "firearm." The result is a Final Rule in which ATF introduced a nebulous, confusing definition of what now constitutes a "frame or receiver," replacing the simple prior definition of 30 words with a 1,700-word tangle of new provisions. In addition, the Final Rule now defines the word "readily" as it appears in Section 921(a)(3)(A), with an assemblage of concepts that fail to convey clear meaning, provide fixed standards, and which seem intended to give ATF semantic elasticity to take whatever actions it finds desirable for a given situation.

In recent years, ATF has increasingly engaged in regulatory adventurism. For example, although ATF has generally been successful in sustaining its "best reading" of the definition of what constitutes a machine gun under the NFA and the GCA for purposes of regulating so-called "bump stocks", the impact that such severe criminal law policy interpretations have on the average citizen has not gone unnoticed:

> The agency used to tell everyone that bump stocks don't qualify as "machineguns." Now it says the opposite. The law hasn't changed, only an agency's interpretation of it. And these days it sometimes seems agencies change their statutory interpretations almost as often as elections change administrations. How, in all this, can ordinary citizens be expected to keep up—required not only to conform their conduct to the fairest reading of the law they might expect from a neutral judge, but forced to guess whether the statute will be declared ambiguous; to guess again whether the agency's initial interpretation of the law will be declared "reasonable"; and to guess *again* whether a later and opposing agency interpretation will *also* be held "reasonable"? And why should courts, charged with the independent and neutral interpretation of the laws Congress has enacted, defer to such bureaucratic pirouetting?

*Guedes v. BATFE*, 140 S. Ct. 789, 790-91 (2020) (Statement of Gorsuch, J.). The government's actions in the instant matter are much more aggressive than the bump stock cases that turned on all the litigants disputing the statutory term "automatically more than one shot,

without manual reloading, by a single function of the trigger." ATF's "ghost gun" Final Rule on the meaning of frame or receiver is made up out of whole cloth to establish a bureaucratic scheme well outside the scope of the GCA definition and also the ability of citizens to understand it.

## I.   The Final Rule Conflicts with the Plain Text of the Gun Control Act

The regulations promulgated by the Final Rule recurrently conflict with the text of the GCA of 1968. For example, 18 U.S.C. §921(a)(3) defines as a "firearm" the part that is "*the* frame or receiver of any such weapon[.]" (emphasis added). This language obviously denotes a singular object, whereby each "firearm" contains only one "frame" or one "receiver."

Second, the statutory definition found in Section 921(a)(3) consists of two parts pertinent here, with subsection (A) discussing "weapons" which "will" or can be "readily … converted" to fire ammunition, and subsection (B) discussing "the frame or receiver of any such weapon." The Final Rule, however, conflates these distinct statutory provisions (A) and (B) into a single regulatory morass, claiming that unfinished 80% "frame or receiver" precursors are "firearms" because they allegedly can be "readily" converted through the completion of manufacture and assembly with additional parts. *See* Final Rule at 24,735; at 24,747. As explained above, the term "readily" in subsection A has traditionally been applied to weapons that have most, if not all, of the internal parts and components necessary to expel a projectile by the action of an explosive. Historically, ATF has interpreted subsection B to include only finished frames or receivers which have not yet been paired with the parts and components which enable them to expel a projectile by the action of an explosive. It does not appear that ATF has ever before taken the position that the term "readily" in Subsection A of this statute extends to Subsection B of this statute so as to capture unfinished frames or receivers which are not firearms within the categorical definition of a "firearm."

Third, after indiscriminately applying the term "readily" to unfinished frames and receivers alone, the Final Rule claims that "weapon parts kits" (an 80% frame or receiver sold together with some combination of unregulated parts) are "weapons" under § 921(a)(3)(A). *See* Final Rule at 24,684; at 24,739. To extend its reach to such assemblages, the Final Rule unabashedly rewrites and expands the statutory language "readily … converted" to now be "readily be completed, assembled, restored, or otherwise converted." Final Rule at 24,735.

Fourth, to discourage the lawful sale and purchase of unregulated, unfinished frames or receivers (without additional parts), or unregulated firearm parts (without unfinished frames or receivers), the Final Rule appears to create new federal crimes of "criminal conspiracy" to sell and "structuring" to purchase unregulated firearm parts. *Compare* NPRM at 27,726 n.45 *with* Final Rule at 24,714. Neither of these new crimes have ever existed in the context of the GCA. It is perfectly lawful under the GCA, as it has been since the inception of the Nation, for a citizen not licensed as a manufacturer under the GCA, and not otherwise prohibited under law from owning, possessing or receiving firearms, to make or complete a homemade firearm for personal use from an unfinished receiver or frame. It is also lawful for that citizen under the GCA to commercially sell such unregulated parts, instructions, and tooling helpful or essential to making a personal firearm without being licensed as a manufacturer or dealer. Under ATF's new contorted rule of what is permissible, a citizen can only guess as to the prohibited activity around which a wrongdoer can "structure" or "conspire" to violate the GCA.[1]

---

[1] ATF has already taken action based on the unsupported legal theories advanced in the Final Rule even prior to its effective date. *See, e.g.*, *Not an LLC d/b/a JSD Supply v. ATF*, No. 22-cv-747 (W.D. Pa.), Verified Complaint for Declaratory and Injunctive Relief, ECF No. 1 (May 19, 2022).

Fifth, ATF introduces another newly-coined term, "privately made firearm" ("PMF"), which has never existed prior to the Final Rule, Final Rule at 24,735, because, again, there is no federal statute prohibiting an individual from manufacturing his or her own firearm for personal use. The GCA does not regulate privately made firearms, and imposes no requirement that they be marked with serial numbers as the Final Rule now demands.  Nevertheless, the Final Rule will require a firearms dealer to engrave a serial number on a firearm manufactured by an individual, despite the absence of any federal law requiring all firearms be serialized, much less firearms manufactured by non-licensees. *See* Final Rule at 24,735; at 24,742.  Recognizing that this new requirement lacks an enforcement mechanism, the Final Rule creates yet another federal crime of obliteration of a PMF serial number. Final Rule at 24,653 (a PMF serial number may now be "considered the 'importer's or manufacturer's serial number' protected by 18 U.S.C. 922(k), which prohibits possession or receipt of a firearm that has had the importer's or manufacturer's serial number removed, obliterated, or altered").

Finally, the Final Rule is in direct defiance of 18 U.S.C. § 926(a)(3), which prohibits ATF from demanding more records from FFLs than it did as of 1986. 18 U.S.C. § 926(a)(3).  The Final Rule amends 27 C.F.R. § 478.129(b) and (e), which governs the period that Federal Firearms Licensees are required to keep their business records. The current regulation requires licensed dealers to keep all ATF Form 4473s "for a period of not less than 20 years, . . . after which records of transactions over 20 years of age may be discarded." 27 C.F.R. § 478.129(b) and (e). The Final Rule, however, amends Section 478.129(b) and (e) to require permanent retention by dealers "until business or licensed activity is discontinued."[2] *See* Final Rule at 24,746 and at 24,747.

---

[2] Prior to the Final Rule's requirement that licensees keep records forever, the ATF "strongly recommended" that licensees send the ATF records over twenty years old. *See* ATF Ruling 2016-1,  https://www.atf.gov/firearms/docs/ruling/2016-1-requirements-keep-firearms-records-

By now instructing that FFLs may never destroy their records (even after 20 years), ATF effectively ensures that all such records eventually will be transferred to the ATF out-of-business records center, "a facility owned, managed, [and] controlled by the United States…." 18 U.S.C. § 926(a)(3). This new recordkeeping requirement is arguably part of the agency's larger scheme which violates the Section 926(a)(3) prohibition on creation or maintenance of a national gun or gun owner registry. *Id.*

\* \* \*

For each of these forgoing reasons, the Final Rule is "not in accordance with law."

## II.  The Final Rule Is Arbitrary, Capricious, and an Abuse of Discretion

When an agency rewrites a Congressionally enacted statute, or adopts a regulation or "interpretation" in obvious conflict with its plain terms, the agency's actions are "not in accordance with law" under the APA. 5 U.S.C. Section 706(2)(A); *see also Policy & Research, LLC v. United States HHS*, 313 F. Supp. 3d 62, 72 (D.D.C. 2018) ("an agency acts arbitrarily and capriciously if it acts in a manner that is contrary to its own regulations or a congressional statute."). In reviewing a challenged agency decision under APA's arbitrary and capricious standard, "the court must judge the propriety of the agency's action based 'solely [on] the grounds invoked by the agency' when it made the challenged decision." *Policy & Research, LLC v. United States HHS*, 313 F. Supp. 3d 62, 72 (D.D.C. 2018) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

Federal administrative agencies are required to engage in "reasoned decisionmaking." *Michigan v. EPA*, 576 U.S. 743, 750 (2015). "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that

---

electronically/download, ¶ 13. Notably, the Final Rule does not indicate whether it supersedes Ruling 2016-1, does not reference the previous Ruling's strong recommendation, instead simply purports to enact a new requirement.

result must be logical and rational." *Id.* (quoting *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359, 374 (1998)). Moreover, as the Supreme Court has repeatedly explained, "[i]t will not do for a court" (or for the parties affected by an agency decision, for that matter) "to be compelled to guess at the theory underlying the agency's action [.]" *Chenery Corp.*, 332 U.S. at 196–97.

Leaving aside the deafening absence of any Congressionally-granted authority, the Agencies have similarly been unable to identify any specific grounds for redefining the enormously consequential term "frame or receiver" in the manner depicted in the Final Rule. The Agencies' "strongest" explanation, provided in Defendants' earlier opposition brief, is the generic recital of long-recognized background regarding Congress's having "vested in ATF the authority to promulgate regulations necessary to enforce federal firearms laws, including advising the firearms industry and the public of the agency's understanding of those laws." ECF No. 41 at 1. ATF claims that it "undertook the rulemaking at issue here" in order to "explain the application of certain statutory terms to advances in firearms technology." *Id.*; *but see* Proposed Rule, at 27,720 ("Congress recognized that regulation of all firearm parts was impractical").

Defendants repeatedly cite "technological advances" as necessitating ATF's revision of the statutory definition of "firearm", which includes the "frame or receiver" of a firearm. *Id.*; s*ee also* Final Rule at 24,656; at 24,659. According to Defendants, technological advances "have also made it easier for companies to create firearm parts kits, standalone frame and receiver parts, and easy-to-complete frames or receivers," and as a result some unspecified number of "companies under the mistaken impression that these items do not qualify as 'firearms' have sold these items without conducting background checks or maintaining records of such sales." ECF No. 41 at 1; *but see* Final Rule at 27,721 (ATF admits that "at the time the current definitions were adopted

11

there were numerous models of firearms that did not contain a part that fully met the regulatory definition of 'frame or receiver,' such as the Colt 1911, FN-FAL, and the AR-15/M-16"). Defendants assert that some unspecified number of "persons prohibited from possessing firearms have bought these kits and easy-to-complete frames and receivers without undergoing background checks" and "[w]hen such firearms are used in crime, they cannot typically be traced because they lack serial numbers." *Id*.

Defendants' identify *clarity* as the aim of its rulemaking actions: "To provide clarity to the public and the firearms industry on the proper application of federal law, ATF promulgated a rule updating its definition of 'frame or receiver' and other statutory and regulatory terms." *Id*. As discussed above, the Final Rule achieves precisely the opposite of clarity, and instead injects confusion and ambiguity throughout what had previously been a relatively stable, predictable regulatory regime.

\* \* \*

For these forgoing reasons, the Final Rule is "not in accordance with law."

### III.  The Final Rule Was Justified Based on a Now-Repudiated Legal Test

In the Final Rule, ATF reports that comments were received from "[a] majority of commenters opposed to the NPRM" to the effect that ATF's "new requirements that undermine the Second Amendment are unconstitutional," and that 'the NPRM failed to include relevant Second Amendment analysis." *See* Final Rule at 24,676; *see also* Final Rule at 24,677.  In response, the Final Rule includes this absent "Second Amendment analysis," but confidently asserts that "this final rule is consistent with the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008)" because "[t]here are compelling governmental interests in

[regulating] privately made firearms….” *Id*. The Final Rule goes on to specifically invoke the two-step test utilized by various federal courts of appeals to analyze Second Amendment challenges.

In short, the Final Rule contends that its regulatory changes do not violate Second Amendment rights on the theory that “this rule serves the *compelling governmental interest* of preventing unserialized firearms from proliferating throughout the country, as recognized by [a Fourth Circuit] decision … this rule … imposes a *minimal burden* on the possession of firearms.” *Id*. at 24,677 (emphasis added).

However, Final Rule’s legal dicta was made obsolete shortly after publication by the Supreme Court’s June 2022 decision in *NYSRPA v. Bruen*, which invalidated the legal grounds on which the Final Rule expressly relies. 142 S. Ct. 2111 (2022). In its *Bruen* opinion, the Court “decline[d] to adopt that two-part approach” used in the lower federal courts and relied on by ATF in the Final Rule, “decline[d] to engage in means-end scrutiny generally,” and “specifically ruled out the intermediate-scrutiny test….” *Id*. at 2117–18. In doing so, the Court made clear that the level of severity of a “burden” on Second Amendment rights is immaterial – any “burden” will do. *Id*. at 2126 (finding step-two, which looks at “the severity of the law’s burden on that right,” to be “one step too many”). The Court similarly rejected the ubiquitous “public-safety” talisman waved by governments to justify Second Amendment infringements, reiterating that “[t]he right to keep and bear arms ... is not the only constitutional right that has controversial public safety implications.” *Id*. at 2126 n.3 (citation omitted). In light of *Bruen’s* express holdings that “public safety” is an insufficient justification for an infringement, and that even a “minimal burden” on protected rights is still an unconstitutional infringement, the dual pillars offered by ATF in defense of the Final Rule crumble. Since the Final Rule is justified on the basis of a legal theory that has

been soundly rejected by the Supreme Court, it is "not in accordance with law" under the APA. *See* 5 U.S.C. § 706(2)(A).

* * *

In light of *Bruen*, the Final Rule failed to adequately address the Second Amendment concerns raised in public comments and …. is "not in accordance with law."

### IV. Vacatur is the Appropriate Remedy

Plaintiffs seek relief in the form of a permanent nationwide injunction preventing enforcement of the Final Rule or vacatur of the Final Rule in its entirety. "Vacatur [of an agency action] retroactively undoes or expunges a past [agency] action.... Unlike an injunction, which merely blocks enforcement, vacatur unwinds the challenged agency action." *Data Mktg. P'ship, LP v. United States Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022) (quoting *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021)) (alterations and ellipsis in original).

The APA gives courts the power to "hold unlawful and set aside agency action[s]." 5 U.S.C. § 706(2). Vacatur is authorized by 5 U.S.C. § 706, which requires the Court to decide "all relevant questions of law [and] interpret constitutional and statutory provisions" and "hold unlawful and set aside" agency action "not in accordance with law," "in excess of statutory jurisdiction," or "short of statutory right." Because "under our Constitution, the people's elected representatives in Congress are the decisionmakers here—and they have not clearly granted the agency the authority it claims for itself," the Program is unlawful. *West Virginia v. Environmental Protection Agency*, 142 S. Ct. 2587, 2626 (2022) (Gorsuch, J., concurring); *Data Mktg. P'ship*, 45 F.4th at 859 ("the ordinary practice is to vacate unlawful agency action").

On occasion, a court—though authorized by the APA to vacate an agency action—may exercise its discretion to remand the action for adjustments or another agency review. *Brown v.*

14

*U.S. Dep't of Educ.*, No. 4:22-CV-0908-P, ––– F.Supp.3d –––, 2022 WL 16858525, at *14 (N.D. Tex. Nov. 10, 2022) (citing *Texas v. United States*, 50 F.4th at 529). In deciding whether to sidestep complete vacatur, courts consider "(1) the seriousness of the deficiencies of the action, that is, how likely the agency will be able to justify its decision on remand; and (2) the disruptive consequences of the vacatur." *Id.* If there is a small defect or deficiency that is quickly curable or an existing complex agency program that requires major winddown efforts, a court may remand without vacating the entire action. *Id.* (citing *Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) (remanding to the agency to recalculate amounts owed in a manner consistent with the statute)).

Here, both factors weigh against remand. First, "the Agencies' misstep is not correctible on remand—it is a complete usurpation of congressional authorization implicating the separation of powers required by the Constitution." *Brown*, at *14. Second, the Final Rule does not require a significant administrative winddown period and will not demand significant agency resources in order to simply return to the statutory status quo as it existed prior to August 2022. Thus, vacatur of the Final Rule is the appropriate remedy.

## CONCLUSION

For the foregoing reasons, BlackHawk respectfully requests that this Court issue a determination that the Final Rule violates the APA, is contrary to the Gun Control Act, and is subject to vacatur.

Respectfully submitted,

s/ *Brian D. Poe*
Brian D. Poe
TX Bar No. 24056908
BRIAN D. POE, ATTORNEY AT LAW PLLC
The Bryce Building

909 Throckmorton Street
Fort Worth, TX 76102
Phone: (817) 870-2022
Fax: (817) 977-6501
bpoe@bpoelaw.com

Michael J. Sullivan
*Pro Hac Vice*, MA Bar No. 487210
J. Christopher Amrhein, Jr.
*Pro Hac Vice*, MA Bar No. 703170
Nathan P. Brennan
*Pro Hac Vice*, MN Bar No. 389954
ASHCROFT LAW FIRM LLC
200 State Street, 7th Floor
Boston, MA 02109
Phone: (617) 573-9400
Fax: (617) 933-7607
msullivan@ashcroftlawfirm.com
camrhein@ashcroftlawfirm.com
nbrennan@ashcroftlawfirm.com

*Counsel for Intervenor-Plaintiff BlackHawk*
*Manufacturing Group Inc. d/b/a 80 Percent Arms*

16

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 5, 2022, the foregoing document was served, via the Court's

CM/ECF Document Filing System, upon the registered CM/ECF users in this action.


/s/ *Brian D. Poe*
Brian D. Poe

1