UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JENNIFER VANDERSTOK, et al.,<br><br>  Plaintiffs,<br><br>BLACKHAWK MANUFACTURING GROUP INC. d/b/a 80 Percent Arms,<br><br>  Intervenor-Plaintiff,<br><br>DEFENSE DISTRIBUTED, and THE SECOND AMENDMENT FOUNDATION, INC.<br><br>  Intervenors-Plaintiffs,<br><br>v.<br><br>MERRICK GARLAND, in his Official Capacity as Attorney General of the United States, et al.,<br><br>  Defendants. | Civil Action No. 4:22-cv-00691-O |

**DEFENSE DISTRIBUTED AND THE
SECOND AMENDMENT FOUNDATION, INC.'S
REPLY IN SUPPORT OF MOTION TO INTERVENE**

Defense Distributed and the Second Amendment Foundation, Inc. file this reply in support of their motion to intervene in this action, *see* Doc. 116 (motion); Doc. 117 (brief & proposed complaint); Doc. 126 (Defendants' opposition).

**Argument**

Defense Distributed and SAF's intervention request meets both the requirements for intervention of right under Federal Rule of Civil Procedure 24(a)(2) and permissive intervention under Federal Rule of Civil Procedure 24(b). The motion should be granted.

**I.    Defense Distributed and SAF's allegations are to be accepted; proof is not required.**

The Agencies' response is chock full of demands for evidence. On issue after issue, it faults the movants for failing to "prove" an entitlement to intervene. ECF. No 126 at 6 ("intervenor bears the burden to prove"); *id.* ("failure to prove a required element is fatal"); *id.* ("Intervenors fail to prove any of the four required elements"); *id.* at 13 ("have not established standing" (citing the proof requirement)); *id.* at 14 ("Putative Intervenors cite no … evidence"); *id.* ("they must marshal factual support"). As a matter of law, the Agencies' repeated procedural premise is wrong.

To decide a motion to intervene, reviewing courts are to accept all of the movant's factual allegations as true; there is no need for proof. The Fifth Circuit recently upheld this rule in *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) ("For the purposes of deciding the motion to intervene, we accept the Jane Does' factual allegations as true."), and it goes back decades, *Mendenhall v. M/V Toyota Maru NO. 11*, 551 F.2d 55, 57 (5th Cir. 1977) ("For the purposes of passing upon the Company's right to intervene, these allegations are accepted as true.").

When Blackhawk moved to intervene, the Agencies made the same kind of demand for proof and this Court rightly rejected it. Doc. 98 at 3. Now that the Agencies have doubled down on their erroneous evidentiary demand, the Court should reject them once again. Given this fundamental flaw in the Agencies' opposition, it is no wonder to see the specifics fare no better.

1

**II.     Standing exists.**

The Agencies oppose Defense Distributed and SAF's motion to intervene by saying that "Defense Distributed and SAF fail to establish Article III standing, as is required to seek relief not sought by the existing parties." ECF. No. 1-5. The Court should reject the Agencies' no-standing argument because it is incomplete, premature, and wrong.

**A.     The standing denial is incomplete.**

The Agencies' no-standing argument is not a reason to deny intervention because it pertains only to *some* of Defense Distributed and SAF's claims. The Agencies' no-standing argument does not pertain to the claims asserted commonly by both Defense Distributed and SAF *and* the existing parties, namely (1) the request to have the Final Rule held unlawful, which is made by both the movants and all existing parties, and (2) the request to have the New Final Ruleset aside, which is made by both the movants and Plaintiffs. The Agencies make no such argument because they could not. The rule is that each claim for relief needs only "*a* litigant with standing," *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433 (2017) (emphasis added), and there is clearly such a litigant for these two common claims.

Hence, even if the Agencies' no-standing argument is correct (it is not), it does not resolve the threshold question of whether Defense Distributed and SAF can intervene. It poses at most just an issue of *how many* claims Defense Distributed and SAF can assert. That debate can and should be had later, after the motion to intervene is granted and the complaint is actually filed.

**B.     The standing denial is premature.**

As to the challenged claims, the Agencies' no-standing arguments should be rejected as procedurally premature. The question presented now—on a motion to intervene—is *not* whether Defense Distributed and SAF have already successfully presented pleadings and proof that entitle them to relief. The question presented now is just whether Defense Distributed and SAF can *try*

2

to carry those burdens in this action, as opposed to a separate one. Only once intervention occurs will their action have been "commenced," Fed. R. Civ. P. 3, and only then will the government be entitled to test pleading sufficiency via Rule 12, proof sufficiency via Rule 56, and so forth.

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) (cited at Doc. 126 at 2), does not hold otherwise. It speaks only to the issue of what an *existing* intervenor has to establish to succeed to warranting *relief on their claims* – not what a *putative* intervenor has to establish to warrant *intervention*. When standing issues arose in *Little Sisters of the Poor*, the intervenor had already intervened in the suit and proceeded to prosecute it. *Id.* Standing requirements for this procedural posture—a motion to intervene—were not at issue.

For motions to intervene, Rule 24 itself supplies the simple rule of decision. The key term is "claims." Fed. R. Civ. P. 24(a). Rule 24 does *not* dispense intervention rights on the basis of what a putative intervenor actually "has." It instead dispenses intervention rights on the basis of what the putative intervenor "claims an interest" in. Fed. R. Civ. P. 24(a). Since Defense Distributed and SAF's proposed complaint certainly "claims" to have the requisite standing in at least broadly apparent strokes, hypothetical disputes about whether they will survive a future Rule 12 or Rule 56 motion can and should be reserved until they actually occur. *See Clark v. Putnam Cnty.*, 168 F.3d 458, 462 (11th Cir. 1999) ("It may well be that the proposed interveners' asserted *interest* is not a *right*. But that is a question of the merits of their defense, and whether an applicant for intervention will prevail in a suit is not an element of intervention by right.").

### C. The standing denial is wrong.

Apart from both their incomplete and premature nature, the Agencies' no-standing arguments should be rejected because they are wrong on their own terms. One by one, the Court should conclude that the motion and proposed complaint make all of the required standing showings.

3

### 1. Defense Distributed has standing.

Injury-in-fact for Defense Distributed is the first standing denial. Doc. 126 at 2-4. The Agencies argue that "Defense Distributed fails to identify in its Motion to Intervene any specific product or product category that it sells or sold that falls under the Rule's scope." *Id.* The Court should reject this argument because the motion supplies exactly what the Agencies say is missing.

The main supposed shortcoming is that Defense Distributed "fails to concretely allege any injury-in-fact traceable to the Rule." Doc. 126 at 7. But the Court has already concluded that, under the 2022 "Frame and Receiver" Rule, "ATF decided to regulate *partial* frames and receivers" and "weapon parts kits." Doc. 56 at 3. And according to the proposed complaint, these are precisely the types of products that the Defense Distributed is stopped from selling *because of* the 2022 "Frame and Receiver" Rule. Doc. 117-1 at 14-18. Paragraph 6 of the proposed complaint shows this in plenty of detail, and if that were not enough (it is), Paragraph 45 also alleges that "***[s]olely because of the Agencies' new Final Rule***, Defense Distributed ceased the business of dealing in (manufacturing, selling, delivering, shipping, transporting, and receiving) articles that (1) are *not* 'firearms' within the ordinary meaning of the Gun Control Act, (2) are *not* 'firearms' as the 1978 Rule defines that term, but (3) *are **defined for the first time ever as 'firearms' by the new Final Rule.***" *Id.* at 14 (emphasis added).

It does the government no good to claim that "the Rule does not classify all unfinished receivers or frame or receiver parts kits as firearms." Doc. 126 at 3. Maybe so, but the new Final Rule's extraordinary vagueness is not a point in the government's favor on any count, especially standing. The new Final Rule's vagueness is what makes it unconstitutionally "impossible to discern whether the 'unfinished receivers' or 'frame and receiver parts kits' to which Defense Distributed refers . . . are newly classified as firearms under the Rule." ECF. No. 126 at 4. That

4

no one can tell what the eight-factor standard means is itself the constitutional violation – not a saving grace for standing.

### 2. SAF has standing.

SAF's standing is denied on the ground that SAF failed to "identify any individual member who allegedly is similarly situated to the Individual Plaintiffs in this action, as is required to establish associational standing." Doc. 126 at 5. But no such identification requirement exists.

At least at the pleading stage, an association invoking associational standing need only assert *that* it has members with the requisite characteristics—not *who in particular* those members are. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("Where it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury, we see no purpose to be served by requiring an organization to identify by name the member or members injured."); *see also Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F.4th 586, 594 (D.C. Cir. 2022) (associational standing is established even when courts "do not know the names of the individuals"). And even if such a shortcoming existed, the remedy would entail complaint amendment, *see* Fed. R. Civ. P. 15—not total denial of intervention.

SAF's standing is also denied on the ground that there are "no arguments, allegations, or evidence to support a finding that the other two prongs of the associational standing standard." Doc. 126 at 5. But as to each of these prongs—that "the interests it seeks to protect are germane to the organization's purpose" and that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit," *Hunt*, 432 U.S. at 343—SAF has shown all that is required at this initial stage.

The germaneness requirement is "'undemanding' and requires 'mere pertinence' between the litigation at issue and the organization's purpose." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 551 n.2 (5th Cir. 2010). It is met here because one of SAF's purposes is to "promote[] the right to keep and bear arms . . . by supporting . . . legal efforts about the Constitution's right to privately own and possess firearms." Doc. 117-1 at 4.

Prong three is a prudential issue of mere "administrative convenience and efficiency" that courts address by "examining both the relief requested and the claims asserted." *Ass'n of Am. Physicians & Surgeons, Inc.*, 627 F.3d at 551. It is satisfied here because SAF's individual members need not participate in an APA action focusing solely on how and why the Agencies promulgated the New Final Rule that seeks just declaratory and injunctive relief (not actual damages). *See id.* Just as in *AAPS*, the situation here is that, "once proved as to some, the violations would be proved as to all." *Id.* Prong three is therefore satisfied.

The last denial of SAF's standing says that the filings "fail to address the 'indicia of membership' that constitute a threshold requirement to invoking associational standing as a membership organization.'" Doc. 126 at 5. But the indicia-of-membership requirement does not apply to traditional membership organizations, *see Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1084 (5th Cir. 2022), which SAF is, Doc. 117-1 at 4.

**III.    The motion is timely**

The government next says that the motion is "untimely." Doc. 126 at 6. But as Defense Distributed and SAF's preemptively established, Doc. 117 at 5-6, timing is no problem here.

The Court has already correctly held that the relevant "length of time is measured from when the intervenor learned of his interest in the particular action in which he seeks to intervene." Doc. 98 at 5. Thus, for Defense Distributed and SAF, the correct time measurement does not start

6

where the Agencies' say—at the "filing of the Complaint." Doc. 126 at 8. It instead starts only recently, when on October 1, 2022, the Court found that "FPC ha[d] not carried its burden to demonstrate its associational right to seek injunctive relief on behalf of its members." Doc. 89 at 15. The instant one-month turnaround time pales in comparison to the five-month turnaround deemed reasonable by precedent, *Ass'n of Prof'l Flight Attendants v. Gibbs*, 804 F.2d 318, 320–21 (5th Cir. 1986) (cited at Doc. 117 at 5), that the Agencies never answer. Their delay argument has no serious legal backing.

Prejudice to the Agency nonmovants is either nonexistent or minimal. The test here is the same as it was before, calling for prejudice to be measured "by the *delay in seeking intervention*, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." Doc. 98 at 5 (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) (emphasis added)). Given that Blackhawk's injection of new injunction proceedings did not cross the threshold, *id.*, neither will the intervention of Defense Distributed and SAF.

If the instant motion to intervene is granted soon, it is highly likely that Defense Distributed and SAF's claims can fit comfortably within the current scheduling order. *See* Doc. 105. And even if a minor second round of motions would need to occur, the substantial overlap in applicable facts and law could entail expedited deadlines that make "mere inconvenience" the only result. *See McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970) ("mere inconvenience is not in itself a sufficient reason to reject as untimely a motion to intervene as of right").

This case was not at an "advanced stage" when Blackhawk moved to intervene and it not an "advanced stage" now either, despite the Agencies' protest, Doc. 126 at 12. Examples of an "advanced stage" are when litigation is "nearly wrapped up" by settlements that just need final approval, *United States v. Dep't of Corr.*, No. 19-1739, 2021 WL 4520634, at *2 (1st Cir. Feb. 22,

7

2021), when both motions to dismiss and motions for summary judgment have been briefed in full, *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014), and other kinds of "ninth-inning-with-two-outs" moments, *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1066 (8th Cir. 2013). Properly defined, this case is nowhere near an "advanced stage."

Prejudice to the movants absent intervention, in contrast, is substantial. As with Blackhawk, Defense Distributed's very existence is jeopardized by the new Final Rule's continued enforcement. *See* Doc. 117-1 at 3 ("These harms are largely irreparable and very probably existential."). And for both Defense Distributed and the SAF members that would engaging in Second Amendment freedoms but for the Rule's restrictions, the loss of constitutional freedoms constitutes irreparable injury. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976); Doc. 117-1 at 4 ("the new Final Rule stops SAF members from acquiring from firms like Defense Distributed the 'unfinished' frames and receivers and/or frame and receiver 'parts kits' that SAF members reasonably need to exercise their Second Amendment rights").

## IV. The requisite interests are claimed.

The Agencies next deny that Defense Distributed and SAF claim the requisite interests. Doc. 126 at 1, 9-13 . The Court should reject the supposed shortcomings one by one, emphasizing as it did before that the Rule 24 burden is "minimal." Doc. 98 at 3.

The Agencies say that the Defense Distributed and SAF fail to claim the requisite interests because they "do not establish that they have a protectable interest that might be impaired or impeded as a result of this litigation." Doc. 126 at 1. Yet this Court has already concluded that interference in an entity's "continued operation of its business" is a "protectible interest" for purposes of mandatory intervention. Doc. 98 at 7. Defense Distributed seeks to allege exactly that, specifying that the "harms" imposed by the new Final Rule are "existential." Doc. 117-1 at

3. The proposed complaint's Paragraph 59 shows that Defense Distributed "will likely" cease to exist if the Rule is enforced against it:

> The new Final Rule *irreparably* harms Defense Distributed by inflicting so much monetary harm as to threaten Defense Distributed's existence. If not stopped, the Agencies' promulgation of the new Final Rule will likely cause an income deprivation so severe that Defense Distributed discontinues the business of dealing in non-firearm frame and receiver items. Even if a federal firearms license were maintained, Defense Distributed cannot avoid the existential risks because most of its business involves the interstate shipment of articles directly to purchasers, which if considered "firearms" are not allowed even with an FFL.

Doc. 117-1 at 19. This is not, as the Agencies would put it, a conclusory assertion. For in addition to the reasoning provided in Paragraph 59, the proposed complaint spends many paragraphs explaining the rationale for the conclusion that it "will likely" cease to exist if the Rule is enforced against it. *See* Doc. 117-1 at 3, 18, 19.

V. **Defense Distributed and SAF's interests** may not be **adequately represented.**

The Agencies deny that the existing parties "do not adequately represent" Defense Distributed and SAF's interests. Doc. 126 at 11-12. All that need be shown is that interests "may diverge in the future," *Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 425 (5th Cir. 2002), and the potential for sufficient divergence here is already clear.

Critically, the Agencies say nothing about the Court having expressly held that the case's existing associational plaintiff (FPC) has no "right to seek injunctive relief on behalf of its members." Doc. 89 at 15. Because of this, Defense Distributed and SAF might very well suffer from continued enforcement of an illegal rule *even if the Court strikes it down as to the existing parties*. For even if the existing parties succeed in obtaining the final judgment they seek, the Agencies are bound to take the position—as they just did at the Supreme Court of the United States—that APA final judgments setting aside a rule apply only to the parties at hand and cannot inure to the benefit of any citizen that is not an actual party. *See* Brief for the Petitioners at 39-43,

9

*United States v. Texas*, No. 22-58 (U.S.) (Sept. 12, 2022) ("[APA Section 706(2) simply directs a court to decline to give effect to an unlawful agency action in deciding the case at hand and granting relief to the parties before it. . . . Remedies "ordinarily 'operate with respect to specific parties,' " rather than " 'on legal rules in the abstract,' " California, 141 S. Ct. at 2115 (citation omitted), but vacatur does the opposite, see J.A. 449-451.").

The Agencies also fail to grapple with *Aransas Project v. Shaw*, 404 F. App'x 937 (5th Cir. 2010) (per curiam) (cited at Doc. 117 at 7), which rightly held that an existing party's failure to "articulate legal arguments that [the intervenor] would put forth" can support intervention. *Id.* at 41. So it is here, since Defense Distributed and SAF make unique claims against the new Final Rule (e.g., the proposed complaint's Count II) that no existing party makes.

**VI.   Alternatively, the Court should grant permissive intervention under Rule 24(b).**

The government makes just two scant arguments about permissive intervention. First, the government repeats the timeliness argument. ECF. No 126 at 13. It is wrong as to permissive intervention for the same reason that it is wrong as to intervention as of right.

Second, the government says that "high-level similarities" are not enough to warrant permissive intervention. ECF. No 126 at 13-14. But there are far more than "high-level similarities" here. Two of the requested remedies are *exactly the same* (the requests to have the Final Rule held unlawful and set aside), and several of the claims triggering an entitlement to that relief are essentially parallel as well. The government made this same argument vis-à-vis Blackhawk and was rightly rejected for reasons that apply here: "intervention is both permissible and accomplishes Rule 24's competing goals of judicial efficiency by consolidating multiple parties' challenges to the Final Rule while avoiding fruitless complexity." Doc. 98 at 10.

        Respectfully submitted,

        BECK REDDEN LLP

            By <u>/s/ *Chad Flores*</u>
            Chad Flores
            cflores@beckredden.com
            Texas Bar No. 24059759
            Nicholas M. Bruno
            nbruno@beckredden.com
            Texas Bar No. 24097432
            Zachary T. Nelson
            znelson@beckredden.com
            Texas Bar No. 24127240
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

Counsel for Defense Distributed and
The Second Amendment Foundation, Inc.

11

## CERTIFICATE OF SERVICE

  I certify that a true and correct copy of this submission was served on all counsel of record by the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure on December 5, 2022.

              */s/ Chad Flores*
              Chad Flores