**Declaration of Cody Wilson**
**January 12, 2023**

I, Cody R. Wilson, declare under penalty of perjury that the following statements are true and correct:

**Defense Distributed**

1. I co-founded Defense Distributed in 2012 and have directed Defense Distributed's operations almost continuously since then. I am familiar with all significant aspects of Defense Distributed's operations.

2. Defense Distributed is a non-profit corporation organized under the laws of the State of Texas and headquartered in Austin, Texas.

3. Defense Distributed is the first private defense contractor in service of the general public. Since 2012's Wiki Weapon project, Defense Distributed has defined the state of the art in small scale, digital, personal gunsmithing technology.

4. Defense Distributed's business activities include the production and e-commerce retail sale of items that can be used in the process of self-manufacturing frames, receivers, and/or fully functioning firearms. The products that Defense Distributed produces and sells include items marketed colloquially as "80 Percent Lowers" (aka frame-and-receiver "blanks" or "castings"), as well as tools and jigs that individuals can use in conjunction therewith to produce frames, receivers, and/or fully functioning firearms.

**The new Final Rule**

5. Congress in the Gun Control Act of 1968 defined "firearm" to mean "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm." 18 U.S.C. §921 (a)(2). Congress never defined the "firearm" term's constituent phrase "frame or receiver."

6. From March 1978 to August 2022, the Attorney General of the United States (through authority delegated to what is now the Bureau of Alcohol, Tobacco, Firearms and Explosives) administered the Gun Control Act of 1968 by deeming the "firearm" definition's "frame or receiver" phrase to mean "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." *Title and Definition Changes*, 43 Fed. Reg. 13,531, 13,537 (Mar. 31, 1978).

7. In August 2022, the Attorney General of the United States (through authority delegated to the ATF) administered the Gun Control Act of 1968 by giving the "firearm" definition's "frame or receiver" phrase a new meaning, *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (effective Aug. 24, 2022) (codified at 27 C.F.R. pts. 447, 478, and 479) (hereinafter the new Final Rule).

8. The new Final Rule redefines "firearm" under the Gun Control Act as including, for the first time, unfinished receivers, unfinished frames, and frame and receiver parts kits. *See* 27 C.F.R. § 478.12(c) (defining "frame" and "receiver" as including "partially complete," "disassembled," or "nonfunctional" frames and receivers that are "designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver," and defining frame and receiver parts kits as "firearms" by providing that a "a frame or receiver parts kit" can constitute "a partially complete, disassembled, or nonfunctional frame or receiver").

### Defense Distributed's Operations under the new Final Rule

9. Defense Distributed has never engaged, does not now engage, and does not intend to engage in, the business of importing, manufacturing, or dealing in any Gun Control Act "firearm" as that term is defined by the Gun Control Act itself.

10. Defense Distributed has never engaged, does not now engage, and does not intend to engage in, the business of importing, manufacturing, or dealing in any Gun Control Act "firearm" as that term is defined by administrative actions taken prior to August 2022.

11. Defense Distributed's business viability depends on its ability to deal in unfinished receivers, unfinished frames, and frame and receiver parts kits that (1) are *not* Gun Control Act "firearms" under the Gun Control Act itself, and (2) are *not* Gun Control Act "firearms" under administrative actions taken prior to August 2022, but that (3) *are* defined for the first time ever as Gun Control Act "firearms" by the new Final Rule.

12. Until the Agencies promulgated the new Final Rule, a critical amount of Defense Distributed's business consisted of dealing in (manufacturing, selling, delivering, shipping, transporting, and receiving) unfinished receivers, unfinished frames, and frame and receiver parts kits that (1) are *not* Gun Control Act "firearms" under the Gun Control Act itself, and (2) are *not* Gun Control Act "firearms" under administrative actions taken prior to August 2022, but that (3) *are* defined for the first time ever as Gun Control Act "firearms" by the new Final Rule.

    a) The Gun Control Act itself makes clear that the unfinished receivers, unfinished frames, and frame and receiver parts kits Defense Distributed dealt are *not* Gun Control Act "firearms." Likewise, ATF classification letters issued before August 2022 also made clear that the unfinished receivers, unfinished frames, and frame and receiver parts kits Defense Distributed dealt are *not* Gun Control Act "firearms."

    b) Under these authorities, unfinished frames and receivers are, by definition, articles that *may become* frames or receivers *if and only if* additional processes sufficiently alter their material constitutions. Frame and receiver parts kits are, by definition, kits containing non-frame or non-receiver articles that *may become* frames or receivers *if and only if* additional processes sufficiently alter their material constitutions. Those definitions accord with American common usage in the twentieth and twenty-first centuries.

    c) Hence, Defense Distributed sold these items through its website and shipped them via the mail to persons in most states, including persons in the United States District Court for the Northern District of Texas's Forth Worth Division.

    d) For the time period at issue, Defense Distributed performed a reasonably precise accounting of sales for these items—those defined for the first time ever as Gun Control Act "firearms" by the new Final Rule—and showed that they comprised a critical percentage of monthly revenues (nearly 1/5).

13. Solely because of the Agencies' new Final Rule, Defense Distributed ceased dealing in (manufacturing, selling, delivering, shipping, transporting, and receiving) unfinished receivers, unfinished frames, and frame and receiver parts kits that (1) are *not* Gun Control Act "firearms" under the Gun Control Act itself, and (2) are *not* Gun Control Act "firearms" under administrative actions taken prior to August 2022, but that (3) *are* defined for the first time ever as Gun Control Act "firearms" by the new Final Rule.

    a) Because of the new Final Rule, Defense Distributed can no longer do business by dealing in the unfinished frames and receivers or frame and receiver part kits that are a critical aspect of its business.

    b) Even though the Gun Control Act itself makes clear that Defense Distributed's unfinished receivers, unfinished frames, and frame and receiver parts kits are *not* Gun Control Act "firearms," and even though ATF classification letters issued before August 2022 also made clear that Defense Distributed's unfinished receivers, unfinished frames, and frame and receiver parts kits are *not* Gun Control Act "firearms," the new Final Rule and subsequent administrative actions have taken the position that these items *are* Gun Control Act "firearms."

    c) The new Final Rule itself deems the items at issue Gun Control Act "firearms." *See* 27 C.F.R. § 478.12(c) (defining "frame" and "receiver" as including "partially complete," "disassembled," or "nonfunctional" frames and receivers that are "designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver," and defining frame and receiver parts kits as "firearms" by providing that a "a frame or receiver parts kit" can constitute "a partially complete, disassembled, or nonfunctional frame or receiver").

    d) ATF actions further implementing the new Final Rule deem the items as issue Gun Control Act "firearms."  These include the ATF "Open Letter to All Federal Firearms Licensees" of December 27, 2022, which states the following:

**OPEN LETTER TO ALL FEDERAL FIREARMS LICENSEES**

**Impact of Final Rule 2021-05F on Partially Complete Polymer80, Lone Wolf, and Similar Semiautomatic Pistol Frames**

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) is issuing this open letter to assist the firearms industry and the public in understanding whether a "partially complete, disassembled, or nonfunctional" frame of a Polymer80, Lone Wolf, or similar semiautomatic, striker-fired pistol (sometimes generally referred to as "Glock-type" pistols) has reached a stage of manufacture such that it "may readily be completed, assembled, restored, or otherwise converted" to a functional frame, and is therefore classified as a "frame" or "firearm" in accordance with the final rule titled *Definition of 'Frame or Receiver' and Identification of Firearms* (Final Rule 2021R-05F), which became effective August 24, 2022. In particular, the following addresses partially complete, disassembled, or nonfunctional semiautomatic striker-fired pistol frames or parts kits manufactured, sold, or distributed by Polymer80 (known as 'Poly80' or 'P80' frames or blanks), Lone Wolf (known as 'Freedom Wolf 80%' frames), and others, with the characteristics described below.

**Summary**

Applying the regulatory text of Final Rule 2021-05F, partially complete Polymer80, Lone Wolf, and similar striker-fired semiautomatic pistol frames, including, but not limited to, those sold within parts kits, have reached a stage of manufacture where they *"may readily be completed, assembled, restored, or otherwise converted"* to a functional frame. This definition of "readily" applies to each and every classification of a partially complete frame or receiver under this Rule, whether sold alone or as part of a kit. Therefore, *even without* any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials, these partially complete pistol frames are **"frames"** and also **"firearms"** as defined in the GCA and its implementing regulations, 18 U.S.C. § 921(a)(3)(B) and 27 CFR 478.12(a)(1), (c).

    e) Because of the new Final Rule's unprecedented reclassification of unfinished receivers, unfinished frames, and frame and receiver parts kits, Defense Distributed and its customers faced a reasonable fear of criminal prosecution that caused Defense Distributed to cease dealing in these items.

14. Because of the new Final Rule's unprecedented reclassification of unfinished receivers, unfinished frames, and frame and receiver parts kits, Defense Distributed has suffered immense damages that imminently threaten Defense Distributed's continued existence, including but not limited to:

    a) Lost revenues. To date, Defense Distributed's lost revenue attributable to the new Final Rule's unprecedented reclassification of unfinished receivers, unfinished frames, and frame and receiver parts kits amounts to at least $350,000.

    b) Lost sales of complimentary products. Defense Distributed's lost ability to deal in unfinished receivers, unfinished frames, and frame and receiver parts kits harms Defense Distributed ability to sell other complimentary products, such as jigs.

    c) Lost reputation and good will. The new Final Rule also harms Defense Distributed's business by scaring away customers Since the new Final Rule took effect, customers have been hesitant, confused, and fearful about purchasing Defense Distributed's products, including those unaffected by the rule.

Below are some examples of comments that Defense Distributed has received from customers and potential customers:

> Now that the laws have changed. Is it possible to recover my deposit for the Ghost Gunner?
>
> I ordered in good faith before I knew the laws were going to change.

> I currently own a GG2. Can I still buy the 80% AR-15. If NOT, what am I supposed to do about 80% lowers? I see the ATF violated the LAW, but where does this leave me?

> I can appreciate where you are coming from.  And I appreciate the information. But it is pretty clear that this administration is against ghost guns. And is making an effort to not only make it difficult but illegal. This was not the case when I decided to purchase your machine and put down a deposit.
>
> I hope that you can see it from my point of view. It is a scary time. Will GG please refund my deposit?

d) Vendor interruption. Because of the new Final Rule, vendors across Defense Distributed's supply chain have refused to supply services the otherwise would. That includes payment processors, metal-treatment businesses, and other distributors. E-commerce companies have also started suggesting that they may no longer be able to serve Defense Distributed.

e) Compliance costs.  To date, Defense Distributed's compliance costs attributable to the new Final Rule's unprecedented reclassification of unfinished receivers, unfinished frames, and frame and receiver parts kits amount to $50,000 in direct compliance costs, which is apart from and in addition to the legal costs incurred in prosecuting the instant actin and obtaining preliminary legal advice about the Final Rule.

f) Defense Distributed has fixed operating costs—e.g., payroll and office rent.  In the wake of the new Final Rule's catastrophic effects on its business, Defense Distributed has frozen its additional hiring plans and shifted to trying its best to retain as many employees as possible while awaiting clarity on the new Final Rule's lawfulness.

15. Cumulatively, the new Final Rule's effect on Defense Distributed is devastating.  With the new Final Rule in force, Defense Distributed has severely limited products, customers, business relationships, and cash. Without injunctive relief, the new Final Rule will likely force Defense Distributed to lay workforce, refund customers, and dissolve before any of the lawsuits challenging the new Final Rule yield a final judgment. The new Final Rule will destroy Defense Distributed, soon, unless the government is enjoined from enforcing the new Final Rule against it and its customers.

16. I executed this declaration on January 12, 2023.



CODY WILSON