## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| JENNIFER VANDERSTOK *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States *et al.*,<br><br>    Defendants. | Case No. 4:22-cv-00691-O |

## DEFENDANTS' BRIEF IN OPPOSITION TO DEFENSE DISTRIBUTED AND THE SECOND AMENDMENT FOUNDATION, INC.'S <u>MOTION FOR A PRELIMINARY INJUNCTION</u>

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

BACKGROUND.....................................................................................................................2

LEGAL STANDARDS ..........................................................................................................3

ARGUMENT .........................................................................................................................4

I. Defendants Respectfully Preserve Their Argument That Movants Have Failed to Demonstrate a Likelihood of Success on the Merits. ..........................................4

II. Movants Have Not Shown That They Will Incur Irreparable Harm Absent a Preliminary Injunction ......................................................................................7

A. Movants' Delay in Seeking Emergency Relief Weighs Against A Finding that They Will Suffer Irreparable Harm Absent Such Relief. ..............................7

B. Defense Distributed Fails to Substantiate Any Imminent Threat of Irreparable Injury .....................................................................................9

C. SAF Fails to Substantiate Any Imminent Threat of Irreparable Injury......................12

III. The Balance of Equities and Public Interest Make Injunctive Relief Inappropriate ...........13

IV. Any Relief Ordered Should Be Appropriately Limited..............................................15

CONCLUSION ......................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Anyadike v. Vernon Coll.*,
  No. 7:15-cv-00157-O, 2015 WL 12964684 (N.D. Tex. Nov. 20, 2015) .......................................... 7, 8

*Blue-Grace Logistics LLC v. Fahey*,
  340 F.R.D. 460 (M.D. Fla. 2022) ............................................................................................... 8

*BoxCast Inc. v. Resi Media LLC*,
  No. 2:21-CV-00217-JRG, 2022 WL 884261 (E.D. Tex. Mar. 24, 2022) ........................... 13

*Comic Strip, Inc. v. Fox Television Stations, Inc.*,
  710 F. Supp. 976 (S.D.N.Y. 1989) ............................................................................................. 8

*Dist. of Columbia v. Heller*,
  554 U.S. 570 (2008) .................................................................................................................... 6

*Div. 80, LLC v. Garland*,
  No. 3:22-CV-148, 2022 WL 3648454 (S.D. Tex. Aug. 23, 2022) ................................. 11, 12

*Embarcadero Techs., Inc. v. Redgate Software, Inc.*,
  No. 1:17-cv-444-RP, 2017 WL 5588190 (W.D. Tex. Nov. 20, 2017) ................................... 8

*H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs., LLC*,
  No. 3:09-CV-00390-L, 2009 WL 1766095 (N.D. Tex. June 23, 2009) ................................... 8

*Humana Ins. Co. v. Tenet Health Sys.*,
  No. 3:16-CV-2919-B, 2016 WL 6893629 (N.D. Tex. Nov. 21, 2016) ................................. 10

*Janvey v. Alguire*,
  647 F.3d 585 (5th Cir. 2011) .................................................................................................... 10

*La Union Del Pueblo Entero v. FEMA*,
  608 F.3d 217 (5th Cir. 2010) .................................................................................................. 3, 4

*Leaf Trading Cards, LLC v. Upper Deck Co.*,
  No. 3:17-cv-3200-N, 2019 WL 7882552 (N.D. Tex. Sept. 18, 2019) ................................... 8

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) .................................................................................................................... 6

*Millennium Funding, Inc. v. 1701 Mgmt. LLC*,
  No. 21-cv-20862, 2021 WL 3618227 (S.D. Fla. Aug. 16, 2021) ........................................... 8

*Munaf v. Geren*,
  553 U.S. 674 (2008) .................................................................................................................... 3

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
    142 S. Ct. 2111 (2022) ................................................................................................ 5, 6

*Nken v. Holder,*
    556 U.S. 418 (2009) ...................................................................................................... 4

*Pals Grp., Inc. v. Quiskeya Trading Corp.,*
    No. 16-23905-CIV-GOODMAN, 2017 WL 532299 (S.D. Fla. Feb. 9, 2017) .................... 8

*Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.,*
    188 F. Supp. 2d 1350 (S.D. Fla. 2002) ........................................................................ 8

*Shell Offshore Inc. v. Babbitt,*
    238 F.3d 622 (5th Cir. 2001) ...................................................................................... 7

*Shinseki v. Sanders,*
    556 U.S. 396 (2009) ...................................................................................................... 5

*VanDerStok v. Garland,*
    No. 4:22-CV-00691-O, 2022 WL 4009048 (N.D. Tex. Sept. 2, 2022) ........................... 7

*Worldcall Interconnect, Inc. v. FCC,*
    907 F.3d 810 (5th Cir. 2018) ...................................................................................... 5

**Statutes**

5 U.S.C. § 706 ................................................................................................................. 5

18 U.S.C. § 921(a)(3) ....................................................................................................... 4

18 U.S.C. § 922(g) ..................................................................................................*passim*

**Regulations**

27 C.F.R. § 478.11 ...................................................................................................... 9, 12

27 C.F.R. § 478.12(c) .................................................................................................. 9, 12

87 Fed. Reg. 24,652 (Apr. 26, 2022)........................................................................*passim*

**Other Authorities**

Ghostgunner.net, AR-00: 0% Receiver,
    *available at* https://ghostgunner.net/zero-percent/ ................................................. 10, 11

PR Newswire, *Second Amendment Foundation Launches Firearms Training Division*
    (Jan. 5. 2015), https://www.prnewswire.com/news-releases/second-amendment-foundation-
    launches-firearms-training-division-300015973.html ................................................... 14

ReasonTV, *Cody Wilson Thwarts Another Attempt to Stop Ghost Guns*, YouTube,
(Jan. 12, 2022), https://www.youtube.com/watch?v=bZRugDpYBuc ............................................11

Second Amendment Foundation, Join SAF or Renew Your Membership, *available at*
https://www.saf.org/join-saf ...........................................................................................................15

TMGN, *Biden's Ghost Gun Rule is Dead on Arrival Thanks to the 0% Receiver.*,
(Apr. 12, 2022), https://themachinegunnest.com/bidens-ghost-gun-rule-is-dead-on-arrival-
thanks-to-the-0-receiver/ ...............................................................................................................11

## INTRODUCTION

Intervenors Defense Distributed and Second Amendment Foundation, Inc. ("SAF," and together with Defense Distributed, "Movants") fail to demonstrate entitlement to a preliminary injunction. Movants' attempted showing founders on the irreparable harm requirement. Defense Distributed asserts that the ATF's Final Rule, 87 Fed. Reg. 24,652 (Apr. 26, 2022) ("Rule") imperils its business by restricting it from selling certain products, but its description of those products is so vague that Defense Distributed fails to show that those products are covered by the Rule. SAF offers only a declaration of its co-founder, made without an apparent basis for personal knowledge, that certain unnamed SAF members want to purchase partially complete frames and receivers. But even if SAF substantiated that assertion, it would not show irreparable harm because the existing injunctions already permit individuals to purchase partially complete frames and receivers. Movants' delay of nine months from the Rule's announcement in seeking preliminary relief further weighs against their claim of irreparable harm.

Movants also fail to show that the balance of the equities favors injunctive relief. In particular, the equities weigh strongly against extending relief to SAF's members. SAF has hundreds of thousands of members, each of which (except for Defense Distributed) is unidentified, and anyone can join SAF by submitting a $15 payment online. The equities weigh against extending the injunction to hundreds of thousands of unidentified individuals who have not made any showing of harm, and who have not shown that they wish to make firearms for lawful (as opposed to criminal) purposes. At the very least, any injunctive relief should appropriately be limited to exclude individuals prohibited from possessing firearms under 18 U.S.C. § 922(g), as this Court has limited previous injunctions.

Finally, although Defendants maintain (and assert for purposes of preservation) that Movants are unlikely to succeed on any of their claims, Defendants acknowledge that this Court has ruled that Plaintiffs are likely to succeed on one of Movants' claims.

1

## BACKGROUND

ATF promulgated the Rule on April 26, 2022, 87 Fed. Reg. 24,652, and Plaintiffs initiated this challenge to the Rule on August 11, 2022. Pet. for Judicial Review of Agency Action and Request for Declaratory J. and Inj. Relief, ECF No. 1 ("Compl.").[1] On August 17, 2022, Plaintiffs moved for a preliminary injunction. Pls.' Mot. for Prelim. Inj., ECF No. 15. On September 2, 2022, this Court granted Plaintiffs' motion for preliminary injunction in part, holding that Plaintiffs had shown they were likely to succeed on the merits of at least their claim that portions of the Rule exceeded the authority granted to ATF under the Gun Control Act (GCA), that one of the Plaintiffs, Tactical Machining, LLC (Tactical) had shown that it would be irreparably harmed absent the injunctive relief requested, and that the public interest and balance of the equities favored granting injunctive relief to Plaintiff Tactical. Op. & Order on Prelim. Inj., ECF No. 56 ("PI Order"). Accordingly, this Court enjoined Defendants "from implementing and enforcing" the challenged provisions of the Rule against Tactical. *Id.* at 23. The Court later modified the scope of the injunction so that the injunction also protected the two individual Plaintiffs Jennifer VanDerStok and Michael Andren, as well as Tactical's customers, Op. & Order on Scope of Prelim. Inj., ECF No. 89 ("PI Scope Order"), provided that those individuals are not prohibited from possessing firearms pursuant to 18 U.S.C. § 922(g), Clarification of Op. & Order on Scope of Prelim. Inj., ECF No. 91 ("PI Clarification Order"). However, in both its initial injunction order and expansion of the injunction, the Court denied injunctive relief to Firearms Policy Coalition, Inc. ("FPC"), finding that FPC had failed to prove irreparable harm. PI Order at 20; PI Scope Order at 12-13.

---

[1] Defendants have previously provided a thorough discussion of the relevant statutory and regulatory backgrounds as well as the amendments to regulatory definitions contained in the Rule in a previous pleading, *see* Defs.' Br. in Opp'n to Pls.' Mot. for Prelim. Inj. 2-6, ECF No. 41 ("Defs.' Opp'n"), and therefore do not provide a full discussion of that background here.

On September 22, 2022, another manufacturer of partially complete frames and receivers, BlackHawk Manufacturing Group Inc. d/b/a 80 Percent Arms ("Blackhawk"), moved to intervene. Mot. to Intervene, ECF No. 76. This Court granted the motion to intervene on October 18, 2022, Order, ECF No. 98, and on October 20, 2022, BlackHawk filed its Complaint in Intervention and moved for a preliminary injunction. ECF Nos. 99, 102. On November 3, 2022, this Court granted BlackHawk's Motion for Preliminary Injunction and issued an injunction that paralleled the Tactical injunction, meaning that it enjoined Defendants from implementing or enforcing the challenged provisions against BlackHawk and its customers (except for those prohibited from possessing firearms under 18 U.S.C. § 922(g)). Op. & Order on Blackhawk Manufacturing Group Inc. d/b/a/ 80 Percent Arms' Prelim. Inj. 11-12, ECF No. 118, at 11-12 ("Blackhawk PI Order").

Movants moved to intervene on November 2, 2022. Defense Distributed and the Second Amendment Foundation, Inc.'s Mot. to Intervene, ECF No. 116. The Court granted the motion to intervene on December 19, 2022. Order, ECF No. 137. Movants filed their Complaint in intervention on December 23, 2022. Defense Distributed and the Second Amendment Foundation, Inc.'s Compl., ECF No. 143. On January 12, 2023, Movants filed the instant Motion for Preliminary Injunction. Defense Distributed and the Second Amendment Foundation, Inc.'s Mot. for a Prelim. Inj., ECF No. 163 ("Movants PI Mot."). They seek an order enjoining Defendants from enforcing the challenged provisions against Defense Distributed, its customers, and SAF's members. *Id.* at 1-2.

## LEGAL STANDARDS

"A preliminary injunction is an 'extraordinary and drastic remedy,'" *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted), that "should only issue if the movant shows: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest," *La Union Del Pueblo*

*Entero v. FEMA*, 608 F.3d 217, 219 (5th Cir. 2010).  The last two factors merge when the government is the opposing party.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

**I.      Defendants Respectfully Preserve Their Argument That Movants Have Failed to Demonstrate a Likelihood of Success on the Merits.**

Defendants respectfully submit that Movants have failed to demonstrate a likelihood of success on any of the claims presented in their Complaint.  In their Memorandum in support of their Motion for Preliminary Injunction, Movants assert that they are likely to succeed on the claim that certain portions of the Rule exceeded the authority granted to ATF under the Gun Control Act.  Br. in Supp. of Defense Distributed and the Second Amendment Foundation, Inc.'s Mot. for Prelim. Inj. 3, ECF No. 164 ("PI Mem.").  For the reasons set forth in Defendants' response in opposition to the original Plaintiffs' initial motion for preliminary injunction, and Defendants' supplemental brief regarding this claim, ATF acted well within the scope of its statutory grant of authority in amending the definitions of the terms "firearm" and "frame or receiver."  Defs.' Opp'n at 7-14; Defs.' Supp. Br. 5-15, ECF No. 132.

To summarize Defendants' previous arguments, when Congress defined "firearm" to include the "frame or receiver of any such weapon" but did not further define "frame or receiver," 18 U.S.C. § 921(a)(3), Congress implicitly delegated to ATF the task of defining the terms frame or receiver. ATF reasonably defined "frame or receiver" to include not only complete and functional frames and receivers, but also frames and receivers that could readily be converted to a functional state.  Similarly, ATF reasonably interpreted "firearm" to include weapon parts kits that may readily be completed into an operable gun, because such a kit is a "weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive[.]"  *Id.* § 921(a)(3)(A).  ATF's interpretations were supported by the statute's text, further the statute's purposes, and were consistent with ATF's longstanding practice of construing "firearm" to include partially complete, disassembled,

4

or nonfunctional weapons or frames or receivers that can readily be converted into either an operable weapon or a functional frame or receiver.

However, Defendants recognize that in enjoining these portions of the Rule, the Court held that Plaintiffs were likely to succeed on their claim that ATF had acted in excess of its statutory authority.  PI Order at 6-16.  The argument made by Movants in their Motion is not materially different from the argument that was the subject of this Court's previous likelihood-of-success holding.  Accordingly, Defendants do not detail the same arguments previously made to, and rejected by, this Court, but instead respectfully incorporate those arguments as to why ATF acted within the scope of its statutory authority for preservation purposes.

Movants also argue that they are likely to succeed on their contention that the Rule is arbitrary and capricious because, in their view, it did not follow the analysis required by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  That argument is unavailing.  As an initial matter, to the extent any aspects of ATF's discussion could be understood as reflecting a now-outdated legal test, *see id.* at 2125-31, that would not entitle Movants to relief because their motion does not actually argue that the Rule violates the Second Amendment.  The APA requires courts to take account of the "rule of prejudicial error."  5 U.S.C. § 706.  Under that rule, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009); *see also Worldcall Interconnect, Inc. v. FCC*, 907 F.3d 810, 818-19 (5th Cir. 2018) (rejecting challenge to administrative action because the challenger had failed to show that it was prejudiced by the claimed error).  Here, however, Movants fail to develop any argument that the Rule violates the Second Amendment.  And because Movants have not even sought to demonstrate that the Rule violates the Second Amendment, they have failed to meet their burden of showing that any flaw in ATF's explanation related to this issue has prejudiced them.  That alone is sufficient to reject their claim.

In any event, contrary to Movants' contentions, ATF correctly concluded that the Rule is consistent with the Second Amendment. The Supreme Court has confirmed that nothing in its decisions interpreting the Second Amendment "cast[s] doubt" on "laws imposing conditions and qualifications on the commercial sale of arms." *Dist. of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008); *see also Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (same); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion) (same). As ATF explained, the statutory licensing, recordkeeping, and background check requirements implicated by the Rule are such commercial restrictions; they "do not prohibit individuals from assembling or otherwise making their own firearms." 87 Fed. Reg. at 24,676. Nor do those requirements "burden the ability of non-prohibited people to buy, sell, or possess firearms[.]" *Id.* Thus, as the Rule properly explains, nothing in the Rule or the underlying statute "prevents law-abiding citizens" from exercising the Second Amendment "right to bear arms in public for self-defense." *Bruen*, 142 S. Ct. at 2156. The Rule therefore does not infringe the protected right, and there is no need for further analysis. *See id.* at 2126 (holding that the threshold inquiry is whether "the Second Amendment's plain text covers an individual's conduct").

As the text of the Second Amendment makes plain, only a restriction that infringes the right implicates the Amendment at all. U.S. Const. amend. II; *see also Bruen*, 142 S. Ct. at 2126. As the Supreme Court has repeatedly made clear, the "right" protected in the Second Amendment's text is the right "to keep and bear arms for self-defense." *Bruen*, 142 S. Ct. at 2126. Because, like many other commercial regulations, the Rule does not prevent any qualified individual from making, buying, or possessing firearms, it does not infringe that right and it need not be justified by historical analogy. And the Rule's requirements related to privately made firearms are, like the other requirements, commercial restrictions: they attach only to federal firearms licensees (who are necessarily engaged in

commerce), not to private persons, and they attach only when the licensee takes the firearm into its inventory.

Finally, to the extent that Movants urge that the Rule is invalid because it cites and applies case law from federal courts employing a means-end scrutiny analysis that *Bruen* rejected, that argument is unavailing. Because ATF correctly explained that the Rule does not infringe Second Amendment rights, the inclusion of additional analysis coming to the same result under a different test cannot be prejudicial. In addition, *Bruen* was issued after the Rule's promulgation, and under APA review, "it is well established that reviewing courts generally should, in evaluating agency action, avoid considering evidence that was not before the agency when it issued its final decision. Agency actions should generally be reviewed in light of the evidence before the agency at the time, and not with the benefit of hindsight." *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 630 n.8 (5th Cir. 2001) (internal citations omitted). The Rule thus adequately demonstrates why it does not implicate the Second Amendment.

## II.     Movants Have Not Shown That They Will Incur Irreparable Harm Absent a Preliminary Injunction.

### A.     Movants' Delay in Seeking Emergency Relief Weighs Against a Finding that They Will Suffer Irreparable Harm Absent Such Relief.

Movants' delay in seeking preliminary relief until nine months after the Rule was announced weighs against their assertion that they would suffer irreparable harm without such relief. "[D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction." *Anyadike v. Vernon Coll.*, No. 7:15-cv-00157-O, 2015 WL 12964684, at *3 (N.D. Tex. Nov. 20, 2015). This Court has recognized that "[a]bsent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *VanDerStok v. Garland*, No. 4:22-CV-00691-O, 2022 WL 4009048, at *9 (N.D. Tex. Sept. 2, 2022) (quoting *Anyadike*, 2015 WL 12964684, at *4).

7

ATF announced the Rule on April 11, 2022, and published it in the Federal Register on April 26, 2022, with an effective date of August 24, 2022.  But Movants did not move for a preliminary injunction until January 12, 2023, more than nine months after the Rule was announced.  "[C]ourts generally consider anywhere from a three-month delay to a six-month delay enough to militate against issuing injunctive relief."  *Leaf Trading Cards, LLC v. Upper Deck Co.*, No. 3:17-cv-3200-N, 2019 WL 7882552, at *2 (N.D. Tex. Sept. 18, 2019) (collecting cases).[2]  Movants' delay is longer than delays that courts have found to weigh against preliminary relief.  Movants' delay is not excused by any expectation that Movants would be protected by Firearms Policy Coalition, Inc. (FPC) having filed this lawsuit.  FPC filed the Complaint on August 11, 2022, *see* Compl., and the Court denied preliminary relief to FPC on September 2, 2022, PI Order at 20.  Consequently, Movants' "[u]ndue delay in seeking a preliminary injunction tends to negate the contention that the feared harm will truly be irreparable."  *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-cv-444-RP, 2017 WL 5588190, at *3 (W.D. Tex. Nov. 20, 2017).[3]

---

[2] *See also*, *e.g.*, *Anyadike*, 2016 WL 12964684, at *3 ("several-month delay in filing . . . militates against a finding of irreparable harm"); *H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs., LLC*, No. 3:09-CV-00390-L, 2009 WL 1766095, at *4 (N.D. Tex. June 23, 2009) (delay of almost five months undercut assertion of irreparable harm); *Pals Grp., Inc. v. Quiskeya Trading Corp.*, No. 16-23905-CIV-GOODMAN, 2017 WL 532299, at *6 (S.D. Fla. Feb. 9, 2017) (three-month delay "is by itself sufficient grounds to deny its request for an injunction"); *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1356 (S.D. Fla. 2002) (finding that a "three-month delay . . . undercuts any sense of urgency"); *Comic Strip, Inc. v. Fox Television Stations, Inc.*, 710 F. Supp. 976, 981 (S.D.N.Y. 1989) ("three month delay"); *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, No. 21-cv-20862, 2021 WL 3618227, at *10 (S.D. Fla. Aug. 16, 2021) ("[I]t is not uncommon for courts to deny a preliminary injunction in the face of unexplained delays of more than two months") (collecting cases); *Blue-Grace Logistics LLC v. Fahey*, 340 F.R.D. 460, 467 (M.D. Fla. 2022) (same).

[3] Defendants acknowledge that the Court has rejected arguments that delay of the original Plaintiffs and BlackHawk weighed against preliminary relief.  PI Order at 19-20; Blackhawk PI Order at 7-8.  But Movants sought preliminary relief months later than the original Plaintiffs or BlackHawk.  Defendants further acknowledge that the Court found that Movants' intervention motion was timely.  ECF No. 137, at 5-7.  But the Court determined that for timeliness of intervention, "[l]ength of time is measured from when the intervenor learned of his interest in the particular action in which he seeks to intervene[.]"  *Id.* at 6.  Therefore, while the Court held that the time between the announcement of

### B.    Defense Distributed Fails to Substantiate Any Imminent Threat of Irreparable Injury.

Defense Distributed's theory of irreparable harm is that the Rule disrupts its business of selling products that are defined as firearms by the Rule.  PI Mem. at 6.  But Defense Distributed fails to substantiate its theory that it sells products that the Rule defines as firearms.  The sole evidence submitted by Defense Distributed is a five-page declaration executed by its co-founder, Cody Wilson. *See* Declaration of Cody Wilson, ECF No. 164-1 ("Wilson Decl.").  This declaration states that Defense Distributed sells "unfinished receivers, unfinished frames, and frame and receiver parts kits that (1) are *not* Gun Control Act 'firearms' under the Gun Control Act itself, and (2) are *not* Gun Control Act 'firearms' under administrative actions taken prior to August 2022, but that (3) *are* defined for the first time ever as Gun Control Act 'firearms' by the new Final Rule."  *Id.* ¶ 11; *see also id.* ¶ 4 (Defense Distributed sells products "marketed colloquially as '80 Percent Lowers'").  But the assertion that Defense Distributed's products are "defined for the first time ever as Gun Control Act 'firearms' by the New Final Rule" is a legal conclusion that is unsupported by Defense Distributed's factual averments.

Defense Distributed's vague description of its products as "unfinished receivers, unfinished frames, and frame and receiver parts kits" that are "marketed colloquially as '80 Percent Lowers,'" *id.* ¶¶ 4, 11, does not provide sufficient information for Defendants or this Court to determine whether its products would be considered firearms under the Rule.  Under the Rule, partially complete frames and receivers are considered firearms only if they are "designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver," 87 Fed. Reg. at 24,739 (27 C.F.R. § 478.12(c)), an inquiry that depends on the application of eight factors, *id.* at 24,735 (27 C.F.R. § 478.11).  The phrase "80 Percent" is a marketing term used by many firearms industry

_____

the Rule and the filing of the original Complaint in this case was not relevant for the timeliness of the motion to intervene, it is relevant in assessing Movants' delay in seeking a preliminary injunction.

participants to describe a wide variety of partially complete frames and receivers, but it has no meaning in firearms law, and use of the term does not signify whether a product is classified as a firearm under the Rule. *See id.* at 24,663 n.47.  Defense Distributed points to an open letter issued by ATF concluding that certain partially complete frames marketed as 80 percent frames were firearms because they could readily be completed into functional frames. *See* Wilson Decl. at 4.[4]  But ATF has also issued another open letter concluding that other products marketed as 80 percent receivers were not firearms under the Rule because they could not readily be completed into a functional state. *See* App. 11-17.  These open letters underscore that a vague description of products as unfinished (or 80 percent) frames or receivers is insufficient to allow a determination of whether or not the product would qualify as a firearm under the Rule.

A movant for preliminary injunction "bears 'the burden of establishing each element,'" including irreparable harm. *Humana Ins. Co. v. Tenet Health Sys.*, No. 3:16-CV-2919-B, 2016 WL 6893629, at *11 (N.D. Tex. Nov. 21, 2016) (quoting *Janvey v. Alguire*, 647 F.3d 585, 591, 595 (5th Cir. 2011)).  Defense Distributed's vague description of its products is insufficient "to make the required clear showing that it . . . [is] likely to suffer irreparable harm in the absence of preliminary injunctive relief." *Id.* at *38.

The vagueness of Defense Distributed's allegations of irreparable harm may be explained by the fact that it has repeatedly stated that the Rule would *help* its business.  Defense Distributed markets the "0% receiver," which it claims can be used to create AR-15 receiver parts from raw blocks of aluminum using a computer numerical control (CNC) milling machine sold by Defense Distributed called the Ghost Gunner 3.   Ghostgunner.net, AR-00: 0% Receiver, *available at* https://ghostgunner.net/zero-percent/.   Defense Distributed's website states that after ATF

---

[4] For context, Defendants attach the entire open letter at Appendix (App.) 1-10.  The letter shows that ATF concluded that the products at issue were firearms after analyzing their specific features in detail and explaining how they could be quickly and easily completed into functional frames. *See* App. 3-9.

implements the Rule, "Ghost Gunner's zero percent receiver will become the only legal and affordable method of making an unregistered metal lower.  The age of 80% is ending.  The age of zero has begun."  *Id.*  In an interview conducted after the Rule was proposed but before the final Rule was announced, the interviewer noted that "Wilson said that Defense Distributed is the only DIY gun company pivoting in the face of this new regulation.  So the real impact of the law will be to drive out his competitors."  ReasonTV, *Cody Wilson Thwarts Another Attempt to Stop Ghost Guns*, YouTube (Jan. 12, 2022), https://www.youtube.com/watch?v=bZRugDpYBuc (2:31).  Mr. Wilson then stated: "With this rule that Biden is pursuing, he's giving us, the nation's premier ghost gun company, I would say, a monopoly of the market."  *Id.*  (2:41).[5]  After the final Rule was announced, an industry publication reported that "[i]n response to the announcement of the Biden Admin's proposed rule change, Defense Distributed decided to shift its focus to the creation of 0% receivers," and "[t]his rule change has caused a surge in demand for Defense Distributed's Ghost Gunner 3."  TMGN, *Biden's Ghost Gun Rule is Dead on Arrival Thanks to the 0% Receiver.*, (Apr. 12, 2022), https://themachinegunnest.com/bidens-ghost-gun-rule-is-dead-on-arrival-thanks-to-the-0-receiver/.  The publication quotes Mr. Wilson as saying: "Ghost Gunner anticipated this maneuver and is now shipping Zero Percent receivers."  *Id.*  Defense Distributed's paltry allegations of harm are especially insufficient in light of its repeated public statements that the Rule would help its business by driving demand for its products and hindering its competition.

Defendants have also argued that the Rule does not cause irreparable harm to sellers of products regulated as firearms under the Rule, because sellers could continue to sell those products by obtaining a federal firearms license and complying with the Rule, Defs.' Opp'n at 31-34, an argument that another district court in this state has accepted.  *Div. 80, LLC v. Garland*, No. 3:22-CV-

---

[5] This video is embedded on the web page for Defense Distributed's "zero percent" products. *See* https://ghostgunner.net/zero-percent/.

148, 2022 WL 3648454, at *3-4 (S.D. Tex. Aug. 23, 2022).  Defendants reiterate this argument for purposes of preservation but acknowledge that the Court has rejected this argument.  PI Order at 16-19.

### C.     SAF Fails to Substantiate Any Imminent Threat of Irreparable Injury.

SAF's sole claimed basis for irreparable harm is its assertion that its members would like to purchase unfinished frames and receivers, particularly from Defense Distributed.  *See* PI Mem. at 7 (SAF members' "effective exercise of Second Amendment rights depends on the ability to buy" unfinished frames or receivers "from Defense Distributed"); *id.* (asserting that SAF members would like to acquire unfinished frames and receivers "from firms like Defense Distributed").  This claim of irreparable harm fails for two independently sufficient reasons.

First, the existing preliminary injunctions already allow SAF members to purchase unfinished frames or receivers, so long as they are not prohibited from possessing firearms under federal law. Specifically, the existing injunctions apply to "customers" of Tactical Machining (meaning "[i]ndividuals or entities who purchase directly from Tactical Machining, LLC any product classified as a 'firearm' under 27 C.F.R. § 478.11 or § 478.12(c)," PI Scope Order at 21), and "Blackhawk's customers," Blackhawk PI Order at 12, excluding those prohibited from possessing firearms under 18 U.S.C. § 922(g).  SAF does not assert that any of its members have a particularized need or desire to acquire any specific product offered by Defense Distributed (or any other firm) but not by Tactical Machining or BlackHawk.  Therefore, SAF has failed to show that its members are suffering from any irreparable harm relating to their alleged inability to acquire partially complete frames or receivers.

Second, the barebones two-page declaration submitted by SAF's co-founder is insufficient to substantiate SAF's assertions about what its members wish to acquire.  *See* Decl. of Alan M. Gottlieb, ECF No. 164-2 ("Gottlieb Decl.").  Mr. Gottlieb states that a "substantial number of SAF members" would like to "acquir[e] from Defense Distributed articles defined for the first time ever as 'firearms'

by the new Final Rule" and "would do so imminently" absent the Rule's promulgation.  *Id.* ¶ 8.

However, he does not identify any such members, nor does he state that he engaged in any

investigation that could have determined what SAF's members would like to purchase.  He therefore

provides no basis for personal knowledge of this assertion.  "[V]ague" and "speculative" assertions

are insufficient to sustain a claim of irreparable harm; SAF "has failed to substantiate its alleged

irreparable injury with concreteness and specificity[.]"  PI Scope Order at 13; *see also BoxCast Inc. v. Resi*

*Media LLC*, No. 2:21-CV-00217-JRG, 2022 WL 884261, at *3 (E.D. Tex. Mar. 24, 2022) (rejecting

claim of irreparable harm "predicated on a declaration" of a person with "no personal knowledge of

key facts").

In the alternative, although Defendants submit that no injunction is warranted, if the Court

issues a preliminary injunction to Defense Distributed, such an injunction would eliminate SAF's

claimed need for injunctive relief.  Even if this Court credited SAF's argument that its members'

inability "to buy from Defense Distributed unfinished receivers, unfinished frames, and frame and

receiver parts kits," PI Mem. at 7, constituted irreparable harm (which it should not), an injunction in

favor of Defense Distributed and its customers would remedy such claimed harm.

## III.   The Balance of Equities and Public Interest Make Injunctive Relief Inappropriate.

Movants fail to show that the balance of equities and public interest weigh in favor of

injunctive relief.  Their sole argument is a short paragraph asserting that the equities favor Movants

"for exactly the same reasons that they favored the other injunction recipients."  PI Mem. at 8.  But

the balance of equities concerning Movants' requested injunction differs in significant ways from the

equities of prior injunction requests.

As Defendants have previously argued, the Rule advances the government's public safety

interest in preventing individuals from obtaining and using in criminal activity unserialized firearms

that cannot be traced by law enforcement.  *See* Defs.' Opp'n at 34-35.  This Court has recognized the

legitimacy of Defendants' interest and the public interest in "the core purpose" of the Rule, "to prohibit high-risk individuals from gaining access to ghost guns," which "are increasingly used in connection with criminal activity by high-risk individuals." PI Clarification Order at 4. The Court has accordingly denied requests to issue a nationwide injunction, *see* PI Order at 22; PI Scope Order at 19-20, has expressly excluded persons prohibited from possessing firearms under federal law from injunctive relief, PI Clarification Order at 1-2, and has limited injunctive relief to specific businesses and individuals that the Court found had made a showing of irreparable harm.

SAF is differently situated from those who have received injunctive relief because it is a membership organization with a large and unknown number of unidentified members. As of 2015, it reported having "more than 650,000 members and supporters."[6] Granting injunctive relief to SAF's members would extend the injunction to many unidentified individuals who have not made any showing of irreparable harm. Further, even if one assumes that the vast majority of SAF's membership consists of law-abiding citizens, it is likely that among SAF's hundreds of thousands of members are some "high-risk individuals" who wish to use ghost guns for "criminal activity." PI Clarification Order at 4. SAF has not shown that it vets its members in any way or makes any effort to prevent criminals or other dangerous individuals from joining its organization. *See* Gottlieb Decl. Certainly SAF's unidentified members have not made the type of averments under penalty of perjury that Plaintiffs VanDerStok and Andren have, that they are law-abiding citizens who wish to purchase partially complete frames or receivers for lawful purposes. *See* Decl. of Jennifer Vanderstok, ECF No. 16-2; Decl. of Michael G. Andren, ECF No. 16-3.[7]

---

[6] PR Newswire, *Second Amendment Foundation Launches Firearms Training Division* (Jan. 5. 2015), https://www.prnewswire.com/news-releases/second-amendment-foundation-launches-firearms-training-division-300015973.html.

[7] In its original preliminary injunction order, the Court concluded that the equities favored Plaintiffs in part because "Defendants [did] not dispute that Plaintiffs are law-abiding citizens who wish to engage in lawful conduct covered by the Final Rule." PI Order at 21. By contrast, here, Defendants

Moreover, extending the injunction to SAF's members would functionally convert the injunction into a nationwide injunction, which the Court twice held was unwarranted. PI Order at 22; PI Scope Order at 19-20. SAF allows anyone to join by paying an annual membership fee of $15. *See* Second Amendment Foundation, Join SAF or Renew Your Membership, *available at* https://www.saf.org/join-saf/. Granting SAF's requested relief would allow anyone to opt in to the injunction simply by paying $15 to SAF. The Court should reject this de facto nationwide injunction.

Finally, the equities also do not support granting injunctive relief to Defense Distributed. For the reasons stated above, Defense Distributed has not substantiated its assertions that the Rule prevents it from selling products that form a significant portion of its business. *See supra*, Part II.B. Therefore, the government's interest and the public interest in public safety outweigh Defense Distributed's unsubstantiated assertions of injury.

## IV. Any Relief Ordered Should Be Appropriately Limited.

For the reasons stated above, Movants are not entitled to any preliminary injunction. In the alternative, if the Court were to issue a preliminary injunction, the Court should exclude any of Defense Distributed's customers or SAF's members who are prohibited from possessing firearms by 18 U.S.C. § 922(g) from the scope of any injunction.[8]

## CONCLUSION

The Court should deny Defense Distributed's and Second Amendment Foundation's motion for preliminary injunction.

---

have no way of knowing whether SAF's unnamed members are law-abiding citizens, or whether they wish to engage in lawful conduct (as opposed to criminal activity) with privately made firearms.

[8] It is unclear whether Movants' request contains such a limitation. Movants ask for "a preliminary injunction that parallels the preliminary injunctions already ordered with respect to" Tactical Machining and BlackHawk, which contained a prohibited persons limitation, but they also ask for an injunction that would apply to "Defense Distributed, its customers, and SAF's members," with no explicit exceptions. ECF No. 163, at 1-2.

DATED: February 2, 2023           Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

LESLEY FARBY
Assistant Director, Federal Programs Branch

*/s/ Daniel Riess*
DANIEL RIESS
MARTIN M. TOMLINSON
TAISA GOODNATURE
JEREMY S.B. NEWMAN
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 353-3098
Email:  Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

On February 2, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Daniel Riess*