UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JENNIFER VANDERSTOK, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 4:22-cv-00691-O |
| § | |
| BLACKHAWK MANUFACTURING § | |
| GROUP INC., et al., § | |
| § | |
| Intervenor Plaintiffs, § | |
| § | |
| v. § | |
| § | |
| MERRICK GARLAND, et al. § | |
| § | |
| Defendants. § | |

**OPINION & ORDER ON DEFENSE DISTRIBUTED AND THE SECOND AMENDMENT FOUNDATION, INC.'S MOTION FOR A PRELIMINARY INJUNCTION**

Before the Court is Intervenor Plaintiffs Defense Distributed and the Second Amendment Foundation, Inc.'s Motion for Preliminary Injunction (ECF No. 163) and Brief in Support (ECF No. 164), filed January 12, 2023; Defendants' Response in Opposition (ECF No.176), filed February 2, 2023; and Intervenor Plaintiffs' Reply (ECF No. 184), filed February 17, 2023. Having considered the parties' briefing and applicable law, the Court **GRANTS in part** and **DENIES in part** Intervenor Plaintiffs' motion for injunctive relief.

**I.  BACKGROUND**

The parties are well versed in the legal and factual background relevant to this case. To briefly summarize, the United States Congress created the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the agency with authority to regulate "firearms" in interstate commerce under the Gun Control Act of 1986 ("GCA"). *See* 26 U.S.C. § 599A(a); 28 C.F.R. § 0.130(a); 18

U.S.C. § 921(a)(3). In August of 2022, ATF promulgated a Final Rule that purports to regulate partially manufactured firearm parts and weapon parts kits.[1] This Rule departs from nearly 45 years of ATF precedent, during which the agency declined to interpret the GCA's term "firearms" to include partially manufactured frames and receivers.[2] Months later, on December 27, 2022, ATF issued an "Open Letter to All Federal Firearms Licensees," providing clarification that certain products are considered "frames" (and are therefore "firearms") for purposes of the GCA under the Final Rule's redefinition of that term.[3] Those products include partially complete Polymer80, Lone Wolf, and similar striker-fired semi-automatic pistol frames, including those sold within parts kits.[4]

On August 11, 2022, before the regulation took effect, Original Plaintiffs brought this suit challenging the legality of the Final Rule arguing, among other things, that the regulation exceeds the lawful scope of ATF's statutory authority.[5] Original Plaintiffs subsequently moved for a preliminary injunction seeking to broadly enjoin the Government from enforcing its Final Rule.[6] The Court granted that injunction on grounds that Original Plaintiffs were likely to succeed on the merits of their claim that ATF's Final Rule—specifically, 27 C.F.R. §§ 478.11, 478.12(c)—exceeds the scope of the agency's lawful authority under the GCA and enjoined Defendants from implementing or enforcing the rule against Tactical Machining, LLC, the only Original Plaintiff

---

[1] *See* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (codified at 27 C.F.R. pts. 447, 478, 479).
[2] *See* First Opinion 2–3, ECF No. 56 (discussing ATF's *Title and Definition Changes*, 43 Fed. Reg. 13,531, 13,537 (Mar. 31, 1978) and others).
[3] U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms & Explosives, Open Letter to All Federal Firearms Licensees (Dec. 27, 2022) ("ATF Open Letter (Dec. 27, 2022)"), https://www.atf.gov/rules-and-regulations/docs/open-letter/all-ffls-dec2022-open-letter-impact-final-rule-2021-05f/download.
[4] *Id.*
[5] Compl. 1, ECF No. 1.
[6] Pls.' Mot. for Prelim. Inj., ECF No. 15.

to establish irreparable harm.[7] In subsequent months, the Court expanded its injunction to include additional Original Plaintiffs and Intervenors.[8] Following those decisions, and upon learning that their interests would not be protected, Intervenor Plaintiffs Defense Distributed and the Second Amendment Foundation ("SAF") successfully intervened in the suit and now move this Court to either expand the current injunction or enter a separate injunction providing them with appropriate interim relief.[9] The parties have briefed the issues and the motion is ripe for review.

## II. LEGAL STANDARD

The decision to extend interlocutory relief is committed to the district court's sound discretion. *See Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985). To establish entitlement to a preliminary injunction, Intervenor Plaintiffs must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in their favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). The last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). As movant, the party seeking relief bears the burden of proving all four elements of the preliminary injunction. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008); *Miss. Power & Light Co.*, 760 F.2d at 621.

Once it has determined that a party is entitled to injunctive relief, a court must make a separate determination regarding the appropriate scope of that prospective injunction, "dictated by the extent of the violation established[.]" *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). As an

---

[7] *Id.*

[8] *See generally* Second Opinion, ECF No. 89 (expanding scope of preliminary injunction to include Individual Plaintiffs and customers of Original Plaintiff Tactical Machining, LLC); Third Opinion, ECF No. 118 (including BlackHawk Manufacturing Group Inc. in preliminary injunction).

[9] Order Granting Defense Distributed and SAF Motion to Intervene 6, ECF No. 137.

extraordinary remedy, an injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiff[]." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 756 (1994) (cleaned up). Thus, an injunction must "redress the plaintiff's particular injury," and no more. *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) (citation omitted).

### III. ANALYSIS

#### A. Likelihood of Success on the Merits

To obtain a preliminary injunction, first the movants must show that they are likely to succeed on the merits of at least one of their claims. *Daniels Health Servs.*, 710 F.3d at 582. In support of their motion, Intervenor Plaintiffs put forward two claims that they allege are likely to succeed on the merits: (1) an outcome-based APA claim that the Final Rule was issued in excess of ATF's statutory authority under the GCA; and (2) a process-based APA claim arising from ATF's failure to consider relevant factors and data in issuing the Final Rule.[10] This element has already been proved because the Court previously determined that claims challenging the Final Rule on grounds that it was issued in excess of ATF's statutory authority are likely to prevail on the merits.[11] For the sake of brevity, the Court adopts its prior analysis with respect to that claim here.[12] Because Defense Distributed and SAF challenge the Final Rule on those grounds (Count One), the Court holds that they have shown a substantial likelihood of success on the merits of that claim.[13] As such, the Court need not address their second claim regarding Defendants' purported process-based violations of the APA.[14]

---

[10] Intervenor Pls.' Mot. 2, ECF No. 163.
[11] *See generally* First Opinion, ECF No. 56.
[12] *Id.* 6–16, ECF No. 56.
[13] Intervenor Pls.' Compl. 20, ECF No. 143 (raising a claim under 5 U.S.C. § 706(2)(A), (C) on grounds that Final Rule was issued in excess of ATF's statutory authority under the Gun Control Act).
[14] *Id.* at 22 (raising a process-based challenge under 5 U.S.C. § 706(2)(A) on grounds that Defendants failed to consider relevant factors and data in promulgating the Final Rule, as required by Supreme Court precedent).

### B. Substantial Threat of Irreparable Harm Absent Injunctive Relief

Next, Intervenor Plaintiffs must demonstrate a substantial threat of irreparable harm. The Fifth Circuit considers harm irreparable "if it cannot be undone through monetary remedies." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir.1984)). A showing of economic loss is usually insufficient to establish irreparable harm because damages may be recoverable at the conclusion of litigation. *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). However, "an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business." *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989). Or where costs are nonrecoverable because the government-defendant enjoys sovereign immunity from monetary damages, as is the case here, irreparable harm is generally satisfied. *See Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021). Irreparable harm must be concrete, non-speculative, and more than merely de minimis. *Daniels Health Servs.*, 710 F.3d at 585; *Dennis Melancon, Inc.*, 703 F.3d at 279 (cleaned up). Finally, a movant's "delay in seeking relief is a consideration when analyzing the threat of imminent and irreparable harm." *Anyadike v. Vernon Coll.*, No. 7:15-cv-00157, 2015 WL 12964684, at *3 (N.D. Tex. Nov. 20, 2015).

### a. Defense Distributed Has Shown a Substantial Threat of Irreparable Harm

Defense Distributed has shown that it is likely to suffer irreparable harm—through unrecoverable lost revenues and, potentially, eventual total dissolution of its business—if the Court does not provide injunctive relief while litigation is ongoing.[15] Solely in response to the Final Rule, Defense Distributed avers it ceased dealing in unfinished frames, unfinished receivers, and frame

---

[15] Intervenor Pls.' Br. 5–6, ECF No. 164; Wilson Decl. 3–5, ECF No. 164-1 (indicating that the company ceased dealing in unfinished frames and receivers and part kits in response to the Final Rule, resulting in loss of nearly 20% monthly revenues with expectation that business will shortly have to dissolve absent an interim injunction); *see also id.* at ¶ 14 (identifying myriad interim harms to occur absent injunctive relief).

and receiver parts kits out of fear of violating the new regulation.[16] That this fear was well-founded was later confirmed by ATF's Open Letter identifying certain types of partially manufactured, frames, receivers, and parts kits as "firearms" for purposes of the GCA.[17] Though the Government contends that Defense Distributed's description of its products is too vague to justify a finding of irreparable harm, the Court disagrees.[18] At least one of the products Defense Distributed sold previously, then stopped selling following the Final Rule's enactment (the Polymer80 pistol frame), is now considered a "firearm" under the new regulations.[19] Defense Distributed stopped selling, and its customers stopped purchasing, this and *similar* items because they fear facing criminal prosecution for purchasing products that might run afoul of the Final Rule.[20] Moreover, the corresponding loss in revenue is nonrecoverable because Defense Distributed cannot seek damages from Defendants entitled to sovereign immunity—a fact the Government does not contest. *White Lion*, 16 F.4th at 1142. And for reasons discussed in its prior Opinions, Defense Distributed's costly choice to comply with the regulations would not mitigate its threatened irreparable harm.[21] This meets the standard of irreparable harm.

Nor does the company's purported delay in seeking a preliminary injunction militate against a showing of irreparable harm.[22] It is true that, "[a]bsent a good explanation, a substantial period of delay" may weigh against a movant's request for injunctive relief "by demonstrating that there is no apparent urgency to the request." *Wireless Agents, L.L.C. v. T-Mobile, USA, Inc.*, No. 3:05-cv-0094, 2006 WL 1540587, at *4 (N.D. Tex. June 6, 2006) (cleaned up). The Government

---

[16] Wilson Decl. 3–4, ECF No. 164-1.
[17] *Id.*; ATF Open Letter (Dec. 27, 2022).
[18] Defs.' Resp. 9–10, ECF No. 176.
[19] Reply 8, ECF No. 184; ATF Open Letter (Dec. 27, 2022).
[20] *See* Intervenor Pls.' Br. 6, ECF No. 164; Wilson Decl. 4, ECF No. 164-1; Reply 8, ECF No. 184.
[21] First Opinion 17–19, ECF No. 56; Order on BlackHawk Prelim. Inj. 7, ECF No. 118.
[22] Defs.' Resp. 7–8, ECF No. 176.

first suggests Defense Distributed waited nine months to pursue injunctive relief, calculating this span from the date the Final Rule was announced (April 24, 2022) to the date Defense Distributed filed its motion for injunctive relief (Jan. 12, 2023).[23] The Government then contends that "[m]ovants' delay is not excused by any expectation that [they] would be protected by Firearms Policy Coalition, Inc. (FPC) having filed this lawsuit."[24] But it is wrong in both respects.

Oddly, the Government argues that Defense Distributed's FPC membership does not excuse its delay. It does so despite this Court's explicit prior determination that Defense Distributed moved to intervene shortly after "learning that its interest would not be represented by FPC on the basis of associational standing."[25] As such, Defense Distributed's FPC membership is indeed relevant to the company's explanation regarding its delay in seeking injunctive relief. Given this, if the Court accepts that Defense Distributed first learned its interests would not be adequately represented via FPC on the Court's First Opinion and measures from that date (Sept. 2, 2022) until the date Defense Distributed filed its motion (Jan. 12, 2022), the period of delay is four months at most, not nine.[26] And as the Government points out, "courts generally consider anywhere from a three-month delay to a six-month delay enough to militate against issuing injunctive relief." *Leaf Trading Cards, LLC v. Upper Deck Co.*, No. 3:17-cv-3200-N, 2019 WL 7882552, at *2 (N.D. Tex. Sept. 18, 2019) (collecting cases). And in that four-month period prior to filing its motion for injunctive relief, Defense Distributed sought and waited for the right to intervene in this lawsuit.

In sum, these facts excuse any purported delay in seeking injunctive relief and do not

---

[23] *Id.* at 8, 8 n.3.
[24] *See id.* at 8 (citing the Court's First Opinion, ECF No. 56).
[25] Order Granting Defense Distributed and SAF Motion to Intervene 6, ECF No. 137.
[26] *See* First Opinion, ECF No. 56 (Sept. 2, 2022) (denying FPC and its members injunctive relief but inviting parties to provide further briefing on the proper scope of the injunction); Second Opinion, ECF No. 89 (Oct. 1, 2022) (denying FPC's members injunctive relief on the basis of associational standing); Intervenor Pls.' Mot., ECF No. 163 (Jan. 12, 2023) (moving for preliminary injunction).

greatly undermine a finding of irreparable harm to Defense Distributed.

      *b. The Second Amendment Foundation Has Not Carried Its Burden on Irreparable Harm*

While Defense Distributed has proven a substantial threat of irreparable harm, the Second Amendment Foundation has not. To make this showing, SAF's Executive Vice President attests that the Final Rule irreparably harms "the substantial number of SAF members" who reasonably desire to and would imminently purchase from Defense Distributed or similar firms "articles defined for the first time ever as 'firearms' by the new Final Rule."[27] SAF further attests that "the New Final Rule's vagueness exerts a chilling effect on SAF members, who cannot reasonably determine what the law deems punishable and cannot reasonably determine how it will be administered."[28]

Though the Court previously held that a threat of criminal prosecution that has a chilling effect on a consumer's choice to engage in previously lawful activity can constitute irreparable harm,[29] no such harm exists here. Indeed, SAF's members *may* lawfully purchase such articles from "firms like Defense Distributed"—namely Tactical Machining, LLC and BlackHawk Manufacturing Group Inc.—under the current injunction.[30] And SAF has not shown how its members' ability to purchase unfinished frames and receivers and parts kits from Tactical and BlackHawk—but not from Defense Distributed or other firms—constitutes an irreparable harm that can only be alleviated with an injunction. Moreover, should Defense Distributed be entitled to injunctive relief (it is), SAF's members' purported injury is further alleviated. Therefore, SAF's failure to carry its burden of persuasion with respect to this element bars its request for injunctive

---

[27] Gottlieb Decl. 2, ECF No. 164-2.
[28] *Id.*
[29] Second Opinion 9–12, ECF No. 89.
[30] Intervenor Pls.' Br. 7, ECF No. 164; *see, e.g.*, Second Opinion 21–22, ECF No. 89.

relief on behalf of its members.

### C. The Balance of Equities and the Public Interest Favor Issuing an Injunction

The final two elements necessary to support a grant of injunctive relief—the balance of equities (the difference in harm to the respective parties) and the public interest—"merge" when the Government is a party. *Nken*, 556 U.S. at 435. In this assessment, the Court weighs "the competing claims of injury and [] consider[s] the effect on each party of the granting or withholding of the requested relief," while also considering the public consequences of granting injunctive relief. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (internal citations omitted).

As with its analysis of likely success on the merits, the Court's prior reasoning with respect to the balance of equities and competing public interests largely applies to the instant motion for injunctive relief. This Court previously held that any injury to the Government's general interest in law enforcement and public safety is appreciably undermined by the Court's preliminary determination that the Final Rule is likely unlawful.[31] Once again, this reasoning is strengthened by the fact that the Government's likely *ultra vires* enforcement efforts upset decades of ATF regulatory precedent against a public that has relied on that historic posture. The Court also held that the liberty interests of law-abiding citizens wishing to engage in historically lawful conduct (dealing in now-regulated parts)—which Defense Distributed shares—outweighs the Government's competing interest in preventing prohibited persons from unlawfully possessing firearms.[32] Moreover, the Court has endeavored to protect this competing interest with its Clarification Order allowing the Government to enforce the Final Rule against persons who may

---

[31] First Opinion 21–22, ECF No. 56.
[32] *Id.* at 22.

not possess firearms under 18 U.S.C. § 922(g).[33] Finally, the Court has recognized that the public's interest "in having governmental agencies abide by the federal laws that govern their existence and operations" weighs in favor of an injunction. *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

For these reasons, the Court holds that the balance of equities weighs in favor of granting Defense Distributed's motion for a preliminary injunction and that the public interest is not disserved by affording such relief.

\* \* \* \*

Having considered the arguments, evidence, and applicable law, the Court holds that the relevant factors weigh in favor of expanding the current preliminary injunction to include Defense Distributed and, necessarily, its customers. As this Court has previously determined, such injuries cannot be remedied if the company's only source of revenue—customer willingness to transact business—has been severely curtailed.[34]

## IV.   CONCLUSION

In sum, Defense Distributed has shown it is entitled to a preliminary injunction against Defendants' enforcement of the Final Rule. However, the Second Amendment Foundation has not carried its burden. Accordingly, the Court **GRANTS** the motion **in part** and **ORDERS** that Defendants and their officers, agents, servants, and employees are enjoined from implementing and enforcing against Defense Distributed and its customers (except for those individuals prohibited from possessing firearms under 18 U.S.C. § 922(g)) the provisions in 27 C.F.R. §§ 478.11 and 478.12 that the Court has preliminarily determined are unlawful. The Court waives the security requirement of Federal Rule of Civil Procedure 65(c). *See Kaepa, Inc. v. Achilles*

---

[33] Clarification Order, ECF No. 91.
[34] Second Opinion 17–19, ECF No. 89.

*Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). The motion for injunctive relief is **DENIED** with respect to the Second Amendment Foundation.

    **SO ORDERED** this **2nd day** of **March, 2023**.

*[signature]*
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**