# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| JENNIFER VANDERSTOK; MICHAEL G. ANDREN; TACTICAL MACHINING, LLC, a limited liability company; FIREARMS POLICY COALITION, INC., a nonprofit corporation,<br><br>*Plaintiffs*,<br><br>and<br><br>BLACKHAWK MANUFACTURING GROUP, INC.; DEFENSE DISTRIBUTED; and SECOND AMENDMENT FOUNDATION, INC.,<br><br>*Intervenor-Plaintiffs*,<br><br>v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES<br><br>*Defendants*. | Civil Action No. 4:22-cv-00691-O |

**PLAINTIFFS' MOTION FOR LEAVE TO
PROVIDE SUPPLEMENTAL AUTHORITY TO THEIR
MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.7, Plaintiffs Jennifer VanDerStok, Michael G. Andren, Tactical Machining, LLC, and Firearms Policy Coalition, Inc. (collectively, "Plaintiffs") respectfully move this Court for leave to provide the following supplemental authority and argumentation in support of their Motion for Summary Judgment, and in so far as it is distinct before the Court's consideration, their consolidated briefing on Plaintiffs' Count I. ECF Nos. 16, 93, 133 (collectively, "Count I Briefing"); ECF Nos. 140, 141, 191 (collectively, "Motion for Summary Judgment"). In support, Plaintiffs state the following:

1. Plaintiffs concluded their Count I Briefing, addressing the issue of the Department of Justice and Bureau of Alcohol, Tobacco, Firearms and Explosives' (collectively, "Agencies") statutory authority, with Plaintiffs' supplemental brief pursuant to Federal Rule of Civil Procedure 65 consolidation on December 5, 2022. ECF No. 133.

2. Plaintiffs filed their Motion for Summary Judgment and their Brief in Support on December 23, 2022. ECF Nos. 140, 141.

3. The Agencies filed their Cross-Motion for Summary Judgment, ECF No. 180, and their Combined Brief in support of their Motion and in opposition to Plaintiffs' Motion, ECF No. 181, on February 13, 2023.

4. Plaintiffs filed their Combined Brief in support of Plaintiffs' Motion and in opposition to the Agencies' Motion on March 6, 2023. ECF No. 191. That brief concluded Plaintiffs' merits briefing before this Court.

5. The Agencies' reply brief in support of their Motion is due April 6, 2023. ECF No. 195.

**Advisory Letter**

6. On March 21, 2023, the Agencies released a "public safety advisory to all federal firearms licensees and firearm parts, components, and accessories manufacturers and distributors." *Public Safety Advisory* ("Advisory Letter"), U.S. DEP'T OF JUSTICE, BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES (Mar. 21, 2023).[1] A copy of the Advisory Letter is attached as Exhibit 1.

7. The Advisory Letter postdates Plaintiffs' merits briefing, but is directly relevant to that briefing and to this Court's inquiry on vagueness.

8. The Advisory Letter demonstrates the basis of Plaintiffs' vagueness claims by even further muddying the water regarding separate transactions and evidencing additional layers to the Agencies' "readily" analysis.

9. First, the Agencies allege that suppliers "*appear to be* structuring their transactions"—meaning one entity sells a non-firearm object ("NFO") while another entity sells "the compatible templates, jigs, molds, equipment, tools, instructions, or guides needed to complete the partially complete frames or receivers" to the same customer. Advisory Letter at 1 (emphasis added).

10. This is problematic considering an alleged "structured transaction" could merely be one producer or retailer selling NFOs and another selling tools or equipment, purchased by one customer, absent any conspiring between the retailers.

11. And yet, the mere *appearance* of impropriety bears potential criminal liability. Perceived "structured transactions" "will affect how ATF analyzes what materials have

---

[1] https://www.atf.gov/firearms/docs/guide/public-safety-advisory-all-federal-firearms-licensees-and-firearm-parts/download

2

been 'made available by' the supplier under the Final Rule and, under certain circumstances, could be evidence of a *willful intent to violate* the requirements of the" Gun Control Act. *Id.* (emphasis added).

12. Under the Gun Control Act, "whoever . . . willfully violates any other provision of this chapter, shall be fined under this title, imprisoned not more than five years, or both." 18 U.S.C. § 924(a)(1)(D).

13. Additionally, the Agencies note they will consider materials shipped "in different boxes, on different days, or through straw purchasers," as potentially structured transactions. Advisory Letter at 5.

14. The Advisory Letter evidences that the Agencies, under the Final Rule, require the supplier to peer into the mind of the purchaser or risk criminal penalties, further substantiating the amorphous nature of the Final Rule.

15. Second, the Advisory Letter demonstrates that the eight-factor, subjectively applied, un-weighted list of what "readily" means also imbues the Agencies with complete discretion to consider whatever they want, whenever they want, by noting that the Agencies can, and will, also analyze "internet links to templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials, *including those provided by other vendors*, that enable ready completion or assembly of the unfinished frame or receiver into a functional firearm." Advisory Letter at 3.

16. According to the Agencies, determining how "readily" an NFO can be manufactured into a frame or receiver also includes "consideration of any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are, *directly or indirectly sold, distributed, or possessed*[.]" *Id.* at 4.

3

17. "Men of common intelligence cannot be required to guess at the meaning of [an] enactment." *Winters v. New York*, 333 U.S. 507, 515 (1948). Yet an unfathomable number of scenarios would lead to criminal liability for producers, retailers, and purchasers alike.

18. On its face, the Advisory Letter seemingly requires producers and retailers to survey not just the firearms industry, but any retailer of tooling and equipment or anyone producing content that may contribute to manufacturing. The Advisory Letter mandates producers and retailers be apprised of what *others* sell or produce, if and what the producer or retailer's customer is purchasing, and what the customer *already possesses* before the producer or retailer can confidently make a transaction without incurring liability.

19. Additionally, the Advisory Letter suggests that suppliers cannot actually rely on any classification letters they may receive from the Agencies because something classified by the Agencies as an NFO may be transformed into a "firearm" based on additional items (such as materials already possessed by a customer) that the supplier did not and could not have submitted with its classification request.

20. Moreover, the Advisory Letter further chills individuals' exercise of their constitutionally protected rights, and subjects them to potentially unknown criminal liability, by now affirmatively indicating that if they purchase an NFO, at any time, the Agencies may consider the contents of their future purchases from the same retailer, or any other retailer, to determine if anything the individual purchases in the future may make that NFO more "readily" convertible.

21. The Advisory Letter is directly relevant to this Court's inquiry here, and, accordingly, Plaintiffs file this Motion to ensure this Court has the opportunity to consider the Advisory Letter in evaluating Plaintiffs' Motion for Summary Judgment.

22. Accordingly, Plaintiffs request this Court consider the Agencies' Advisory Letter and the above analysis in support of Plaintiffs' Motion.

**Local Rule 56.7**

23. Under Local Rule 56.7, this Court has discretion to grant Plaintiffs leave to provide the foregoing supplemental authority. Given that the Public Safety Advisory post-dates Plaintiffs' merits briefing, Plaintiffs could not have possibly presented it to the Court previously.

24. Moreover, the supplemental authority is directly relevant to this Court's inquiry.

25. Additionally, no party will be prejudiced by allowing for this supplemental authority. After all, the Agencies themselves published the authority. Moreover, the Agencies have an additional brief due to this court in which the Agencies can address their own Advisory Letter.

26. Pursuant to Local Rule 7.1(a), Plaintiffs contacted the parties regarding their position on this Motion. Counsel for Defendants indicated they do not oppose this Motion. Plaintiff-Intervenor BlackHawk Manufacturing and Plaintiffs-Intervenors Defense Distributed and Second Amendment Foundation indicated they do not oppose this Motion.

Plaintiffs respectfully request that this Court grant Plaintiffs' Motion and consider the above supplemental authority and argumentation in support of Plaintiffs' Motion for Summary Judgment.

DATED this 24th day of March, 2023.

Respectfully submitted,

R. Brent Cooper (TX Bar No. 04783250)
Benjamin D. Passey (TX Bar No. 24125681)
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone: (214) 712-9500
Telecopy: (214) 712-9540
brent.cooper@cooperscully.com
ben.passey@cooperscully.com

Cody J. Wisniewski* (CO Bar No. 50415)
FIREARMS POLICY COALITION
5550 Painted Mirage Road, Suite 320
Las Vegas, NV 89149
Telephone: (916) 378-5785
Telecopy: (916) 476-2392
cwi@fpchq.org

*/s/ Erin M. Erhardt*
Erin M. Erhardt* (CO Bar No. 49360)
Kaitlyn D. Schiraldi* (TN Bar No. 039737)
MOUNTAIN STATES LEGAL FOUNDATION
2596 S. Lewis Way
Lakewood, CO 80227
Telephone: (303) 292-2021
Telecopy: (877) 349-7074
eerhardt@mslegal.org
kschiraldi@mslegal.org

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of March 2023, I electronically filed the foregoing using this Court's CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and service will be accomplished by this Court's CM/ECF system.

/s/ *Erin M. Erhardt*
Erin M. Erhardt
MOUNTAIN STATES LEGAL FOUNDATION

## CERTIFICATE OF CONFERENCE

I hereby certify that, on March 23, 2023, I conferred with Defendants' counsel, via email, who stated that Defendants do not oppose this Motion.

I hereby certify that, on March 23, 2023, I conferred with Intervenor-Plaintiff BlackHawk Manufacturing's counsel, via email, who stated, on March 24, 2023, that it does not oppose this Motion.

I hereby certify that, on March 23, 2023, I conferred with Intervenors-Plaintiffs Defense Distributed and Second Amendment Foundation's counsel, via email, who stated that they do not oppose this Motion.

/s/ *Erin M. Erhardt*
Erin M. Erhardt
MOUNTAIN STATES LEGAL FOUNDATION

# EXHIBIT 1



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Office of the Director*

March 21, 2023  Washington, DC 20226
 www.atf.gov

## PUBLIC SAFETY ADVISORY TO ALL FEDERAL FIREARMS LICENSEES, AND FIREARM PARTS, COMPONENTS, AND ACCESSORIES MANUFACTURERS AND DISTRIBUTORS

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) is issuing this public safety Advisory to the firearms industry and the public to provide information regarding its investigative priorities related to possible willful efforts to violate the requirements of the Gun Control Act (GCA) as implemented by the Final Rule titled *Definition of 'Frame or Receiver' and Identification of Firearms* (Final Rule 2021R-05F) ("Frame or Receiver Final Rule" or the "Final Rule").[1] As with any suspected violations of the GCA, ATF may investigate such activities and, where appropriate, refer them for potential enforcement actions. ATF considers willful violations of the GCA, including the types described in this document, an investigative priority.

Specifically, since the Frame or Receiver Final Rule became effective on August 24, 2022, some suppliers of partially complete frames or receivers appear to be structuring their transactions or coordinating with other persons or entities to sell, distribute, or otherwise make available, in ostensibly independent or separate transactions, the compatible templates, jigs, molds, equipment, tools, instructions, or guides needed to complete the partially complete frames or receivers to the same individuals who purchase a partially completed frame or receiver from the original supplier.  As explained further below, such conduct will affect how ATF analyzes what materials have been "made available by" the supplier under the Final Rule and, under certain circumstances, could be evidence of a willful intent to violate the requirements of the GCA, as implemented by the Frame or Receiver Final Rule, or defraud the United States, and ATF may investigate these activities.

ATF will prioritize investigations of suppliers who are engaged in activities that would require licensing under the GCA, particularly where those activities appear to involve willful misconduct.  In determining whether a federal firearms license is required, ATF will consider all items made available by the seller, including marketing materials, applying the factors set forth in the regulatory text.  The conduct and activities, including but not limited to marketing conduct, that ATF takes into consideration when enforcing the GCA and its classification decisions are further discussed below, along with details on how to report potential unlawful conduct to ATF.

---

[1] 87 Fed. Reg. 24652 (Apr. 26, 2022); 87 Fed. Reg. 51249 (Aug. 22, 2022) (corrections to final rule).

Public Safety Advisory

**Background**

The Frame or Receiver Final Rule, among other things, updates the regulatory definitions of "frame" and "receiver," and adds a definition of "readily" – an undefined statutory term in the GCA. These terms, set forth in the Final Rule at 27 CFR 478.12(c), explain when a partially complete frame or receiver, including one within a parts kit, has reached a sufficient stage of manufacture to be classified as a "**frame**" or "**receiver**," and therefore, a "**firearm**" under the GCA and its implementing regulations, as follows:

> *The terms 'frame' and 'receiver' shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be. The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material). When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit.*

Additionally, 27 CFR 478.11 clarifies that the term "**firearm**" "*shall include a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive.*"

Section 478.11 defines "**readily**" as:

> *A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. With respect to the classification of firearms, factors relevant in making this determination include the following:*
>
> *(a) Time, i.e., how long it takes to finish the process;*
> *(b) Ease, i.e., how difficult it is to do so;*
> *(c) Expertise, i.e., what knowledge and skills are required;*
> *(d) Equipment, i.e., what tools are required;*
> *(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
> *(f) Expense, i.e., how much it costs;*
> *(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*

Public Safety Advisory

> *(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction.*

As ATF has repeatedly made clear, these regulatory definitions apply to every assessment of whether any partially complete frame or receiver – whether assessed individually, or in conjunction with other associated items – is a "firearm" under the GCA.[2]  Thus, in determining whether any specific partially complete frame or receiver may be "readily" converted to a functional frame or receiver, ATF will consider items and conduct, such as a distributor or supplier making available instructions or marketing materials to the customer.  Such marketing materials could include, for example, information on how a partially complete frame or receiver may readily be converted to a functional frame or receiver, serving essentially as instructions or a guide.

These materials may also include internet links to templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials, including those provided by other vendors, that enable ready completion or assembly of the unfinished frame or receiver into a functional firearm.  And if, in light of the information that those items provide to the customer, the partially complete frame or receiver that a distributor or supplier is selling can be "readily" converted to a functional frame or receiver, then the distributor or supplier is required to sell that item in compliance with the GCA's requirements for sales of firearms.  When a supplier in such a circumstance intentionally fails to comply with the GCA's requirements, that may constitute a willful violation of the GCA, and ATF will consider referral for potential enforcement actions.

As stated in the Final Rule, partially complete, disassembled, or nonfunctional frames or receivers that are sold, distributed, or possessed with associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that allow them to readily be converted to a functional state, are "**frames**" or "**receivers**," and also "**firearms**" as defined in the GCA, 18 U.S.C. § 921(a)(3), and its implementing regulations, 27 CFR 478.11, 478.12(c).

To illustrate application of the GCA to specific circumstances and scenarios, ATF issues open letters, which are posted on its website and accessible to the general public.  ATF has thus far issued two open letters to further illustrate application of the Frame or Receiver Final Rule.  The first, issued on September 27, 2022, applied the Final Rule to stand-alone, partially complete AR-15/M-16-type *receivers,* describing when such items in isolation would be considered "receivers" and thus "firearms" under the GCA.  The second, issued on December 27, 2022, applied the Final Rule to certain partially complete, stand-alone pistol *frames*, specifically concluding that these products on their own without any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are both "frames" and "firearms," as defined in the GCA.[3]  In addition, to assist the industry and the public in complying with the

---

[2] *See* footnote 5, *infra.*; 87 Fed. Reg. 24663, 24692, 24699, 24700.

[3] The U.S. District Court for the Northern District of Texas has preliminarily enjoined the government from applying some provisions of the Final Rule with respect to certain manufacturers and their customers. *Vanderstok, et al. v. Garland, No. 4:22-00691; Polymer80, Inc. v. Garland, No. 4:23-00029.* The government is complying with those orders.

Public Safety Advisory

GCA and its implementing regulations, ATF provides requestors with letter classifications, which apply the regulatory definitions to voluntarily submitted samples.[4]  Since the effective date of the Final Rule, for instance, ATF has issued approximately 40 such private letters upon request classifying different partially complete, stand-alone AR receivers.  Based on ATF's individual consideration and examination of each such item submitted, ATF has classified approximately half of those standalone parts as "receivers" and "firearms," and half as not being "receivers" or "firearms."

Additionally, as set forth in the Frame or Receiver Final Rule, persons engaged in the business of manufacturing, importing, or dealing in "firearms," including "frames" or "receivers," **must not** take steps, through their marketing materials or other conduct, that result in willful violation of the GCA's requirements, including requirements for licensing (18 U.S.C. § 922(a)(1)(A)), serialization of the frame or receiver (18 U.S.C. § 923(i)), recordkeeping (18 U.S.C. § 923(g)(1)(A)), running background checks on unlicensed transferees (18 U.S.C. § 922(t)), or other requirements and prohibitions of the law.  *See* 87 FR 24670, 24692, 24713.  Any person convicted of willfully engaging in the business of importing, manufacturing, or dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A), or of aiding and abetting (18 U.S.C. §§ 2, 922(a)(1)(A)), or conspiring with another person to do so (18 U.S.C. § 371), could be subject to a fine and/or imprisonment.  Persons who are licensed, but who willfully violate any provision of the GCA, including the failure to serialize firearms, are subject to the same penalties (18 U.S.C. § 924(a)(1)(D)).  Assessing criminal intent, which must be proven beyond a reasonable doubt in a criminal matter, is a fact-specific inquiry under the law.

**Analysis**

When determining whether a partially compete, disassembled or non-functional frame or receiver is a "firearm" under the GCA, ATF applies the term "readily" and examines how efficiently, quickly, and easily a clearly identifiable component part of a weapon can be completed, assembled, restored, or otherwise converted to house or provide a structure for the applicable fire control component.  Such analysis must include consideration of any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are, directly or indirectly, sold, distributed, or possessed, or marketed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit.  This is because such materials may affect how "readily" the part may be converted.  For example, jigs, templates, or instructions can provide the same indexing as if placed directly on the partially complete frame or receiver.

---

[4] The Final Rule expressly limits private letter classifications to the specific sample voluntarily submitted, and manufacturers and distributors cannot apply those determinations to any other sample, design, model, or configuration, including any configuration where associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials are sold, distributed, possessed, or otherwise made available by the seller or distributor with the sample.  As part of a voluntary classification, those items are also required to be submitted to ATF with the sample so that a proper and valid determination can be made.  *See* 27 CFR 478.92(c), 479.102(c).  If a requestor elects to change a sample or the associated materials set forth by the rule, that requestor must submit a current and complete sample if it wishes to have a valid classification.

Public Safety Advisory

To assist the firearms industry in complying with the licensing requirements of the GCA, the following examples illustrate activities on which ATF will prioritize investigative review as such activities and conduct may be indicative of a willful GCA violation:

1. *Structuring firearms transactions:* Structuring firearms transactions occurs when a supplier purposely sets up ostensibly separate transactions or methods of operating with the willful intent to violate the GCA's requirements with respect to licensing, serialization, recordkeeping, running background checks, or other provisions. This can include conduct such as selling, distributing, marketing, or otherwise making available to the same customers partially complete frames or receivers separately from their associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials by shipping them in different boxes, on different days, or through straw purchasers. If the partially complete frame or receiver being sold by the supplier is "readily" converted to a functional state (*i.e.*, as a "firearm" under the GCA and its implementing regulations) when evaluated in conjunction with the materials that the supplier is otherwise making available in the ostensibly separate transactions, then the partially complete frame or receiver must be sold in compliance with the GCA's requirements.[5]

2. *Structuring firearms businesses:* Structuring ownership of a firearms business occurs when a supplier sets up multiple corporations, businesses, or other entities, or individual straw business owners, to sell, distribute, or otherwise make available to the same customers partially complete frames or receivers separately from their associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials, with the willful intent to violate the GCA's requirements with respect to licensing, serialization, recordkeeping, and running background checks, or other provisions. If the partially complete frame or receiver being sold by the supplier can be "readily" converted to a functional state (*i.e.*, is a "firearm" under the GCA), based on an assessment of all factors listed in the Final Rule (including materials that the seller makes available to the buyer through other ostensibly separate corporate entities), then the partially complete frame or receiver must be sold in compliance with the GCA's requirements.[6] Such structuring, if done with a

---

[5] *See Morehouse Enterprises v. ATF*, No. 3:22-cv-116, 2022 WL 3597299 (D.N.D. 2022) ("The Court further disagrees that the Final Rule creates a new crime of "structuring," as the Final Rule only provides that one cannot conceal their transfer of a disassembled firearm in more than one box or shipment, which is consistent with the intent of the GCA and within the scope of the ATF to regulate."); *see, e.g., United States v. Zambrano*, 752 Fed. App'x 775, 790 (11th Cir. 2018) (unlawfully exported firearms that were disassembled and shipped in pieces). Likewise, attempts to structure transactions to circumvent the GCA, and courts' rejection of these attempts, are not new. *See also Abramski v. United States*, 573 U.S. 169, 183 (2014) (noting in the GCA "Congress's concern with the practical realities, rather than the legal niceties, of firearms transactions."); *id*. at 180 ("[N]o part" of the GCA would work if "the law addressed not the substance of a transaction, but only empty formalities.")

[6] *See generally MEW Sporting Goods, LLC v. Johansen*, 992 F.Supp.2d 665, 674-675 (N.D.W.V. 2014), *aff'd*, 594 Fed. App'x 143 (4th Cir. 2015) (corporate entity disregarded where it was formed to circumvent firearms licensing requirement); *United States v. King*, 735 F.3d 1098, 1106 (9th Cir. 2013) (Defendant felon could not "immunize

Public Safety Advisory

> willful intent to violate the GCA, may amount to a criminal violation. *See* 18 U.S.C. § 924(a)(1)(D).

Finally, when two suppliers agree to work or coordinate to willfully violate the GCA or defraud the United States, and to take acts in furtherance of that willful agreement, both suppliers may be found to be improperly structuring firearms transactions or businesses. Such acts could include selling or distributing parts kits or disassembled firearms, including frames or receivers, through shell companies, related businesses, straw purchasers, or coconspirators. This conduct may rise to the level of a criminal conspiracy to commit an offense against the United States or to defraud the United States, in violation of 18 U.S.C. § 371, or aiding and abetting a willful violation of the GCA by a supplier, in violation of 18 U.S.C. § 2, and the underlying offense.

**Reporting Potential Violations to ATF and Voluntary Classification Requests**

Anyone who observes suspected violations of the GCA or ATF's implementing regulations may report them to ATF.  Any persons can call their local field office, can contact ATF's Emerging Threats Unit, or report a potential violation to ATF's tip line at Submit a Tip | Bureau of Alcohol, Tobacco, Firearms and Explosives (atf.gov), https://www.atf.gov/atf-tips.

In addition, any person who wishes to obtain a classification of an item or kit can voluntarily submit a request, under penalty of perjury, with a sample to ATF in accordance with 27 CFR 478.92(c) (GCA) or 479.102(c) (NFA).  If a person wishes to obtain a classification, ATF requires a formal request and physical examination of a submitted sample.  For further information, please contact the Firearms & Ammunition Technology Division at fire_tech@atf.gov or (304) 616-4300.

In addition, note that the Frame or Receiver Final Rule specifically provides that pre-Final Rule classifications regarding partially complete frames or receivers that were previously determined <u>not</u> to be "frames" or "receivers" are no longer valid.[7]  Persons must be careful not to make inaccurate representations in their marketing regarding classifications issued by ATF, including making such representations based on classifications that have been

---

himself from prosecution" for dealing without a license by "hiding behind a corporate charter"); *United States v. Fleishli*, 305 F.3d 643, 652 (7th Cir. 2002) ("In short, a convicted felon who could not have legitimately obtained a manufacturer's or dealer's license may not obtain access to machine guns by setting up a sham corporation."); *National Lending Group, LLC v. Mukasey, 2008 WL 5329888* (D. Ariz. 2008), *aff'd*, 365 Fed. Appx. 747 (9th Cir. 2010) (straw ownership of corporate pawn shops); *Casanova Guns, Inc. v. Connally,* 454 F.2d 1320, 1322 (7th Cir.1972) ("[I]t is well settled that the fiction of a corporate entity must be disregarded whenever it has been adopted or used to circumvent the provisions of a statute."); *XVP Sports, LLC v. Bangs*, No. 2:11CV379, 2012 WL 4329258, at *5 (E.D. Va. 2012) ("unity of interests" existed between firearm companies controlled by the same person); *Virlow LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives,* No. 1:06–CV–375, 2008 WL 835828 (W.D. Mich. 2008) (corporate form disregarded where a substantial purpose for the formation of the company was to circumvent the statute restricting issuance of firearms licenses to convicted felons).

[7] 27 CFR 478.12(f)(2).

Public Safety Advisory

superseded by the Final Rule.  Any such intentional misrepresentations are improper and should be reported to ATF.

**Conclusion**

No supplier, regardless of whether they are engaged in the business of manufacturing, importing, or dealing in frames or receivers (including partially complete frames or receivers that may readily be converted into functional frames or receivers), firearm parts kits, or complete disassembled weapons may arrange or structure transactions or ownership (or control) of business entities with the willful intent to violate the GCA, including the GCA's licensing, serialization, recordkeeping, and background check requirements.  Similarly, suppliers of partially complete frames or receivers may not knowingly and intentionally conspire with other persons or entities to willfully violate the GCA, including its licensing, serialization, recordkeeping, and background check requirements.

ATF recognizes that the majority of suppliers and the public follow the GCA and its implementing regulations, including the Frame or Receiver Final Rule.  This advisory is intended to assist the firearms industry and general public by providing additional information regarding ATF's investigative priorities related to violations of the GCA as implemented by the Final Rule.

The GCA and its implementing regulations, including the Final Rule, are critical public safety measures, and people must abide by them.  For that reason, any intentional violations of such measures are an enforcement priority for ATF.

This Advisory offers the views of the Bureau of Alcohol, Tobacco, Firearms, and Explosives of the U.S. Department of Justice as to matters relating to investigations under and enforcement of the Federal Gun Control Act of 1968, as amended, 18 U.S.C. §§ 921 *et seq.*  The Advisory is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law, by any party, in any matter, civil or criminal.  Nothing in this document should be construed as mandating a particular outcome in a specific case, and nothing in this document limits the discretion of the U.S. Department of Justice or any U.S. government agency to take action, or not to take action, with respect to matters under its jurisdiction.

Steven M. Dettelbach
Director