UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JENNIFER VANDERSTOK *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MERRICK GARLAND, in his official capacity as Attorney General of the United States *et al.*, <br><br> Defendants. | Case No. 4:22-cv-00691-O |

**DEFENDANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL**

**INTRODUCTION**

Defendants hereby move for a stay pending appeal of the Court's Memorandum Opinion and Order on the Parties' Cross-Motions for Summary Judgment and Motions to Intervene, ECF No. 227 ("Opinion" or "Op.") and Final Judgment, ECF No. 231 ("Judgment"). The Opinion determined that two provisions of the Rule challenged in this case exceeded ATF's regulatory authority, Op. at 23-35, and the Judgment vacated the Rule in its entirety, Judgment at 1. Defendants have appealed the Opinion and Judgment to the Fifth Circuit, *see* ECF No. 234, and respectfully move this Court for a stay of its Opinion and Judgment pending resolution of Defendants' appeal.

Defendants also respectfully request an immediate administrative stay of the Opinion and Judgment to allow the Court to consider this stay motion in an orderly manner. In the alternative, Defendants respectfully request an administrative stay of no fewer than seven days to allow Defendants to seek emergency relief from the U.S. Court of Appeals for the Fifth Circuit and, just as important, to allow the Fifth Circuit to consider such a request in an orderly manner. *See Texas v. Biden*, No. 2:21-cv-67-Z (N.D. Tex. Aug. 13, 2021) (granting seven-day stay of injunction to allow government to seek appellate relief).

In light of the serious public safety and other harms occasioned by the vacatur (as described more fully below), Defendants respectfully request that the Court rule on this motion, or grant an administrative stay pending appeal, by 10:00 a.m. CDT on July 24, 2023, so that Defendants may promptly seek appellate relief, if necessary. If, upon reviewing this motion, the Court determines that Defendants have not met the requirements for a stay, Defendants respectfully request that this Court summarily deny this motion without awaiting a response from Plaintiffs.

As explained below, all four relevant factors weigh in favor of a stay. The balance of harms strongly weighs in favor of a stay. As detailed in the attached declaration, continued vacatur of the Rule will damage public safety by allowing felons and other prohibited purchasers (including underage

1

persons) and possessors to easily buy and assemble both serialized and unserialized firearms, by permitting the widespread proliferation of unserialized firearms, and by impairing law enforcement's ability to trace firearms recovered at crime scenes. In addition, the Rule provides clarity to, and eases certain regulatory burdens on, the regulated community, such that its continued vacatur will cause confusion among, and costs to, that community. ATF will incur massive unrecoverable costs to undo changes implemented after the Rule's promulgation, and to educate law enforcement and the firearms industry on the current state of federal firearms law. These harms far outweigh any alleged harm Plaintiffs might incur from a temporary stay. Additionally, Defendants are likely to prevail on appeal on their arguments that the two provisions of the Rule analyzed by the Court in its Opinion fall within ATF's regulatory authority, and they are likely to show that vacatur is overbroad as to non-parties and as to the Rule's remaining provisions.

## STANDARD OF REVIEW

Courts typically consider four factors in evaluating a request for a stay pending appeal: (1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant will be irreparably harmed if the stay is not granted; (3) whether issuance of the stay will substantially harm the other parties; and (4) whether the granting of the stay serves the public interest. *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014). Where the federal government is a party, its interests and the public interest overlap in the balancing of harms. *Nken v. Holder*, 556 U.S. 418, 420 (2009).

## ARGUMENT

**I. The Balance of Harms Weighs Strongly in Favor of a Stay.**

The government and the public will suffer irreparable injury if the vacatur order is not stayed pending appeal. As the Rule explains, unserialized firearms have proliferated in recent years; in 2021, nearly 20,000 such firearms were reported to ATF as having been recovered by law enforcement from potential crime scenes, and the United States has recently brought many criminal cases "to counter

2

the illegal trafficking of unserialized privately completed and assembled weapons, the possession of such weapons by prohibited persons, and other related Federal crimes." 87 Fed. Reg. at 24,656-57. This "proliferation of untraceable firearms severely undermines" law enforcement's ability to engage in the "integral" process of "determin[ing] where, by whom, or when" a firearm used in a crime was manufactured and "to whom [it was] sold or otherwise disposed," *id.* at 24,656, 24,659, thereby impairing law enforcement officials' ability to apprehend violent individuals who may pose an ongoing threat to public safety.

Not only does the Rule enable law enforcement officials to better trace firearms used in crimes, but it also helps ensure that those firearms do not end up in the hands of individuals prohibited from possessing firearms—such as felons—in the first place. One of the requirements of the Gun Control Act of 1968 ("Act") is that a dealer conduct a background check before selling a firearm to an unlicensed person. The Rule clarifies that products like certain weapon parts kits and partially complete frames or receivers must be sold in compliance with the statute, preventing (for example) violent felons from purchasing firearms over the Internet. The Rule therefore, as ATF recognized, "increase[s] public safety by, among other things, preventing prohibited persons from acquiring firearms." 87 Fed. Reg. at 24,654.

And the injuries to the government and the public from the Court's vacatur are only heightened by the decision to vacate the entire Rule, rather than only the challenged provisions. Even setting aside weapon parts kits and partially complete frames and receivers, the Rule contains many additional provisions to ensure that each firearm has a single marked frame or receiver. Perhaps most significantly, the Rule updates an outdated regulatory provision, under a strict reading of which up to 90% of available firearms have no single part subject to regulation. The "practical result of that strict reading" is that "every individual part of most firearms in circulation in the United States may be sold separately without compliance with the statutory" requirements for firearm sales, such that "a felon

3

or other prohibited person could easily purchase" (for example) the two parts (upper and lower) of an AR-variant firearm online "and assemble a fully functional AR-variant firearm within a minute" (with or without a serial number). Decl. of Matthew P. Varisco ¶¶ 26-27 ("Varisco Decl.") (Exhibit 1). The Rule also includes provisions specific to ensuring the consistent and proper marking of silencers and modular multi-piece receivers. *See id.* ¶¶ 15, 31.

In addition, the Rule contains other provisions related to effective implementation of statutory recordkeeping requirements. For example, the Rule requires licensees to mark unserialized firearms when they are taken into the licensee's inventory, so that the statutorily required acquisition and disposition records can be effectively used "as a means of tracing or locating" the firearm. *See id.* ¶¶ 29-30. And the Rule requires licensees to maintain records through the end of the licensee's business, rather than (as the previous regulations permitted) allowing a licensee to destroy records after twenty years. That updated requirement is critical to public safety. Between 2010 and 2021, an average of more than 1300 firearms traces per year could not be completed "because ATF was informed the records had been destroyed." *Id.* ¶¶ 32-33. And if that provision is vacated—even only while an appeal is pending—more than 14,000 licensees that have been in business for 20 years or more may be permitted to destroy old records, with no way for ATF to recover the information contained in those records. *Id.*

In addition to harming public safety, vacatur of the Rule will substantially harm the regulated community and ATF. Vacatur "has already created[] significant confusion" among licensees. *Id.* ¶ 35. For example, "ATF has already received inquiries from members of the firearms industry, a trade association," and others to seek "clarification whether they must now reverse their newly implemented business practices" that reflect the Rule's requirements. *Id.* And that confusion will "only increase if the [district court's] ruling, or the scope of relief, is reversed on appeal, which may require licensees to overhaul certain business practices twice in a short time period." *Id.* In addition, various provisions

of the Rule were "aimed at easing burdens on the regulated community," such that vacatur would harm the community by reimposing those burdens. *See id.* ¶¶ 36-40. Finally, with respect to ATF, the agency has devoted substantial resources to training and implementation related to the Rule. Requiring the agency to adjust course would require the outlay of substantial additional resources, and it would, particularly given the possibility of future reversal on appeal, risk engendering significant confusion within the agency and law enforcement. *See id.* ¶¶ 41-46.

By contrast, Plaintiffs will experience only minimal, if any, injuries from a stay of the vacatur pending appeal. Even with respect to the provisions that Plaintiffs challenge, those provisions do not forbid the sale (or purchase) of any firearm, weapon parts kit, or other item; instead, the Rule clarifies that certain items, like ready-to-assemble kits, are "firearms" and so must be sold in accordance with the Act's licensing, recordkeeping, and background check requirements. Thus, plaintiffs who wish to purchase or sell regulated products may do so if they comply with the Act.

These requirements are not especially onerous. An entity that already possesses a federal firearms manufacturer's license is permitted to sell the firearms that it manufactures at retail, *see* 27 C.F.R. § 478.41(b), subject to certain restrictions on direct sales to out-of-state customers, 18 U.S.C. § 922(b)(3). Even for such customers, sales are permitted so long as the firearm is shipped to a licensee in the customer's state of residence, which can then transfer the firearm to the customer after fulfilling background check and recordkeeping requirements. And conversely, an individual who wishes to purchase one of the regulated products may continue to do so (assuming he is not prohibited from possessing firearms); he may simply need to purchase the product from an in-state seller or have the item shipped to him and transferred through an in-state licensee.

In short, the Rule does not prohibit any plaintiff from selling or purchasing any product; it simply clarifies that sales of certain products must be conducted in accordance with statutory licensing, background check, serializing, and recordkeeping requirements. Indeed, there are tens of thousands

5

of federally licensed firearms manufacturers and dealers around the country, all of whom manage to bear the costs associated with those requirements when producing and selling firearms. And there are, of course, many more firearms owners who similarly bear the minor costs associated with statutory compliance when they purchase firearms from federal firearms licensees. These kinds of incidental costs do not outweigh the substantial harms to the government, the regulated community, and the public from vacatur of the Rule.

And that balancing is particularly clear with respect to the overbroad aspects of the Court's vacatur. No plaintiff has demonstrated any harm from the provisions of the Rule other than those being challenged in this suit. And no plaintiff could plausibly contend that relief to non-parties (other than customers of the entity plaintiffs) is necessary to remedy any Article III injury they themselves might allege. But, as explained, such relief imposes significant harm on the government and the public; a stay is thus warranted.

## II. Defendants Are Substantially Likely to Prevail on Appeal, and at a Minimum, Have a Substantial Case on Appeal.

The Court's Opinion determined two provisions of the Rule to exceed ATF's regulatory authority. Those two provisions are: (1) the Rule's inclusion of a "[p]artially complete, disassembled, or nonfunctional frame or receiver" in ATF's regulatory definition of "frame or receiver," 27 C.F.R. § 478.12(c), and (2) the Rule's inclusion of "a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive" in ATF's regulatory definition of "firearm," *id.* § 478.11. Defendants respectfully submit that they are likely to prevail on the merits of their appeal of the Opinion.

The challenged provisions of the Rule are consistent with the Act. The Rule's clarification that a "frame" or "receiver" includes a partially complete, disassembled, or nonfunctional frame or receiver that may "readily" be converted into a *functional* frame or receiver accords with the Act's text and structure. The statute does not itself define the term "frame or receiver of any such weapon."

6

And nothing in the Act precludes ATF from exercising that authority to determine that the relevant point comes before the frame or receiver of a weapon is fully complete and is instead when the frame or receiver reaches a stage where it may readily be converted to a *functional* frame or receiver of a weapon.  When defining weapons throughout the firearms laws, Congress has repeatedly made clear that nonoperational and unserviceable weapons that are either "designed to" or may "readily" be converted to operational weapons are included, as are the frames or receivers of any such weapons. *See, e.g.*, 18 U.S.C. § 921(a)(3)(A),(B); 26 U.S.C. § 5845(b), (h).  These provisions reflect the reality that any other approach would permit persons to circumvent statutory requirements by producing or purchasing nearly complete weapons that may readily be converted into operational ones, as well as the regulated frames or receivers of any such nearly complete weapons.  And ATF's approach is further supported by the agency's longstanding practice of treating certain partially complete frames or receivers as frames or receivers for purposes of the Act.  Thus, in interpreting "frame" and "receiver" to include a nonfunctional frame or receiver that may "readily" be converted to a functional one, ATF acted consistently with the statutory text, with Congress's approach to other terms in similar statutes, and with the reality underlying the statutory scheme that any contrary approach would permit individuals to circumvent important federal firearms laws.

The Rule's clarification that a "firearm" also includes certain weapon parts kits that are designed to or may readily be converted into an operational firearm similarly comports with the Act's text and structure.  With respect to the text, Congress defined a firearm to include any weapon that "is designed to" or "may readily be converted to expel a projectile."  18 U.S.C. § 921(a)(3)(A).  That definition plainly reflects Congress's deliberate inclusion of unfinished, nonoperational, or unserviceable weapons within the statutory definition.  And a weapon parts kit that includes parts enabling a purchaser to readily assemble an operational firearm plainly satisfies the Act's definition: such an assemblage of parts is both "designed to" and "may readily be converted to" function as a

7

firearm. In essence, a weapon parts kit is a disassembled or almost complete weapon, and courts have long recognized that even disassembled, or nonoperational, weapons constitute "firearms" under the Act. *See, e.g.*, *United States v. Ryles*, 988 F.2d 13, 16 (5th Cir. 1993). A weapon parts kit that includes parts designed to enable the ready assembly of an operational firearm plainly satisfies the Act's definition of a "firearm." Any contrary interpretation would permit the sale of weapon parts kits that enable the purchaser to assemble an operational firearm quickly and easily without compliance with the Act's background check, licensing, and recordkeeping requirements. That result would allow circumvention of the statute, enabling felons and other prohibited persons to obtain firearms and thwarting law enforcement's ability to trace firearms that are used in crimes.

In any event, Defendants are likely to prevail on the merits of their argument that the relief awarded in the Opinion and Judgment is overbroad in multiple respects. Even assuming that vacatur of a rule is a remedy authorized under the APA,[1] it is a discretionary equitable remedy—not one that is automatic or compelled. That understanding of vacatur is both reflected in Fifth Circuit precedent and consistent with preexisting constitutional and equitable limitations on extending relief to nonparties. *See, e.g.*, *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc) (plurality op.) (directing the district court to consider on remand the appropriate remedy, including remedies more limited than universal vacatur); *see also Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Moreover, forgoing universal relief as an automatic remedy is consistent with the reality that such relief "take[s] a toll on the federal court system" by "preventing legal

---

[1] As the federal government has argued, *see* Defs.' Cross-Mot. for Summ. J. at 67-69 (ECF No. 181), vacatur of a rule is not authorized by the APA. A three-Justice concurrence of the Supreme Court recently stated that it was "skeptical" that the APA authorizes "wholesale vacatur," noting that 5 U.S.C. § 706(2) "does not say anything about 'vacating' agency action ('wholesale' or otherwise)." *United States v. Texas*, 143 S. Ct. 1964 (2023) (Gorsuch J., concurring, joined by Thomas, J., and Barrett, J.). Defendants acknowledge that the Fifth Circuit has in the past concluded that the APA authorizes vacatur of rules, but Defendants expect that many courts will follow the direction of Justice Gorsuch's concurrence in *United States v. Texas* to give this issue "a closer look." *Id.*

questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *VanDerStok*, 2022 WL 4809376, at *2 (citation omitted). This conclusion is particularly applicable in the present context because in addition to this action, challenges to the Rule are also pending in three other districts in three other Circuits.[2] Defendants are likely to prevail in arguing on appeal that those equitable principles require limiting the judgment in two ways.

First, vacatur of the entire rule was unwarranted. The Opinion and Judgment did not address any of the myriad provisions of the Rule other than the two provisions mentioned above. Under the Rule's severability clause, because the Court's Opinion "held" only two specific "provision[s] of th[e] [R]ule" "to be invalid," "the remainder of th[e] rule . . . shall not be affected and shall be construed so as to give them the maximum effect permitted by law." 87 Fed. Reg. at 24,730. As this Court has previously recognized, "courts may 'set aside' only the part of a rule found to be invalid—for that is the only 'agency action' that exceeds statutory authority." *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 945 n.7 (N.D. Tex. 2019) (citation omitted); *see also id.* (vacating "only the portions of [a] rule" held to be unlawful because "the rule include[d] a severability provision"); *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1033 (5th Cir. 2019) (after "conclud[ing]" that specific "portions of a final rule [we]re unlawful," "vacat[ing] those portions of the rule" but not any other portion). The Court's Opinion did not include any mention or analysis of the severability provision.

Second, for similar reasons, vacatur of the Rule as applied to nonparties was unwarranted. This Court has previously recognized that "longstanding principles of equity" limit courts to "redress[ing] particular injuries in particular cases or controversies. *VanDerStok v. Garland*, No. 4:22-

---

[2] *See Morehouse Enters. LLC v. ATF*, No. 22-116, 2022 WL 3597299 (D.N.D. Aug. 23, 2022) (preliminary injunction denied), *appeal docketed*, No. 22-2812 (8th Cir. Aug. 31, 2022) (oral argument held March 14, 2023); *Miller v. Garland*, No. 22-2579 (D.D.C.) (motion to dismiss pending); *California v. ATF*, No. 3:20-6761 (N.D. Cal.) (administrative record filed).

9

CV-00691-O, 2022 WL 4809376, at *2 (N.D. Tex. Oct. 1, 2022) (citation omitted), and that "'a plaintiff's remedy must be limited to the inadequacy that produced his injury in fact,'" *VanDerStok v. Garland*, 625 F. Supp. 3d 570, 585 (N.D. Tex. 2022) (citation and internal punctuation omitted).  These considerations are equally compelling in the present context of vacatur on summary judgment as they were when the Court was adjudicating the scope of preliminary injunctive relief.  *See, e.g.*, *Texas*, 143 S. Ct. 1964 (2023) (Gorsuch J., concurring, joined by Thomas, J., and Barrett, J.) ("If the Congress that unanimously passed the APA in 1946 meant to overthrow the 'bedrock practice of case-by-case judgments with respect to the parties in each case' and vest courts with a 'new and far-reaching' remedial power, it surely chose an obscure way to do it." (quoting *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C. J., concurring))).  As noted above, no plaintiff can plausibly contend that relief to any non-party (other than customers of the entity plaintiffs) is necessary to remedy any Article III injury it might have alleged.  Thus, the Court should have "limit[ed] the solution to the problem," *see NRDC v. Wheeler*, 955 F.3d 68, 82 (D.C. Cir. 2020) (quotation omitted), by vacating the Rule only as to the plaintiffs.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court stay its Opinion and Judgment pending the resolution of Defendants' appeal of those decisions.

DATED: July 14, 2023                             Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

LESLEY FARBY
Assistant Director, Federal Programs Branch

*/s/ Daniel Riess*
DANIEL RIESS
TAISA M. GOODNATURE

10

JEREMY S.B. NEWMAN
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 353-3098
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

**CERTIFICATE OF CONFERENCE**

I certify that I have conferred with counsel for all plaintiffs. Original Plaintiffs "oppose Defendants' requested relief and also specifically oppose Defendants' requested timeline given that Defendants chose to wait to file their motion until two weeks after the Court issued its opinion, have not conferred with Plaintiffs until the day of their intended filing, and are planning on filing their emergency motion at 5:30 pm on a Friday while requesting a decision within a week, all of which prejudice Plaintiffs' and their ability to fully respond to the motion." Intervenor-Plaintiffs Defense Distributed and Second Amendment Foundation's position matches that of Original Plaintiffs. Intervenor-Plaintiffs BlackHawk Manufacturing Group, Polymer80, and Not an LLC oppose the relief sought in this motion; in addition to opposing, BlackHawk Manufacturing Group requests additional time to respond to this motion.

*/s/ Daniel Riess*

**CERTIFICATE OF SERVICE**

On July 14, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Daniel Riess*