UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **JENNIFER VANDERSTOK, et al.,** § | |
| § | |
| **Plaintiffs,** § | |
| § | |
| **BLACKHAWK MANUFACTURING** § | |
| **GROUP INC. d/b/a 80 Percent Arms,** § | |
| § | |
| **Intervenor-Plaintiff,** § | |
| § | |
| **DEFENSE DISTRIBUTED, and** § | |
| **THE SECOND AMENDMENT** § | Civil Action No. 4:22-cv-00691-O |
| **FOUNDATION, INC.** § | |
| § | |
| **Intervenors-Plaintiffs,** § | |
| § | |
| **v.** § | |
| § | |
| **MERRICK GARLAND, in his Official** § | |
| **Capacity as Attorney General of the** § | |
| **United States, et al.,** § | |
| § | |
| **Defendants.** | |

**BRIEF IN SUPPORT OF DEFENSE DISTRIBUTED AND
THE SECOND AMENDMENT FOUNDATION, INC.'S
MOTION FOR PRELIMINARY INJUNCTION**

**Argument**

Defense Distributed and the Second Amendment Foundation, Inc. ("SAF") move for a preliminary injunction that parallels the preliminary injunctive relief the Court already granted with respect to Tactical Machining, the Individual Plaintiffs, and BlackHawk. *See* Docs. 56, 84, 89, 91, 118. For Defense Distributed and SAF, the Court should issue an order—either a new preliminary injunction or an order expanding the scope of its existing preliminary injunction—preliminarily enjoining the Defendants from enforcing the challenged redefinition of "firearm" in 27 C.F.R. §§ 478.11 and 27 C.F.R. §§ 478.11, *see* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (the new Final Rule), against Defense Distributed, Defense Distributed's customers, and SAF's members.

Procedurally, this motion is proper and timely. The Court recently granted Defense Distributed and SAF's motion to intervene, Doc. 137, and Defense Distributed and SAF have filed their complaint, Doc. 143. Now comes the preliminary injunction request all knew was coming.

Substantively, preliminary injunctive relief is warranted for Defense Distributed and SAF. The preliminary injunction test that the Court applied before applies here just as well. In every key respect, Defense Distributed and SAF's preliminary injunction request is at least as strong as the other injunction recipients; and in every key respect, the government's opposition to this motion is at least as invalid as before. If anything, Defense Distributed and SAF's case is *stronger* than the others because Defense Distributed and SAF assert both (1) the common APA claim that the Court already deemed likely to succeed (Count One), *and* (2) an additional APA claim that others do not assert: Count Two shows an APA violation stemming from the agencies' failure to conduct a *Bruen*-compliant inquiry during the rulemaking, and is very likely to succeed. Thus, on Count Two's compelling ground as well as the Count One ground already accepted, a strong likelihood of success on the merits has been established. All other factors support an injunction as well.

**I.	Defense Distributed and SAF are likely to succeed on the merits.**

Defense Distributed and SAF's complaint seeks to have the new Final Rule held unlawful and set aside with six counts of claims asserting distinct legal theories. Doc. 143 at 20-27. At least two of those counts' claims clearly present a strong likelihood of success on the merits.

First, Defense Distributed and SAF present a strong likelihood of success with Count One, their common APA claim about the new Final Rule contradicting its originating statute. *See* Doc. 143 at 20-21. Defense Distributed and SAF's Count One is essentially the same as the original plaintiffs' count one, Doc. 93 at 41-42, and BlackHawk's count one, Doc. 99 at 26, both of which the Court has held present a strong likelihood of success on the merits. Doc. 56 at 15; Doc. 118 at 5-6. The Court should therefore conclude, for the reasons it concluded twice already, that the claim presented by Defense Distributed and SAF as Count One has a strong likelihood of success.

Second, Defense Distributed and SAF have a strong likelihood of success with Count Two, their unique APA claim about the Agencies having promulgated the new Final Rule with invalid procedures. *See* Doc. 143 at 22-23. For distinct legal reasons, Count Two is also likely to show that the new Final Rule is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and should therefore be held unlawful and set aside. 5 U.S.C. § 706(2)(A).

In Count Two, Defense Distributed and SAF assert a unique process-based claim about the Agencies having violated the Administrative Procedure Act by promulgating the Final Rule with insufficient considerations. *See* Doc. 143 at 22-23. It is *not* the same as Defense Distributed and SAF's Count One, which asserts an *outcome*-based APA violation (the Final Rule's contradiction of its enabling statute) and is asserted by other claimants. Nor is it the same as Defense Distributed and SAF's Count Five, which asserts an *outcome*-based APA and constitutional violation (the Final Rule's contradiction of the Second Amendment) and is asserted by other claimants as well. Defense Distributed and SAF's Count Two is process-focused instead of outcome-focused and,

3

though it invokes Second Amendment precedent, the resulting violation is of the APA and not the Constitution. No other party asserts this claim. *See* Doc. 137 at 8 (Order granting Defense Distributed and SAF's motion to intervene) ("Putative Intervenors raise a unique claim implicating their rights under the Second Amendment that diverges from those brought by the current Plaintiffs.").

Defense Distributed and SAF's Count Two shows that the new Final Rule is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," § 706(2)(A), because the Agencies when promulgating the Final Rule failed to consider legally relevant factors and data. Whenever an agency makes a rule, the Agency's rulemaking process "must examine" "relevant factors" and "relevant data." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*, 463 U.S. 29, 43 (1983). For this rule, the Agencies had to consider the "relevant" Second Amendment inquiry upheld by *New York State Rifle & Pistol Association, v. Bruen*, 142 S.Ct. 2111 (2022). That is, the APA required the Agencies to consider whether this "regulation is consistent with this Nation's historical tradition of firearm regulation" and to do so *strictly*—i.e., without using the "means-end scrutiny" that *Bruen* deemed unconstitutional. *Id.* at 2126-32. No such inquiry occurred here.

When promulgating the new Final Rule, the Agencies doubly violated the APA by both (1) failing to consider the factors and data that *Bruen* deems constitutionally mandatory and (2) relying instead on factors and data that *Bruen* deems constitutionally improper. The administrative record is glaring in both respects. Most importantly, the record shows no *Bruen*-compliant considerations because the Agencies did not even try to determine whether this "regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126-32. The Agencies never attempted to consider whether the new Final Rule "addresses a general societal problem that has persisted since the 18th century," and if so whether there was "a distinctly similar historical regulation addressing that problem." *Id.* These failures are established as a matter of law.

4

Instead of promulgating the Final Rule by considering the legally relevant factors and data, the administrative record shows that the Agencies compounded their APA violation by relying upon legally *irrelevant* matters. They infected their rulemaking process with the very presumptions of legality and means-ends scrutiny that *Bruen* deems illegal. *Compare* 87 Fed. Reg. 24,676-24,677 (relying on "compelling governmental interests" and "presumptively lawful regulatory measures"), *with Bruen*, 142 S. Ct. at 2126 ("*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."). This too is established as a matter of law.

Given that the Agencies did not even attempt to consider the correct Second Amendment factors and data, it is no surprise to see that the resulting Final Rule violates the Constitution. But that important result-based violation is a different and distinct problem addressed by other claims. At issue here in Defense Distributed and SAF's Count Two is the Agencies' procedural failure to *consider* the historical factors and data that *Bruen* deems relevant—a process-based APA illegality that warrants setting the Final Rule aside regardless of how outcome-based claims turn out.

For these reasons, both Count One and Count Two have a strong likelihood of success.

## II. Defense Distributed and SAF face a substantial threat of irreparable harm.

### A. The Final Rule irreparably harms Defense Distributed.

Defense Distributed faces irreparable harms that are at least as compelling as Tactical Machining and BlackHawk. The key rule is that economic losses meet the test if the injury is "so great as to threaten the existence of the movant's business," *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989), and/or the loss is nonrecoverable because the government-defendant enjoys sovereign immunity from monetary damages, *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021). Both situations exist here.

5

As the declaration of Defense Distributed's director shows in full detail, Ex. A, the Final Rule inflicts such severe economic harm on Defense Distributed as to threaten its existence.[1] Defense Distributed's business viability depends on its ability to deal in unfinished receivers, unfinished frames, and frame and receiver parts kits that (1) are *not* Gun Control Act "firearms" under the Gun Control Act itself, and (2) are *not* Gun Control Act "firearms" under administrative actions taken prior to August 2022, but that (3) *are* defined for the first time ever as Gun Control Act "firearms" by the new Final Rule. *Id.* But because of the new Final Rule's unprecedented reclassification of unfinished receivers, unfinished frames, and frame and receiver parts kits, Defense Distributed has suffered immense damages in the form of lost revenues, lost business reputation and good will, interruption of supplying vendor services, and massive compliance costs. *Id.* The new Final Rule also harms Defense Distributed by striking fear into its customers and business partners. *Id.* Just as with Tactical Machining and BlackHawk, the new Final Rule's multifaceted business destruction constitutes irreparable harm.

Defense Distributed's economic harms are also irreparable because Defense Distributed cannot later recover its losses as monetary damages. *See Wages & White Lion*, 16 F.4th at 1142 ("federal agencies generally enjoy sovereign immunity for any monetary damages," making a party's "lack of a guarantee of eventual recovery [one] reason that its alleged harm is irreparable" (quotation marks and citation omitted)); *see also Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) ("[C]omplying with a regulation later held invalid almost always produces the irreparable harm of

---

[1] The government knew this would occur. *See* ATF, REGULATORY IMPACT ANALYSIS AND FINAL REGULATORY FLEXIBILITY at 124 (2022), *available at* https://www.atf.gov/file/165811/download ("[T]he final rule could potentially affect 132,023 entities," with "the majority of affected entities [being] small entities that would experience a range of costs, the largest cost being the ***dissolution of the entire business***." (emphasis added)).

6

nonrecoverable compliance costs." (quotation marks and citation omitted)). In this way as well, Defense Distributed's position is just as strong as what the Court has deemed sufficient already.

### B. The Final Rule irreparably harms the Second Amendment Foundation.

As putative customers of Defense Distributed seeking to exercise their Second Amendment rights, SAF's members face irreparable harms that warrant a preliminary injunction as well. For them the key rule already recognized is that the "the threat of criminal prosecution does indeed constitute irreparable injury," and that "a plaintiff's purported choice to comply—or else—with a challenged government dictate, as evidenced by the plaintiff's decision to desist from engaging in the regulated activity, is adequate to establish irreparable harm." Doc. 89 at 10. So it is here for SAF's members, as shown by the declaration of SAF's Executive Vice President, Ex. B.

Specifically, the new Final Rule directly, substantially, and irreparably harms the substantial number of SAF members that (a) already legally own at least one firearm purchased from a federal firearms licensee, (b) reasonably desire to manufacture their own firearm for lawful self-defense at home by, inter alia, acquiring from Defense Distributed articles defined for the first time ever as "firearms" by the new Final Rule, and (c) would do so imminently if not for the new Final Rule's promulgation. *Id.* For these SAF members, the effective exercise of Second Amendment rights depends on the ability to buy from Defense Distributed unfinished receivers, unfinished frames, and frame and receiver parts kits that (1) are *not* Gun Control Act "firearms" under the Gun Control Act itself, and (2) are *not* Gun Control Act "firearms" under administrative actions taken prior to August 2022, but that (3) *are* defined for the first time ever as Gun Control Act "firearms" by the new Final Rule. *Id.* But because of the new Final Rule, these SAF members can no longer commercially purchase, possess, or otherwise acquire from firms like Defense Distributed the unfinished receivers, unfinished frames, and frame and receiver parts kits at issue.

7

*Id.*[2] Finally, the New Final Rule's vagueness exerts a chilling effect on SAF members, who cannot reasonably determine what the law deems punishable and cannot reasonably determine how it will be administered. *Id.*; *see Dana's R.R. Supply v. Attorney Gen., Florida*, 807 F.3d 1235, 1241 (11th Cir. 2015) ("Litigants who are being 'chilled from engaging in constitutional activity,' . . . suffer a discrete harm independent of enforcement.")

**III.     The balance of equities and public interest favor an injunction again.**

The final considerations of equities and the public interest favor Defense Distributed and SAF for exactly the same reasons that they favored the other injunction recipients. *See* Doc. 56 at 21-22; Doc. 89. Just as the Court originally recognized, the "public interest is served when administrative agencies comply with their obligations under the APA." Doc. 56 at 21. And just as before "any injury to Defendants is … outweighed by Plaintiffs' strong likelihood of success on the merits of their statutory interpretation claims." *Id.*

**Conclusion**

The motion should be granted. The Court should issue an order—either a new preliminary injunction or an order expanding the scope of its existing preliminary injunction—preliminarily enjoining the Defendants from enforcing the challenged redefinition of "firearm" in 27 C.F.R. §§ 478.11 and 27 C.F.R. §§ 478.11, *see* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (the new Final Rule), against Defense Distributed, Defense Distributed's customers, and SAF's members.

---

[2] It is no answer to say that SAF members might pay slightly more to acquire the articles in question from federal firearms licensees in compliance with the new Final Rule. Ex. B at 2. Such a requirement is both legally unconstitutional (since under Bruen there is no historical tradition of) and factually impracticable, since the new Final Rule's onerous regime makes it uneconomical for a sufficient number of licensees to deal in "unfinished" frames and receivers and/or frame and receiver "parts kits." *Id.* Furthermore, the costs of complying with these unjustifiable extra acquisition steps (e.g., FFL transfer fees) are themselves harms that the law deems irreparable. *Id.*

8

| | |
|---|---|
| Date: January 12, 2022 | Respectfully submitted, |
| | /s/ Chad Flores |
| | Chad Flores |
| | Texas Bar No. 24059759 |
| | cflores@beckredden.com |
| | Beck Redden LLP |
| | 1221 McKinney St., Suite 4500 |
| | Houston, TX 77010 |
| | (713) 951-3700 |
| | (713) 951-3720   Fax |
| | *Counsel for Defense Distributed and the Second Amendment Foundation, Inc.* |