UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JENNIFER VANDERSTOK, et al., § § § Plaintiffs, § § BLACKHAWK MANUFACTURING § GROUP INC. d/b/a 80 Percent Arms, § § Intervenor-Plaintiff, § § DEFENSE DISTRIBUTED, and § THE SECOND AMENDMENT § FOUNDATION, INC. § § Intervenors-Plaintiffs, § § v. § § MERRICK GARLAND, in his Official § Capacity as Attorney General of the § United States, et al., § § Defendants. § | Civil Action No. 4:22-cv-00691-O |

**REPLY BRIEF IN SUPPORT OF DEFENSE DISTRIBUTED AND
THE SECOND AMENDMENT FOUNDATION, INC.'S
MOTION FOR PRELIMINARY INJUNCTION**

**I.  Defense Distributed and SAF are likely to succeed on the merits.**

Likelihood of success should be this decision's predominant factor. *See Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005) ("likelihood of success on the merits . . . is arguably the most important."). It strongly favors relief due to both Counts I and II. Doc. 164 at 3-5.

**A.  Count One is likely to succeed on the merits.**

Defense Distributed and SAF undoubtedly present a strong likelihood of success with Count One, the common APA claim about the new Final Rule contradicting its originating statute. Doc. 164 at 3. Given that the Court has already accepted this claim's merit, Doc. 56 at 6-16; Doc. 118 at 5-6, the Agencies rightly put up no new fight, Doc. 176 at 4 (just "preserving" prior argument). Count One standing alone is enough to make the most important factor favor relief.

**B.  Count Two is likely to succeed on the merits.**

**1.  The harmless error argument is wrong.**

Defense Distributed and SAF also present a strong likelihood of success with Count Two, their APA claim about the Agencies having promulgated the Final Rule with invalid procedures. Doc. 164 at 3-5. Harmless error is the main counter. As opposed to the issue of whether Count Two's APA violation occurred (challenged later, barely), the Agencies' lead argument says that Count Two's APA violation cannot warrant relief because it caused no harm. Doc. 176 at 4-7.

It is true that, "[i]n administrative law, as in federal civil and criminal litigation, there is a harmless error rule: § 706 of the Administrative Procedure Act, 5 U.S.C. § 706, instructs reviewing courts to take 'due account ... of the rule of prejudicial error.'" *PDK Labs. Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C. Cir. 2004). "If the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration." *Id.* "But in this case we cannot say that the [Agency's] error was of that sort." *Id.* The Court should reject the harmless error argument for two reasons.

First, the Court should reject the harmless error argument because the Agencies bear the burden of showing harmlessness. The Agencies certainly did *not* carry a burden of affirmatively demonstrating harmless. All they did is deny harm, which is not the same as showing the opposite. There is, for example, no assertion by the Agencies (and certainly no proof) that the Final Rule would have come out same if a *Bruen*-compliant historical analysis had occurred. So if the Agencies had the burden of showing harmlessness, their harmless-error argument fails.

The Agencies bear the burden of establishing harmlessness under two legal rules. Each is independently sufficient to prove the point. The first applicable burden-allocating rule comes from federal law's overall harmless error doctrine, which applies to APA matters, *see Shinseki v. Sanders*, 556 U.S. 396, 406 (2009). The rule is that the government bears the burden of showing harmlessness where the government commits an error regarding the Constitution or in depriving citizens of liberty. *See United States v. Walters*, 418 F.3d 461, 464 (5th Cir. 2005). The second applicable burden-allocating rule comes from APA-specific precedent. The rule is that, when courts cannot tell whether or not harm stemmed from an APA violation about what material agency considered, harm is presumed. *PDK Labs. Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C. Cir. 2004) ("What weight [the agency] gave to those circumstances (or any others) is impossible to discern. The decision upholding the suspension orders must therefore be set aside and the case remanded.").

These burden-allocating rules apply. The first applies because the Agencies committed an error regarding the Constitution (what the Second Amendment requires) in depriving citizens of liberty; so the government therefore bears the burden of showing harmlessness. *See Walters*, 418 F.3d at 464. The second applies because the Agencies' error controlled what material the agency considered; so even if the record about harm is silent (it is not for reasons explained next), harm is presumed. *See PDK Labs*, 362 F.3d at 799. One way or the other, the Agencies bore the burden.

**2. Harm is evident.**

Regardless of where the burdens lie, the Court should reject the harmless-error argument by holding that harm is evident. "In conducting the harmless error inquiry, we inform our analysis with a number of potentially relevant factors, including (1) 'an estimation of the likelihood that the result would have been different'; (2) 'an awareness of what body (jury, lower court, administrative agency) has the authority to reach that result'; (3) 'a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings'; and (4) 'a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises may well make all the difference.'" *City of Arlington, Tex. v. F.C.C.*, 668 F.3d 229, 244 (5th Cir. 2012), *aff'd*, 569 U.S. 290 (2013). Under this framework, Defense Distributed and SAF need not necessarily show an actual Second Amendment violation. That is one way of proving harm. But it is not the only way. Relief is warranted if the Count Two APA violation caused *any harm* deemed meaningful, and several such harms are evident here.

Specifically, the Count Two APA violation caused sufficient harm by impacting the rulemaking procedure used and the substance of the decision reached. Harm warranting relief occurs when an APA error has a "bearing on" either "the procedure used" or "the substance of the decision reached." *United States v. Johnson*, 632 F.3d 912, 930 (5th Cir. 2011) ("In this circuit, an administrative body's APA deficiency is not prejudicial "only 'when [it] is one that clearly had no bearing on the procedure used or the substance of decision reached.'"); *U.S. Steel Corp. v. U.S. E.P.A.*, 595 F.2d 207, 215 (5th Cir. 1979) ("Here the Agency's error plainly affected the procedure used, and we cannot assume that there was no prejudice to petitioners."). The requisite "bearing" exists when the erroneous aspect of the process "directly informed" and "guided" the agency's conclusion. *Sierra Club v. U.S. Fish & Wildlife Serv.*, 245 F.3d 434, 444 (5th Cir. 2001).

Here, the Count Two APA violation had a "bearing" on the "procedure used" and a "bearing" the "substance of the decision reached," as it (wrongly) defined the universe of historical materials the Agencies had to accounted for and (wrongly) told them to employ means-ends scrutiny. *See* Doc. 164 at 5 (showing the Agencies' heavy reliance on "compelling governmental interests" and "presumptively lawful regulatory measures"). Depriving this rulemaking process of its constitutionally-required methods and ingredients necessarily infected the end result. Such process harms are especially evident where, as here, the rule concerns a "complex regulatory decision" and not a mere "yes or no" decision. *Johnson*, 632 F.3d at 932.

*Worldcall Interconnect, Inc. v. FCC*, 907 F.3d 810 (5th Cir. 2018) (cited by the Agencies), is the flip side of the coin. That case's APA violations caused no harm because they "clearly had no bearing on the procedure used or the substance of the decision reached." *Id.* at 819; *see also* ("the references appear unimportant"). Here by contrast, the APA violation (failure to conduct a a *Bruen*-compliant historical analysis) had both relevant bearings, making *U.S. Steel* applicable.

### 3. The Agencies failed to conduct a *Bruen*-compliant historical inquiry.

After denying that the Count II APA violation caused harm, the Agencies back up and say that no Count II APA violation occurred. Doc. 176 at 11. This denial is quite limited, though. The Agencies do *not* deny that a *Bruen*-compliant analysis needed to occur. The Agencies instead say that a *Bruen*-compliant analysis *did* occur because *Bruen* does not require a historical analysis for this regulation: "Because, like many other commercial regulations, the Rule does not prevent any qualified individual from making, buying, or possessing firearms, it does not infringe that right and it *need not be justified by historical analogy*." Doc. 176 at 11 (emphasis added). The Court should reject this misreading of *Bruen* by holding that its historical analysis was required.

*United States v. Rahimi*, 59 F.4th 163, 2023 WL 1459240 (5th Cir. 2023), is the most recent decision squarely defeating the Agencies' attempt to avoid a historical inquiry. *Rahimi* held that "possession of a pistol and a rifle easily falls within the purview of the Second Amendment." 2023 WL 1459240, at *5. It is implicated here because the Final Rule's expansion of the "firearm" term thereby expands the law making it a crime for many Americans to possess a "firearm." 18 U.S.C. § 922(g). Because "the 'Constitution presumptively protects that conduct,' . . . the Government 'must justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.'" *Rahimi*, 2023 WL 1459240, at *5 (quoting *Bruen*).

At issue is a debate about competing Second Amendment approaches that *Rahimi* resolved. "As summarized by now-Justice Barrett, 'one [approach] uses history and tradition to identify the scope of the right, and the other uses that same body of evidence to identify the scope of the legislature's power to take it away.'" *Rahimi*, 2023 WL 1459240, at *3. The Agencies here are using the first approach, which *Rahimi* held "runs headlong into *Heller* and *Bruen*." *Id.* "Unpacking the issue, the Government's argument fails because (1) it is inconsistent with *Heller*, *Bruen*, and the text of the Second Amendment, (2) it inexplicably treats Second Amendment rights differently than other individually held rights, and (3) it has no limiting principles." *Id.* Under *Rahimi*, therefore, the Final Rule did indeed require a *Bruen*-compliant historical inquiry.

The Agencies' last no-error argument is inapposite. *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622 (5th Cir. 2001) (cited by the Agencies at 7), is about the rule that "reviewing courts generally should, in evaluating agency action, avoid considering evidence that was not before the agency when it issued its final decision." *Id.* at 630 n.8. That does not weaken Count II because Count II uses the record's emptiness *against* the Agencies. The Final Rule violated the APA *because* no *Bruen*-compliant historical inquiry occurred during its promulgation. If anything, *Shell*

6

*Offshore* just goes to show that the Agencies cannot now save the Final Rule by imagining what a *Bruen*-compliant rulemaking would have looked like. Count II is likely to succeed, as is Count I.

II.        **Defense Distributed and SAF face a substantial threat of irreparable harm.**

        A.        **The Final Rule irreparably harms Defense Distributed.**

Defense Distributed faces irreparable harms that are at least as sufficient as Tactical Machining and BlackHawk. Doc. 164 at 4-7. The Agencies' vagueness objection is wrong. Defense Distributed's proof about the receiver products at issue—those that Defense Distributed used to sell but no longer does because of the Final Rule—gives all of the requisite particularity and then some, *see* Doc. 164 at 4-7 (explaining the Declaration of Cody Wilson, Doc. 164-01), and accords perfectly with what Defense Distributed's Ghost Gunner website showed customers *before* the Final Rule took effect:



*Featured Products—GhostGunner*, ghostgunner.net/featured-products/ (Apr. 27, 2022), *available at* https://web.archive.org/web/20220427235315/https://ghostgunner.net/featured-products. *Cf.* Doc. 176 at 10-11 (the Agencies consent to citing Defense Distributed's website directly as proof).

7

The Polymer 80 pistol frame seen above was expressly addressed by ATF's own December 2022 Open Letter (proven up by Doc. 164-01). In no uncertain terms, the Open Letter declares that "partially complete Polymer80. . . pistol frames…are "**frames**" and also '**firearms.**'" *Id.*

Sufficient proof also shows that Defense Distributed ceased selling Polymer 80 pistol frames due to the Final Rule. Right after snapshotting the Open Letter's treatment of Polymer 80 pistol frames, Defense Distributed's declaration says this: "Because of the new Final Rule's unprecedented reclassification of unfinished receivers, unfinished frames, and frame and receiver parts kits, Defense Distributed and its customers faced a reasonable fear of criminal prosecution that caused Defense Distributed to *cease dealing in these items*." *Id.* (emphasis added).

The Polymer 80 example accords perfectly with what the evidence proved more broadly. The Doc. 164-01 declaration defined the Defense Distributed products at issue categorically and in terms that track the pertinent legal inquiry with exactitude:

13. Solely because of the Agencies' new Final Rule, Defense Distributed ceased dealing in (manufacturing, selling, delivering, shipping, transporting, and receiving) unfinished receivers, unfinished frames, and frame and receiver parts kits that (1) are *not* Gun Control Act "firearms" under the Gun Control Act itself, and (2) are *not* Gun Control Act "firearms" under administrative actions taken prior to August 2022, but that (3) *are* defined for the first time ever as Gun Control Act "firearms" by the new Final Rule.

*Id.* at 3. None of this proof is "vague." It is clear, direct, well-founded, and compelling.

Thus, the Court should hold that Defense Distributed has proven irreparable harm. Alternatively, if there is any doubt about Defense Distributed's irreparable harm, the Court should resolve it by receiving oral testimony at a hearing. *See* Wright & Miller, 11A Federal Practice & Procedure § 2949 & n.43 (3d ed.); *Heil Trailer Intern. Co. v. Kula*, 542 F. App'x 329, 334 n.17 (5th Cir. 2013) (citing § 2949). In no event does the vagueness criticism warrant denial. Irreparable harm either has been proven in full already or can be proven at the hearing with ease.

B.  **The Final Rule irreparably harms SAF.**

As to SAF, the Agencies first say (at 12) that SAF's members should get no relief because "the existing preliminary injunctions already allow SAF members to purchase unfinished frames or receivers." But the existing injunctions cover only customers of Tactical Machining, Doc. 89 at 21-22, and Blackhawk, Doc. 118. There is no existing injunction coverage for the SAF member customers of Defense Distributed that this motion concerns. *See* Doc. 164-2 at 2.

Second, the Agencies say (at 12) that SAF's proof is too "barebones." But their criticisms lack legal foundation. No cases hold that preliminary injunction proof from a co-founder is a bad thing; no cases hold that preliminary injunction proof has to give particularized assertions of a basis for personal knowledge, and no cases hold that preliminary injunction proof about an association's members has to name names. On the contrary, preliminary injunction "procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence." *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993). In this posture, district courts can rightly "give even inadmissible evidence some weight when it is thought advisable to do so in order to serve the primary purpose of preventing irreparable harm before a trial can be had." Wright & Miller, 11A Federal Practice & Procedure § 2949 & nn.20-23 (3d ed.) ("in practice affidavits usually are accepted on a preliminary injunction motion without regard to the strict standards of Rule 56(c)(4), and . . . hearsay evidence also may be considered"); *see also Sony/ATV Publ'g, LLC v. Marcos*, 651 F. App'x 482, 485 (6th Cir. 2016) (the same flexibility applies to personal knowledge).

III.  **The balance of equities and public interest favor an injunction again.**

The final considerations of equities and the public interest favor Defense Distributed and SAF for the same reasons that they favored the other injunction recipients. Doc. 164 at 8. The motion established, Doc. 164 at 8, and the Agencies do not seriously dispute, that the public interest

9

is served when administrative agencies comply with their obligations under the APA. And just as with the other injunctions, any injury to the Agencies is outweighed by Plaintiffs' strong likelihood of success on the merits of their statutory interpretation claims. The Agencies' only argument about harm concerns prohibited persons. But Defense Distributed and SAF have no objection to a preliminary injunction that excludes from its coverage individuals "who are prohibited from possessing firearms by 18 U.S.C. § 922(g)," Doc. 176 at 14-15, just as the existing injunctions do.

The Court should also reject the Agencies' delay argument (at 8) for essentially the same reasons that it rejected both the delay argument about intervention, Doc. No. 137 at 6-7, and the delay argument about Blackhawk's injunction, Doc. 118 at 7-8. The relevant span is not nine months but just 24 days. *See* Doc. No. 143 (complaint filed Dec. 23); Doc. No. 163 (motion filed Jan. 12). Taking that long was reasonable. *See* Doc. 118 at 8 ("[BlackHawk's] efforts to vindicate its interests are far from an undue delay sufficient to overcome BlackHawk's clear demonstration of irreparable harm and bar injunctive relief."); *see also Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 856 (5th Cir. 2010) (three months is ok); *Pascarell for & on Behalf of N.L.R.B. v. Vibra Screw Inc.*, 904 F.2d 874, 881 (3d Cir. 1990) (six months is ok). Critically, this motion's timing prejudices no one—especially given that Distributed and SAF have already joined the ongoing summary judgment schedule without slowing anything down. The Court is therefore just as well positioned to grant relief today as it would have been on the Agencies' preferred arrival date.

## Conclusion

The motion for a preliminary injunction should be granted. The Court should grant to Defense Distributed and its customers, including SAF's members, the same preliminary injunctive protection that it has already granted the action's other claimants.

10

Date: February 17, 2023 Respectfully submitted,

/s/ Chad Flores
Chad Flores
Texas Bar No. 24059759
cflores@beckredden.com
Beck Redden LLP
1221 McKinney St., Suite 4500
Houston, TX 77010
(713) 951-3700
(713) 951-3720   Fax
*Counsel for Defense Distributed and the Second Amendment Foundation, Inc.*

11