# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

## FORT WORTH DIVISION

JENNIFER VANDERSTOK;
MICHAEL G. ANDREN;
TACTICAL MACHINING, LLC, a limited liability company; and
FIREARMS POLICY COALITION, INC., a nonprofit corporation,

                *Plaintiffs*,

and

BLACKHAWK MANUFACTURING GROUP INC. d/b/a 80 PERCENT ARMS, DEFENSE DISTRIBUTED; and SECOND AMENDMENT FOUNDATION, INC.,

                *Intervenor-Plaintiffs*,

    v.

MERRICK GARLAND, in his official capacity as Attorney General of the United States;
UNITED STATES DEPARTMENT OF JUSTICE;
STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,

                *Defendants*.

Civil Action No. 4:22-cv-691-O

**BLACKHAWK MANUFACTURING GROUP INC. d/b/a 80 PERCENT ARMS'
REPLY IN SUPPORT OF ITS OPPOSED EMERGENCY MOTION TO CLARIFY THE
STATUS OF INJUNCTIVE RELIEF, OR, IN THE ALTERNATIVE, FOR AN
INJUNCTION TO ENFORCE UNSTAYED ASPECTS OF FINAL JUDGMENT, OR
<u>A PRELIMINARY INJUNCTION PENDING APPEAL</u>**

**TABLE OF CONTENTS**

I.  THE PLAIN LANGUAGE OF THE SUPREME COURT'S STAY ORDER CONTRADICTS THE GOVERNMENT'S ARGUMENT OF A "FULL" STAY ................................................................................. 2

II. THE GOVERNMENT'S SUGGESTION THAT KEY REMEDIAL ISSUES WERE DECIDED BY "NECESSARY IMPLICATION" IS UNFOUNDED AND ENTIRELY SPECULATIVE ...................................... 5

III. THIS COURT RETAINS ITS EQUITABLE AUTHORITY TO CLARIFY, CONFIRM OR GRANT NEW INJUNCTIVE RELIEF ............................... 7

CONCLUSION ..................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
 141 S. Ct. 2320 (2021) ................................................................................................ 6

*Alliance for Hippocratic Medicine v. U.S. Food & Drug Admin.*,
 No. 23-10362, 2023 WL 5266026 (5th Cir. Aug. 16, 2023) ...................................... 8, 9

*Aspen Tech., Inc. v. Kunt*,
 No. CV H-10-1127, 2013 WL 12310732 (S.D. Tex. May 10, 2013) ............................ 7

*Aspen Tech., Inc. v. M3 Tech., Inc.*,
 569 F. App'x 259 (5th Cir. 2014) ................................................................................. 7

*Barnes v. E-Systems, Inc. Group Hospital Medical & Surgical Ins. Plan*,
 501 U.S. 1301 (1991) ................................................................................................... 6

*Berbling v. Littleton*,
 409 U.S. 1053 (1972) ................................................................................................... 5

*Broidy Cap. Mgmt. LLC v. Muzin*,
 No. 19-CV-150 (DLF), 2022 WL 2157047 (D.D.C. June 15, 2022) ............................ 7

*Brown v. Carlson*,
 431 F. Supp. 755 (W.D. Wis. 1977) ............................................................................. 3

*Cargill v. Garland*,
 57 F.4th 447 (5th Cir. 2023) ......................................................................................... 2

*Danco Lab'ys, LLC v. All. for Hippocratic Med.*,
 143 S. Ct. 1075 (2023) ................................................................................................. 4

*Equal Emp. Opportunity Comm'n v. Locs. 14 & 15, Int'l Union of Operating Engineers*,
 438 F. Supp. 876 (S.D.N.Y. 1977) ............................................................................... 4

*Garland v. VanDerStok*,
 __ S. Ct. __, No. 23A82, 2023 WL 5023383 (Aug. 8, 2023) ...................................... 4

*Gene & Gene, L.L.C. v. BioPay, L.L.C.*,
 624 F.3d 698 (5th Cir. 2010) ........................................................................................ 6

*Griggs v. Provident Consumer Disc. Co.*,
  459 U.S. 56 (1982) .................................................................................................... 7

*Hampton v. Fitzgerald*,
  409 U.S. 1055 (1972) ................................................................................................ 3

*Hughes v. Washington Post Co.*,
  498 U.S. 1043 (1991) ................................................................................................ 3

*Kansas v. Hendricks*,
  517 U.S. 1153 (1996) ................................................................................................ 3

*Louisiana v. Biden*,
  55 F.4th 1017 (5th Cir. 2022) ................................................................................... 8

*Morrison v. Olson*,
  484 U.S. 1058 (1988) ................................................................................................ 3

*Newton v. Consolidated Gas Co. of N.Y.*,
  258 U.S. 165 (1922) ............................................................................................. 7, 8

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
  514 U.S. 645 (1995) .................................................................................................. 3

*Nken v. Holder*,
  556 U.S. 418 (2009) .................................................................................................. 5

*Pub. Serv. Co. of Indiana v. U.S. E.P.A.*,
  682 F.2d 626 (7th Cir. 1982) .................................................................................... 2

*Rsrv. Nat. Ins. Co. v. Crowell*,
  507 U.S. 1015 (1993) ................................................................................................ 5

*Shinholt v. Angle*,
  90 F.2d 297 (5th Cir. 1937) ...................................................................................... 7

*Test Masters Educ. Servs., Inc. v. Singh*,
  428 F.3d 559 (5th Cir. 2005) .................................................................................... 7

*Trump v. Int'l Refugee Assistance Project*,
  582 U.S. 571 (2017) .............................................................................................. 5, 9

*United States v. Kaluza*,
  780 F.3d 647 (5th Cir. 2015) .................................................................................... 2

*United States v. U.S. Smelting Refining & Mining Co.*,
    339 U.S. 186 (1950) ........................................................................................................ 6

**Rules**

Federal Rule of Civil Procedure 62(c) ................................................................................ 7

**Other Authorities**

American Heritage Dictionary of the English Language (1969) ........................................ 3

Black's Law Dictionary (10th ed. 2014) ............................................................................ 2

Funk & Wagnall's Standard College Dictionary (1963) .................................................... 2

The Law of Judicial Precedent (2016) ................................................................................ 7

Thorndike-Barnhardt Dictionary (1963) ............................................................................ 3

Webster's New International Dictionary (2d ed. 1959) ..................................................... 2

To oppose the entry of relief to BlackHawk in this action, the Government misconstrues the Supreme Court's order staying this Court's order and judgment. According to the Government, the Supreme Court "issued a *full* stay", (Gov't Opp. at 3) (emphasis in original), which serves to completely divest this Court of any judicial power in this proceeding, including the federal court's long-standing inherent and equitable powers. The Government then suggests—wrongly—that *any* action taken by this Court would be in direct conflict with the Supreme Court's stay order.

The Government's argument contradicts the plain language of the Supreme Court's stay order and violates basic cannons of construction and interpretation. Specifically, it renders the Supreme Court's text mere surplusage. The stay order, in fact, does not say this Court's judgment and order are stayed, let alone "in full". To the contrary, the stay order says that this Court's order and judgment are stayed only "insofar as they *vacate* the final rule". ECF No. 249-1 (emphasis added). This language indicates the Supreme Court's stay is aimed at the *remedy*—and more precisely, the *comprehensive scope of the remedy*—issued in this Court's earlier ruling and judgment. The Government's law-of-the-case argument—one it concedes is premised upon "necessary implication"—therefore necessarily fails because a plain reading of the order compels a different result.

Nor has the Government provided any legal authority to support its argument that this Court has no jurisdiction to exercise its equitable discretion over the non-stayed aspects of its judgment, including its authority to grant injunctive or other relief to preserve the pre-judgment status quo pending resolution of the issues on appeal. The Court's remedy of vacatur of the entire Rule is the only part of this Court's judgment that the Supreme Court has stayed while under review by the Fifth Circuit. The Supreme Court's stay does not apply to this Court's findings and determinations regarding intervention, Article III standing, and statutory analysis, nor does the

1

stay invalidate this Court's finding that the APA is the proper *source* for the applicable remedy. The Supreme Court stayed the comprehensive vacatur of the Rule and nothing else. This Court thus has both the power and the obligation to provide relief consistent with its earlier rulings, including an injunction precluding enforcement of unlawful agency action against BlackHawk.

This Court should reject the Government's opposition arguments and reinstate the injunctive relief it ordered early in this case. This may be accomplished through a preliminary injunction, a permanent injunction, a stay pending appeal, or all three.

**I.     THE PLAIN LANGUAGE OF THE SUPREME COURT'S STAY ORDER CONTRADICTS THE GOVERNMENT'S ARGUMENT OF A "FULL" STAY**

In any case involving the interpretation of a statute or, in this case, an order, the analysis begins not by making inferences or parsing implications, but by examining the text to give each word its ordinary meaning and to give each phrase its intended effect. *See United States v. Kaluza*, 780 F.3d 647, 659 (5th Cir. 2015); *Cargill v. Garland*, 57 F.4th 447, 458 (5th Cir. 2023). Here, the second sentence of the Supreme Court's four-sentence order states:

> The June 30, 2023 order and July 5, 2023 judgment of the United States District Court for the Northern District of Texas, case No. 4:22-cv-691, *insofar as they vacate the final rule* of the Bureau of Alcohol, Tobacco, Firearms and Explosives, 87 Fed. Reg. 24652 (April 26, 2022), are stayed pending the disposition of the appeal in the United States Court of Appeals for the Fifth Circuit and disposition of a petition for a writ of certiorari, if such a writ is timely sought.

ECF No. 249-1 (emphasis added). The plain language shows that the Supreme Court did not order a "full" stay. To the contrary, the inclusion of the phrase "insofar as" provides an explicit limitation of the scope of the Supreme Court's stay order. Indeed, the ordinary meaning of "insofar as" is: "To the degree or extent that." BLACK'S LAW DICTIONARY (10th ed. 2014); *Pub. Serv. Co. of Indiana v. U.S. E.P.A.*, 682 F.2d 626, 635 n.15 (7th Cir. 1982) (noting "the primary definition of 'insofar as' is 'to such extent or degree'" and citing WEBSTER'S NEW INTERNATIONAL DICTIONARY p. 1286 (2d ed. 1959), FUNK & WAGNALL'S STANDARD COLLEGE DICTIONARY p. 669 (1963),

2

THORNDIKE-BARNHARDT DICTIONARY p. 1019 (1963); AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (1969)).

As typically used in English syntax and as construed by the Supreme Court and federal appellate courts, "insofar as" serves a limiting or qualifying function. *See, e.g.*, *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (characterizing "insofar as" as "words of limitation" in analyzing ERISA's pre-emption of "all state laws insofar as they ... relate to any employee benefit plan"); *Brown v. Carlson*, 431 F. Supp. 755, 769–70 (W.D. Wis. 1977) (finding "insofar as practical" operates as a "qualifying phrase" in statutory provision). A straightforward reading of the stay order demonstrates the Supreme Court used "insofar as" in the typical manner—as qualifying the stay it granted in response to the Government's application.

It is hardly debatable that the Supreme Court's use of the "insofar as" qualifying language must mean something other than the "*full* stay" construction urged by the Government. If the Supreme Court has intended to order a full stay, it certainly could have used that phrase as it has in previous stay orders. *See, e.g.*, *Morrison v. Olson*, 484 U.S. 1058 (1988) (granting "application for full stay"). Further, if the Supreme Court had intended to order a blanket stay, it could have expressed that intent by simply writing: "The June 30, 2023 order and July 5, 2023 judgment … are stayed pending the disposition of the appeal."[1]

---

[1] The Supreme Court has granted stay applications with no qualifying language on multiple occasions over the past 50 years. *See, e.g.*, *Hampton v. Fitzgerald*, 409 U.S. 1055 (1972) ("The application for stay of mandate … is granted pending the timely filing of a petition for a writ of certiorari."); *Hughes v. Washington Post Co.*, 498 U.S. 1043 (1991) (The application for further stay of the mandate … is granted pending the timely filing and disposition of a petition for a writ of certiorari."); *Kansas v. Hendricks*, 517 U.S. 1153 (1996) ("The application for stay … is granted, and it is ordered that the mandate of the Supreme Court of Kansas, case No. 73,039, is stayed pending this Court's action on the petition for a writ of certiorari.

Apparently dissatisfied with the Supreme Court's phrasing—or inclusion of that limitation—the Government constructs an elaborate argument of implied determinations, but that argument cannot be justified by the four-sentence stay order that provides no clear signal of the Supreme Court's underlying reason for granting the stay. Notably, the Supreme Court's issuance of a nearly identical four-sentence stay order in April 2023, when compared side-by-side with the order at issue here, demonstrates a contrast that is instructive for determining the scope of the Supreme Court's directive with respect to this litigation:

| **April 21, 2023**<br>**Supreme Court Order Granting Stay in** *Danco Lab'ys, LLC v. All. for Hippocratic Med.*, 143 S. Ct. 1075 (2023) | **August 8, 2023**<br>**Supreme Court Order Granting Stay in** *Garland v. VanDerStok*, __ S. Ct. __, No. 23A82, 2023 WL 5023383 (Aug. 8, 2023) |
|---|---|
| The applications for stays presented to Justice ALITO and by him referred to the Court are granted.<br><br>--------<br><br>The April 7, 2023 order of the United States District Court for the Northern District of Texas, case No. 2:22–cv–223, is stayed pending disposition of the appeal in the United States Court of Appeals for the Fifth Circuit and disposition of a petition for a writ of certiorari, if such a writ is timely sought.<br><br>--------<br><br>Should certiorari be denied, this stay shall terminate automatically.<br><br>In the event certiorari is granted, the stay shall terminate upon the sending down of the judgment of this Court. | The application for stay presented to Justice Alito and by him referred to the Court is granted.<br><br>--------<br><br>The June 30, 2023 order and July 5, 2023 judgment of the United States District Court for the Northern District of Texas, case No. 4:22-cv-691, **insofar as they vacate the final rule** of the Bureau of Alcohol, Tobacco, Firearms and Explosives, 87 Fed. Reg. 24652 (April 26, 2022), are stayed pending the disposition of the appeal in the United States Court of Appeals for the Fifth Circuit and disposition of a petition for a writ of certiorari, if such a writ is timely sought.<br><br>--------<br><br>Should certiorari be denied, this stay shall terminate automatically.<br><br>In the event certiorari is granted, the stay shall terminate upon the sending down of the judgment of this Court. |

The *unqualified*—but otherwise identical—stay order issued in April further demonstrates that the Supreme Court's use of "insofar as" here is most naturally and logically read as specifying

4

that the stay is specifically tailored to the vacatur remedy in this Court's order and judgment—as is the Supreme Court's prerogative. *See Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) ("This Court may, in its discretion, tailor a stay so that it operates with respect to only 'some portion of the proceeding.'") (quoting *Nken v. Holder*, 556 U.S. 418, 428 (2009)). Indeed, previous Supreme Court stay orders have used "insofar as" to define the specific target of the stay and scope of its applicability. *See, e.g.*, *Berbling v. Littleton*, 409 U.S. 1053, 1053–54 (1972) ("The application for stay of judgment … is granted *insofar as it applies to applicants O'Shea and Spomer* pending the timely filing of a petition for a writ of certiorari.") (emphasis added); *see also Rsrv. Nat. Ins. Co. v. Crowell*, 507 U.S. 1015 (1993) (stating "the application for stay … is granted and it is ordered that execution upon *the punitive damages portion of the judgment* … is stayed pending the timely filing and disposition by this Court of a petition for a writ of certiorari") (emphasis added).Therefore, the Government's entire argument in its opposition—including those addressing the specific arguments made by each party seeking relief here—are based on a false assumption and are fatally flawed.

II. **THE GOVERNMENT'S SUGGESTION THAT KEY REMEDIAL ISSUES WERE DECIDED BY "NECESSARY IMPLICATION" IS UNFOUNDED AND ENTIRELY SPECULATIVE**

The Government's contention that the stay order reflects the Supreme Court's opinion that the Government is likely to prevail on the merits is an oversimplification and imprudent assumption. A review of Supreme Court opinions on stay applications reveal that the Justice's decisions—far from being the result of any formulaic or mechanical application of *Nken* factors or a firm conviction regarding forecasted outcomes—are frequently based on a variety of equitable, practical and often nuanced considerations. For example, in his concurrence with the denial of a stay application in the CDC eviction moratorium litigation, Justice Kavanaugh provided his

assessment of the legal merits and explained his seemingly contradictory denial-of-stay decision was based primarily on the practicalities of the calendar and allowing for administrative order in the interim:

> I agree with the District Court and the applicants that the Centers for Disease Control and Prevention exceeded its existing statutory authority by issuing a nationwide eviction moratorium. *See Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324, 134 S.Ct. 2427, 189 L.Ed.2d 372 (2014). Because the CDC plans to end the moratorium in only a few weeks, on July 31, and because those few weeks will allow for additional and more orderly distribution of the congressionally appropriated rental assistance funds, I vote at this time to deny the application to vacate the District Court's stay of its order.

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2320, (Mem)–2321 (2021) (Kavanaugh, J., concurring); *see also Barnes v. E-Systems, Inc. Group Hospital Medical & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (Scalia, J., in chambers) ("The conditions that are necessary for issuance of a stay are not necessarily sufficient. Even when they all exist, sound equitable discretion will deny the stay when a decided balance of convenience … does not support it.") (internal quotes and citation omitted).

The Supreme Court has described its decision-making with respect to stay applications as an exercise in equitable discretion and balancing of equities—a far cry from the Government's contention that a four-sentence stay order, in which the Court gave no reasons for its decision and shared no opinion on the prospects of the Government's case, carries with it a number of issues decided by "necessary implication" that are now binding on this Court as the law-of-the-case.

The law-of-the-case doctrine is "based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d 698, 702 (5th Cir. 2010) (quoting *United States v. U.S. Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950)). "For a ruling or decision to become the law of the case, it must ... be

6

final as to the matters involved." Bryan A. Garner, et al., *The Law of Judicial Precedent* 448 (2016).

Contrary to the Government's argument, the Supreme Court's stay order is on its face a limited stay that provides the Government with a reprieve from the total vacatur of the Rule during the pendency of the appeal. To suggest the stay order constitutes binding law-of-the-case decisions on other aspects of this case is simply unfounded.

### III. THIS COURT RETAINS ITS EQUITABLE AUTHORITY TO CLARIFY, CONFIRM OR GRANT NEW INJUNCTIVE RELIEF

Federal Rule of Civil Procedure 62(c) authorizes a district court to "suspend, modify, restore, or grant an injunction" while an appeal is pending. Fed. R. Civ. P. 62(c). "It is well-established that this power is also inherent in equity [… and] allows courts of equity to preserve the status quo pending an appeal." *Aspen Tech., Inc. v. Kunt*, No. CV H-10-1127, 2013 WL 12310732, at *2 (S.D. Tex. May 10, 2013) (citing *Shinholt v. Angle*, 90 F.2d 297, 298 (5th Cir. 1937), *aff'd sub nom. Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259 (5th Cir. 2014); *see also Newton v. Consolidated Gas Co. of N.Y.*, 258 U.S. 165, 177 (1922) (recognizing the trial court's ability to "preserve the status quo until decision by the appellate court"); *see also Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 577 (5th Cir. 2005) ("District courts can enter injunctions as a means to enforce prior judgments.").

The filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control *over those aspects of the case involved in the appeal*." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (emphasis added). The district court retains jurisdiction, however, to "'preserve the status quo until decision by the appellate court.'" *Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-CV-150 (DLF), 2022 WL 2157047, at *2 (D.D.C. June 15, 2022) (quoting *Newton v. Consol. Gas Co. of New York*, 258 U.S. 165, 177 (1922)); *see also Equal*

7

*Emp. Opportunity Comm'n v. Locs. 14 & 15, Int'l Union of Operating Engineers*, 438 F. Supp. 876, 880 (S.D.N.Y. 1977) ("A pending appeal, and similarly a stay, only deprives a district court of jurisdiction over those matters at issue in the appeal or stay.").

In *Newton v. Consol. Gas Co. of New York*, the Supreme Court considered a district court's issuance of an injunctive decree after the Supreme Court had ordered a stay of the case. 258 U.S. 165, 177 (1922). In its analysis of the post-stay injunction, the Supreme Court decided to treat the district court's injunctive decree "as an attempt to preserve the status quo in order that [the Supreme C]ourt might finally and completely dispose of the whole matter." *Newton*, 258 U.S. at 177. "Thus interpreted[,] the decree … was within the [district] court's discretion and as there was no abuse of this discretion it must be affirmed." *Id.* at 178 ("It was within the court's discretion to grant the injunction").

Like the district court in *Newton*, it is within this Court's discretion to confirm the injunctive protection granted to BlackHawk earlier remains in effect as the status quo pending the disposition of the appeal. Indeed, this Court has already determined that BlackHawk is likely to succeed on the merits and will likely sustain irreparable injury absent the provision—and now continuation—of injunctive protections against the Government's enforcement of Rule against BlackHawk and its customers until this litigation reaches a final resolution. *See* ECF No. 118 at 6–8. And any alleged harm to the Government's enforcement interests is far outweighed by the public's interest in living secure from unlawful agency action. *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 23-10362, 2023 WL 5266026, at *28 (5th Cir. Aug. 16, 2023) ("neither [the agency] nor the public has any interest in enforcing a regulation that violates federal law"); *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) ("There is generally no public interest in the perpetuation of unlawful agency action.") (citations omitted). The public interest and balance

8

of equities weigh heavily in favor of confirmation and/or reinstatement of injunctive relief for BlackHawk and other plaintiffs in this case who serve, represent and support the U.S. citizens who comprise the DIY gunmaking community.

The complexion and contours of this case have changed and will continue to change as the appellate process moves forward but contrary to the Government's arguments, this Court remains in the position typical of a district court's whose judgment has been appealed. Neither the Fifth Circuit nor the Supreme Court has issued any directive to this Court, with respect to BlackHawk. Nor has this Court been divested of its authority or responsibility to hear and decide disputes, apply the law, fashion appropriate relief, protect the rights of litigants, enforce unstayed aspects of its judgments and exercise the discretion required to fulfill the judicial prerogatives of its jurisdiction.

And to that end, this Court can and should exercise its discretion and judgment to clarify, confirm or reinstate the injunctive relief it intended BlackHawk to have until this litigation reaches its final resolution. In doing so, the Court will continue to operate squarely within the prerogatives of its jurisdiction to provide relief that has no disruptive impact on the appellate proceedings. *See Int'l Refugee Assistance Project*, 582 U.S. at 579–80 ("Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents.") (citation omitted); *see also id*. at 580 ("The purpose of such interim equitable relief is not to conclusively determine the rights of the parties … but to balance the equities as the litigation moves forward.").

Finally, an injunction is not inconsistent with a stay because they are different forms of relief that serve different functions and purposes—a distinction discussed and reinforced in the Fifth Circuit's very recent decision in *Alliance for Hippocratic Medicine v. FDA*. No. 23-10362, 2023 WL 5266026, at *30 (5th Cir. Aug. 16, 2023). The *Alliance* opinion makes clear that a

9

preliminary injunction "blocks enforcement" "by directing an actor's conduct", while a stay provides relief by "temporarily suspending the source of authority to act—the order or judgment in question[.]" *Id.*; *see also id.* at *31 ("In terms of enforcement, unlike with a preliminary injunction, a stay does not actively prohibit conduct, and so does not carry the same threat of contempt."). Accordingly, this Court is well within its authority to order injunctive relief to preserve the status quo protections granted to BlackHawk and other plaintiffs while the Fifth Circuit considers the Government's appealed issues, including the scope of the vacatur remedy in this Court's order and judgment.

## CONCLUSION

The Government has stated its position that this Court's earlier ruling essentially means nothing and does nothing to prevent ATF from pursuing the parties in this litigation: "The status quo is that the Rule is enforceable, including against [plaintiff], because the Supreme Court has stayed in full the Court's vacatur of the Rule." Gov't Opp. at 5. Not only is this unjust, but it substantiates that BlackHawk continues to face an existential threat if deprived of the injunctive relief that was granted previously by this Court and intended to protect BlackHawk for the duration of this litigation challenging the unlawful agency action that resulted in the Rule. This Court retains its jurisdictional authority to manage this preceding and ensure that BlackHawk continues to be afforded the injunctive relief that existed as the status quo prior to this Court's judgment and remains in place until the final disposition of the case.

Respectfully submitted,

*/s/ Brian D. Poe*
Brian D. Poe
TX Bar No. 24056908
BRIAN D. POE, ATTORNEY AT LAW PLLC

The Bryce Building
909 Throckmorton Street
Fort Worth, Texas 76102
Phone: (817) 870-2022
Fax: (817) 977-6501
bpoe@bpoelaw.com

Michael J. Sullivan
*Pro Hac Vice*, MA Bar No. 487210
Nathan P. Brennan
*Pro Hac Vice*, MN Bar No. 389954
ASHCROFT LAW FIRM LLC
200 State Street, 7th Floor
Boston, MA 02109
Phone: (617) 573-9400
Fax: (617) 933-7607
msullivan@ashcroftlawfirm.com
nbrennan@ashcroftlawfirm.com

*Counsel for Intervenor-Plaintiff BlackHawk Manufacturing Group Inc. d/b/a 80 Percent Arms*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 21, 2023, a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

>  */s/ Brian D. Poe*
>  Brian D. Poe

11