UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JENNIFER VANDERSTOK, et al., § § § Plaintiffs, § § BLACKHAWK MANUFACTURING § GROUP INC. d/b/a 80 Percent Arms, § § Intervenor-Plaintiff, § § DEFENSE DISTRIBUTED, and § THE SECOND AMENDMENT § FOUNDATION, INC. § § Intervenors-Plaintiffs, § § v. § § MERRICK GARLAND, in his Official § Capacity as Attorney General of the United § States, et al., § § Defendants. § | Civil Action No. 4:22-cv-00691-O |

**Defense Distributed's Reply in Support of its
Opposed Emergency Motion for Injunction Pending Appeal**

i

## Table of Contents

Table of Contents ............................................................................................................................. i

Table of Authorities ....................................................................................................................... ii

Reply ................................................................................................................................................1

I. The Court should issue an injunction pending appeal. ........................................................1

     A. The Court has jurisdiction to issue an injunction pending appeal. ......................... 1

     B. On the merits, an injunction pending appeal is clearly warranted. ......................... 1

     C. The Supreme Court's stay of a nationwide vacatur did not "necessarily determine" Defense Distributed's entitlement to personalized injunctive relief. ..1

II. The Court should uphold its existing preliminary injunction. ........................................... 5

     A. The government's cases do not confront the real issue. .......................................... 5

     B. The government's burden argument is wrong. ........................................................ 7

     C. Defense Distributed's position is both technically correct and reasonable. ............ 8

Conclusion .....................................................................................................................................10

## Table of Authorities

**Cases**

*AcryliCon USA, LLC v. Silikal GmbH*,
    985 F.3d 1350 (11th Cir. 2021) ...............................................................................7

*All. for Hippocratic Med. v. U.S. Food & Drug Admin.*,
    No. 23-10362, 2023 WL 5266026 (5th Cir. Aug. 16, 2023) ................................. 2

*Alpha/Omega Ins. Services, Inc. v. Prudential Ins. Co. of Am.*,
    272 F.3d 276 (5th Cir. 2001) ................................................................................. 4

*Burniac v. Wells Fargo Bank, N.A.*,
    810 F.3d 429 (6th Cir. 2016) ..................................................................................7

*Def. Distributed v. United States Dep't of State*,
    947 F.3d 870 (5th Cir. 2020)..................................................................................5

*In re Felt*,
    255 F.3d 220 (5th Cir. 2001) ................................................................................. 2

*Koppula v. Jaddou*,
    72 F.4th 83 (5th Cir. 2023) .................................................................................... 6

*Louisiana World Exposition, Inc. v. Logue*,
    746 F.2d 1033 (5th Cir. 1984)................................................................................7

*Texas v. United States*,
    No. 7:15-CV-00056-O, 2016 WL 3636072 (N.D. Tex. Feb. 2, 2016) .................5

**Statutes**

5 U.S.C. § 706(2) ................................................................................................3, 4

Intervenor Plaintiff Defense Distributed files this reply in support of its emergency motion for an injunction pending appeal. *See* Doc. 249 (motion); Doc. 254 (response).

## Reply

**I.    The Court should issue an injunction pending appeal.**

**A.    The Court has jurisdiction to issue an injunction pending appeal.**

The government argued previously that the Court lacks jurisdiction to issue an injunction pending appeal. Doc. 242 at 2. But as Defense Distributed's current motion showed, the Court's jurisdiction to issue an injunction pending appeal clearly exists. Doc. 249 at 5-6. The government does not resurrect its jurisdictional denial, impliedly conceding that it has lost the point.

**B.    On the merits, an injunction pending appeal is clearly warranted.**

The government knows that it will surely lose if the Court reaches the substance of an individualized injunction inquiry for Defense Distributed. The Court rightly entered a preliminary injunction in Defense Distributed's favor, Doc. 188, and the case for that same kind of relief is just as compelling now as it was originally (if not more), *see* Doc. 249 at 4-5. Hence, the government does not seriously contest that every pertinent factor of an individualized injunction analysis points in favor of Defense Distributed being entitled to interim protection. Rather than debate the merits of individualized injunctive relief, the government asserts a procedural bar. But there is no bar.

**C.    The Supreme Court's stay of a nationwide vacatur did not "necessarily determine" Defense Distributed's entitlement to personalized injunctive relief.**

The government's most vehement point argues that the Supreme Court's stay order operates as a procedural bar on the instant request for an individualized injunction. As the argument goes, the order staying this Court's nationwide vacatur of the Rule both does that *and* "necessarily determines" that Defense Distributed is not entitled to any personal injunctive relief.

1

The procedural-bar argument is wrong.  As a matter of law, the Supreme Court's stay order about nationwide APA vacatur did not "necessarily determine" Defense Distributed's entitlement to a personalized interim injunction.  Though the Supreme Court's stay order certainly considered *some* issues that overlap *in part* with Defense Distributed's injunction request, the two inquiries are not one and the same.  The judicial inquiries regarding a nationwide APA vacatur and an individualized injunction are distinct.  An order on the former does not "necessarily determine" the latter.  The government is wrong to assert this procedural bar for at least three specific reasons.

First, the Supreme Court's stay order did not "necessarily determine" Defense Distributed's entitlement to a personalized injunction because the stay order comes with no opinion.  There is just an unexplained order that stays only one part of one order, without more.

Second, the Supreme Court's stay order did not "necessarily determine" Defense Distributed's entitlement to a personalized injunction because no one asked for such a ruling.  Implied determinations happen only as to matters that, among other things, "*were fully briefed* to the appellate court and were necessary predicates to the ability to address the issue or issues specifically discussed." *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001) (emphasis added).  But in the Supreme Court's stay proceedings, the briefs argued only about the final judgment's APA "vacatur," *see* Exs. A, B, C, which is of course legally distinct from an individualized injunction, *see, e.g.*, *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 23-10362, 2023 WL 5266026, at *30 (5th Cir. Aug. 16, 2023).  The government *never* asked the Supreme Court to act on any matter of personalized *injunctive* relief, and neither did Defense Distributed.  So since no one had asked the Supreme Court for a ruling about individualized injunctive relief for Defense Distributed, the stay order did not "necessarily" render such a determination.

Third, the Supreme Court's stay order did not "necessarily determine" Defense Distributed's entitlement to a personalized injunction because of issue independence. The government assumes that the Supreme Court's stay order necessarily entails holdings that automatically defeat Defense Distributed's entitlement to a personalized injunction. But the order admits of more than just one possible explanation. The order admits of several very different explanations, some of which resolve the question of staying the nationwide APA vacatur *without determining the separate question of Defense Distributed's entitlement to an individualized injunction*.

Equity balancing is an example. It is something of a shared issue, in that an equity balancing should occur both for Defense Distributed's injunction request and the government's stay request, *see* Ex. A at 15; Ex. B at 11. But the *scope* of those two equity balancing operations differs drastically. To the extent that the Supreme Court's stay decision balanced equities, it used a *nationwide* inquiry about the Rule's benefits and burdens *across the entire country*. *See* Ex. A at 36-41 (the government asking for that). The individualized equity balancing for Defense Distributed's injunction request is obviously quite different. *See All. for Hippocratic Med.*, 2023 WL 5266026, at *30. The Supreme Court's view of the Rule's *nationwide* equities does not answer the question presented here about equities for Defense Distributed alone.

Anti-vacatur arguments are another example. Prominently at issue in the Supreme Court's stay proceeding was whether 5 U.S.C. § 706(2) authorizes "vacatur" of a rule—not just whether it authorizes *nationwide* vacatur, but whether it authorizes vacatur *ever*. Right or wrong, the Supreme Court's stay decision may have been based on an acceptance of that anti-vacatur point. But since the government's anti-vacatur argument *does not exist as to Defense Distributed's requested injunction*, the Supreme Court's decision to stay a vacatur does not control an injunction inquiry.

3

That the Supreme Court's stay decision might have rested on anti-vacatur arguments is made clear by the government's own filings. In the first instance, this Court had decided over the government's opposition that 5 U.S.C. § 706(2) *does* authorize the remedy of vacatur:

> While Defendants claim the APA does not allow for such a remedy, the Fifth Circuit says otherwise. *Data Mktg. P'ship, LP v. United States Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022) (permitting vacatur under 5 U.S.C. § 706(2)).

Doc. 227 at 35-36. The government's stay application put that issue in play and disagreed. Ex. A at 31-32. To seek its stay, the government expressly challenged this Court's holding that 5 U.S.C. § 706(2) authorizes "vacatur." *Id.* The government took the position that a stay was warranted because 5 U.S.C. § 706(2) does not ever authorize vacatur, arguing that 5 U.S.C. § 706(2) "does not pertain to remedies at all." *Id.* Given that the Solicitor General told the Supreme Court to rule on this basis, the government cannot now deny that the Court might have actually done so.

The anti-vacatur arguments that may have controlled the Supreme Court's stay decision do not exist in the inquiry about Defense Distributed's entitlement to a personalized injunction. For this additional reason, the government is wrong to say that the Supreme Court's stay decision "necessarily determined" Defense Distributed's entitlement to a personalized injunction.

This conclusion defeats the government's invocation of the "law of the case" doctrine. That rule "applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not." *Alpha/Omega Ins. Services, Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001). It does not apply here because the Supreme Court's stay order did not decide Defense Distributed's entitlement to a personalized injunction actually, expressly, impliedly, or otherwise.

4

## II. The Court should uphold its existing preliminary injunction.

Alternatively, if the Court does not issue an injunction pending appeal, Defense Distributed has requested personalized protection from the Agencies' enforcement of the Rule via an order expressly upholding the Court's existing preliminary injunction. Doc. 249 at 9-11. The government opposes this by contending that the preliminary injunction no longer exists. Doc. 254 at 5, 13-16. But at least so long as the as the Supreme Court stay is in effect, this Court's Document 188 preliminary injunction for Defense Distributed is in effect as well. Doc. 249 at 9-11.

### A. The government's cases do not confront the real issue.

The question presented is admittedly novel. How does an order staying a final judgment impact an otherwise live previously-issued preliminary injunction? While plenty of decisions discuss the competing procedural principles in isolation, the parties have yet to locate any case in which these principles come to a head as they do here.

The question is not resolved by *Texas v. United States*, No. 7:15-CV-00056-O, 2016 WL 3636072 (N.D. Tex. Feb. 2, 2016) (cited by the government at 13-14). Because of critical differences in procedural posture, *Texas v. United States* had no reason to decide and did not in fact decide the question presented here. It resolved an odd procedural question, but not this one.

First, *Texas v. United States* does not confront the issue presented here because it involved no final judgment whatsoever, let alone one that was later stayed. That case ended when the plaintiffs invoked their Rule 41 option of voluntary dismissal, 2016 WL 3636072 at *1, and when that kind of dismissal happens, "there is no 'judgment.'" *Def. Distributed v. United States Dep't of State*, 947 F.3d 870, 873 (5th Cir. 2020). Since no final judgment ever existed there, the case could not and did not hold anything about a stayed final judgment's impact on prior orders.

5

Second, *Texas v. United States* does not confront the issue presented here because its preliminary injunction was not in force when the case ended. That preliminary injunction ended when this Court "granted Defendants' motion to dissolve the preliminary injunction," and the dissolution occurred *before* the case as a whole terminated. 2016 WL 3636072 at *1. Since that preliminary injunction had been eliminated *before* the case terminated, the case could not and did not hold anything about the survival of an otherwise live previously-issued preliminary injunction. The Court saw this fact's significance at the time: "as this Court dissolved the preliminary injunction; it no longer binds any party." *Id.* at *3.

Third, *Texas v. United States* does not confront the issue presented here because it was plagued by total mootness. When that decision occurred, "the current jurisdictional reality facing the parties and this Court [was] that this case is moot." *Id.* at *3. But this case is very much alive, requiring a ruling on the question that was never presented in *Texas v. United States*.

The question is not resolved by *Koppula v. Jaddou*, 72 F.4th 83 (5th Cir. 2023) (cited by the government at 14), either. Because of more critical differences in procedural posture, *Koppula* had no reason to decide and did not in fact decide the question presented here.

First, *Koppula* does not confront the issue presented here because it too involved no final judgment whatsoever, let alone one that was later stayed. That case ended when the district court dismissed the complaint, *id.* at 84, and again, when a case is dismissed there is no final judgment, *see Def. Distributed*, 947 F.3d at 873. Since no final judgment ever existed in *Koppula*, the case could not and did not hold anything about a final judgment's impact on prior orders.

6

Second, *Koppula* does not confront the issue presented here because there was no appellate stay to consider in *Koppula*. *Koppula* faced only the initial event that supposedly eliminated the preliminary injunction—not a stay of that supposedly eliminating event. *Jaddou*, 72 F.4th at 84. The decision therefore could not and did not hold anything about a stay's impact.

The question is likewise not resolved by *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350 (11th Cir. 2021) (cited by the government at 14), *Burniac v. Wells Fargo Bank, N.A.*, 810 F.3d 429 (6th Cir. 2016) (cited by the government at 14), or *Louisiana World Exposition, Inc. v. Logue*, 746 F.2d 1033 (5th Cir. 1984) (cited by the government at 15). None of those cases involved a stay of the order that supposedly nullified the preliminary injunction. So those decisions therefore could not and did not hold anything about a stay's impact.

### B. The government's burden argument is wrong.

Realizing that it has no cases actually on point, the government tries to attain the necessary legal ruling by procedural default. As though pure questions of law were to be proven like matters of fact, the government says that Defense Distributed bears some kind of special "burden" because Defense Distributed presents what the government thinks is an "exception" to their "rule":

> It is the law of this Circuit that a preliminary injunction merges with the entry of final judgment, *see Koppula*, 72 F.4th at 84; *Dickinson*, 733 F.2d at 1102; *Louisiana World Exposition, Inc.*, 746 F.2d at 1038, and it is Movants' burden to demonstrate that an exception to this rule exists.

Doc. 254 at 15. No citation supports this supposed burden allocation because it does not exist.

Burdens here are equal. The issue presented is not a factual question subject to evidentiary back and forth. It is a pure question of law with one and only static answer: For so long as the Supreme Court's stay order is in effect, does this Court's Document 188 preliminary injunction for Defense Distributed remain in effect as well? The parties' role in answering that pure question

7

of law is identical. Neither side has a heavier burden than the other. It does not matter that one side's preferred result happens to be more common. Nor does it matter if one side's result is called the "rule" as opposed to the "exception."[1] The answer is to be found straight up, with both sides bearing the exact same responsibility for showing the Court what the law really is.

Reduced to first principles, Defense Distributed's position is correct for the reasons already articulated. The government's main objection is not so much about that result being incorrect as it is about the result being supposed bad policy. But the policy-based point is wrong as well.

### C.   Defense Distributed's position is both technically correct and reasonable.

The government fears "absurd results," in that Defense Distributed's view might "render any stay of a court's final judgment meaningless as the court had previously entered preliminary injunctive relief." Doc. 254 at 14. But the issue at hand arises very rarely and Defense Distributed's solution to it is perfectly reasonable—certainly more so than the government's.

It is not "absurd" to recognize that this Court's preliminary injunction remains in effect when the order that supposedly replaces that preliminary injunction has been partially stayed. After all, it is not as though this Court's final decision has been *replaced* by a new final decision resolving the parties' entire dispute. The stay's key effect is to temporarily deprive the case of its final decision, turning back the clock to when the claims were pending and awaiting a full adjudication. Giving effect to the preliminary injunction now is no more "absurd" than it was before the final judgment issued. In both settings alike, giving effect to the preliminary injunction is completely consistent with the wise administration of Article III judicial power.

---

[1] Even if that labeling game mattered, it would favor no one because the government's position is just as much of an exception as Defense Distributed's. The general "rule" is that a stayed order lacks its legal effects, and the government wants an "exception" to that rule for final judgments that follow preliminary injunctions.

8

Practical tension might sometimes exist if, contrary to what is happening here, a final judgment includes a permanent injunction truly paralleling the preliminary injunction and the decision staying the former necessarily defeats the latter.  Then and only then, law of the case principles might warrant depriving the preliminary injunction of continued effect.  But no such tensions arise where, as here, the stayed judgment does *not* include a permanent injunction paralleling the preliminary injunction and the stay order does *not* override the preliminary injunction's basis.

The government never answered the critique of is position as being erroneously one-sided. Doc. 249 at 10-11 ("Indeed, the Agencies just told the Fifth Circuit in their appellant's brief for this very case that 'the effect of any judgment should be bidirectional.' Br. of Appellants at 42, *VanDerStok v. Garland*, No. 23-10718 (5th Cir.) (filed Aug. 9, 2023). If that is true—if all judgments must be 'bidirectional'—then there is no escaping the conclusion that the Supreme Court's stay order has both the effect of nullifying the APA vacatur and the effect of resurrecting Defense Distributed's preliminary injunction.").  It still maintains two very contradictory positions, embracing a stay's extraordinary power only in part, to the extent that it is convenient.

How exactly does an appellate stay interrupt a final judgment's impact, be it the impact of replacing a preliminary injunction via "merger" or the impact of vacating a final rule via the APA? When the issue is staying a final judgment's APA vacatur of a rule, the government has no problem saying that a stay works by fiat to un-vacate the rule temporarily.  But when the issue is staying a final judgment's "merger" effects, the government denies that the stay's same fiat could work to un-merge the preliminary injunction temporarily.  Nothing justifies this contradiction.  Whatever concept of judicial fiat works for the latter should work for the former too.

9

Can the government stay this judgment and have it too? No. They have to pick and they did, and now they have to live with their tactical decision's consequences. The government chose to obtain the benefit of temporarily un-vacating the rule, which triggered the corresponding burden of temporarily un-merging the preliminary injunction. That tradeoff is both technically correct and fair.

## Conclusion

The Court should enter an injunction pending appeal ordering that, until the matter's appeals are concluded, Defendants and their officers, agents, servants, and employees are enjoined from implementing and enforcing against Defense Distributed and its customers (except for those individuals prohibited from possessing firearms under 18 U.S.C. § 922(g)) the provisions in 27 C.F.R. §§ 478.11 and 478.12 that the Court has preliminarily determined are unlawful. Alternatively, the Court should enter an order holding that Defense Distributed's preliminary injunction, Doc. 188, remains in force for so long as the Supreme Court's stay is in effect.

Respectfully submitted,

FLORES LAW PLLC

*/s/ Chad Flores*

Chad Flores
cf@chadfloreslaw.com
Texas Bar No. 24059759
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed

10