No. 23A82

———————————————————————————

**In the Supreme Court of the United States**

———————————————————————————

JENNIFER VANDERSTOK; MICHAEL ANDREN; TACTICAL MACHINING, L.L.C., a limited liability company; FIREARMS POLICY COALITION, INCORPORATED, a nonprofit corporation; BLACKHAWK MANUFACTURING GROUP, INCORPORATED, doing business as 80 Percent Arms; DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION, INCORPORATED; NOT AN L.L.C., doing business as JSD Supply; POLYMER80, INCORPORATED,

*Respondents*,

v.

MERRICK GARLAND, U.S. Attorney General; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES,

*Applicants.*

———————————————————————————

On Application for a Stay Pending Petition for Writ of Certiorari
to the United States Court of Appeals for the Fifth Circuit

———————————————————————————

**Brief in Opposition of Defense Distributed,
Second Amendment Foundation, Inc.,
and Not An LLC, LLC, doing business as JSD Supply**

———————————————————————————

Charles Flores
    *Counsel of Record*
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440
cf@chadfloreslaw.com

Counsel for Defense Distributed, Second
Amendment Foundation, Inc., and Not An
LLC, LLC, doing business as JSD Supply

# Table of Contents

**Page**

Table of Contents.............................................................................................. i

Table of Authorities......................................................................................... ii

Summary of the Argument ............................................................................ 1

Statement ......................................................................................................... 2

    I.    The Rule expands federal law's "firearm" definition to criminalize wide swaths of otherwise legal non-firearm items. ......................................... 2

    II.    The district court vacated the Rule. ....................................................... 5

    III.    The court of appeals issued a partial stay ........................................... 6

Argument .......................................................................................................... 7

    I.    The decision below is correct.................................................................. 8

        A.    The district court correctly vacated ATF's new "firearm" definition as to unfinished frames and receivers and part kits. ..................................................................... 8

        B.    Additional grounds support the district court's decision. ........... 11

    II.    All other considerations oppose a stay. .............................................. 14

        A.    Vacatur preserves the status quo. .............................................. 14

        B.    The Rule's enforcement inflicts irreparable harm. .................... 15

    III.    If a stay is issued, the Court should grant certiorari before judgment......................................................... 18

Conclusion.............................................................................................. 19

i

# Table of Authorities

**Page**

## Cases

*Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.,*
   875 F.2d 1174 (5th Cir. 1989) ........................................................................... 15

*Cyan, Inc. v. Beaver Cnty. Employees Ret. Fund,*
   138 S.Ct. 1061 (2018) ........................................................................... 10

*Food Mktg. Inst. v. Argus Leader Media,*
   139 S. Ct. 2356 (2019) ........................................................................... 8

*Maryland v. King,*
   567 U.S. 1301 (2012) ........................................................................... 7

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm,*
   463 U.S. 29 (1983) ........................................................................... 12

*New York State Rifle & Pistol Association, v. Bruen,*
   142 S.Ct. 2111 (2022) ........................................................................... 12

*Nken v. Holder,*
   556 U.S. 418 (2009) ........................................................................... 14

*Texas v. EPA,*
   829 F.3d 405 (5th Cir. 2016) ........................................................................... 16

*Wages & White Lion Invs., L.L.C. v. FDA,*
   16 F.4th 1130 (5th Cir. 2021)........................................................................... 15

*Whitman v. ATA,*
   531 U.S. 457 (2001) ........................................................................... 10

## Statutes

10 U.S.C. § 7543 ........................................................................... 10

18 U.S.C. ch. 44 ........................................................................... 2

18 U.S.C. § 921(a)...........................................................................*passim*

18 U.S.C. § 922(g) ........................................................................... 2

18 U.S.C. § 923(a) ................................................................................ 2

18 U.S.C. § 923(i) ................................................................................. 2

19 U.S.C. § 1677j ............................................................................... 10

19 U.S.C. § 2703 ............................................................................... 10

19 U.S.C. § 3203 ............................................................................... 10

19 U.S.C. § 3721 ............................................................................... 10

26 U.S.C. § 599A(a) ............................................................................ 3

**Regulations**

"Definition of "Frame or Receiver" and Identification of Firearms,
    87 Fed. Reg. 24,652 (Apr. 26, 2022) ............................................*passim*

Title and Definition Changes,
    43 Fed. Reg. 13,531, 13,537 (Mar. 31, 1978) ................................... 3

iii

To the Honorable Samuel A. Alito, Jr., Associate Justice of the Supreme Court of the United States and Circuit Justice for the Court of Appeals for the Fifth Circuit:

President Biden's new administrative definition of "firearm" illegally expands that term beyond its critical statutory boundaries. This sweeping new "firearm" definition is an unprecedented power grab. It departs from what Congress actually enacted, deeming illegal for the first time ever vast swaths of traditional Second Amendment conduct that Congress did not and could not choose to make illegal.

Congress in the Gun Control Act defined the key term "firearm" to include a weapon's actually finished "frame or receiver." Yet the new "firearm" Rule expands the definition to criminalize (1) *unfinished* frames and receivers—*i.e.*, non-frame and non-receiver articles that *may become* a frame or receiver *if* additional manufacturing and finishing processes occur, and (2) frame and receiver "part kits"—*i.e.*, kits of non-frame and non-receiver articles that *may become* a frame or receiver *if* additional material alterations occur. These expanded meanings contradict the GCA's "firearm" definition, which rightly understands that an *unfinished* frame or receiver is not an *actual* frame or receiver and that a *kit* for making a frame or receiver is not an *actual* frame or receiver either. Where Congress by statute regulates only actual weapons (or frames/receivers thereof), ATF by rule cannot criminalize any more than that.

The district court was therefore correct to deem the new "firearm" definition an APA violation and stop irreparable harm by giving its vacatur immediate effect. The sooner that this new "firearm" definition is invalidated for all citizens, the better. So while no stay should occur, if one does occur, certiorari before judgment should be granted so that unquestionable nationwide relief can be issued expeditiously.

1

## Statement

The district court correctly stated the case's statutory and regulatory background, App. 8-14a, as well as its procedural posture, App. 11-14a. The "Rule" at issue is "Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (codified at 27 C.F.R. pts. 447, 478, and 479). Opposing the government's stay request here are three of the parties that challenged the rule as intervening plaintiffs below: the Second Amendment Foundation, Inc. ("SAF"), Defense Distributed, and Not An LLC, LLC, doing business as JSD Supply ("JSD").

**I.     The Rule expands federal law's "firearm" definition to criminalize wide swaths of otherwise legal non-firearm items.**

"Firearm" is one of American criminal law's most impactful statutory keystones. By exercising its "legislative Powers," U.S. Const. art. I, § 1, Congress used the term "firearm" to create a litany of criminal and civil proscriptions that impact millions of Americans every day. *See, e.g.*, 18 U.S.C. ch. 44 ("Firearms"). It is a crime for many Americans to possess a "firearm." 18 U.S.C. § 922(g). It is a crime for many Americans to transport or receive a "firearm." 18 U.S.C. § 923(a)(1)(A); 18 U.S.C. § 923(a)(3). It is a crime for many Americans to manufacture a "firearm" at all, 18 U.S.C. § 923(a)(1)(A), and a crime for many other Americans to manufacture a "firearm" without a serial number, 18 U.S.C. § 923(i).

Congress gave "firearm" its keystone definition in the Gun Control Act of 1968. The statute defines "firearm" to mean "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm

2

muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm." 18 U.S.C. §921(a)(2). Congress never opted to define the "firearm" term's constituent phrase "frame or receiver."

To administer and enforce the Gun Control Act (and other statutes), Congress created within the Department of Justice (DOJ) a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). 26 U.S.C. § 599A(a)(1).  Congress headed ATF with a Director who answers to the Attorney General.  26 U.S.C. § 599A(a)(1).  DOJ, ATF, and those two administrative officials are this action's Defendants and collectively referred to herein as the "Agencies."

Without any Congressional action, the Agencies redefined the statutory term "firearm" on two key occasions, in 1978 and 2022.

In 1978, the Agencies promulgated a rule that redefined the Gun Control Act's "firearm" term by redefining the constituent phrase "frame or receiver."  Title and Definition Changes, 43 Fed. Reg. 13,531, 13,537 (Mar. 31, 1978) (formerly codified at 27 C.F.R. § 478.11 (2020)) (hereinafter the 1978 Rule).  The 1978 Rule defined "frame or receiver" to mean "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." *Id.*  Under the 1978 Rule, the Agencies took the position that "items such as receiver blanks, 'castings' or 'machined bodies' in which the fire-control cavity area is completely solid and un-machined have **not** reached the 'stage of manufacture' which would result in the classification of a firearm according to the GCA."  Doc. 143 at 8 (emphasis added).  In other words, the

Agencies used to take the position that the Gun Control Act "does not impose restrictions on receiver blanks that do not meet the definition of a 'firearm." *Id.*

In 2022, the Agencies enacted the Rule at issue: *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022). The Rule overhauled ATF's concept of "firearm" in multiple respects, with especially impactful changes to (1) *unfinished* firearm components and (2) *kits* used in the firearm manufacturing processes. The Rule expands the "firearm" definition far beyond the statute as understood with the 1978 Rule. Under the Rule's new "firearm" definition, ATF now purports to criminalize (1) *unfinished* frames and receivers—*i.e.*, non-frame and non-receiver articles that may become a frame or receiver if additional processes sufficiently alter their material constitution, and (2) frame and receiver "part kits"—*i.e.*, kits of non-frame and non-receiver articles that may become a frame or receiver if additional processes sufficiently alter its material constitution.

Defense Distributed is a private business corporation headquartered in Austin, Texas. *See* Doc. 143 at 4; Doc. 164-1. Cody Wilson founded Defense Distributed and serves as Defense Distributed's Director. *Id.* Defense Distributed is the first private defense contractor in service of the general public. *Id.* Since 2012's Wiki Weapon project, Defense Distributed has defined the state of the art in small scale, digital, personal gunsmithing technology. *Id.* The district court correctly found—and the government does not now challenge—that Defense Distributed "primarily manufactures and deals products now subject to the Final Rule." App 13a.

4

SAF is a non-profit membership organization that promotes the right to keep and bear arms by supporting education, research, publications, and legal efforts about the Constitution's right to privately own and possess firearms and the consequences of gun control. *See* Doc. 143 at 4; Doc. 164-2.  The district court correctly found—and the government does not now challenge—that SAF has standing to assert the interests of members who are subject to the Rule in their efforts to manufacture firearms with products made by firms like Defense Distributed.  App. 27a.

JSD is another business subject to the Rule.  The district court correctly found—and the government does not now challenge—that JSD "is a manufacturer and distributor that earns most of its revenue through sales of products now subject to the Final Rule."  App. 13a.

## II.   The district court vacated the Rule.

In the district court, SAF and Defense Distributed sued as intervenors for a judgment setting aside and vacating the Rule's new "firearm" definition; and later JSD did as well.  App. 13-14a.  Alongside other plaintiffs, they attacked the Rule "on a host of statutory and constitutional grounds."  App. 28a.  The district court accepted the first claims, "conclud[ing] that the ATF has clearly and without question acted in excess of its statutory authority."  App 28a.  It did not reach other claims.  *Id.*

The district court's judgment did two main things.  It granted "summary judgment on grounds that the Final Rule was issued in excess of ATF's statutory jurisdiction" and then vacated the Rule pursuant to the APA:

2.  On these grounds, the Final Rule, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (codified at 27 C.F.R. pts. 447, 478, and 479 (2022)), is hereby **VACATED**.

App. 44a.  The district court refused to stay its order pending appeal.  App. 5a.

## III.   The court of appeals issued a partial stay.

The government appealed to the Fifth Circuit and sought a stay pending appeal.  *See* App.2a.  The Fifth Circuit issued a partial stay, with two holdings.

First, the Fifth Circuit refused to stay the district court's "vacatur of the two challenged portions of the Rule."  App.3a.  It refused because, with respect to the challenged provisions of the Rule, "the ATF has not demonstrated a strong likelihood of success on the merits, nor irreparable harm in the absence of a stay."  App. 3a.

Second, the Fifth Circuit held that "the agency has shown a strong likelihood of success on its assertion that the vacatur of the several non-challenged parts of the Rule was overbroad."  App. 3a.  Thus, the court granted a stay of the vacatur as to the Rule's "non-challenged provisions."  App. 3a.

**Argument**

The government asks for a stay pending appeal of the district court's judgment. A stay requires the government to show (1) a reasonable probability that this Court will grant certiorari, (2) a fair prospect that the Court will then reverse the decision below, and (3) a likelihood that irreparable harm will result from the stay's denial. *See, e.g.*, *Maryland v. King*, 567 U.S. 1301, 1302 (2012) (Roberts, C.J., in chambers). The motion should be denied, if not in full, then at least as to the instant parties.

With respect to the district court's judgment regarding Defense Distributed, SAF, JSD, and the Rule's challenged provisions—the "firearm" definition's application to (1) unfinished frames and receivers, and (2) frame and receiver "part kits"—the government's stay request should be denied. To that extent, there is no fair prospect of reversal and a stay would not avoid irreparable harm. On the contrary, as to these parties and Rule's challenged provisions, the district court's judgment is clearly correct on the merits and the equities flow strongly in favor of immediate vacatur. The government's critiques of the judgment's application to *unchallenged* Rule aspects were already solved by the Fifth Circuit's stay. And critiques of the judgment's *nationwide* scope do not lessen these particular parties' need for immediate relief. If nothing else, the parties that established APA violations below are entitled to relief for the duration of the appeal.

7

I. **The decision below is correct.**

    A. **The district court correctly vacated ATF's new "firearm" definition as to unfinished frames and receivers and part kits.**

The district court was right to vacate the Rule's new "firearm" definition "on grounds that the Final Rule was issued in excess of ATF's statutory jurisdiction." App. 42a. The analysis at pages 24-35 of the summary judgment order speaks for itself and is correct: "Because the Final Rule purports to regulate both firearm components that are not yet a 'frame or receiver' and aggregations of weapon parts not otherwise subject to its statutory authority, the Court holds that ATF has acted in excess of its statutory jurisdiction by promulgating it." App. 28-40a. The Fifth Circuit was likewise correct in holding that "the ATF has not demonstrated a strong likelihood of success on the merits." App. 3a.

As to this core merits question, plaintiffs and both courts below are correct and the government is wrong. Ordinary meanings control this textual inquiry, *see, e.g.*, *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019), and the ordinary meanings here are evident. This Rule clearly outruns its statute.

First, the district court was correct to conclude, for the reasons it gave and more, that "[p]arts that may become receivers are not receivers." App. 30-35a. An "unfinished" frame is not a frame and an "unfinished" receiver is not a receiver. By definition, an "unfinished" frame is a *non*-frame that *may* become a frame if and only if additional processes sufficiently alter its material constitution; and by definition, an "unfinished" receiver is a *non*-receiver that *may* become a receiver if and only if additional processes sufficiently alter its material constitution.

Second, the district court was correct to conclude, for the reasons it gave and more, that "[a] weapon parts kit is not a firearm." App. 36-40a. By definition, a frame "part kit" is a kit of non-frame items that may become a frame if and only if additional processes sufficiently alter their material constitution; and by definition, a receiver "part kit" is a kit of non-receiver items that may become a receiver if and only if additional processes sufficiently alter their material constitution.

The government's leading counterpoint about "readily converted" is wrong. The government says (at 4) that "the statute expressly includes items that can 'readily be converted' into functional firearms." But while it is true that the statute covers *some* items that can be "readily converted" into a weapon (firearm), it does *not* cover *all* items that can be "readily converted" into a weapon (firearm). The "readily converted" clause applies only to items that are *already* a "weapon" in the first place. 18 U.S.C. § 921(a)(3)(A) ("firearm means (A) any weapon … which …may readily be converted to …."). Part kits are not already "weapons" in the first place. Neither are *unfinished* frames and receivers. So whether or not these items can be "readily converted" into a weapon is statutorily irrelevant to "firearm" status. Thus, the government's flagship argument flatly contradicts the statute's text.

The government's construction also fails to give all provisions of the statute meaning. Sections 921(a)(3)(A) and (B) say that every "firearm" must have a "frame or receiver." Yet the Rule plainly regulates as "firearms" items that do not constitute, and kits that do not contain, an actual "frame or receiver," but merely precursor items that may become a frame or receiver.

9

The government's analogies fail as well, and not just because the Bill of Rights contains no constitutional right to keep and bear bicycles or IKEA bookshelves. Unlike these bare, context-free hypotheticals, Congress legislated in a constitutional and statutory context that sheds important light on the "firearm" term's meaning.

The government's position often (*e.g.*, at 3) boldly equates the minimal act of firearm "assembly"[1] with the distinct and more involved acts of firearm production and manufacturing, such as "drilling holes" and "removing plastic rails."  The "assembled" term—a term of supposedly substantial expansion—is the government's way of making the statute go so far.  But context shows that Congress does not use the word "assembled" to do nearly so much work.  *Cf. Cyan, Inc. v. Beaver Cnty. Employees Ret. Fund*, 138 S.Ct. 1061, 1067 (2018) ("Congress does not "hide elephants in mouseholes." (quoting *Whitman v. ATA*, 531 U.S. 457, 468 (2001)).

When Congress wants to cover both the minimal step of item "assembly" *and* more involved conduct like item "completion" or item "production" or item "manufacturing," it says the latter expressly.  *See, e.g.*, 19 U.S.C. § 2703 (regulating "production, manufacture, or assembly").[2]  Since Congress here spoke only of parts from which a firearm can be readily "assembled"—not parts from which a firearm can

---

[1] It pulls this term not from the Section 921(a)(3) definition of "firearm," but instead from the Section 921(a)(30) definition of "handgun," which delineates a subset of "firearms" that are "assembled" into handguns, in contrast with Section (a)(3)'s definition of what constitutes a "firearm" in the first place.

[2] *See also*  10 U.S.C. § 7543 (regulating "manufacturer, assembler, developer, or other concern"); 19 U.S.C. § 1677j (regulating items that are "completed or assembled"); 19 U.S.C. § 3203 (regulating "production, manufacture, or assembly"); 19 U.S.C. § 3721 (regulating "manufacture, production, or sale").

be readily "produced" or "manufactured" or "completed"—the statute cannot be defined to cover the latter.  Yet the Rule does just that.  Even though virtually all kits and unfinished frames and receivers entail the latter, more involved, conduct, the Rule sweeps them in indiscriminately.  Instead of giving the "assembled" notion a limiting function, the government says (at 19) that the statute covers anything that can be "completed, assembled, restored, or otherwise converted" into a firearm.  That kind of contradiction is precisely what meaningful APA review should thwart.

### B.   Additional grounds support the district court's decision.

The district court's vacatur of the Rule's "firearm" definition is also justified by the litany of additional APA claims that, though not ruled upon expressly below, are fully preserved and can be presented to the court of appeals as independent grounds for affirmance.  The government therefore cannot merit a stay without showing each additional claim's invalidity.  But because each of the additional claims are valid, the decision below should be affirmed and no stay pending appeal should be issued.

For example, Defense Distributed and SAF can justify the district court's judgment with the claim asserted below as Count Two, a unique[3] process-based claim about the Agencies having violated the APA by promulgating the Rule with insufficient constitutional considerations under *Bruen*.  *See* Doc. 143 at 22-23.

---

[3] Count Two is *not* the same as Defense Distributed and SAF's Count One, which asserts an *outcome*-based APA violation (the Rule's contradiction of its enabling statute) and is asserted by other claimants.  Nor is it the same as Defense Distributed and SAF's other *outcome*-based APA claims about constitutional violations, which are asserted by other claimants as well.  Count Two is process-focused instead of outcome-focused and, though it invokes Second Amendment precedent, the resulting violation is of the APA and not the Constitution.  No other party asserts this claim.

11

Whenever an agency makes a rule, the Agency's rulemaking process "must examine" "relevant factors" and "relevant data." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*, 463 U.S. 29, 43 (1983). For this rule, the Agencies had to consider the "relevant" Second Amendment inquiry upheld by *New York State Rifle & Pistol Association, v. Bruen*, 142 S.Ct. 2111 (2022). That is, the APA required the Agencies to consider whether this "regulation is consistent with this Nation's historical tradition of firearm regulation" without using the "means-end scrutiny" that *Bruen* deemed unconstitutional. *Id.* at 2126-32.

When promulgating the new Final Rule, the Agencies doubly violated the APA by both (1) failing to consider the factors and data that *Bruen* deems constitutionally mandatory and (2) relying instead on factors and data that *Bruen* deems constitutionally improper. The administrative record is glaring in both respects.

Most importantly, the record shows no *Bruen*-compliant considerations because the Agencies did not even try to determine whether this "regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126-32. Likewise, the Agencies never attempted to consider whether the Rule "addresses a general societal problem that has persisted since the 18th century," and if so whether there was "a distinctly similar historical regulation addressing that problem." *Id.*

Instead of promulgating the Rule by considering the legally relevant factors and data, the administrative record shows that the Agencies compounded their APA violation by relying upon legally *irrelevant* matters. They infected their rulemaking process with the very presumptions of legality and means-ends scrutiny that *Bruen* deems illegal. *Compare* 87 Fed. Reg. 24,676-24,677 (relying on "compelling governmental interests" and "presumptively lawful regulatory measures"), *with Bruen*, 142 S. Ct. at 2126 ("*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.").

Given that the Agencies did not even attempt to consider the correct Second Amendment factors and data, it is no surprise to see that the resulting Rule violates the Constitution. But that important result-based violation is a different and distinct problem addressed by other claims. At issue in Defense Distributed and SAF's Count Two is the Agencies' procedural failure to *consider* the historical factors and data that *Bruen* deems relevant—a process-based APA illegality that warrants setting the Final Rule aside regardless of how outcome-based claims turn out.[4]

---

[4] The Agencies opposed Count Two below by claiming harmless error. Doc. 181 at 37-38. Assuming that their failure to conduct a *Bruen*-compliant Second Amendment inquiry violated the APA, the Agencies said that this APA violation warrants no relief because Defense Distributed and SAF cannot show that it caused harm. Doc. 181 at 37-38. But this is wrong because (1) the Agencies did not carry *their burden* of negating harm, and (2) harm is evident. *See* Doc. 193 at 8-10.

Hence, even if the district court's judgment is not sustainable on its given ground, a reviewing court would likely sustain that same judgment on one of the alternative grounds like Defense Distributed and SAF's Claim Two.  The government is therefore not entitled to a stay because it cannot show a likelihood of reversal.

## II.    All other considerations oppose a stay.

### A.    Vacatur preserves the status quo.

Since stays pending appeal are supposed to preserve the "status quo," *e.g.*, *Nken v. Holder*, 556 U.S. 418, 428 (2009), the government claims (at 39) that letting the Rule be enforced does this.  But that is backwards.  Denying the stay preserves the status quo.  Granting a stay upends it.

Both courts below correctly recognized that the status quo is a world in which the Agencies are *not* enforcing the Final Rule's challenged provisions (against the action's plaintiffs, at least).  The district court returned to the status quo (as it had existed since 1978) when it issued its final judgment.  *See* Doc. 227 at 37 ("vacating the unlawful assertion of the agency's authority would be minimally disruptive because vacatur simply 'establish[es] the status quo' that existed for decades prior to the agency's issuance of the Final Rule last year").  And as the Fifth Circuit's stay denial correctly put it, letting the Rule's challenged provisions be vacated "effectively maintains, pending appeal, the status quo that existed for 54 years from 1968 to 2022." App. 3a.

14

**B.      The Rule's enforcement inflicts irreparable harm.**

If the Rule is allowed to go into effect vis-à-vis Defense Distributed, irreparable harms will undoubtedly result.  For years, Defense Distributed's entire business model has depended on its ability to deal in items that are not "firearms" under Gun Control Act itself and not "firearms" under prior regulations, but that are now defined for the first time ever as "firearms" by the Rule.  The Rule's enforcement cuts the foundation of Defense Distributed's business model out from under it, sweeping away critical revenues, saddling it with massive new compliance costs, causing service provider disruptions, and damaging Defense Distributed's reputation and goodwill in the business community. These harms are irreparable and existential.

The key legal rule is that economic losses meet the test if the injury is "so great as to threaten the existence of the movant's business," *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989), and/or the loss is nonrecoverable because the government-defendant enjoys sovereign immunity from monetary damages, *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021).  Both situations exist here.

As the declaration of Defense Distributed's director shows, Doc. 164-01, the Rule's enforcement inflicts such severe economic harm on Defense Distributed as to threaten its existence.  Because of the unprecedented reclassification of unfinished receivers, unfinished frames, and frame and receiver parts kits, Defense Distributed has already suffered immense damages in the form of lost revenues, lost business reputation and good will, interruption of supplying vendor services, and massive

15

compliance costs. *Id.* The Rule's enforcement also harms Defense Distributed by striking fear into its customers and business partners. *Id.* This multifaceted business destruction constitutes irreparable harm.

Defense Distributed's economic harms are also irreparable because Defense Distributed cannot later recover its losses as monetary damages. *See Wages & White Lion*, 16 F.4th at 1142 ("federal agencies generally enjoy sovereign immunity for any monetary damages," making a party's "lack of a guarantee of eventual recovery [one] reason that its alleged harm is irreparable" (quotation marks and citation omitted)); *see also Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) ("[C]omplying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." (quotation marks and citation omitted)).

JSD's situation is also compelling. Being a manufacturer and retailer of the products that the Final Rule now claims are "firearms," the Rule's enforcement will irreparably harm it in the same ways that it harms Defense Distributed. *See* Doc. 227 at 8.

Meanwhile, SAF's members are suffering massive irreparable harms as well. Despite having a well-established constitutional right to manufacture their own personal firearms, including for self-defense within the home, the Rule's enforcement stops SAF members from acquiring from firms like Defense Distributed and JSD the "unfinished" frames and receivers and/or frame and receiver "parts kits" that SAF members reasonably need to exercise their Second Amendment rights.

For SAF's members, the key rule rightly recognized below is that the "the threat of criminal prosecution does indeed constitute irreparable injury," and that "a plaintiff's purported choice to comply—or else—with a challenged government dictate, as evidenced by the plaintiff's decision to desist from engaging in the regulated activity, is adequate to establish irreparable harm." Doc. 89 at 10. The declaration of SAF's Executive Vice President shows all of this in full. Doc. 164-02.[5]

The final considerations of equities and the public interest favor immediate relief. For just as the district court recognized, the "public interest is served when administrative agencies comply with their obligations under the APA." Doc. 56 at 21. There is no harm in simply maintaining, pending appeal, a status quo which has existed for decades.

---

[5] Specifically, the Rule directly, substantially, and irreparably harms the substantial number of SAF members that (a) already legally own at least one firearm purchased from a federal firearms licensee, (b) reasonably desire to manufacture their own firearm for lawful self-defense at home by, inter alia, acquiring from Defense Distributed articles defined for the first time ever as "firearms" by the Rule, and (c) would do so imminently if not for the new Final Rule's promulgation. *See* Doc. 164-02. For these SAF members, the effective exercise of Second Amendment rights depends on the ability to buy from Defense Distributed unfinished receivers, unfinished frames, and frame and receiver parts kits that (1) are not Gun Control Act "firearms" under the Gun Control Act itself, and (2) are not Gun Control Act "firearms" under administrative actions taken prior to August 2022, but that (3) are defined for the first time ever as Gun Control Act "firearms" by the Rule. *Id.* But because of the Rule, these SAF members can no longer commercially purchase, possess, or otherwise acquire from firms like Defense Distributed the unfinished receivers, unfinished frames, and frame and receiver parts kits at issue. *Id.* Finally, the Rule's vagueness exerts a chilling effect on SAF members, who cannot reasonably determine what the law deems punishable and cannot reasonably determine how it will be administered. *Id.*

**III.   If a stay is issued, the Court should grant certiorari before judgment.**

The government ends by saying (at 39-40) that the Court "may wish to construe this application as a petition for a writ of certiorari before judgment, grant the petition, and set the case for expedited briefing and argument."  If the Court denies the motion for a stay, there is no need for such expedited review because enforcement of the district court's judgment will adequately protect all of the interests at stake. But in the event that the Court issues a stay of any kind—thereby rekindling the nation's overall need for immediate relief from the Rule—Defense Distributed, SAF, and JSD agree that the Court should grant certiorari before judgment.  That way the Rule's "firearm" definition can be vacated once and for all, not just in a decision for these parties but in one that unquestionably delivers prompt nationwide relief.

**Conclusion**

The motion for a stay pending appeal should be denied.  If the Court denies the motion for a stay, it should also deny the request for certiorari before judgment.  If and only if the Court grantes the motion for a stay in whole or part, it should grant the request for certiorari before judgment.

Respectfully submitted,

_____

Charles Flores
   *Counsel of Record*
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440
cf@chadfloreslaw.com

Counsel for Respondents Defense
Distributed, Second Amendment
Foundation, Inc., and Not An LLC, LLC,
doing business as JSD Supply

August 2, 2023

19