UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED,<br>　　　　　　Plaintiff | § | |
| | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:22-cv-00691-O |
| PAMELA BONDI in her Official | § | |
| Capacity as Attorney General of the | § | |
| United States, *et al.*, | § | |
| | § | |
| 　　　　　　Defendants. | § | |
| | § | |

**Defense Distributed's Reply in Support of its
Motion for an Injunction Pending Appeal**

**Reply**

The government's opposition does not engage the merits. It does not address Defense Distributed's Due Process Clause claims. It does not address Defense Distributed's Second Amendment claims. It identifies no harm to the government from a narrowly tailored injunction. And it offers no reason why the government would be injured by an order preserving the status quo while this appeal proceeds. Instead, the opposition spends its pages attacking the sufficiency of Defense Distributed's irreparable-harm evidence. Those attacks fail. The government misreads the declarations, demands a standard of proof the law does not require at this stage, and relies on an unauthenticated third-party report that proves nothing about the harms at issue.

## I.    The merits predominate and the government identifies no countervailing harm.

The likelihood of success on the merits is the most important factor in the injunction analysis. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 434 (2009). Defense Distributed has demonstrated a substantial likelihood of success on its Due Process Clause and Second Amendment claims. See Doc. 294 at 9–18; Doc. 299 at 2–12. The government's silence on these fronts speaks for itself.

The balance of equities likewise favors Defense Distributed. The government identifies no concrete harm from a narrow injunction limited to six specific items sold by a single entity during the pendency of an appeal. It has not argued that enforcement against Defense Distributed during this period serves any particularized interest. This Court previously found the equities favoring Defense Distributed when a preliminary injunction was warranted on statutory grounds alone. *See* Doc. 188 at 9–10. The case for relief is stronger now, with unresolved constitutional claims and concrete, escalating harm.

## II.    The record establishes irreparable harm.

The government does not dispute that continued enforcement of the Rule inflicts irreparable constitutional injury. The loss of constitutional freedoms, even for minimal periods, constitutes irreparable harm. *See, e.g.*, *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). That alone suffices. The government instead disputes the adequacy of Defense Distributed's evidence of collateral economic harm—specifically, the banking and insurance declarations. Each of the government's objections fails.

### A.    The banking evidence is compelling.

The government characterizes the Williams Declaration as showing only that "a single bank" declined to serve Defense Distributed, and suggests that the existence of "over 400 banks" in Texas means no harm has been shown. Doc. 307 at 4. This misses the point. The Williams Declaration does not merely report a business decision by one bank. It establishes the mechanism by which continued enforcement excludes Defense Distributed from banking markets.

Williams—a Senior Vice President of Treasury Management—explains that Southside Bank's refusal was not a credit decision. It was not based on any finding of misconduct, illegality, or regulatory violation. Doc. 301-1 ¶ 4. Instead, while enforcement of the Rule is threatened, the bank cannot determine whether providing services would expose it to regulatory or criminal risk. *Id.* Williams states that in the banking industry, when potential criminal exposure cannot be reliably ruled out due to regulatory ambiguity, institutions are expected to err on the side of exclusion. *Id.*

That mechanism—indeterminate criminal exposure producing categorical exclusion—is not specific to Southside Bank. It is an industry-wide response to enforcement uncertainty. The government's suggestion that Defense Distributed should simply try another of Texas's 400 banks ignores Williams's sworn testimony that the exclusion stems from a structural condition that

applies across the industry. The number of banks in Texas is irrelevant when the mechanism of exclusion operates at every one of them.

### B.   The insurance evidence is compelling

The government raises a series of objections to the Cisneros Declaration: that it does not name specific insurers, does not state how many declined, does not confirm pre-Rule coverage, and does not foreclose the possibility that some insurer might still offer coverage. Doc. 307 at 4–5. These objections demand trial-level specificity at the preliminary-injunction stage.

Cisneros is the owner of an independent insurance agency that represents multiple national carriers and works directly with underwriters to place coverage for businesses in regulated industries, including firearms businesses. Doc. 301-2 ¶ 1. He states that insurers have declined to offer commercially reasonable coverage, not because of claims history or operational deficiencies, but because enforcement of the Rule makes risk pricing impossible. *Id.* ¶ 4. He further states that no underwriting issue specific to Defense Distributed would independently preclude coverage absent the enforcement risk. *Id.* ¶ 5.

This is the testimony of an industry professional with personal knowledge, stating a causal link between enforcement and coverage denial. The government does not challenge Cisneros's qualifications, dispute his account of insurer behavior, or offer any competing evidence. It instead demands that a preliminary-injunction declaration read like a trial exhibit. That is not the standard.

### C.   The D&B report does not undermine irreparable harm.

In a footnote, the government attaches an unauthenticated Dun & Bradstreet report purporting to show $2 million in annual revenue and argues that Defense Distributed therefore cannot be suffering irreparable harm. Doc. 307 at 6 n.3. This argument fails on three independent grounds.

4

First, the report is unreliable. It is an unsworn, unauthenticated third-party commercial database entry, submitted without any sponsoring declaration or foundation testimony. The government offers no basis for the Court to credit it.

Second, the revenue figure is misleading. Revenue is not profit. A company can generate revenue while simultaneously losing access to essential commercial infrastructure. The question is not whether Defense Distributed has managed to stay in business under duress, but whether continued enforcement is inflicting injuries that no later judgment can repair.

Third, and most fundamentally, revenue is irrelevant to the harms at issue. The banking and insurance injuries are not claims of lost revenue. They are claims that enforcement-driven regulatory uncertainty has excluded Defense Distributed from the basic commercial infrastructure required for lawful business operations. A company that earns revenue today but cannot maintain a bank account or obtain insurance coverage is a company whose ability to operate is collapsing in real time—regardless of what a third-party database says about its top line. Economic harm that threatens the existence of a business is irreparable in the Fifth Circuit. *See, e.g.*, *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989).

## III.    The procedural objections lack merit.

The government labels Defense Distributed's Document 301 filing an unauthorized "surreply." Doc. 307 at 2–3. It was not. Document 301 was a notice of changed factual circumstances—filed to advise the Court that the irreparable harms identified in the pending motion had materialized and were escalating while that motion remained undecided for over six months. Courts routinely permit parties to bring new factual developments to the Court's attention, particularly when a motion for emergency relief has been pending for an extended period. *Cf.* Fed. R. Civ. P. 6(c)(2) (permitting supplemental affidavits).

The government also argues (at 4 n.1) that Defense Distributed should not be permitted to cite legal authority on banking and insurance harms "for the first time in its reply." But a reply brief exists to address arguments raised in the opposition. The government's attacks on the banking and insurance evidence opened the door. Defense Distributed is not raising new theories; it is responding to the government's own arguments with authorities Defense Distributed has advanced all along. *See* Doc. 294 at 18–20 (citing *BST Holdings*; *Atwood Turnkey*; *Wages & White Lion*).

The government's procedural objection is also hypocritical. The government has itself filed supplemental briefs outside the standard motion-response-reply sequence in this very case. *See, e.g.*, Doc. 300. And it used a joint status report to introduce new facts about an executive review of ATF rulemaking under Executive Order No. 14,206, without amending its pleadings, filing a motion, or submitting any supporting declaration. *See* Doc. 290 at 1–2. That review has produced nothing. But the government treated a status report as a vehicle for injecting a new factual narrative —precisely the kind of supplementation it now criticizes Defense Distributed for pursuing.

None of these filings—the government's or Defense Distributed's—are objectionable. Courts benefit from current information, especially when charged with managing equity. In all of these procedural respects, the government doth protest too much.

Under Federal Rule of Appellate Procedure 8, this Court has an obligation to determine whether interim relief is warranted by assessing the equities *in light of the most current circumstances*. Defense Distributed's most recent proof to that end is fully proper.

### Conclusion

The government's opposition does not seriously deny that the equities favor Defense Distributed. Its quibbles just go to the margin of victory. The Court should grant the motion.

Respectfully submitted,

By /s/ *Chad Flores*
Chad Flores
  chad@chadflores.law
  Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
P: (713) 893-9440
F: (832) 645-2496

Counsel for Defense Distributed

**Certificate of Service**

A true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record on the day of its filing.

<u>/s/ Chad Flores</u>
Chad Flores

8