**FILED**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

**July 27, 2026**

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

DEFENSE DISTRIBUTED *et al.*,

    Plaintiffs,

  v.

TODD BLANCHE, in his official capacity as
Acting Attorney General of the United States
*et al.*,

    Defendants.

Case No. 4:22-cv-00691-O

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................................1

ARGUMENT ........................................................................................................................................1

I.    Plaintiffs Fail to Meet the Jurisdictional Requirement of Article III Standing. ...........................1

        A.    SAF Lacks Standing to Sue. .......................................................................................1

        B.    DD Fails to Establish Standing. ..................................................................................2

II.    The Rule Is Lawful. ..................................................................................................................6

        A.    The Rule Is Not Void for Vagueness. .......................................................................6

                1.    Plaintiffs Lack Standing to Assert Their Fifth Amendment Claim. ..................6

                2.    In Any Event, Plaintiffs' Vagueness Claim Has No Merit. ...............................8

                3.    Plaintiffs' Argument Regarding the Rule's Exclusion of Certain Items From Its Definition of "Frame" and "Receiver" Is Irrelevant to Their Vagueness Claim. ......................................................................................12

                4.    Plaintiffs' Arguments Regarding the Rule's Consideration of Associated Materials Is Also Irrelevant to Plaintiffs' Claim. .................................14

        B.    The Rule Is Consistent With the Second Amendment. ..................................................15

                1.    The GCA's Licensing, Background-Check, Serialization, and Record-Keeping Requirements for Commercial Sellers of Firearms Be Licensed, as Applied by the Rule, Are Constitutional. ........................................15

                2.    Though No Historical Analysis Is Required, Such an Analysis Shows That the Licensing, Background-Check, and Recordkeeping Requirements Are Consistent with Historical Firearms Regulation. ...............21

                3.    Plaintiffs' Remaining Arguments Have No Merit. ..........................................25

        C.    The Rule Is Consistent With the Major Questions Doctrine and Principles of Non-Delegation. .......................................................................................................28

        D.    The Rule Is Consistent With the APA. ...........................................................................30

                1.    Plaintiffs Have Failed to Show that the Rule's Second Amendment Analysis Caused Them Any Harm. ..........................................................30

                2.    The Rule Explains Any Change in Policy by ATF Regarding Partially-Complete Frames and Receivers and Weapon Parts Kits. ...............................32

III.    Any Relief Should Be Narrowly Tailored. ................................................................................36

CONCLUSION ...................................................................................................................................38

## TABLE OF AUTHORITIES

**Cases**

*Amin v. Mayorkas*,
24 F.4th 383 (5th Cir. 2022)................................................................................................33

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979) ..............................................................................................................5

*Blankenship v. Buenger*,
653 F. App'x 330 (5th Cir. 2016) .........................................................................................4

*Bondi v. VanDerStok*,
604 U.S. 458 (2025)......................................................................................................*passim*

*Bondi v. VanDerStok*,
No. 23-10718, 2024 WL 1098302 (Mar. 8, 2024) ........................................................13, 28

*Brazos Valley Coal. for Life, Inc. v. City of Bryan*,
421 F.3d 314 (5th Cir. 2005)................................................................................................37

*Cent. & S.W. Servs., Inc. v. EPA*,
220 F.3d 683 (5th Cir. 2000)................................................................................................37

*City of Hearne v. Johnson*,
929 F.3d 298 (5th Cir. 2019)................................................................................................32

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ...............................................................................................3, 4, 5, 6

*Cutrera v. Bd. of Sup'rs of La. State Univ.*,
429 F.3d 108 (5th Cir. 2005)................................................................................................35

*Dist. of Columbia v. Heller*,
554 U.S. 570 (2008) .......................................................................................................17, 18

*Doe v. Tangipahoa Par. Sch. Bd.*,
494 F.3d 494 (5th Cir. 2007)..................................................................................................3

*Elec. Power Co. v. EPA*,
920 F.3d 999 (5th Cir. 2019)................................................................................................38

*Elite Precision Customs LLC v. ATF*,
805 F. Supp. 3d 711 (N.D. Tex. 2025)................................................................................19

*FarmaKeio Outsourcing, LLC v. FDA*,
No. 4:24-CV-01040-O, 2026 WL 628157 (N.D. Tex. Mar. 5, 2026)....................................2

*FCC v. Consumers' Rsch.*,
606 U.S. 656 (2025)..............................................................................................................29

*FDA v. Wages & White Lion Invs.*,
604 U.S. 542 (2025)..............................................................................................................30

*Focia v. United States*,
No. 2:23-CV-399, 2025 WL 1070436 (M.D. Ala. Feb. 20, 2025)........................................19

*Focia v. United States,*
No.2:23-CV-00399-RAH-CWB, 2025 WL 879944 (M.D. Ala. Mar. 21, 2025) ................................19

*Fund Managers v. SEC,*
151 F.4th 252 (5th Cir. 2025).............................................................................................................36

*Gas Transmission Nw. v. FERC,*
157 F.4th 674 (5th Cir. 2025)...............................................................................................................6

*Glass v. Paxton,*
900 F.3d 233 (5th Cir. 2018)......................................................................................................3, 4, 5

*Handley v. Chapman,*
587 F.3d 273 (5th Cir. 2009)...............................................................................................................34

*J & B Ent., Inc. v. City of Jackson,*
152 F.3d 362 (5th Cir. 1998)................................................................................................................4

*Jackson v. Garland,*
No. CV 24-1717, 2026 WL 884025 (W.D. La. Mar. 31, 2026).........................................................36

*Johnson v. United States,*
576 U.S. 591 (2015) ...........................................................................................................................11

*Kolender v. Lawson,*
461 U.S. 352 (1983) ...........................................................................................................................15

*Leander Indep. Sch. Dist. v. U.S. Dep't of Interior,*
No. 1:22-CV-310-RP, 2022 WL 19300727 (W.D. Tex. Dec. 21, 2022) .............................................7

*Learning Resources, Inc. v. Trump,*
607 U.S. 229 (2026) ...........................................................................................................................28

*Little v. Liquid Air Corp.,*
37 F.3d 1069 (5th Cir. 1994)..............................................................................................16, 35, 36

*McRorey v. Garland,*
99 F.4th 831 (5th Cir. 2024)........................................................................................................passim

*McRorey v. Garland,*
No. 7:23-CV-00047-O, 2023 WL 5200670 (N.D. Tex. Aug. 14, 2023) ....................................17, 21

*Moore v. City of Dallas,*
No. 3:16-CV-01501, 2016 WL 9663360 (N.D. Tex. Aug. 25, 2016) .................................................38

*Morehouse Enters., LLC v. ATF,*
78 F.4th 1011 (8th Cir. 2023)..............................................................................................................20

*Morehouse Enters., LLC v. ATF,* No.,
3:22-CV-116, 2022 WL 3597299 (D.N.D. Aug. 23, 2022)................................................................20

*Munn v. City of Ocean Springs,*
763 F.3d 437 (5th Cir. 2014)...............................................................................................................15

*Murthy v. Missouri,*
603 U.S. 43 (2024) .............................................................................................................................37

*Nat'l Fam. Plan. & Reprod. Health Ass'n v. Gonzales*,
468 F.3d 826 (D.C. Cir. 2006) ........................................................................................7

*New York State Rifle & Pistol Association v. Bruen*,
597 U.S. 1 (2022) ....................................................................................................*passim*

*New York v. Arm or Ally, LLC*,
718 F. Supp. 3d 310 (S.D.N.Y. 2024) ....................................................................... 25, 26

*PDK Laboratories v. DEA*,
362 F.3d 786 (D.C. Cir. 2004) .......................................................................................31

*Pueblo Entero v. Abbott*,
167 F.4th 743 (5th Cir. 2026) .........................................................................................9

*Roark & Hardee LP v. City of Austin*,
522 F.3d 533 (5th Cir. 2008) ...........................................................................................8

*Shinseki v. Sanders*,
556 U.S. 396 (2009) ...........................................................................................31, 32, 33

*Sierra Club v. U.S. Fish & Wildlife Service*,
245 F.3d 434 (5th Cir. 2001) .........................................................................................31

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......................................................................................................32

*States v. McNulty*,
No. 22-cr-10037-WGY, 2023 WL 4826950 (D. Mass. July 27, 2023) ...........................20

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .................................................................................................. 3, 32

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ................................................................................................... 4, 5

*Texas v. United States*,
126 F.4th 392 (5th Cir. 2025) ........................................................................................38

*U.S. Steel Corporation v. EPA*,
595 F.2d 207 (5th Cir. 1979) .........................................................................................31

*United States v. Austin*,
729 F. Supp. 3d 396 (S.D.N.Y. 2024) ............................................................................19

*United States v. Branson*,
139 F.4th 475 (5th Cir. 2025) ...........................................................................13, 14, 15

*United States v. Campbell*,
427 F.2d 892 (5th Cir. 1970) .........................................................................................10

*United States v. Clinical Leasing Services, Inc.*,
925 F.2d 120 (5th Cir. 1991) ...........................................................................................8

*United States v. Deare*,
No. 6:21-CR-00212-01, 2023 WL 4732568 (W.D. La. July 24, 2023) ...........................19

iv

*United States v. DeFelice*,
No. 3:23-CR-116-OAW, 2024 WL 3028425 (D. Conn. June 17, 2024) ............................................19

*United States v. Duncan*,
No. 7:20-CR-00167-M-3, 2023 WL 7346042 (E.D.N.C. Nov. 7, 2023) ..........................................19

*United States v. Flores*,
652 F. Supp. 3d 796 (S.D. Tex. 2023) ....................................................................... 19, 22

*United States v. Focia*,
869 F.3d 1269 (11th Cir. 2017)......................................................................................20

*United States v. Gomez*,
159 F.4th 172 (2d Cir. 2025) ..........................................................................................19

*United States v. Hemani*,
146 S. Ct. 1677 (2026)..................................................................................26, 27, 36

*United States v. Johnson*,
632 F.3d 912 (5th Cir. 2011) .................................................................................. 30, 31

*United States v. Kazmende*,
No. 1:22-cr-236-SDG-CCB, 2023 WL 3867792 (N.D. Ga. June 7, 2023) .........................................19

*United States v. Kazmende*,
No. 1:22-cr-236-SDG-CCB, 2023 WL 3872209 (N.D. Ga. May 17, 2023).........................................19

*United States v. King*,
646 F. Supp. 3d 603 (E.D. Pa. 2022)..............................................................................20

*United States v. M-K Specialties Model M-14 Machinegun*,
424 F. Supp. 2d 862 (N.D.W. Va. 2006)..............................................................................10

*United States v. Peterson*,
161 F.4th 331 (5th Cir. 2025).................................................................................. 18, 22

*United States v. Price*,
111 F.4th 392 (4th Cir. 2024)........................................................................................19

*United States v. Quiroz*,
449 F.2d 583 (9th Cir. 1971).........................................................................................10

*United States v. Rahimi*,
602 U.S. 680 (2024) ...........................................................................................*passim*

*United States v. Reyna*,
165 F.4th 1056 (7th Cir. 2026) ................................................................................ 19, 24

*United States v. Tilotta*,
No. 3:19-cr-4768, 2022 WL 3924282 (S.D. Cal. Aug. 30, 2022) ..........................................20

*United States v. Turner*,
No. 2:22-CR-00164, 2024 WL 4237413 (D. Nev. Sept. 19, 2024).........................................19

*United States v. Vlha*,
142 F.4th 1194 (9th Cir. 2025) .....................................................................................19

*United States v. Walters,*
    418 F.3d 461 (5th Cir. 2005)...................................................................................................31

*VanDerStok v. Garland,*
    No. 23-10718, 2023 WL 4945360 (5th Cir. July 24, 2023)...................................................38

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989)................................................................................................................10

*Worldcall Interconnect, Inc. v. FCC,*
    907 F.3d 810 (5th Cir. 2018)........................................................................................... 30, 31

*Yogi Metals Grp., Inc. v. Garland,*
    38 F.4th 455 (5th Cir. 2022).................................................................................................30

**Statutes**

18 U.S.C. § 921(a)(3)..............................................................................................................6, 9, 33

18 U.S.C. § 922(g)(8)......................................................................................................................23

18 U.S.C. § 923................................................................................................................................17

18 U.S.C. § 924(a)(1)(D).................................................................................................................12

26 U.S.C. § 5845(b)........................................................................................................................10

5 U.S.C. § 706(2)............................................................................................................................36

**Rules**

Federal Rule of Civil Procedure 5(b)(2)........................................................................................39

**Regulations**

27 C.F.R. § 478.12(c)...........................................................................................................13, 14, 35

**Other Authorities**

ATF, Fact Sheet - Facts and Figures for Fiscal Year 2024, https://www.atf.gov/resource-
    center/fact-sheet/facts-and-figures-fiscal-year-2024..........................................................35

## INTRODUCTION

Plaintiffs' closing merits brief repeatedly attacks a straw man.[1]  That brief pretends that the Rule prohibits Plaintiffs from selling partially-complete frames and receivers and weapon parts kits. But the Rule does no such thing.  It simply requires commercial sellers of such items to abide by the same requirements on commercial firearm sales that tens of thousands of licensed firearms dealers comply with every day.  *Bondi v. VanDerStok*, 604 U.S. 458 (2025), explained that the purpose of these requirements is "to keep guns out of the hands of criminals" and "to assist law enforcement authorities in investigating serious crimes by permitting them to determine where, by whom, or when a firearm was manufactured and to whom it was sold or otherwise transferred."  *Id.* at 462 (citations omitted). Recognizing the obvious danger of such items in the hands of criminals, the Supreme Court upheld a facial challenge to the Rule, holding that ATF acted within its statutory authority in issuing it.

The two remaining plaintiffs in this case lack standing to assert their as-applied claims.  In any event, those claims have no merit.  Plaintiffs' Fifth Amendment vagueness claim fails because the sole harm they allege is self-inflicted; in any event, case law interpreting the key term "readily" in closely analogous contexts overwhelmingly supports the conclusion that the Rule is not vague, and the availability of an administrative process to resolve any purported confusion further mitigates any due process concerns.   Plaintiffs' Second Amendment claim fails because entities do not have a constitutional right to engage in the commercial sale of firearms without abiding by the same requirements that apply to all licensed firearms sellers.  Plaintiffs' major questions doctrine and non-delegation claims are merely attempts to reassert their rejected beyond-statutory-authority claim. Finally, Plaintiffs' procedural APA claims fail both because Plaintiffs have shown neither that they suffer any harm from any such alleged procedural violations nor that these alleged violations are

---

[1] The abbreviations contained in this brief are the same as those in Defendants' opening brief.  *See* Mem. Supp. Defs.' Mot. for Summ. J., ECF No. 319 ("Defs.' MSJ").

relevant to their as-applied claims.  Defendants thus respectfully ask the Court to enter summary judgment in their favor.

ARGUMENT

**I.      Plaintiffs Fail to Meet the Jurisdictional Requirement of Article III Standing.**

      **A.      SAF Lacks Standing to Sue.**

Plaintiffs fail to contest, and thus concede, Defendants' demonstration that SAF lacks organizational standing.  Pls.' Reply in Supp. of Mot. for Summ. J. & Opp. to Defs.' Cross-Mot. for Summ. J. at 8, ECF No. 322 ("Pls.' Reply").  SAF also lacks associational standing because the only member it identifies is DD, but Plaintiffs fail to show that DD has suffered any injury alleged to have been suffered by SAF.  *See id.* at 8-9.  The complaint alleges three types of injury suffered by SAF: (1) its members cannot purchase, possess, or otherwise acquire "from firms like Defense Distributed" items regulated by the Rule, (2) the Rule "exerts a chilling effect on SAF members," and (3) "SAF members might pay slightly more to acquire the articles in question from federal firearms licensees."  Compl. ¶¶ 62-63, ECF No. 143.  As to (1) and (3), DD does not allege (nor could it) that it is attempting to purchase, possess, or acquire items regulated by the Rule from firms like itself, nor that it is attempting to acquire such items from federal firearms licensees.  As to (2), "the Fifth Circuit expressly limits chilling effect for standing to the First Amendment context," *FarmaKeio Outsourcing, LLC v. FDA*, No. 4:24-CV-01040-O, 2026 WL 628157, at *4 (N.D. Tex. Mar. 5, 2026) (citations omitted), but SAF alleges no First Amendment harm.  The mere fact that DD is a member of SAF thus does not provide SAF with standing to sue because DD has not suffered any injury alleged by SAF.  And as shown below, DD has not otherwise established standing to sue.

2

### B.    DD Fails to Establish Standing.[2]

To satisfy Article III's injury-in-fact requirement, a "'threatened injury must be *certainly impending*'" and "'[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).  Here, DD has shown only that there are four items that it has concrete plans to sell that the Rule *might* possibly regulate.  *See* Defs.' MSJ at 8-9.  But Plaintiffs have not demonstrated that the Rule applies to any of the products DD sells—only that it is *possible* that the Rule might apply to them.  DD thus fails to meet its burden of showing a "threatened injury" that is "*certainly impending.*"  It has established instead only a conjectural or hypothetical injury: *viz.*, that it is uncertain whether the Rule applies to these items, but *if* the Rule hypothetically were to apply to items that it sells, *then* it would be injured.  However, injury-in-fact cannot be merely "conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Glass v. Paxton*, 900 F.3d 233, 242 (5th Cir. 2018) (holding insufficient even a "reasonable probability" of harm resulting from "objectively understandable and reasonable" reactions to a defendant's challenged actions); *Clapper*, 568 U.S. at 412 (no injury in fact where plaintiffs "set forth no specific facts demonstrating that the communications of their foreign contacts *will* be targeted" (emphasis added)).[3]  DD thus has not met its burden of establishing a "certainly impending" injury in fact.

---

[2] Defendants acknowledge that their opening brief argued instead that DD had established standing with respect to the sale of four items.  Upon further consideration of the standing issues after review of Plaintiffs' response brief, Defendants' position is that DD lacks standing.  Defendants acknowledge this change in position is asserted in their final reply brief, but respectfully note that "[s]tanding is a jurisdictional requirement and not subject to waiver." *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 496 n.1 (5th Cir. 2007).  To ensure Plaintiffs have an appropriate opportunity to respond to this argument, Defendants would not oppose the filing of a surreply brief by Plaintiffs strictly limited to the issue of DD's alleged injury-in-fact as to these items.

[3] And as explained below, *see infra* II.A.1, DD cannot rely on the ambiguity of whether the Rule applies to items it sells to support a Fifth Amendment vagueness claim because the sole harm it alleges is self-inflicted—it has a readily available means of avoiding this harm that it refuses to take.

Plaintiffs' closing brief fails to undermine this conclusion. *See* Pls.' Reply at 5-6. Merely asserting that Defendants have "refuse[d] to disclaim enforcement" against any of its regulated items no more provides DD with standing than did the plaintiffs' argument in *Clapper* that it was not "fanciful, paranoid, or otherwise unreasonable" to believe that the government might surveil their communications because a statute authorized surveillance of individuals like them. *Clapper*, 568 U.S. at 416. The bare fact that the Rule exists does not provide DD with standing, any more than the mere existence of Section 702 of FISA allowed the *Clapper* plaintiffs to challenge that statute's surveillance provision by stating that given the statute's existence, there was an "objectively reasonable likelihood that their communications . . . [would] be intercepted . . . at some point in the future." *Id.* at 410. Like the plaintiffs in that case, DD's "allegations" that the Rule applies to its products "are necessarily conjectural." *Id.* at 412. As in *Glass*, here, DD's "allegation of harm contains at least two contingencies" that are not "certainly impending": (1) that ATF will determine that its products fall within the Rule's scope and thus (2) enforce the Rule against DD. *Glass*, 900 F.3d at 240. Like the plaintiffs in *Clapper* and *Glass*, DD lacks standing. *See id.* at 239-42; *Clapper*, 568 U.S. at 411-12.

Nor has DD satisfied the requirements of pre-enforcement standing. Initially, "[m]ost" cases in which mere "threats of prosecution have been deemed sufficient" to challenge a statute that had not been applied to a plaintiff "involved either facial challenges or First Amendment claims." *Blankenship v. Buenger*, 653 F. App'x 330, 343 (5th Cir. 2016). That is because "standing requirements in the First Amendment context are relaxed because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* (quoting *J & B Ent., Inc. v. City of Jackson*, 152 F.3d 362, 366 (5th Cir. 1998)). But this case does not involve a facial challenge or a First Amendment claim. In any event, DD fails to show that it intends to engage in conduct that is "proscribed by" the Rule, as required to show pre-enforcement standing. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

4

As explained above, Plaintiffs have not shown that the Rule applies to the four items that DD has concrete plans to sell, only that it *might* apply to them.  DD itself could have answered this question but affirmatively chose not to.  *See infra* II.A.1.  Without such a demonstration, DD cannot satisfy the "requirement that 'threatened injury must be certainly impending'" that applies even in First Amendment cases like *Clapper* and *Glass*.  *Glass*, 900 F.3d at 239 (quoting *Clapper*, 568 U.S. at 410).  Indeed, the Supreme Cout has emphasized that pre-enforcement review is warranted only "under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List*, 573 U.S. at 158–59.  "[D]emonstrating that only a single link in a chain of contingencies was certainly impending [does] not 'satisfy the requirement that any injury in fact must be fairly traceable to' the challenged government action." *Glass,* 900 F.3d at 239 (quoting *Clapper*, 568 U.S. at 411).  "Each link in the chain of contingencies must be 'certainly impending' to confer standing," *id.*, but DD has not shown such certainty that the Rule applies to items that it sells.  And "persons having no fears of [] prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (citation omitted).

Relatedly, a basic principle underlying pre-enforcement standing doctrine does not apply here. If this Court dismisses Plaintiffs' complaint, DD would not "be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Id.* at 298 (citation omitted).  Rather, DD can submit the four items that it plans to sell to ATF for classification.  Indeed, ATF has specifically offered to provide DD with prompt classifications as to whether these few items were "firearms" within the Rule's ambit and requested a physical sample of the items for review.  *See* Declaration of Jeremy S.B. Newman, App. 1-4, ECF No. 320.  If the Rule does not apply to any of the four items, then Defendants cannot enforce the Rule against DD.  And if the classification process determines that the Rule does apply, then DD could seek relief in the context of a case challenging that administrative determination.  Plaintiffs thus lack pre-enforcement standing.

Nor can DD establish standing by arguing that it has taken voluntary steps to respond to the possibility that the Rule might apply to these items: *e.g.*, by stopping their sale.  A plaintiff's "voluntary response to a possible risk of loss is not a cognizable injury because the potential loss was not 'certainly impending.'" *Gas Transmission Nw. v. FERC*, 157 F.4th 674, 696 (5th Cir. 2025).  DD thus "cannot manufacture standing merely by inflicting harm on [itself] based on [its] fear[] of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416.  And its allegation that the possibility of the Rule being applied to it "chills sales," Pls.' Reply at 5, is insufficient because as explained above, the Fifth Circuit expressly limits chilling effect for standing to the First Amendment context.

Plaintiffs' remaining arguments that DD has standing lack merit.  Pls.' Reply at 6-7.  Plaintiffs may not premise claims against Defendants on the Polymer80 80% Frame that the Supreme Court in *VanDerStok* held to be a "frame" under 18 U.S.C. § 921(a)(3)(B), and therefore a regulated "firearm" under 18 U.S.C. § 921(a)(3).  *See* Defs.' MSJ at 9 n.4.  The Supreme Court also held that "a product like Polymer80's qualifies as a frame," 604 U.S. at 481, and thus its analysis applies equally to two other products sold by DD (the M1911 80% Frame:45ACP and the M1911 90% Frame:9mm/10mm/.38 Super/.40 S&W) that are materially indistinguishable from the Polymer80 80% Frame at issue in *VanDerStok*.  The Supreme Court deemed it clear from examining side-by-side photographs of a complete frame and the Polymer80 80% frame that the latter product was "a firearm 'frame,' even though a little work is required to complete it," remarking: "Just look again at the second photo [of the Polymer80 80% Frame].  What else would you call it?"  608 U.S. at 479.  So too, based on ATF's firearms expertise, Defendants can determine from photographs that the two products sold by DD are materially indistinguishable from the Polymer80 80% Frame.  Plaintiffs provide no support for their contention that Defendants are somehow barred from doing so.

## II.    The Rule Is Lawful.

### A.    The Rule Is Not Void for Vagueness.

#### 1.    Plaintiffs Lack Standing to Assert Their Fifth Amendment Claim.

As stated previously, SAF has no standing, and DD lacks standing to complain of any alleged ambiguity in the Rule as applied to its products when it refuses to have those products classified by ATF, which would resolve any potential confusion. *See* Defs.' MSJ at 13-15. Having "*chosen* to remain in the lurch" by deciding affirmatively not to resolve any purported uncertainty, DD "cannot demonstrate an injury sufficient to confer standing." *Nat'l Fam. Plan. & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006); *see also Leander Indep. Sch. Dist. v. U.S. Dep't of Interior*, 2022 WL 19300727, at *4 (W.D. Tex. Dec. 21, 2022). Plaintiffs fail to challenge Defendants' cited authority. Instead, Plaintiffs respond with six abbreviated contentions, none of which show that DD has standing to assert its vagueness claim based on self-inflicted injury. Pls.' Reply at 16-18.

First, as shown below and in Defendants' opening brief, the Rule uses ascertainable standards. It uses an uncontroversial definition of a term ("readily"), as to which courts have repeatedly rejected vagueness challenges, and lists the factors that courts have long used in applying that term in the firearms context. *See infra* II.A.2; Defs.' MSJ at 15-17. Second, what matters for standing purposes is that ATF's classification process is readily available for DD to use to alleviate any potential ambiguity whether the Rule applies to its items, and that DD nonetheless has chosen not to use this process. That the classification process is optional is wholly irrelevant. Third, the fact that classification is "item-specific," Pls.' Reply at 17, demonstrates its value to a seller wishing to clarify any ambiguity: the process notifies a particular seller whether its product is or is not regulated by the Rule. By being "item-specific," ATF's classification process would fully address any concern by DD whether the Rule regulates the specific items it plans to sell. Fourth, as explained below, Defendants have already explained why the Rule applies to partially-complete pistol frames but not to AR-type rifle lower

7

receivers, *see infra* n.5, and why ATF considers associated materials when classifying an item, *see infra* II.A.4. But neither issue has any relevance to the standing question. In particular, neither issue excuses DD from utilizing an available agency classification process to avoid its self-inflicted injury. Fifth, Plaintiffs err in claiming that the Fifth Circuit in *United States v. Clinical Leasing Services, Inc.*, 925 F.2d 120 (5th Cir. 1991), did not apply the Fifth Amendment vagueness standard applicable here. *See id.* at 122 n.2 (explaining that because "the federal statute implicated in this case authorizes fines which, although civil in description, are penal in character," it would "not employ the less exacting standard of review of civil statutes"). Whether a regulation's penalty is "criminal or quasi-criminal" or not is what dictates the standard of review for vagueness purposes, *see id.* at 122, not whether the regulation affects primarily business interests or the general public. The Fifth Circuit's statement that "licensing . . . requirements" are "afforded considerable deference in the vagueness analysis because the regulated party may have the ability to clarify the meaning of the regulations by its own inquiry, or by resort to an administrative process" thus fully applies here. *Id.* at 122; *see also Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 552 (5th Cir. 2008) (relying in part on ability of regulated entity to "clarify the meaning of [the challenged] provisions by their own inquiry" in rejecting vagueness challenge even under the "relatively strict test required for criminal laws"). Finally, the Rule satisfies vagueness standards applicable to criminal or quasi-criminal regulation, *see* Defs.' MSJ at 13, and Plaintiffs' Second Amendment claim is meritless, *id.* at 21-27. Plaintiffs' arguments thus do not excuse DD's failure to avail itself of a readily-available administrative process to cure the self-inflicted harm it alleges to support its Fifth Amendment claim.

### 2.    In Any Event, Plaintiffs' Vagueness Claim Has No Merit.

"Prevailing in a void-for-vagueness challenge requires a plaintiff to establish that the law is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified

at all." *La Union del Pueblo Entero v. Abbott*, 167 F.4th 743, 756 (5th Cir. 2026) (citation omitted). "Therefore, a challenger bears the weighty burden of demonstrating that the law is impermissibly vague in *all of its applications*." *Id.* (citation omitted) (emphasis added). Here, "[P]laintiffs' vagueness challenge fails this threshold test," *id.*, because the Supreme Court in *VanDerStok* applied the Rule to certain weapon parts kits and partially-complete frames and receivers. *See* 604 U.S. at 473 ("Because at least some weapon parts kits satisfy both of subsection (A)'s tests, [Section 478.11 of the Rule] is not facially invalid."); *id.* at 477 ("The GCA reaches, and permits ATF to regulate, at least some 'partially complete' frames or receivers."). And because Plaintiffs cannot show that the Rule "is impermissibly vague in all of its applications," their vagueness challenge fails.

As explained in Defendants' opening brief, courts have overwhelmingly rejected vagueness challenges to statutory standards nearly identical to the Rule's definition of "frame" and "receiver." *See* Defs.' MSJ at 16-18 & n.12. Plaintiffs' various efforts to distinguish these precedents fail. Plaintiffs contend in conclusory fashion that these cases "involved operability or restoration questions" about items allegedly "closer to ordinary firearms" or that were "already situated within established firearms statutes." Pls.' Reply at 12. But Plaintiffs provide no specifics supporting this conclusory assertion. For example, Plaintiffs fail to explain why, in their view, the "readily" standard is less vague as applied to starter guns in the context of 18 U.S.C. § 921(a)(3) than as applied to DD's products. That provision calls for the same essential inquiry as the Rule's "readily" standard, and courts' decisions that Section 921(a)(3) is not unconstitutionally vague thus squarely apply here. Nor do Plaintiffs develop any argument that any specific feature of the weapons at issue in the cases cited by Defendants renders the "readily" standard less vague as applied to those weapons than the Rule's "readily" standard as applied to DD's products. Whether or not an item was previously functional, the relevant inquiry under both the Rule and the laws at issue in these cases is how readily the item can be made functional in the future. Those decisions thus squarely apply here.

9

Indeed, Plaintiffs effectively concede the weight of this authority, stating that they "do not argue that every use of 'readily' is always vague," but only that the Rule's "readily" standard is unconstitutionally vague because it "marks the boundary between lawful commerce and felony exposure." Pls.' Reply at 10. But that fails to distinguish this authority because the "readily" standard in the cited cases also "mark[ed] the boundary between lawful commerce and felony exposure" under the GCA and other firearms laws. *See, e.g.*, *United States v. Quiroz*, 449 F.2d 583, 585 (9th Cir. 1971) ("The statutes here clearly prohibit a person, under indictment, from transporting a readily convertible starter gun in interstate commerce. Such a person is given a fair warning that if the starter gun he intends to transport is readily convertible then he is in violation of the statute. We hold that the statutes give fair warning and thus are not unconstitutionally vague."); *United States v. M-K Specialties Model M-14 Machinegun*, 424 F. Supp. 2d 862, 872 (N.D.W. Va. 2006) (finding that 26 U.S.C. § 5845(b), criminalizing possessing of a weapon that "can be readily restored" to fire automatically like a machinegun, "provides fair notice to a person of ordinary intelligence that certain conduct is forbidden by the statute" and is thus "not unconstitutionally vague").

Plaintiffs also argue that the Fifth Circuit in *United States v. Campbell*, 427 F.2d 892 (5th Cir. 1970) (per curiam), was construing "a different statutory phrase," Pls.' Reply at 12, in determining that the phrase "any combination of parts designed for and intended for use in converting a weapon into a machine gun" was not vague. But Plaintiffs fail to explain how determining whether a combination of parts was designed and intended for use in converting a weapon into a machine gun would be any easier than determining whether a partially-complete frame or receiver may readily be converted to function as a frame or receiver.

Plaintiffs' remaining arguments under this rubric are equally unpersuasive. Initially, the Due Process Clause does not require "perfect clarity and precise guidance," *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989), and as Defendants' opening brief showed, the Supreme Court and Fifth

10

Circuit have rejected vagueness challenges to criminal laws setting standards as open-ended as "near" a courthouse, "immoral purposes," "unreasonably low prices," and "unreasonable noise." *See* Defs.' MSJ at 19 (citing authority). The Rule's "readily" standard is at least as precise with respect to the conduct it regulates as the standards upheld in these controlling cases. Plaintiffs' brief simply ignores this governing authority. Instead, Plaintiffs argue that to satisfy the Due Process Clause, it is insufficient for the Rule to define its "readily" standard and to identify eight non-exhaustive factors relevant to its application. Pls.' Reply at 9. But Plaintiffs cite no authority to support this argument.

*Johnson v. United States*, 576 U.S. 591 (2015), does not assist Plaintiffs. That case cast no "doubt" on the "constitutionality of laws that call for the application of a qualitative standard . . . to real-world conduct," such as the Rule, because "the law is full of instances where a man's fate depends on his estimating rightly *some matter of degree.*" *Id.* at 604 (emphasis added) (citation omitted). The unique problem with the residual clause of the Armed Career Criminal Act in *Johnson* was that it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* at 596-97 (citation omitted). By contrast, analyzing whether an item can be readily converted to function as a firearm relies on real-world facts—such as how long it takes to complete the conversion, what tools are required, and whether specialized knowledge is required—as the Supreme Court in *VanDerStok* tacitly recognized. *See VanDerStok*, 604 U.S. at 472-73 ("As we have seen, a person without any specialized knowledge can convert a starter gun into a working firearm using everyday tools in less than an hour. And measured against that yardstick, the 'Buy Build Shoot' kit can be 'readily converted' into a firearm too, for it requires no more time, effort, expertise, or specialized tools to complete. If the one meets the statutory test, so must the other.").

If the "readily" standard were really too vague to be applied to real-world examples, then the Supreme Court in *VanDerStok* surely would have said so. Not only did it not say so, but it applied the Rule to existing real-world examples and determined that certain partially-complete frames and

receivers were capable of being "readily" converted to function as frames and receivers.  *See id.*; *see also id.* at 478-79 (determining that a particular Polymer80 partially-complete frame could be "readily . . . converted to function as a frame" because "the Polymer80 product is a fully functional frame" with the removal of plastic tabs that are "easily removable by a person with novice skill, using common tools, within minutes" and the drilling of holes "that anyone can complete in minutes").  Such application would be impossible if, as Plaintiffs argue, the Rule is too vague to be applied to real-world examples.  Nor do Plaintiffs' selective, out-of-context quotations from the Court's decision indicate otherwise.  Although the Court observed that "at some point a kit may be so incomplete or cumbersome to assemble that it can no longer fairly be described as a 'weapon' capable of 'ready . . . conversion' into a working firearm," *id.* at 473, it did not state that this fact rendered the Rule vague.  To the contrary, the Court specifically contemplated that the Rule would be subject to future as-applied challenges.  *See id.* at 473 (explaining that "[t]o resolve this case, it is enough to say" that because "at least some weapon parts kits satisfy both of subsection (A)'s tests, [the Rule] is not facially invalid," though "*[f]uture cases* may present other and more difficult questions about ATF's regulations" as applied to particular fact patterns, "[b]ut we take cases as they come and today resolve only the question posed to us") (emphasis added).[4]

It is true that *VanDerStok* did not directly address any constitutional challenges.  But Plaintiffs' arguments are premised on the notion that the Supreme Court somehow ignored any serious constitutional concerns with the Rule while granting certiorari and issuing a merits decision upholding

---

[4] Moreover, Justice Kavanaugh's concurring opinion—joined by no other Justice—noted that he "joined the Court's opinion in full" and wrote separately only to "briefly address *mens rea* issues," not constitutional due process concerns.  604 U.S. at 486 (Kavanaugh, J., concurring).  His concurrence expressly stated that he considered any "potential fair-notice problem" to be fully resolved by the GCA's "willfulness" requirement.  *Id.* at 487 (explaining that 18 U.S.C. § 924(a)(1)(D), requiring a showing "that an individual knew that his conduct was unlawful" "should help prevent the Government from unfairly penalizing an individual who is not aware that his conduct violates the law").

it.  That position strains credulity, particularly given that DD expressly raised the very same Fifth Amendment arguments during the Supreme Court merits briefing in *VanDerStok* that it raises here. *See* Br. of DD at 18-22, *Bondi v. VanDerStok*, No. 23-10718, 2024 WL 1098302, at *18-22 (Mar. 8, 2024).  The Supreme Court could easily have entertained those arguments but instead chose not to.

Thus, because Plaintiffs cannot show that the Rule is impermissibly vague in all its applications, the Rule is not void for vagueness.  Plaintiffs fail to distinguish any of the multitude of precedents demonstrating that the Rule's "readily" standard is not unconstitutionally vague or to cite any relevant precedent that supports their vagueness claim.

> **3.  Plaintiffs' Argument Regarding the Rule's Exclusion of Certain Items From Its Definition of "Frame" and "Receiver" Is Irrelevant to Their Vagueness Claim.**

The Rule's definition of "frame" and "receiver" excludes "a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (*e.g.*, unformed block of metal, liquid polymer, or other raw material)."  27 C.F.R. § 478.12(c).  Although Plaintiffs claim that this provision is void for vagueness, Pls.' Reply at 12-14, as explained in Defendants' opening brief, DD fails to contend that the classification of any items that form the subject of its motion turns on whether these items form such an "unformed block of metal, liquid polymer, or other raw material."  Defs.' MSJ at 19.  This failure is fatal because "[v]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."  *United States v. Branson*, 139 F.4th 475, 478 (5th Cir. 2025) (citations omitted).  "As a threshold matter, [Plaintiffs] must show that the statute is vague *in [their] case*," *id.* (citation omitted), but they have not done so. This argument is thus irrelevant to DD's as-applied vagueness claim, as it effectively concedes.  *See* Pls.' Reply at 13 ("The point is not that Defense Distributed sells raw material.").

And as already explained, Plaintiffs cannot premise any claim on three additional items to which the Supreme Court has held the Rule to apply (the Polymer80 80% Frame) or are materially indistinguishable from such items (the two M1911 80% Frames). *See supra* I.B.  In any event, Plaintiffs provide no specific facts supporting their bare assertion that any dispute exists whether these items have "reached a stage of manufacture where [they] are clearly identifiable as an unfinished component part of a weapon." *See id.*  They are clearly identifiable as frames, given that they are either the same as or materially indistinguishable from an item that the Supreme Court held to be a "frame" under the Rule.  Moreover, given the Rule's severability clause, even if the Court were to find that Plaintiffs' challenge has merit—which it should not—the appropriate remedy would be limited to determining that the challenged sentence does not apply to the four items at issue in this case.   *See* Rule, 87 Fed. Reg. at 24,730 ("[I]n the event . . . the application of [any provision of the Rule] . . . to any person or circumstance is held to be invalid or unenforceable by its terms, . . . the application of the [remainder of the Rule] to any person or circumstance shall not be affected . . . .").

### 4.    Plaintiffs' Arguments Regarding the Rule's Consideration of Associated Materials Is Also Irrelevant to Plaintiffs' Claim.

The Rule provides that "[w]hen issuing a classification," ATF "may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser of the item or kit." 27 C.F.R. § 478.12(c).  Although Plaintiffs challenge this provision as unconstitutionally vague, Pls.' Reply at 14-16, they fail to show that ATF's determination whether the Rule applies to any of the four items at issue in Plaintiffs' challenge involves consideration of such associated materials.  The Rule provides only that ATF "may" consider such materials, not that it must do so.  And as Plaintiffs concede, the reason that ATF explained that it was unable to classify the four items at issue was because DD refused to provide "physical samples" of those items for classification, Pls.' Reply at 15.  It was thus DD's refusal to provide the items

14

themselves, not any associated materials, that made the classification process impossible. Because Plaintiffs have not shown that the Rule is "vague *in [their] case*," their challenge to this sentence is simply irrelevant to their vagueness claim. *Branson*, 139 F.4th at 478.

In any event, that claim has no merit. The challenged language simply means that when ATF issues a classification regarding an item or kit, it asks: When a seller sells this item to a buyer, which materials are included? *I.e.*, does the item or kit as sold to the buyer include such items as jigs, molds, equipment, tools, instructions, guides, or marketing materials? This language thus provides "a person of ordinary intelligence [with] fair notice" of what ATF considers when making its classification. *Munn v. City of Ocean Springs*, 763 F.3d 437, 439 (5th Cir. 2014).

Notably, Plaintiffs fail to cite any authority finding similar language unconstitutionally vague. The only case cited by Plaintiffs involved a California statute that criminalized the failure to furnish "credible and reliable" identification upon request during a police investigative stop, but did not specify what types of identification would suffice. *See Kolender v. Lawson*, 461 U.S. 352, 356-68 (1983). By contrast, the Rule specifically lists the types of materials it examines: "templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials" that are included with an item or kit when sold by a seller to a purchaser. The sole authority that Plaintiffs cite to support their argument thus does not apply here.

Nor do Plaintiffs provide any examples of why it might be difficult to determine whether the application of this language would result in any difficulty. Instead, Plaintiffs phrase their challenge in purely abstract terms, for example, arguing that the Rule "does not say which associated materials matter [or] how much they matter." Pls.' Reply at 14. But Plaintiffs fail to provide any examples of how the alleged lack of such specificity would determine whether the Rule would or would not apply

to any particular item.[5]  Plaintiffs' failure to provide such specifics renders their as-applied challenge meritless.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (party cannot satisfy its summary judgment burden "by conclusory allegations" or "by unsubstantiated assertions").

### B.    The Rule Is Consistent With the Second Amendment.

### 1.    The GCA's Licensing, Background-Check, Serialization, and Record-Keeping Requirements for Commercial Sellers of Firearms Be Licensed, as Applied by the Rule, Are Constitutional.

The Second Amendment question in this as-applied challenge to the Rule is a very limited one.  The sole relevant claims alleged by Plaintiffs are that (1) DD wishes to sell certain partially-complete frames and receivers that constitute "firearms" under the GCA without abiding by the GCA's licensing, recordkeeping, and background-check requirements and (2) SAF members wish to buy such items (and weapon parts kits) that constitute "firearms" under the GCA from sellers like DD without those sellers abiding by the GCA's requirements.[6]  As explained above, *see supra* at I, Plaintiffs lack standing to assert these claims.  But even if the Court were to disagree, it need only

---

[5] Because Plaintiffs' opening brief complained: "Why does ATF now posit that the Rule covers 80% pistol frames but not 80% rifle lowers?," Defendants provided an explanation.  Defs.' MSJ at 21 n.15. Plaintiffs move the goalposts in their reply brief by complaining that the requested explanation involves an application of the Rule to specific facts.  Pls.' Reply at 15.  But Plaintiffs provide no authority suggesting that every criminal law is unconstitutionally vague unless its text expressly lists every possible set of factual circumstances falling within its scope and every conceivable set of circumstances falling outside its scope.  Virtually no law could satisfy such an imaginary standard.

[6] Plaintiffs cannot contend that their Second Amendment claim pertains to any item that is not a "firearm" under the GCA—the Rule does not apply to such items.  As *VanDerStok* explained, "[18 U.S.C.] § 921(a)(3) extends the GCA's mandates to 'firearms,' a term subsection (A) defines as 'any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive,'" and the Rule "interpret[s] this language."  604 U.S. at 464. Thus, to the extent that partially-complete frames or receivers, or weapon parts kits, are "susceptible of ready conversion" "to expel a projectile by the action of an explosive," they are "firearms" that fall within the GCA's (and the Rule's) scope.  *Id.*  By contrast, the GCA (and the Rule) do not regulate items that are not "firearms" under Section 921(a)(3)'s definition.  Thus, Plaintiffs cannot claim that their Second Amendment claim concerns items that are not "firearms" under the GCA's definition, because the Rule does not apply to non-"firearms."

16

assess whether the Second Amendment encompasses an entity's right to engage in the business of selling firearms without complying with the GCA's licensing, recordkeeping, serialization, and background-check requirements. The Rule does not affect Plaintiffs' ability to keep or bear arms, to manufacture firearms for non-commercial purposes, or even to commercially sell firearms *with a license.* And in the words of *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), this is a "shall-issue" license, *see id.* at 38 n.9: a prospective dealer who wishes to obtain a license to sell firearms need only submit an application, be at least twenty-one years old, pay a fee, and establish lawful premises for selling firearms. 18 U.S.C. § 923(a), (d). If the applicant fulfills these steps and is otherwise legally able to possess, transport, and ship firearms, the application must be approved. *Id.* § 923(d).

As the Fifth Circuit held in *McRorey v. Garland*, 99 F.4th 831 (5th Cir. 2024), the GCA's background-check requirements do not violate the Second Amendment, *id.* at 836-40, and its analysis pertains equally to the GCA's licensing and record-keeping requirements. The Fifth Circuit explained that "[i]n *Heller*, the Court described 'conditions and qualifications on the commercial sale of arms' as 'presumptively lawful.'" *Id.* at 836 (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008)). Moreover, *Bruen* "did nothing to disturb that part of *Heller.*" *McRorey*, 99 F.4th at 836. "Instead, *Bruen* continued to distinguish the treatment of prohibitions on 'keeping and bearing'—such as the law at issue in *Bruen*—and other ancillary firearm regulations such as background checks preceding sale." *Id.* at 836-37. Accordingly, *Bruen* "should not be interpreted to suggest the unconstitutionality of . . . regimes, which often require applicants to undergo a background check because such checks are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." *Id.* at 837 (quoting *Bruen*, 597 U.S. at 38 n.9); *see also McRorey v. Garland*, No. 7:23-CV-00047-O, 2023 WL 5200670, at *4 (N.D. Tex. Aug. 14, 2023) (*Bruen* "seems to acknowledge the facial constitutionality of regimes requiring background checks and attendant waiting periods to ensure a potential purchaser is not prohibited from exercising Second Amendment rights,

17

so long as the waiting periods are not 'lengthy'"); *United States v. Peterson*, 161 F.4th 331, 339 (5th Cir. 2025) (reaffirming *McRorey* and upholding the National Firearms Act's "fingerprint, photograph, and background-check requirements" for suppressors).

Although the specific claim in *McRorey* was the constitutionality of the GCA's expanded background-requirements for 18-to-20 year olds, the Fifth Circuit made clear that its holding extended to the GCA's background-check requirements in general.  *See McRorey*, 99 F.4th at 838-39 ("Background checks *such as those* in the challenged provisions are presumptively lawful." (emphasis added)).[7]  Its analysis also includes the GCA's licensing, serialization, and recordkeeping requirements, which are likewise "conditions and qualifications on the commercial sale of arms" that constitute "ancillary firearm regulations . . . preceding sale, " *id.* at 836-37, aimed at "assist[ing] law enforcement authorities in investigating serious crimes by permitting them to determine where, by whom, or when a firearm was manufactured and to whom it was sold or otherwise transferred." *VanDerStok*, 604 U.S. at 462.

None of these requirements violate anyone's right "to keep and bear Arms."  U.S. Const. amend. II.  As explained in *Heller*, "keep" means to "have weapons" and "bear" means to "carry" weapons.  554 U.S. at 582, 584 (quotations omitted).  True, "[t]he right to 'keep and bear' can implicate the right to purchase." *McRorey*, 99 F.4th at 838.  "But such an *implication* is not the same thing as being *covered* by the plain text of the amendment." *Id.* (emphasis added).  Nothing in *Bruen* suggests, much less implies, that the Second Amendment's plain text covers commercial sale of firearms *without* abiding by the GCA's licensing, recordkeeping, serialization, and background-check requirements.  To the contrary, the Court expressly approved of state "shall-issue" licensing regimes so long as those

---

[7] Although *McRorey* noted that the presumption of lawfulness could be rebutted by a showing that background-check requirements "have been put towards abusive ends," *id.* at 839, like the plaintiffs in that case, Plaintiffs have not made any such showing.

laws do not deny law-abiding citizens their right to keep and bear arms, *Bruen*, 597 U.S. at 38 n.9, and as *McRory* reiterated, *Bruen* "did nothing to disturb [the] part of *Heller*" that "described 'conditions and qualifications on the commercial sale of arms' as 'presumptively lawful.'"  99 F.4th at 836.

Indeed, following *Bruen*, many courts—including courts in this Circuit—have rejected Second Amendment challenges to the GCA's licensing, recordkeeping, and serialization requirements, and have done so with no historical inquiry.  *See United States v. Flores*, 652 F. Supp. 3d 796, 799-804 (S.D. Tex. 2023) (rejecting Second Amendment challenge to GCA's licensing requirement, 18 U.S.C. § 922(a)(1)(A), without requiring consideration of historical analogues); *United States v. Deare*, No. 6:21-CR-00212-01, 2023 WL 4732568, at *2 (W.D. La. July 24, 2023) ("The Court agrees with the government that [the GCA's] federal licensure and record keeping requirements do not affect an individual's rights to possess firearms.  Moreover, these requirements affect only the seller.  As such, Defendants have failed to persuade this Court that these commercial licensure and recordkeeping requirements implicate the Second Amendment."); *cf. Elite Precision Customs LLC v. ATF*, 805 F. Supp. 3d 711, 715-20 (N.D. Tex. 2025) (rejecting Second Amendment challenge to GCA's prohibition on unlicensed interstate sale of firearms); *United States v. Reyna*, 165 F.4th 1056, 1060-65 (7th Cir. 2026) (rejecting Second Amendment challenge to GCA's prohibition on sale of unserialized firearms); *United States v. Gomez*, 159 F.4th 172, 177-78 (2d Cir. 2025) (same); *United States v. Price*, 111 F.4th 392, 402-08 (4th Cir. 2024) (en banc) (same).[8]  As these authorities reflect, *Bruen* did not assign a new meaning

---

[8] *See also, e.g.*, *United States v. Vlha*, 142 F.4th 1194, 1199-1200 (9th Cir. 2025) (rejecting Second Amendment challenge to GCA's licensing requirement without examining historical analogues); *Focia v. United States*, No. 2:23-CV-399, 2025 WL 1070436, at *4-5 (M.D. Ala. Feb. 20, 2025) (same), *report and recommendation adopted*, No. 2:23-CV-00399-RAH-CWB, 2025 WL 879944 (M.D. Ala. Mar. 21, 2025); *United States v. Austin*, 729 F. Supp. 3d 396, 403-07 (S.D.N.Y. 2024) (same); *United States v. Turner*, No. 2:22-CR-00164, 2024 WL 4237413, at *3 (D. Nev. Sept. 19, 2024) (same); *United States v. DeFelice*, No. 3:23-CR-116-OAW, 2024 WL 3028425, at *6 (D. Conn. June 17, 2024); *United States v. Duncan*, No. 7:20-CR-00167-M-3, 2023 WL 7346042, at *2-3 (E.D.N.C. Nov. 7, 2023); *United States v. Kazmende*, No. 1:22-cr-236-SDG-CCB, 2023 WL 3872209, at *5-6 (N.D. Ga. May 17, 2023), *report and recommendation adopted*, No. 1:22-cr-00236-SDG, 2023 WL 3867792 (N.D. Ga. June 7, 2023); *United*

to the Second Amendment that would confer a right to sell firearms commercially without a license, maintaining sales records, or serializing firearms.[9]

Plaintiffs are thus mistaken in describing their Second Amendment claims as involving "the right to acquire Arms, make Arms, repair Arms, and obtain the components needed to do those things," or "[g]unmaking" or "criminaliz[ing the] acquisition, repair, or personal manufacture" of firearms. Pls.' Reply at 27. Nothing in the complaint raises such issues. The narrow question presented here is whether DD (and sellers like DD) can commercially sell regulated firearms without a license, and without abiding by the GCA's background-check, serialization, and recordkeeping requirements. *McRorey* and the other caselaw cited above answer this question in the negative. These requirements do not encroach on any law-abiding citizen's ability to acquire firearms. And Plaintiffs certainly have made no showing that a single law-abiding citizen has been unable to acquire firearms because of the Rule. Nor could they. Nothing in the GCA's licensing, background-check, serialization, and recordkeeping requirements, as applied by the Rule, prohibits individuals from possessing firearms for self-defense, or from purchasing or selling firearms owned for personal, self-defensive use. These requirements are merely "ancillary firearm regulations . . . preceding [the] sale" of firearms. *McRorey*, 99 F.4th at 836; *see also Morehouse Enters., LLC v. ATF*, No. 3:22-CV-116, 2022 WL 3597299, at *8 (D.N.D. Aug. 23, 2022) ("[I]t is crucial to note the [Rule] concerns the *commercial sale of firearms*. The [Rule] does not infringe on *any* individuals' or business' ability to completely manufacturer a firearm for personal use, nor does it restrict the ability to obtain the weapon kits at issue."), *aff'd*, 78 F.4th 1011 (8th Cir. 2023).

---

*States v. McNulty*, No. 22-cr-10037-WGY, 2023 WL 4826950, at *4 (D. Mass. July 27, 2023) (same); *United States v. King*, 646 F. Supp. 3d 603, 607 (E.D. Pa. 2022) (same); *United States v. Tilotta*, No. 3:19-cr-4768, 2022 WL 3924282, at *6 (S.D. Cal. Aug. 30, 2022) (same); *cf. United States v. Focia*, 869 F.3d 1269, 1286 (11th Cir. 2017) (upholding GCA's licensing requirement, pre-*Bruen*, as not implicating Second Amendment's text, without conducting means-end analysis proscribed by *Bruen*).

In sum, because the GCA's background-check, licensing, serialization, and recordkeeping requirements do not "prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right," it is no different from the licensing regimes that *Bruen* approved, 597 U.S. at 38 n.9, the background-check system that *McRorey* approved, 99 F.4th at 836-40, or the serialization and recordkeeping requirements that fall within *McRorey*'s analysis.

### 2. Though No Historical Analysis Is Required, Such an Analysis Shows That the Licensing, Background-Check, and Recordkeeping Requirements Are Consistent with Historical Firearms Regulation.

*Bruen* emphasizes that the Second Amendment right is "subject to certain reasonable, well-defined restrictions." 597 U.S. at 70. The Supreme Court reiterated more than a dozen times in that opinion that the right to keep and bear arms belongs to law-abiding citizens,[10] and expressly approved of "shall-issue" licensing regimes that ensure those who carry guns "are, in fact, 'law-abiding, responsible citizens,'" *id.* at 38 n.9 (citation omitted). Like the law upheld by this Court and the Fifth Circuit in *McRorey*, the GCA's licensing, serialization, and recordkeeping requirements ensure that sellers of weapon parts kits and firearm frames and receivers that are readily convertible to operable firearms "do not transfer" them to "individuals . . . bar[red] [] from possessing a firearm" by assisting law enforcement efforts to prosecute such individuals. *McRorey*, 2023 WL 5200670, at *5. Any consequent burden on the buyers of these firearms is minimal and no more than that imposed on buyers of already-assembled firearms.

Consequently, as demonstrated above, there is no need for this Court to determine whether the GCA's licensing, background-check, serialization, and recordkeeping requirements are consistent

---

[10] *See, e.g.*, 597 U.S. at 15 ("law-abiding, adult citizens"); *id.* at 26 ("law-abiding, responsible citizens") (citation omitted); *id.* at 29 ("a law-abiding citizen's right to armed self-defense" and "law-abiding citizens"); *id.* at 31 ("ordinary, law-abiding, adult citizens"); *id.* at 33 n.8 ("law-abiding citizens"); *id.* at 38 ("law-abiding citizens"); *id.* at 38 n.9 (" 'law-abiding, responsible citizens'" and "ordinary citizens") (citation omitted); *id.* at 57 ("the responsible") (citation omitted); *id.* at 60 ("law-abiding citizens" and "responsible arms carrying"); *id.* at 70 ("law-abiding, responsible citizens" and "law-abiding citizens").

with this Nation's historical tradition of firearms regulation. As the Fifth Circuit has explained, in *McRorey*, it "considered a challenge to a background-check requirement and considered the following questions: "What part of *Bruen* controls our evaluation of a firearm regulation? Its imposition of an historical showing to be made by the government? Or its various assurances that it did not disturb common-place regulations in shall-issue regimes?" and "answered, 'the latter.'" *Peterson*, 161 F.4th at 338-39 (quoting *McRorey*, 99 F.4th at 834); *see also Flores*, 652 F. Supp. 3d at 799-802 (rejecting defendant's argument that it was necessary for "the court [to] apply *Bruen* scrutiny to [18 U.S.C.] § 922(a)(1)(A)" to uphold the GCA's licensing requirement under the Second Amendment). Nevertheless, in an abundance of caution, Defendants' opening brief explained that these requirements are consistent with that historical tradition. Defs.' MSJ at 23-26.

Plaintiffs' brief in response fails even to acknowledge the Fifth Circuit's binding decision in *McRorey*. Instead, that brief pretends that the Fifth Circuit's decision does not exist and that all that Plaintiffs need to do to prevail on their Second Amendment claim is to show that the historical laws cited by Defendants are not identical to the GCA's requirements. Plaintiffs are doubly mistaken.

Initially, the Fifth Circuit's analysis in *McRorey* governs this case. Defendants thus need not identify any historical analogues to the relevant GCA requirements to defeat Plaintiffs' Second Amendment claim. It was only in an abundance of caution that Defendants explained that these requirements are consistent with historical firearms regulation.

But in any event, Plaintiffs are mistaken. Even if an analysis of historical analogues were required here—which it is not—Defendants would still prevail. A court applying this analysis "must ascertain" whether the GCA's licensing, recordkeeping, serialization, and background-check requirements are "'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'" *United States v. Rahimi*, 602 U.S. 680, 692 (2024) (quoting *Bruen*, 597 U.S. at 29). "Why and how the regulation burdens

22

the right are central to this inquiry." *Id.* "For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* And while "[t]he law must comport with the principles underlying the Second Amendment," "it need not be a 'dead ringer' or a 'historical twin'" to "historical precursors." *Id.* (quoting *Bruen*, 597 U.S. at 30).

Defendants' opening brief showed that the relevant GCA requirements are relevantly similar to laws that American tradition is understood to permit. First, Defendants have shown that "laws at the founding regulated firearm use to address particular problems." *Id.* Just as in *Rahimi*, the government "offer[ed] ample evidence that the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others," *id.* at 693, so here, Defendants have shown that the historical tradition of government regulation to ensure that only law-abiding citizens acquire firearms allows commercial regulation of firearm sales. Defs.' MSJ at 23-24. The existence of this tradition is relevant both to "[w]hy . . . the regulation burdens the right" (to prevent the acquisition of firearms by persons who are not law-abiding citizens, and to assist law enforcement in prosecuting such persons) and "how" it does so (by regulating the commercial sale of firearms).

Plaintiffs miss the mark in arguing that the existence of this tradition lacks "reasonably specific similarity." Pls.' Reply at 29. If that were true, then the Supreme Court in *Rahimi* would not have upheld the GCA's prohibition on firearms possession by persons subject to domestic violence restraining orders that include a finding that the person "represents a credible threat to the physical safety of [an] intimate partner." 18 U.S.C. § 922(g)(8). It sufficed that the government showed "that the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 693. It was not required to show a "dead ringer" or "historical twin" in the form of historical precursors aimed specifically at preventing firearms possession by persons who threatened the safety of intimate partners. *Id.* at 692. So too here, it

23

suffices that there is a historical tradition of regulating the commercial sale of firearms to prevent their acquisition by non-law-abiding citizens. Contrary to Plaintiffs, *Rahimi* does not require demonstrating further that such historical regulation "enabl[ed] tracing, deterrence, and future law-enforcement control," Pls.' Reply at 29. Plaintiffs fail to identify any case that required such specificity. And Plaintiffs are mistaken in claiming that Defendants have not identified historical firearms regulation that reached beyond "finished or market-ready goods." *Id.* To the contrary, as shown below, Defendants have identified historical precursors that required the regulation of specific components of firearms—such as gun barrels and gunpowder—rather than fully-completed firearms.

Second, Defendants' opening brief cited another set of historical laws relevant to "how the regulation burdens the right," *Rahimi*, 602 U.S. at 692, *i.e.*, that impose comparable minimal burdens akin to those imposed by the GCA's licensing, recordkeeping, serialization, and background-check requirements. These include early state laws requiring the proofing and marking of gun barrels, prohibiting the obliteration of proof marks, and fining persons who commercially sold barrels or firearms containing them that lacked proof marks. Defs.' MSJ at 24-25. They also include early state laws prohibiting the commercial sale of gunpowder that was not inspected, proved, and marked, under penalty of fine. *Id.* at 25. Further, Defendants identified early laws prohibiting the sale of gunpowder without a license. *Id.* at 25-26. Like the relevant GCA provisions, which require commercial sellers of firearms to be licensed, keep sales records, conduct background checks, and serialize the firearms they sell, these historical laws permitted government inspection of firearms, required a license to sell an indispensable firearm component (gunpowder), and required that firearm components be marked in particular ways. *See also Reyna*, 165 F.4th at 1063 (noting that "[a]lthough systemic firearm serialization as it exists today was not in use when the Second Amendment was ratified, founding-era regulations established various measures to inventory and track firearms"). And like these historical precursors, the relevant GCA provisions impose at most a minimal "burden on the right of armed

24

self-defense," *Bruen*, 597 U.S. at 29, because they simply require commercial sellers to comply with the same requirements that every licensed firearms dealer abides by when selling firearms commercially.

Plaintiffs thus err in attacking these historical precursors on the grounds that their underlying rationales (the "why") were different from the challenged GCA requirements: accident prevention and product safety versus preventing sales to non-law-abiding-citizens. Pls.' Reply at 29-30. Defendants cited these laws as historical precursors to show that "the burden [the GCA provisions] impose[] on the right to bear arms . . . fits within our regulatory tradition," *Rahimi*, 602 U.S. at 698,—*i.e.*, as evidence of "how the regulation burdens the right," rather than "why" it does so. And Plaintiffs also make an error by "read[ing] *Bruen* to require a 'historical twin' rather than a 'historical analogue,'" *id.* at 701, namely, in discounting these relevant historical precursors because they do not specifically involve "licensing, serialization, recordkeeping, [and] background checks." Pls.' Reply at 30. The GCA's requirements are "by no means identical to" these historical precursors, "but [they do] not need to be." *Rahimi*, 602 U.S. at 698. Just like in *Rahimi*, where the GCA's "prohibition on the possession of firearms by those found by a court to present a threat to others fit[] neatly within the tradition the surety and going armed laws represent," though not identical to those laws, here, the GCA's regulation of the commercial sale of firearms fits well within the tradition represented by historical laws permitting firearms inspection, requiring licenses to sell gunpowder, and mandating that firearms bear particular markings. Contrary to Plaintiffs' argument, Defendants have shown "a settled tradition of comparable burdens" imposed by the GCA's requirements. Pls.' Reply at 31.

### 3.     Plaintiffs' Remaining Arguments Have No Merit.

Plaintiffs devote considerable space to discussing the historical tradition of self-manufacture of firearms. Pls.' Reply at 31-32. This discussion is wholly irrelevant. Like the defendants in *New York v. Arm or Ally, LLC*, 718 F. Supp. 3d 310 (S.D.N.Y. 2024), which also involved the Rule's application to the sale of partially-complete frames and receivers, Plaintiffs have "improperly frame[d]

25

the question as regulations on the 'manufacture of arms for personal use.'" *Id.* at 335 (citation omitted). But Plaintiffs "brought this action based on Defendants' alleged violations of federal . . . laws governing the manufacturing and sale of firearms, not laws governing whether one can manufacture arms at home for personal use." *Id.* at 335-36. As explained above, this as-applied challenge is limited to the narrow issue of whether Plaintiffs may constitutionally engage in the business of selling firearms without complying with the GCA's licensing, recordkeeping, serialization, and background-check requirements. *See supra* II.B.1. "And in any case, there is ample historical precedent for restrictions on the manufacturing and possession of arms for personal use, including a long tradition of gun serialization and enforcing serialization on a person-to-person level." *Arm or Ally*, 718 F. Supp. 3d at 336 (citing authority).

Plaintiffs also misplace their heavy reliance on the Supreme Court's recent decision in *United States v. Hemani*, 146 S. Ct. 1677 (2026). Pls.' Reply at 33-34. As Plaintiffs concede, the provision at issue in that case "deprived a person of Second Amendment rights," *id.* at 33, by "bann[ing] [him] from possessing a firearm under federal law." *Hemani*, 146 S. Ct. at 1684. But of course, the licensing, serialization, and recordkeeping requirements of the GCA do no such thing—they are regulatory requirements on the commercial sale of firearms, not a ban on any person's possession of firearms. That degree of burden mattered greatly to the Court's analysis in *Hemani*. *See id.* at 1686 ("The burden the government sets for itself in this case is a considerable one. . . . [T]he law automatically bans an individual from possessing a gun from the moment he becomes an unlawful user of any controlled substance until he ceases being one. . . . And for violating this automatic ban, the government insists, an individual like Mr. Hemani may be sent to prison for up to 15 years and disarmed for life."). The GCA requirements at issue here deprive *no one* of any Second Amendment rights. In vastly overreading *Hemani* to argue that it requires this Court to find the GCA's requirements unconstitutional, Plaintiffs ignore that the Supreme Court stated that its decision in *Hemani*, "[i]n many respects," was "a narrow

one." *Id.* at 1693. All that *Hemani* decided whether the government could "automatically strip Mr. Hemani of his Second Amendment right to possess a firearm because he uses marijuana a few times a week" and "because he possessed a gun despite this prohibition, . . . imprison him for up to 15 years and disarm him for life." *Id. Hemani* never mentions laws placing conditions on the commercial sale of firearms, much less casts any doubt on such laws.

Plaintiffs' *Hemani* discussion also attacks a straw man in contending that the Rule "forbid[s] law-abiding citizens from acquiring the unfinished frames, receivers, kits, jigs, tools, and instructions that make self-manufacture [of firearms] possible." Pls.' Reply at 33. The Rule does no such thing. Law-abiding citizens are free to purchase partially-complete frames and receivers from commercial sellers like DD. All that DD has to do is abide by the same licensing, recordkeeping, and serialization requirements that tens of thousands of federal firearms dealers comply with every day.

Plaintiffs further err in contending that the GCA's licensing, serialization, and recordkeeping requirements are unconstitutional because a law "leaving citizens free to speak after the government licenses printing presses, serializes paper, records book sales, and regulates the commercial supply of ink" would violate the First Amendment. *Id.* at 34. Different constitutional rights are not fungible with one another, nor are their respective scopes. The notion that review of one constitutional right should track review of another might have superficial appeal, but it makes little sense when scrutinized. Plaintiffs cite no authority showing that any courts have imported the First Amendment's idiosyncratic doctrines relating to free expression wholesale into the analysis of any other constitutional provision.

Finally, taking a step back shows that Plaintiffs' Second Amendment argument rests on a flimsy premise. The Supreme Court in recent years has had no difficulty striking down laws under the Second Amendment, even where (as in *Bruen*) the state law had been in effect for over a hundred years or (as in *Hemani*) the federal law had been in effect for over half a century. Yet despite DD expressly raising its Second Amendment challenge in its merits briefs, *see* Br. of DD at 22-25, *Bondi v.*

27

*VanDerStok*, No. 23-10718, 2024 WL 1098302, at *22-25 (Mar. 8, 2024), this same Supreme Court never once suggested in *VanDerStok* that the application of the Rule, on its face, to partially-complete frames and receivers and weapon parts kits presented any Second Amendment problems. Given the Supreme Court's loud silence on this issue, there is no merit to Plaintiffs' insistence that their Second Amendment claim should succeed.

> ### C. The Rule Is Consistent With the Major Questions Doctrine and Principles of Non-Delegation.

Neither the major questions doctrine nor principles of non-delegation provide any basis for relief here. *See* Defs.' MSJ at 27-30. As Plaintiffs concede, *VanDerStok* held that "the GCA permits the Rule to reach some weapon parts kits and some unfinished frames and receivers." Pls.' Reply at 22. Because Congress plainly authorized the GCA to reach such materials, the major questions doctrine does not apply because ATF has not relied on ambiguous statutory language to support an "extraordinary delegation[] of Congress's powers." *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 242 (2026). Nor do principles of non-delegation apply here because Congress' definition of "firearm" in the GCA has been applied for more than half a century—including by the Supreme Court in *VanDerStok*—without raising any concerns that the definition had not sufficiently delineated the bounds of ATF's delegated authority. *See VanDerStok*, 604 U.S. at 467-81.

Plaintiffs' contrary arguments are just an attempt to reassert their already-rejected claim that the Rule exceeds the GCA's statutory authority. Pls.' Reply at 22-24. The entire premise of Plaintiffs' major-questions-doctrine argument is their claim that the Rule now applies to "products previously outside ATF's regime" and that "[n]othing in the GCA clearly authorizes ATF to convert unfinished components and parts kits into federally regulated firearms. . . ." *Id.* at 22, 23. But these claims are exactly what was before the Supreme Court in *VanDerStok*: namely, whether the Rule's "provision addressing weapon parts kits is facially inconsistent with the [GCA]" and if "those who make, import, or sell partially complete frames and receivers may do so free from the GCA's mandates, no matter

28

how quickly and easily their products can be finished." *VanDerStok*, 604 U.S. at 473, 477. The Supreme Court squarely rejected these claims. *Id.* at 473 ("Because at least some weapon parts kits satisfy both of [the GCA's] tests, [the Rule's provision governing such kits] is not facially invalid"); *id.* at 477 ("The GCA reaches, and permits ATF to regulate, at least some 'partially complete' frames or receivers."). Plaintiffs cannot get a second bite at the apple by making the same argument (that the Rule exceeds the GCA's statutory authority) under a different name (the major questions doctrine).

The same is true of Plaintiffs' purported non-delegation claim. A non-delegation claim asks "whether *Congress* has set out an 'intelligible principle' [in a statute] to guide what it has given the agency to do," *FCC v. Consumers' Rsch.*, 606 U.S. 656, 673 (2025) (emphasis added). But Plaintiffs are not arguing that in the GCA, Congress failed to set forth an intelligible principle for the definition of "firearm." Any such argument would be meritless. As the Supreme Court explained in *VanDerStok*, "[t]he GCA's mandates apply to 'firearm[s]'" and "the law defines that key term broadly" to "include[] '(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive [and] the frame or receiver of any such weapon." 604 U.S. at 462-63 (citations omitted). It noted that "[t]hanks to this generous definition [of 'firearm'], the GCA has long been understood to reach everything from run-of-the-mill rifles to novelty umbrella guns." *Id.* at 463. Thus, the Supreme Court tacitly endorsed the GCA's broad definition of "firearm."

Instead of challenging *Congress's* statutory definition in the GCA, Plaintiffs instead argue that the *Rule* exceeds ATF's statutory authority. *See* Pls.' Reply at 23 (arguing that the Rule's definition of a partially-complete frame or receiver "does not mark a line between lawful parts and regulated firearms" because it is "based on whether an unfinished item is 'readily' completed"). This is not a non-delegation claim. It is a claim that the Rule exceeds the agency's statutory authority. Having litigated and lost their exceeding-statutory-authority claim in *VanDerStok*, Plaintiffs cannot reassert that very same claim by disguising it as a non-delegation claim.

29

> **D.      The Rule Is Consistent With the APA.**

Under the APA, "[a] decision is arbitrary or capricious only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Yogi Metals Grp., Inc. v. Garland*, 38 F.4th 455, 458 (5th Cir. 2022) (citation omitted).  Here, ATF provided a reasoned explanation for promulgating the Rule by considering relevant factors.  The APA requires no more.

> **1.       Plaintiffs Have Failed to Show that the Rule's Second Amendment Analysis Caused Them Any Harm.**

Plaintiffs miss the mark in arguing that the Rule is arbitrary and capricious because, in their view, it did not follow the analysis required by *Bruen*.  As explained, *see supra* II.B, ATF correctly determined that the Rule is consistent with the Second Amendment; any error was thus harmless.  *See FDA v. Wages & White Lion Invs.*, 604 U.S. 542, 588 (2025) (holding that "harmless-error rule" applies to APA review).  Because ATF correctly explained that the Rule does not infringe Second Amendment rights, Plaintiffs have not met their burden of demonstrating prejudice to them based on the mere inclusion of additional analysis reaching the same result under a different test.  Defs.' MSJ at 31-32.

Plaintiffs "neither propose[] comments [they] would have made during [the] comment period nor did [they] choose to involve [themselves] in the . . . comment period" at all.  *United States v. Johnson*, 632 F.3d 912, 933 (5th Cir. 2011).  Their complete "lack of involvement in all stages of administrative decision-making points to the conclusion that [they were] not practically harmed by" any alleged deficiencies in the Rule's Second Amendment analysis.  *Id.*  Nor do Plaintiffs show any other harm to them.  Instead, they rely on case law supporting the proposition that courts "will not reverse an agency action due to a mistake where that mistake clearly had no bearing on the procedure used or the substance of [the] decision reached." *Worldcall Interconnect, Inc. v. FCC*, 907 F.3d 810, 818 (5th Cir. 2018) (citation omitted).  That is precisely the circumstance presented here.  Plaintiffs fail to show that any alleged deficiency in the Rule's Second Amendment analysis had any bearing on the procedure the agency used: namely, notice-and-comment rulemaking.  Nor do they show that any purported

30

deficiency affected the substance of the agency's decision.  Because ATF correctly concluded that the Rule is consistent with the Second Amendment, "it would have made no difference" if the agency had included additional analysis reaching the same conclusion, and "any alleged error . . . was harmless and therefore does not warrant vacatur."  *Id.* at 819.[11]

Plaintiffs further err in attempting to shift the burden of demonstrating harmless error to Defendants.  That burden lies squarely on their shoulders.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).  No case law that they cite suggests otherwise.  The burden rested with the government in *United States v. Walters*, 418 F.3d 461 (5th Cir. 2005), to show that any error in the sentencing of a criminal defendant was harmless because *Walters* was a criminal case, where the prosecution generally bears the burden.  Contrary to Plaintiffs' representation, *Walters* neither adopted nor acknowledged any "rule" that in a civil case, the burden shifts to a government defendant to show error was harmless "when its error concerns the Constitution or deprives citizens of liberty."  Pls.' Reply at 19.  Instead, *Walters* stands only for the limited proposition that the prosecution has the "burden to show harmless error beyond a reasonable doubt in the imposition of [a criminal] sentence."  *Walters*, 418 F.3d at 464.  Likewise, and contrary to Plaintiffs' representation, *PDK Laboratories v. DEA*, 362 F.3d 786 (D.C. Cir. 2004), did not adopt any "rule[]" that "APA prejudice is presumed" if the Court cannot determine whether harm resulted from an alleged failure to comply with the APA.  Pls.' Reply at 19.

---

[11] The case law cited by Plaintiffs does not suggest to the contrary. The Fifth Circuit in *Johnson* held that the challenger had "ma[de] no showing that the outcome of the [agency's decision-making] process would have differed . . . had notice been at its meticulous best," and any purported APA violations were harmless error.  632 F.3d at 933.  The same is true here, and the same result follows. The Fifth Circuit in *U.S. Steel Corporation v. EPA*, 595 F.2d 207 (5th Cir. 1979), held that the agency's failure to provide a notice and comment period before engaging in rulemaking had "plainly affected the procedure used" in rendering its decision.  *Id.* at 215.  No such procedural error is shown here.  In *Sierra Club v. U.S. Fish & Wildlife Service*, 245 F.3d 434 (5th Cir. 2001), the agency's reliance on an invalidated regulation had extensively "permeate[d]" its decision not to designate "critical habitat" for a particular endangered species.  *See id.* at 444.  By contrast, as explained in the text, any deficiency alleged by Plaintiffs did not affect the substance of ATF's decision to promulgate the Rule.

The Supreme Court's decision in *Sanders* resolves this issue.  *Sanders* explains that in "review of ordinary administrative proceedings," "the *burden of showing that an error is harmful* normally falls upon the *party attacking the agency's determination*."  556 U.S. at 409 (emphasis added) (citations omitted).  The Supreme Court rejected the suggestion that in civil cases, the "agency" should bear "the burden of proving that a notice error did not cause harm," explaining that prior case law had "placed such a burden on the [government] only when the matter underlying review was criminal."  *Id.* at 410.

Furthermore, the Supreme Court has made clear that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *see also Summers*, 555 U.S. at 496 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing."); *City of Hearne v. Johnson*, 929 F.3d 298, 301 (5th Cir. 2019) ("It is not enough to create standing to claim that the process for handling [plaintiff's] petition was not followed.").  Thus, Plaintiffs err in arguing that "[t]he process error is the violation" itself. Pls.' Reply at 21.  This is merely a contention that Plaintiffs were harmed because of the alleged APA procedural error.  Such contentions are just what *Spokeo*, *Summers*, and *City of Hearne* deem insufficient to state an injury: alleging a bare procedural violation of the law, divorced from any concrete harm.

Plaintiffs bear the burden of demonstrating that any alleged deficiency caused them harm. Having not even bothered to submit comments on the Rule, they cannot satisfy this burden.

### 2.      The Rule Explains Any Change in Policy by ATF Regarding Partially-Complete Frames and Receivers and Weapon Parts Kits.

The Rule's treatment of partially complete frames and receivers and weapon parts kits reflects a consistently applied policy.  *See* Defs.' MSJ at 32-35.  Even before the Rule, ATF has maintained that a piece of metal, plastic, or other material becomes a "frame or receiver" when it reaches a "critical stage of manufacture," *see id.*, *i.e.*, when the article is "brought to a stage of completeness that will allow it to accept the firearm components [that] it is designed for, using basic tools in a reasonable amount

of time." ATF Letter to Private Counsel #303304, at 3-4, ECF No. 320 at 50-51. The Rule preserves this general approach, while applying it to an updated definition of "frame or receiver" that takes stock of decades of technological advances in firearms manufacture. As to weapon parts kits, ATF has always recognized that a weapon parts kit may constitute a regulated firearm if it "is designed to or may readily be converted to expel a projectile by the action of an explosive," 18 U.S.C. § 921(a)(3)(A); to reflect existing case law, the Rule simply adds express language to confirm and codify this interpretation, relying on the plain statutory text and relevant case law. Defs.' MSJ at 35.

As an initial matter, Plaintiffs fail to demonstrate—or even to contend—that prior to the Rule, ATF determined that any of the four items at issue in this as-applied challenge fall outside the GCA's scope. Absent such a demonstration, in this as-applied case, Plaintiffs cannot demonstrate that any alleged inadequacy of explanation regarding any change in policy by ATF regarding partially-complete frames and receivers or weapon parts kits has prejudiced them. *See Sanders*, 556 U.S. at 409-10 (under the APA's rule of prejudicial error, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"); *Amin v. Mayorkas*, 24 F.4th 383, 394 (5th Cir. 2022) (rejecting challenge to administrative action because challenger failed to show that it was prejudiced by the claimed error).

In any event, Plaintiffs' APA claim is meritless. Initially, Plaintiffs incorrectly state that the Rule covers "[c]onduct long treated as outside the GCA." Pls.' Reply at 24. Plaintiffs fail to substantiate this assertion, and as previously explained, the Supreme Court in *VanDerStok* recognized that the Rule did not rewrite the GCA. *See* Defs.' MSJ at 35.

Plaintiffs further err in contending that prior to the Rule, ATF addressed the critical stage of manufacture question by examining "the item's own machined state" but no longer does so. Pls.' Reply at 25. While ATF had previously classified partially complete frames and receivers based on the extent to which converting the item to be functional would require certain machining operations,

33

its analysis largely parallels the "readily" convertible test adopted in the Rule.  *See* 87 Fed. Reg. at 24,668 ("Rather than a new or different test, how quickly and easily [i.e., readily] an item could be made functional is largely determined by which machining operations still needed to be performed."). ATF has reasonably explained that adopting the term "readily" allows ATF to incorporate definitions and factors based on preexisting case law interpreting that term in other firearms statutes and thereby to "provide[] manufacturers with fair warning on how the factors in that definition are evaluated." 87 Fed. Reg. at 24,663, 24,668; *see also* Defs.' MSJ at 34.

The agency thus acknowledged the extent to which it was updating a preexisting understanding and explained the reason for the update; moreover, as the Supreme Court held in *VanDerStok*, the update is consistent with the GCA, which does not define the statutory term "frame or receiver," leaving it to ATF to do so.  The APA requires nothing more.  *See Handley v. Chapman*, 587 F.3d 273, 282 (5th Cir. 2009); Defs.' MSJ at 33 n.20.

Moreover, "[t]o minimize disruption and cost to the licensed firearms industry as much as possible, and in keeping with the public safety goals of the rule," ATF grandfathered existing complete frame or receiver designs that it previously determined to be the firearm "frame or receiver" of a given weapon.  87 Fed. Reg. at 24,654; *see also id.* at 24,683, 24,693.  And ATF set out its reasoning for deciding not to grandfather partially complete, disassembled, or nonfunctional frames or receivers (including weapon or frame or receiver parts kits) that it had previously classified as not being "frames or receivers."  *Id.* at 24,672.  Previously, incomplete frames or receivers had been sent to ATF for classification without the other parts, jigs, templates, or materials that are sold or distributed with the item or kit.  *See id.*  Thus, the entire kit may not have been presented to ATF when it made its

34

classification, *id.* at 24,709.[12]   Contrary to Plaintiffs' contention, *see* Pls.' Opp. at 25, the agency acknowledged this decision, and explained its reasoning, which is well within APA requirements.

And as already explained, the Rule fully accounted for the reliance interests of entities already engaged in the sales of partially complete frames and receivers.  Defs.' MSJ at 35-36.  Plaintiffs' bare assertion that the Rule's treatment of such reliance interests is somehow inadequate, Pls.' Reply at 25, fails to substantiate that assertion with any actual explanation.  *See Little*, 37 F.3d at 1075 (party cannot satisfy its burden on summary judgment "by conclusory allegations" or "by unsubstantiated assertions").  And Plaintiffs massively exaggerate any cost or burden that the Rule requires of such entities.  Entities like DD need only apply for a federal firearms license, conduct background checks, and maintain certain records—these are the same requirements that tens of thousands of federal firearms dealers abide by every day.[13]

Finally, Plaintiffs claim that the GCA—and the Rule interpreting it—should be read narrowly to avoid any potential Commerce Clause issues.  Pls.' Reply at 26-27.  But "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).  Because Plaintiffs' complaint never mentions the Commerce Clause, much less asserts a claim

---

[12] Plaintiffs incorrectly represent that the Rule "attaches firearm status" to materials such as "jigs, tools, instructions, and marketing." Pls.' Reply at 25.  The Rule provides only that "[w]hen issuing a classification," ATF "*may consider* any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit."  87 Fed. Reg. at 24,739 (codified as amended at 27 C.F.R. § 478.12(c)) (emphasis added).  Such items are considered only to determine whether a partially complete frame or receiver has reached a stage of manufacture sufficient to be considered a "frame" or "receiver."  ATF does not regulate the manufacture, sale, or possession of such items.

[13] *See* ATF, *Fact Sheet - Facts and Figures for Fiscal Year 2024* (showing that as of Fiscal Year 2004, over 47,000 licensed federal firearms dealers operate in the United States), https://www.atf.gov/resource-center/fact-sheet/facts-and-figures-fiscal-year-2024

based on that provision, *see* Compl., ECF No. 143, this claim is not properly before the Court.  In any event, the claim is meritless.  "The Fifth Circuit has consistently upheld the GCA as a valid exercise of Congress's commerce power."  *Jackson v. Garland*, No. CV 24-1717, 2026 WL 884025, at *5 (W.D. La. Mar. 31, 2026) (citing authority).  The sole authority that Plaintiffs cite to support this claim is a single-Justice Supreme Court concurrence not joined by any other Justice.  *See Hemani*, 146 S. Ct. at 1694-98 (Thomas, J., concurring).

## III.    Any Relief Should Be Narrowly Tailored.

As explained in Defendants' opening brief, the APA does not provide for universal vacatur of agency action, consistent with the ordinary meaning of "set aside," 5 U.S.C. § 706(2), and longstanding limits on judicial power to review actions of the political branches.  *See* Defs.' MSJ at 37-39.  Plaintiffs' contention that Section 706(2) of the APA's use of the term "set aside" only authorizes universal vacatur, Pls.' Reply at 36, has no merit.  While the APA permits a court to "set aside" (*i.e.*, disregard) an unlawful agency action, it does not permit a court to nullify the action universally, including in other jurisdictions.

In the alternative, Defendants have explained that even if vacatur is authorized under the APA, it is not warranted here if Plaintiffs were to succeed on the merits of any procedural claim, because the agency can likely correct any such error on remand, and the disruptive consequences of vacatur to public safety would be immense.  *Id.* at 39-40.  Plaintiffs' procedural APA claims are that the Rule did not include a particular type of analysis or explanation.  *See supra* II.D.  Such claims are precisely the type of claims for which, if deemed meritorious, "there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so," *Nat'l Ass'n of Priv. Fund Managers v. SEC*, 151 F.4th 252, 273 (5th Cir. 2025) (citations omitted), by providing on remand the particular type of analysis or explanation deemed lacking.  Although Plaintiffs argue to the contrary, *see* Pls.' Reply at 35-36, they fail to substantiate their argument or provide any authority to support it.  *See Little*,

36

37 F.3d at 1075 (party cannot satisfy its burden on summary judgment "by conclusory allegations" or "by unsubstantiated assertions").   And as to the disruptive consequences of vacatur, Plaintiffs' argument that the "continued enforcement of an unlawful rule is the disruption the APA prevents," *id.* at 36, proves too much.   In every case where a court has considered the disruptive consequences of vacatur in determining the appropriate remedy, the court already had determined that the challenged agency action was unlawful in some way. *See, e.g., Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000) (holding that remand without vacatur was the appropriate remedy, in part because vacatur "would be disruptive," only after holding that the challenged agency action was unlawful).

In the further alternative, Defendants have explained that any vacatur of the Rule should be limited to the relevant provision or provisions of the Rule and to the parties to this action that have shown standing with respect to any successful claim. *See* Defs.' MSJ at 40-42.   DD has claimed only that there are four items that it has concrete plans to sell that the Rule *might* possibly regulate.   As explained above, *see supra* at I, Plaintiffs have failed to demonstrate standing at all.   But even if the Court were to disagree, because Plaintiffs "must demonstrate standing . . . for each form of relief that they seek," *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citations omitted), any relief should be limited to the extent that Plaintiffs have shown standing to obtain such relief.   And Plaintiffs are mistaken to suggest that any relief they might obtain is not limited solely to the provision or provisions of the Rule as to which they have shown standing to sue. *See Brazos Valley Coal. for Life, Inc. v. City of Bryan*, 421 F.3d 314, 323 (5th Cir. 2005) ("To the extent that appellants assert on appeal that [an ordinance] is defective in severable respects that are unrelated and do not apply (and have not been applied) to activities in which appellants have alleged below that they engaged in (or desire or desired or plan or planned to engage in), such arguments are not properly before us and appellants lack at least prudential

37

standing to raise them.").[14]  The Fifth Circuit has consistently limited vacatur of agency rules only to those specific provisions successfully challenged in litigation by a plaintiffs with standing.  *See Texas v. United States*, 126 F.4th 392, 419-420 (5th Cir. 2025) (reversing district court's wholesale vacatur of Deferred Action for Childhood Arrivals (DACA) for failure to sever and preserve forbearance provisions); *VanDerStok v. Garland*, No. 23-10718, 2023 WL 4945360, at *1 (5th Cir. July 24, 2023) ("The ATF is likely correct, however, that the vacatur [of the entire rule] was overbroad."); *Elec. Power Co. v. EPA*, 920 F.3d 999, 1033 (5th Cir. 2019) (vacating only challenged portions of rule).

## CONCLUSION

For the reasons stated above and in their opening brief, Defendants respectfully request that the Court enter summary judgment in their favor.

DATED: July 24, 2026                              Respectfully submitted,


                                                 BRETT A. SHUMATE
                                                 Assistant Attorney General, Civil Division

                                                 ALEXANDER K. HAAS
                                                 Director, Federal Programs Branch

                                                 ANDREW I. WARDEN
                                                 Assistant Director, Federal Programs Branch

                                                 */s/ Daniel Riess*
                                                 DANIEL RIESS
                                                 JEREMY S.B. NEWMAN
                                                 Trial Attorneys
                                                 Civil Division, Federal Programs Branch
                                                 U.S. Department of Justice
                                                 1100 L Street, NW
                                                 Washington, DC 20005
                                                 Phone: (202) 353-3098

---

[14] Although *Brazos Valley Coalition for Life*'s holding regarding First Amendment analysis of content-neutral laws has been abrogated, its determination that injury under one provision of a law is insufficient to confer standing on a plaintiff to challenge all the law's provisions remains good law. *See, e.g.*, *Moore v. City of Dallas*, No. 3:16-CV-01501, 2016 WL 9663360, at *3 (N.D. Tex. Aug. 25, 2016) (citing *Brazos Valley Coalition for Life* for proposition that "a plaintiff must sustain injury in fact as to each challenged provision [of a law] in order to establish standing").

Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On July 24, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Daniel Riess*

39